Robert Tauler (SBN 241964)
Tauler Smith LLP
626 Wilshire Blvd., Suite 510
Los Angeles, California 90017
Tel: (310) 492-5129
rtauler@taulersmith.com


Attorneys for Plaintiff
OUTLAW LABORATORY, LP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORY, LP LITIGATION | **CASE NO. 3:18-cv-00840-GPC-BGS**<br><br>*[Hon. Gonzalo Curiel presiding]*<br><br>**OPPOSITION TO COUNTERCLAIMANTS' MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTER-CLAIMS**<br>**FILED CONCURRENTLY WITH: DECLARATION OF ROBERT TAULER; DECLARATION OF MICHAEL WEAR**<br><br>Date: August 16, 2019<br>Time: 1:30 p.m.<br>Court: Courtroom 2D |

**MEMORANDUM OF POINTS AND AUTHORITIES**

Counterclaimants Roma Mikha, Inc., NMRM, Inc. and Skyline Market, Inc., ("Counterclaimants") Motion for Leave to File Second Amended Counterclaims (the "Motion") should be denied for the following reasons.

## I.   INTRODUCTION

Counterclaimants motion for leave to amend their Counter-Claims to add new parties, individual defendants Shawn Lynch, Mike Wear, and their counsel in this action, Tauler Smith LLP, based on two premises. First, that "investigative journalists" from Vice News, a culture tabloid, have provided Counterclaimant's counsel with unspecified information as part of a video to be aired on their show. (Motion at 1:8-13) However, Vice News has not aired any story about this case, let alone the addition of new parties. For its part, Vice News denies that it has provided Counterclaimants' with any information relating to this lawsuit. (Tauler Dec., ¶ 2, Ex. A).

The second stated basis for adding parties at this late juncture is "discovery obtained from discovery taken by the Elia Law Firm in this action." (Motion, ¶ 1:13-19). As the Court is aware, this discovery was served on January 31, 2019 (Order Amending Scheduling Order, DKT # 86, 3:11-14), and Counterclaimants cite no evidence produced in January, let alone any explanation why the present motion is being filed over six months later.[1] Counterclaimants argue that Outlaw's discovery responses in January demonstrate that it launched its competing Tri-Steel product after it began investigating the claims in this lawsuit, comparing photographs taken in August 2017 with internet searches conducted by Counterclaimants' counsel. However, the very same discovery responses Counterclaimants purportedly rely on state under oath that Tri-Steel was first sold on October 10, 2016. (Tauler Dec., ¶ 3, Ex. B).

---

[1] Indeed, Counterclaimants own deadline to amend the pleadings was May 10, 2019. [DKT #81, pg. 10]

As such, there is no factual predicate to Counterclaimants amendment, and, to wit, it appears that the motion contains outright falsehoods.[2]  For example, the moving papers claim that "enterprise member Tauler Smith LLP appears to have first rounded up potential targets of the scheme, then worked with its 'client' to launch the 'TriSteel' product on-line."  (Motion 2:3-8)  This is directly contradicted by OLP's discovery responses.  This is, again, contradicted by OLP's discovery responses.  (Tauler Dec., ¶ 3, Ex. B).

Rather, it seems the motion is being made for the improper purpose of altering the positions of the parties in a manner that prejudice their ability to defend themselves, and will necessarily impact the Court's scheduling order.

Finally, the amendments to the complaint do not add any new facts, nor do they explain in any detail the who, what, where and when of the new defendants conduct, as they must.  In the Ninth Circuit, claims grounded in fraud must meet Rule 9(b)'s particularity requirements."  *Neilson v. Union Bank of California, N.A.,* 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).   Moreover, the proposed amendment includes allegations that contradict Counterclaimants prior pleadings and evidence presented herein.  As such, the motion should be denied for the separate ground that they would be futile.

The motion should be denied in its entirety.

## II.  ARGUMENT

### A.  The Court Should Deny Counterclaimants' Request For Leave To Amend Pursuant To Rule 15

In assessing the propriety of amendment under FRCP 15, the Court should consider several factors: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment.  *Kerr v. Zacks Investment Research, Inc.*

---

[2] It should be noted that there is no factual declaration is provided with the moving papers.

(S.D. Cal., Sept. 29, 2016, No. 316CV01352GPCBLM) 2016 WL 5464554, at *2, citing *Foman*, 371 U.S. at 182; *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

These factors do not carry equal weight; the possibility of delay alone, for instance, cannot justify denial of leave to amend, *DCD Programs*, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. *Bowles v. Reade,* 198 F.2d 752, 758 (9th Cir. 1999). The single most important factor is whether prejudice would result to the non-movant as a consequence of the amendment. *Kerr v. Zacks Investment Research, Inc.* (S.D. Cal., Sept. 29, 2016, No. 316CV01352GPCBLM) 2016 WL 5464554, at *2.

Below is an examination of these factors as they apply to Counterclaimants' motion.

### 1.   **Undue Delay**

Counterclaimants seek leave to amend their Counter-Claims based on allegations based on reporting from Vice, which has not yet occurred, discussed *infra*, and "discovery obtained from discovery taken by the Elia Law Firm in this action." (Motion, ¶ 1:13-19). As the Court is aware, this discovery was served on January 31, 2019 (Order Amending Scheduling Order, DKT # 86, 3:11-14), and Counterclaimants provide no explanation why the present amendment being sought six months later.[3]  *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 799 (9th Cir. 1991) (finding an eight-month delay constituted undue delay).

### 2.   **Bad Faith**

To determine if a plaintiff's amendments are brought in bad faith, a court focuses on the plaintiff's motives for not amending the complaint earlier. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984).

---

[3] Indeed, Counterclaimants deadline to amend the pleadings was May 10, 2019.  [DKT #81, pg. 10]

### a.   "Vice News" Falsehoods

Here, Counterclaimants seek leave to amend their Counter-Claims based on allegations that "investigative journalists from Vice News have been compiling a documentary" and that the amendment is "[b]ased on the reporting generated in conjunction with that documentary." (Motion at 1:8-13)  However, no such documentary from Vice News has aired, and Vice News denies that it has provided Counterclaimants' with any information relating to this lawsuit.  (Tauler Dec., ¶ 2, Ex. A).

Indeed, Vice News has informed counsel for Counterclaim-Defendants that Counterclaimaint's counsel, Mark Poe, contacted Vice News based on the falsehood that Plaintiff and its counsel are engaged in discriminatory, anti-immigrant conduct (Tauler Dec., ¶ 8).  Counsel for OLP asked Mr. Poe about these communications on June 27, 2019, and in response did not deny the accusation, and cheerily and childishly stated "You'll see when the Vice doc finally drops." (Tauler Dec., ¶ 4, Ex. C).

The following day, on June 28, 2019 at 3:13 p.m., Plaintiff's counsel provided Notice of Subpoena to Vice Media to Mr. Poe, so counsel could obtain Vice's communications from Mr. Poeregarding his solicitation of media attention for his unsupported theory that Plaintiff's lawsuits are discriminatory in nature.  (Tauler Dec., ¶ 5, Ex. D).

On Friday, June 28, 4:24 PM, just over an hour later, Mr. Poe sent counsel the proposed amendments to the complaint counsel to "stipulate," citing an inapplicable local rule.  The timing of Mr. Poe's email is plainly related to the subpoena to Vice News, and explains, but does not excuse, the outright falsehoods contained in the moving papers, since Mr. Poe was under the impression that a "documentary" from Vice News was imminent as of July 27, 2019, when Mr. Poe first referenced it to counsel. (Tauler Dec., ¶ 4, Ex. D).

b.      **January Discovery Responses**

The motion also references "discovery obtained from discovery taken by the Elia Law Firm in this action."  (Motion,  ¶ 1:13-19).  As the Court is aware, this discovery was served on January 31, 2019 (Order Amending Scheduling Order, DKT # 86, 3:11-14), and Counterclaimants provide no explanation why the present motion was filed over five months later.[4] Even the basis for the amendment – Outlaw's launching of Tri-Steel purportedly pre-dating the investigation of its claims – is supported only by conjecture. Counterclaimant speculates that since it could not find any archived pages of Tri-Steel's sale on the internet using a google search, that the parties engaged in a conspiracy at the direction of counsel to collect evidence first and create a product later.  Not only is this wild conclusion unsupported by the evidence, it is contradicted by the very same discovery responses Counterclaimants purportedly rely on, which state plainly that Tri-Steel was sold October 10, 2016.  (Tauler Dec., ¶ 3, Ex. B).

Thus, the evidence is clear that the present motion is being made in bad faith.

3.      **Prior Attempts**

The Court has already granted leave to amend the Counterclaims on one other occasion, November 27, 2018 [DKT # 31].

4.      **Prejudice to New Counterclaim Defendants**

"Amendments seeking to add claims are to be granted more freely than amendments adding parties."  *Union Pacific R. Co. v. Nevada Power Co.* (9th Cir. 1991) 950 F.2d 1429, 1432.   New parties have due process rights to move to dismiss and obtain discovery, which will require that the Court to amend its scheduling order, given the current discovery cut off of September 6, 2019 (Order Amending Scheduling Order, DKT # 86).  However, counterclaimants have failed to specifically request modification of the Court's June 8, 2019 scheduling order under Rule 16 (ECF Doc. # 86), which

---

[4] Indeed, Counterclaimants own deadline to amend the pleadings was May 10, 2019. [DKT #81, pg. 10]

**OPPOSITION TO MOTION FOR LEAVE**

would be necessary for the new parties to prepare a defense.  Nor have Counterclaimants even attempted to show "good cause" for such modification, as required by Rule 16.

Where a party moves to amend its complaint that will impact the Court's scheduling order, but does not specifically request that the Court modify its scheduling order, the Court need not construe the motion as a motion to amend the scheduling order. *See Johnson*, 975 F.2d at 608; *Actuate Corp. v. Aon Corp.*, No. C 10-05750 WHA, 2011 WL 4916317, at *2 (N.D. Cal. Oct. 17, 2011) (denying defendant's motion for leave to file an amended answer and new counterclaims because defendant failed to show good cause to modify the scheduling order in order to amend the pleadings). Instead, the Court may simply deny the motion as untimely. *Id.* ("court may deny as untimely a motion filed after the scheduling order cut-off date where no request to modify the order has been made") (citing *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff,* 768 F.2d 1099, 1104 (9th Cir. 1985)); *Atwell v. City of Surprise,* 440 F. App'x 585, 586 (9th Cir. 2011) (district court did not abuse its discretion in denying plaintiff's request for leave to amend complaint; plaintiff "should have requested a modification of the district court's scheduling order before he requested leave to [amend]"); *Telemasters, Inc. v. Vintage Club Master Ass'n*, No. CV 05-05139FMC(VBKX), 2007 WL 1839701, at *2 (C.D. Cal. Feb. 2, 2007) (holding that defendant failed to establish good cause to modify the scheduling order). The Court need not reach Counterclaimants' arguments concerning leave to amend under Federal Rule of Civil Procedure 15(a).

Moreover, in determining prejudice, the Court considers whether the amended complaint would "greatly change the parties' positions in the action, and require the assertion of new defenses." See *Peruta v. Cnty. of San Diego*, No. 09-CV-2371-IEG (BLM), 2010 WL 2612942, at *4 (S.D. Cal. June 25, 2010) (citing *Phoenix Solutions, Inc. v. Sony Elec., Inc.*, 637 F.Supp.2d 683, 690 (N.D. Cal. 2009)); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).  Here, Defendants seeks two add two individual defendants, as well as their legal representation as a party.  This

**OPPOSITION TO MOTION FOR LEAVE**

would fundamentally change the parties' positions, since the parties would need to obtain new counsel.

## B. **The Court Should Deny the Motion Because Amendment Would Be Futile**

### 1. **The Proposed Amendments are Futile Because they lack Specificity.**

To allege a violation of mail fraud under § 1341, 'it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004) (quoting Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1400 (9th Cir. 1986).

Plaintiff must plausibly allege specific conduct for each RICO defendant. See *In re Worlds of Wonder Securities Litigation*, 694 F. Supp. 1427, 1433 (N.D. Cal.1988). "It is not enough for plaintiffs to make group allegations in such a situation because collective responsibility is not self-evident. Each defendant is entitled to know what misrepresentations are attributable to them and what fraudulent conduct they are charged with." *Id.; see Comwest,* 765 F. Supp. at 1471 (C.D. Cal. 1991). Plaintiff "must allege the roles of defendants in sufficient detail to permit each to assess and answer the various claims of ... liability asserted in the complaint." *Hokama v. E.F. Hutton & Co., Inc.*, 566 F. Supp. 636, 646 (C.D. Cal. 1983).

Given that allegations of fraud are particularly injurious to business and professional reputations, a fraud claim may withstand a Rule 9(b) challenge only if it states "the manner in which [the alleged misrepresentations] are false, and the facts that support an inference of fraud by each defendant." *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 639 (N.D. Cal. 1980). As Plaintiff's RICO claim falls far below this standard, any amendment would be futile.  See *Alan Neuman Productions, Inc. v. Albright*, 862

F.2d 1388, 1392 (9th Cir. 1988) (dismissing RICO claims because predicate acts of mail and wire fraud were not pled with specificity).

A plaintiff alleges RICO claims against multiple defendants, the "plaintiff must allege at least two predicate acts by each defendant." In re WellPoint, Inc., 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011).

## 2. The Proposed Amendments are Futile Because Counterclaimants cannot Demonstrate that Any Conduct was the "Proximate Cause" of the Class Members' Injury.

In order to be viable, each of the three Counterclaimants must properly allege that Counterclaim-Defendants' alleged violation of RICO was a substantial factor (or the "proximate cause") of their injury. *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Assoc.*, 298 F.3d 768, 773 (9th Cir. 2002); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419 (9th Cir. 1995); *see Gonzales v. Lloyds TSB Bank, PLC*, 532 F. Supp. 2d 1200, 1213 (C.D. Cal. 2006). Astoundingly, Counterclaimants do not even bother to challenge the fact that they are breaking the law by selling pills containing pharmaceuticals. Counterclaimants flaunt the law by continuing to sell to this day, despite being notified by Plaintiff and the FDA of the dangers of their conduct. (Wear Dec., Exhs A-B). For this reason, and the reasons detailed below, none of the three counterclaimants can properly plead this element of liability.

First, Counterclaimaint, Roma Mikha, alleges in the SAC that it "suffered an injury to its business because it initially believed the demand letter's false assertions, and removed these legal products from its shelves, thereby losing legitimate sales." (SAC, ¶ 33). However, Mikha alleged in its Answer filed on August 24, 2018 that it "lacks knowledge or information sufficient to form a belief as to whether it in fact offered for sale each of the products alleged," (August 24, 2018, Answer of Roma Mikha ¶ 6) [Dkt. No. 4]. In fact, Roma Mikha still sells the enhancement products. (Wear Dec., ¶ 2, Ex. A).

Second, The SAC alleges that Counterclaimant "NMRM has suffered an injury to its business because it initially believed the demand letter's false assertions, and removed these legal products from its shelves, thereby losing legitimate sales." (SAC, ¶¶ 4). Counterclaimant, NMRM, who "does business as Sunset Liquor, which operates out of a small strip mall located at 985 Broadway, Chula Vista, California." (SAC, ¶¶10), still sells the Enhancement Products.  (Wear Dec., ¶ 3, Ex. B).

Third, Counterclaimant Skyline Market, Inc. is suing for rescission of a settlement agreement entered into when it was represented by counsel.  (Tauler Dec., ¶ 9).  The FAC would be futile as to Skyline since (1) rescission is a remedy and not a separate claim (*see Forever 21, Inc. v. National Stores Inc.*, 2014 WL 722030, *6 (C.D. Cal. Feb. 24, 2014)), and (2) the only basis for rescission in the SAC is "duress" Counter-Claimants but, since Skyline was represented by counsel, and there is nothing in the record to suggest that counter-claim defendants in any way connived with Skyline's attorney in allegedly exerting such pressure, no grounds for rescission exist.  *Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1174, as modified on denial of reh'g (Oct. 28, 2010). Nothing in the SAC provides any explanation for this omission.  Accordingly, amendment would be futile as to Skyline.

### 3.    The Proposed SAC is Futile as to Individual Defendants Wear and Lynch

 Nowhere in its Second Claim for Relief for Violation of RICO – or anywhere else in its Amended Complaint – does it allege specific facts that would, if proven, demonstrate that CNV had an intent to mislead its consumers.

To state a claim against an entity defendant personally, a plaintiff must plead facts showing that defendant was a "moving, active conscious force" behind the wrongdoing. *BioZone Labs., Inc. v. Next Step Labs. Corp.*, Case No. 17-cv-02768- NC, 2017 WL 5665658, at *4 (N.D. Cal. Nov. 27, 2017) (citing *Monsanto Co. v. Haskel Trading*, 13 F. Supp. 2d 349, 354 (E.D.N.Y. 1998); *Microsoft Corp. v. Suncrest Enter.*, *Case* No. 03-cv-

5424-JF-HRL, 2006 WL 1329881, at *7 (N.D. Cal. May 16, 2006) ("Microsoft Corp.")). "Mere authority to direct the infringing behavior is not enough; personal involvement is necessary." Id. (citing Microsoft Corp., 2006 WL 1329881, at *7 ); see *Collagen Nutraceuticals, Inc. v. Neocell Corp.*, Case No. 09-cv-2188-DMS-WVG, 2010 WL 3069715, at *3 (S.D. Cal. Aug. 4, 2010) ("Thus, personal liability can be established if an officer is a moving, active, conscious force behind the defendant corporation's infringement."). This standard "does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Chanel, Inc. v. Italian Activewear of Florida, Inc.*, 931 F.2d 1472, 1478 n.8 (11th Cir. 1991) (emphasis in original).

The Proposed SAC contains no allegations regarding either Mr. Wear or Mr. Lynch's specific conduct, other than (1) Mr. Wear signed a confidential settlement agreement (SAC , ¶ 68) and (2) that the individual defendants "conducted the affairs of the Outlaw Enterprise" (SAC , ¶ 83)  The remainder of the new allegations simply add the Individual Defendants to pre-existing allegations ascribed to OLP (SAC ¶ ¶ 87-88, 91, 93, 94, and 98), (often only on "information and belief")(SAC ¶ ¶ 70(a)-(b),(g), but do not provide any specific detail, as they must regarding what conduct they either of the Individual Defendants in.   As such, their addition is futile.

### 4.   The Proposed SAC is Futile as to OLP's counsel, Tauler Smith LLP

Counterclaimants allege mail fraud against OLP's lawyers, by their "drafting and mailing the fraudulent demand letter and attached 'draft complaint,' and each of the statements therein," as well as "negotiating the amounts of protection money [sic] it would charge to each of its victims." (SAC ¶ ¶ 83, 91, 92, 98).

As a threshold matter, a law firm's conduct in sending letters, filing complaints, and negotiating settlements is immune to prosecution unde the three-part test adopted in

*BE & K Construction Co. v. NLRB*, 536 U.S. 516 (2002): "(1) identify whether the lawsuit imposes a burden on petitioning rights, (2) decide whether the alleged activities constitute protected petitioning activity, and (3) analyze whether the statutes at issue may be construed to preclude that burden on the protected petitioning activity." *Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

First, it is obvious that a challenge to "legal work relating to [litigation] places a burden on [Plaintiff's] ability to bring suit and the attorney Defendants' ability to zealously advocate for their clients in furtherance of their interests in the litigation." *Reed v. East End Props., Inc.* (C.D. Cal., Mar. 15, 2018, No. EDCV17955DMGKKX) 2018 WL 6131211, at *12. *Kearney*, 590 F.3d at 647 ("[W]hen a plaintiff seeks damages ... for conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." (quoting *Kottle v. Nw. Kidney Ctrs*., 146 F.3d 1056, 1063 (9th Cir. 1998) (alterations in original).

Indeed, an intent to chill speech is the only objective of Counterclaimant's counsel's erratic and wild allegations that bear any factual support, evidenced by a March 23, 2019 email sent to another of OLP's lawyers in Michigan, where Mr. Poe threatens yet another RICO lawsuit against a lawyer for bringing a lawsuit because that lawyer allegedly "lie[d] to [Poe]" "using the wires of the United States."  (Tauler Dec., ¶ 6, Ex. E).  The email goes on to refer to counsel as a "shitbird" and threatens to sue the lawyer if the lawyer does not provide information to Mr. Poe.  *Id*.  It bears noting that one primary distributor of the illicit pills, Trepco Corporation, is headquartered in Michigan and is Mr. Poe's client.  (Tauler Dec., ¶ 7, Ex. F).

Second, there can be no dispute that a law firm's filing lawsuits is protected activity.  Even assuming the statements in the demand letters were not true, "[i]t is well established ... that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered

merely opinions and may not be relied upon absent special circumstances not present here." *Reed v. East End Props., Inc.* (C.D. Cal., Mar. 15, 2018, No. EDCV17955DMGKKX) 2018 WL 6131211, at *14; citing *Sosa*, 437 F.3d at 942; *Sosa v. DIRECTV, Inc.* (9th Cir. 2006) 437 F.3d 923, 940 citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir.2004). Moreover, posturing that occurs in most lawsuits, which is "capable of being tested in any ensuing suit," implies that the mail fraud statute does not reach the alleged misrepresentations in demand letters. *Id.*

Third, the mail fraud statute "do[es] not unambiguously reach" demand letters and filing lawsuits. In this regard, it has been recently held that legal representations contained in litigation-related correspondence and petition documents "cannot come within a statutory restriction unless the statute unavoidably so requires," which "[t]he mail ... fraud statute[ ] do[es] not." Id. at 940–41. *Reed v. East End Props., Inc.* (C.D. Cal., Mar. 15, 2018, No. EDCV17955DMGKKX) 2018 WL 6131211, at *14

Leaving aside the chilling effect of naming law firms as defendants in litigation for simply advocating by sending letters, filing complaints, and negotiating settlements, the FAC fails to allege any specific factual misrepresentations that form the basis for the purported RICO violation against Tauler Smith. As such, the amendment would be futile as to Tauler Smith LLP.

## III.  CONCLUSION

For the reasons demonstrated above, Plaintiff respectfully requests that the Court deny Counterclaimants' untimely motion for leave to amend the Answer and Counter-Claims in its entirety.

Dated: July 15, 2019                                  TAULER SMITH LLP

By: /s/ Robert Tauler

ROBERT TAULER
Attorney for Plaintiff Outlaw Laboratory, LP

## CERTIFICATE OF SERVICE

*In Re: Outlaw Laboratory, LP Litigation*, Case No.: 3:18-cv-00840-GPC-BGS

I hereby certify that on July 15, 2019, copies of Plaintiff's **OPPOSITION TO COUNTERCLAIMANTS' MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTER-CLAIMS** were filed electronically and served by U.S. Mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by facsimile to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


By:  ___/s/ Robert Tauler_____
      Robert Tauler, Esq.

      Attorneys for Plaintiff Outlaw Laboratory, LP