UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORY, LP LITIGATION | Case No.: 3:18-cv-840-GPC-BGS consolidated with 3:18-cv-1882-GPC-BGS<br><br>**ORDER**<br><br>**(1) GRANTING COUNTERCLAIMANTS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COUNTERCLAIM AND THIRD-PARTY COMPLAINT [ECF No. 92];**<br><br>**(2) DENYING OUTLAW'S MOTION TO STRIKE [ECF No. 99];**<br><br>**(3) OVERRULING OUTLAW'S EVIDENTIARY OBJECTIONS [ECF No. 100.]** |

Before the Court is Defendant/Counterclaimant Roma Mikha, Inc., and Third-Party Plaintiffs NMRM, Inc. and Skyline Market, Inc.'s (collectively, "Counterclaimants'") July 1, 2019 motion for leave to file a Second Amended Counterclaim and Third-Party Complaint to add three new defendants. (ECF No. 92.) On July 15, 2019,

1

Plaintiff/Counterdefendant Outlaw Laboratory, LP ("Outlaw") filed a response brief in opposition; on July 22, 2019, Counterclaimants returned a reply. (ECF Nos. 97, 98.)

While that motion was pending, the dispute over amendment spawned two ancillary filings. Both pertain to the validity of the new information set forth by Counterclaimants as justification for leave to amend.

The first such motion was filed on July 24, 2019 by Outlaw. In that motion, Outlaw seeks to strike the reply declaration of Mark Poe, counsel for Counterclaimants. (ECF No. 99.) That same day, Outlaw filed set of evidentiary objections, which restated in evidentiary terms its objections to Mr. Poe's reply declaration. (ECF No. 100.) On July 28, 2019, Counterclaimants filed a response to the motion to strike. (ECF No. 101.)

The Court held a hearing on the motions on August 16, 2019. For reasons stated below, the Court will **GRANT** Counterclaimants' motion for leave to file an amended pleading, **DENY** Outlaw's motion to strike and **OVERRULE** its related evidentiary objections.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. Outlaw initiates two lawsuits, both now consolidated before the Court

The instant litigation arises out of two complaints filed by Outlaw. The two cases have since been consolidated before the Court. The first case, Case No. 18-CV-840, referred to the parties as the "*DG in PB* action," was filed in May of 2018. Initially, a number of defendants in the *DG in PB* action were represented by the Law Offices of Steven A. Elia. The later-filed case, Case No. 18-CV-1882, referred to by the parties as the "*San Diego Outlet* action," was removed to federal court in August of 2018 by defendant Roma Mika, who is represented by the law firm Gaw | Poe LLP ("Gaw Poe"). On June 29, 2019, the Court granted a motion to substitute Gaw Poe as counsel for the

---

[1] The Court has discussed this litigation in its previous Orders dated November 27, 2018, March 14, 2019, and June 4, 2019. (ECF Nos. 31, 56, 85.) Those Orders may be referenced for additional background.

defendants who were previously represented by Steven A. Elia in the *DG in PB* action.

With some small differences not relevant here, the complaints in the *San Diego Outlet* and *DG in PB* actions were almost identical. In each, Outlaw alleged that a large number of gas station and corner store defendants were engaged in a conspiracy to distribute and sell unlawful and misbranded male sexual enhancement drugs—i.e., the Rhino products—in violation of the Lanham Act and California's Unfair Competition Law, and that the scheme had diverted sales away from its legitimate, FDA-approved "TriSteel" male enhancement pill.

### B. Counterclaimant stores file a counterclaim and third-party class action complaint against Outlaw

On August 24, 2018, Counterclaimants filed a counterclaim and third-party complaint against Outlaw in *DG in PB*, Case No. 3:18-CV-1882. Counterclaimants sought to represent a class of gas station and corner store owners who received what Counterclaimants characterize as extortionate and demonstrably-false demand letters sent by Outlaw. Outlaw's letters warned that sale of Rhino products exposed recipients to RICO and Lanham Act liability for amounts greater than $100,000, which Outlaw would forego for a much smaller settlement sum. According to Counterclaimants, Outlaw's demand letters were designed to coerce settlement; Outlaw targeted mostly immigrant-run businesses, made allegations of illegality and adulteration which Counterclaimants claim are unfounded, and often included on-site photographs taken by "investigators" of the recipient's storefronts and sale of Rhino products.

The original counterclaims asserted three causes of action: (1) civil RICO, 18 U.S.C. § 1962(c), (2) RICO conspiracy, 18 U.S.C. § 1962(d), and (3) rescission of any settlement agreements entered into as a result of Outlaw's demand letters. Specifically, Counterclaimants described a RICO enterprise between Outlaw, its attorneys, Tauler Smith LLP, and other as-yet-unnamed individuals, aimed at perfecting a legal "shakedown" of small-time San Diego convenience stores. Counterclaimants averred that the "TriSteel" products "were created as artifices" to "found the false advertising

3

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

claims," and that Outlaw itself was no more than a front for the unlawful enterprise.

### C. Counterclaimants' action dismissed, then sustained twice by Court

On November 27, 2018, the Court granted in part and denied in part Outlaw's motion to dismiss the original counterclaims (ECF No. 31), finding that Counterclaimants insufficiently alleged that Outlaw's demand letters fell within the sham litigation exception to the *Noerr-Pennington* doctrine. *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006) (explaining that *Noerr-Pennington* generally confers First Amendment immunity against liability arising from a party's pre-litigation, petitioning conduct but that baseless sham litigation conduct is not protected). After Counterclaimants filed a first amended counterclaim (ECF No. 32), Outlaw moved once more to dismiss. The Court held that upon amendment, Counterclaimants sufficiently pleaded the sham litigation exception and denied Outlaw's motion on March 14, 2019. (ECF No. 56.) Thereafter, Outlaw filed a motion for judgment on the pleadings, which the Court denied on June 4, 2019. (ECF No. 85.)

### D. Ongoing discovery issues

During this flurry of dispositive motions practice, and because a scheduling order was issued in the *DG in PB* action, but not the *San Diego Outlet* action, some confusion arose as between the parties as to the effect of the scheduling order in the earlier-filed matter on the later. On April 22, 2019, the parties submitted a Joint Motion to Amend scheduling Order and Convene Scheduling Conference. On June 8, 2019, Magistrate Judge Bernard G. Skomal issued a scheduling order setting the cut-off for class discovery for September 6, 2019, all fact discovery for December 4, 2019, and determined that "[a]s to amendment of the pleadings, Federal Rule of Civil Procedure 15(a) shall govern." (ECF No. 86, at 5–6.) Given the parties' shared uncertainty about the schedule, limited discovery has occurred to date.

### E. The Instant Motion for Leave to File Amended Pleadings

On July 1, 2019, Counterclaimants filed a motion for leave to file a second amended counterclaims and third-party complaint (hereinafter "second amended

4

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

counterclaims"). (ECF No. 92.) Counterclaimants seek to add three new defendants—Outlaw's legal counsel, Tauler Smith LLP, and Michael Wear and Shawn Lynch, the two principals of Outlaw—to all three original causes of action. In conformity with the Civil Local Rules, Counterclaimants have submitted the proposed amendments as attachments to their motion. (ECF No. 92-2; 92-3.)

According to Counterclaimants, discovery by the *DG in PB* defendants (taken by former counsel, Steven A. Elia), and recent investigations by Vice News, a media source compiling a documentary on the matters in this lawsuit, have revealed new information as to these entities' respective roles in conceiving and conducting the affairs of the alleged RICO scheme. (ECF No. 92-1, at 2.) Counterclaimants' proposed amendments describe how Tauler Smith LLP is alleged to have dispatched persons to investigate and take photos of gas stations and corner stores as early as August 2017, but that no "TriSteel" products can be found online until October 2017. This, Counterclaimants urge, indicates that Tauler Smith LLP first "rounded up potential targets of the scheme, then worked with its 'clients' to launch the 'TriSteel' product online, for the purpose of serving as a vehicle by which Outlaw Laboratory, L.P., its principals Michael Wear and Shawn Lynch, and Tauler Smith LLP could extort 'settlements' from its victims, and then share in the proceeds." (*Id.* at 3.) Counterclaimants also argue that the three proposed defendants must be joined as required parties under Fed. R. Civ. P. 19(a)(1). (ECF No. 98, at 10.)

**F. Outlaw's Motion to Strike and Evidentiary Objections**

On July 4, 2019, Outlaw moved to strike a declaration from Mr. Poe submitted in support of Counterclaimants' reply brief. (ECF No. 99.) It also filed a related set of evidentiary objections to specific parts of Mr. Poe's declaration and attached exhibits. (ECF No. 100.) The fracas over this declaration relates to Outlaw's contention that Counterclaimants could not have actually relied on any reporting done by Vice News, and thus their invocation of the same to support amendment must be illusory. The parties' dispute on this issue will be discussed in the Court's analysis of bad faith.

**E. Motion Hearing on August 16, 2019**

On August 16, 2019, the Court held a hearing on the motion for leave to amend and the motion to strike. The Court provided the parties with a tentative order and gave each side an opportunity to articulate their positions on the tentative.

At the hearing, the Court also referred the parties to its August 15, 2019 order denying Outlaw's motion for Rule 11 sanctions. (ECF No. 110.) The Court discussed its observations on the conduct of counsel in advancing the litigation and put both parties' counsel on notice of the expectations of the Court. The Court advised that it required counsel to abide by the demonstrate professionalism, respect, and civility to each other in any proceedings, filings, or interactions ahead.[2]

**I.   Motion for Leave to File a Second Amended Counterclaim**

The Court will appraise the propriety of amendment under Rule 15(a) pursuant to the *Foman* factors, and address Outlaw's contentions in the order presented in its briefing.

**A. Legal Standard under Rule 15(a)**

Under Rule 15(a), leave to amend a complaint after a responsive pleading has been filed may be allowed by leave of the court and "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962); FED. R. CIV. P. 15(a). Granting leave to amend rests in the sound discretion of the trial court. *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). However, this discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of

---

[2] Civil Local Rule 83.4. ("Professionalism . . . . An attorney in practice before this court will . . . Be courteous and civil in all communications, oral and written, and in all proceedings conduct herself/himself with dignity and respect . . . . Attempt to informally resolve disputes with opposing counsel."). More importantly, the Court directs counsel to comply with the dictates of Civil Local Rule 83.4.

action or parties." *Id.*; *cf. Union Pacific R.R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (In practice, courts more freely grant plaintiffs leave to amend pleadings in order to add claims than new parties).

Because Rule 15(a) greatly favors amendment, the nonmoving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989). In assessing the propriety of amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman*, 371 U.S. at 182; *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). These factors are not equally weighted; the possibility of delay alone, for instance, cannot justify denial of leave to amend, *DCD Program*s, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, leave to amend will likely be denied. *Bowles v. Reade*, 198 F.2d 752, 758 (9th Cir. 1999). "Futility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

**B. Undue Delay**

Outlaw argues that Counterclaimants' motion is dilatory because the discovery taken by Steven A. Elia in the *DG in PB* action, which gives rise to some of Counterclaimants' proffered amendments, was served on January 31, 2019, almost six months before Counterclaimants requested leave to amend. (ECF No. 97, at 14.)

Counterclaimants retort that in assessing undue delay, courts are primarily concerned "whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). Counterclaimants point out that their first amended counterclaims were filed on November 30, 2018, before any discovery was produced to Steven A. Elia on January 31, 2019. When viewed under *AmerisourceBergen*, Counterclaimants argue, it is clear that there was no undue delay

7

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

because at the filing of the earlier counterclaim, because they could not have known at that point of any information uncovered on January 31, 2019.

The Court does not find that there has been undue delay. First, the *DG in PB* discovery information did not exist at the filing of the earlier counterclaim. Second, Counterclaimants rely not only on that discovery, but also on information obtained through the reporting conducted by Vice News, which investigation continued through June of 2019, the month immediately preceding their July 1, 2019 motion. And, in any event, "[u]ndue delay by itself is insufficient to justify denying leave to amend.*"* *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016).

**C. Bad Faith**

Outlaw argues that Counterclaimants' motion is made in bad faith because the two items they rely upon as new information are suspect. First, Outlaw questions how Counterclaimants purport to have received information from Vice News when no documentary has been released,[3] and when "Vice News denies that it has provided Counterclaimants[] with any information relating to this lawsuit." (ECF No. 97, at 5.) Second, Outlaw believes Counterclaimants' reliance on the *DG in PB* discovery responses as support for its claim that would-be defendants engaged in a 'collect evidence first, create a product later' scheme is less than genuine, since such a theory is contradicted by the responses themselves, which state that TriSteel was sold as early October 10, 2016, one year prior to when Tauler Smith LLP is alleged to have dispatched investigators to take photos of Counterclaimants' storefronts. (*Id.*)

In determining whether an amendment is brought in bad faith, a court focuses on the plaintiff's motives for not amending the complaint earlier. *Adams v. Gould Inc.*, 739

---

[3] At the time of the parties' briefing on the motion for leave to amend, Vice News had not published any material as to the subject matter of this litigation. The Court has since been advised—through the parties' submissions as to Outlaw's motion for Rule 11 sanctions—that the documentary was released on August 1, 2019. The Court does not find it necessary at this juncture to take notice of the documentary, and accordingly has not viewed or considered its contents to decide this motion, or any other.

8

F.2d 858, 868 (3d Cir. 1984). Courts have denied leave to amend due to bad faith where the court determines that the plaintiff's motion was brought "to avoid the possibility of an adverse summary judgment ruling" and to prejudice the defendant by requiring the reopening of discovery. *See Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986). Courts have also denied leave to amend based on a finding of bad faith where the plaintiff's motive was to destroy diversity jurisdiction. *See Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987). Bad faith may also be found where a movant files repetitive motions to amend. *Wood v. Santa Barbara Chamber of Commerce, Inc.*, 705 F.2d 1515 (9th Cir. 1983). Bad faith, however, will not be found "where the record demonstrates that [the movants'] allegations were not frivolous and that they were endeavoring in good faith to meet the [sic] pleading requirements." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1053 (9th Cir. 2003).

### 1. New Information Based on Reporting by Vice News

Outlaw's quarrel with Counterclaimants' information from the Vice News investigation does not evince bad faith or cast any doubt on Counterclaimants' motives for amendment.

Counterclaimants state in their motion for leave that the new information animating their request for amendment are "based on new details concerning the creation and conduct of the Outlaw Enterprise that were recently unearthed by . . . the investigation undertaken by the investigative reporters from Vice News." (ECF No. 92-1, at 5.)

Outlaw construes Counterclaimants as claiming in their motion that Vice News had shared their reporting and documentary with Counterclaimants. Based on this understanding, Outlaw argues that Counterclaimants must be telling falsehoods about the provenance of their new information because "Vice News denies that it has provided Counterclaimants[] with any information relating to this lawsuit." (ECF No. 97, at 5.) For this proposition, Outlaw cites two emails exchanged between Vice News's VP,

9

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

Yonatan Berkovitz, and Robert Tauler, on July 1 and July 2, 2019. (ECF No. 97-2, at 2-3–24 (Decl. of Robert Tauler, dated July 15, 2019).)

The Court's review of the cited emails belie Outlaw's characterization that Vice News ever denied providing information to Counterclaimants. The email shows Mr. Berkovitz writing in response to an earlier message in which Mr. Robert Tauler, a lawyer at Tauler Smith LLP, inquired about the extent to which Vice News had been sharing its reporting with Mr. Poe. In his email, Mr. Berkovitz assured Mr. Tauler that "neither Poe nor his clients has seen our video, nor have we provided them with any inside information." (*Id.*) Viewed in context, it is apparent that Vice News does not deny that it has ever shared any information at all information with Counterclaimants, only that Vice News did not release its documentary or other inside information to Mr. Poe, or his clients.

Although Counterclaimants' motion could have been more clear about whether they relied on Vice News reporting, or whether they simply gleaned new details from Vice News during the course of its investigations, the Court is satisfied that it is the latter. As Counterclaimants explain in their reply, Counterclaimants obtained additional information, not because Vice News actually shared its reporting, videos, or confidential information with them, but as a result of interacting with Vice News and its reporters during the course of Vice News's documentary-related investigations. (ECF No. 98, at 5[4]

---

[4] On July 4, 2019, Outlaw moved to strike a declaration from Mark Poe in support of Counterclaimants' reply brief. (ECF No. 99 (Outlaw's motion to strike); ECF No. 98-1 (Decl. of Mark Poe, dated July 22, 2019).) Mr. Poe's declaration addresses Outlaw's allegations that Counterclaimants invoked the Vice News documentary baselessly and in bad faith. In the declaration, Mr. Poe confirms that Vice News had not shared its documentary with him, and explains that the new information undergirding the request for leave to amend stemmed from the investigatory efforts of Oliver Noble, a reporter for Vice News. (ECF No. 98-1, at 2.) Mr. Poe clarified that Mr. Noble reached out for an interview via email on February 25, 2019, and that thereafter, the two continued to communicate about the subject of the documentary. Specifically, Mr. Noble asked Mr. Poe whether he "could confirm several leads," some of which "prompted Mr. Poe to conduct [his] own further investigation into Outlaw's activities," and such further investigation gave rise to the allegations in the proposed amendment. (*Id.*)

("Vice contacted the Stores' counsel at least 36 times to chase down leads about its Outlaw Enterprise investigation between February and June 2019—and the Stores uncovered new facts set forth in the proposed amendments as a result.").) The Court

---

Outlaw argues that Mr. Poe's declaration should be stricken on two grounds. First, Outlaw argues that the declaration impermissibly includes new facts not presented in Counterclaimants' original moving papers—i.e., its motion for leave to amend. (ECF No. 99, at 4.) Second, Outlaw contends that sanctions under Rule 37 are appropriate because a potential witness, i.e., Mr. Noble, and additional evidence, i.e., the fact that Mr. Noble and Mr. Poe exchanged 36 emails, were not disclosed by Counterclaimants in their Rule 26(a) initial disclosures, served July 15, 2019. Outlaw has also filed a separate set of evidentiary objections with the same arguments. (ECF No. 100.)

Neither of these arguments are winning. First: although the Court agrees with Outlaw that in the ordinary case "[i]t is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers," *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 11117, 1127 (C.D. Cal. 2000), evidence that "rebut[s] arguments first raised by Plaintiff in its opposition" is not "new evidence," and is properly considered by the Court. *E.E.O.C. v. Creative Networks, LLC & Res-Care, Inc.*, No. CV-05-3032-PHX-SMM, 2008 WL 5225807, at *2 (D. Ariz. Dec. 15, 2008). Thus, because the challenged "documents respond directly to [Outlaw's] allegations made in [its] opposition brief, the Court finds it may properly consider this rebuttal evidence even though it was offered for the first time in [Counterclaimants'] reply brief." *United States v. Taibi*, No. 10-CV-2250 JLS, 2012 WL 553143, *4 (S.D. Cal. Feb. 21, 2012).

Second, the Court does not find Rule 37 sanctions necessary. In this case, Outlaw cannot credibly assert that it was unaware of Vice News's documentary or Mr. Noble's reporting; indeed, Mr. Tauler's email correspondence with Mr. Berkovitz references and discusses "communications Poe had with Oliver [Noble]." (ECF No. 97-2, at 2–3.) Indeed, on June 28, 2019, Outlaw subpoenaed Vice News for "[a]ll communications between [Vice News] and POE referring to," *inter alia*, Robert Tauler, Tauler Smith LLP, Outlaw Laboratory, Shawn Lynch, and Mike Wear; that same day, Outlaw issued a notice of deposition for Mr. Noble, set for August 5, 2019. (ECF No. 101-1, 101-2, at 8.) Thus, by the time of Counterclaimant's July 15, 2019 initial disclosures, Outlaw was well-apprised of Mr. Noble's interactions with Mr. Poe.

Rule 26(e) requires supplementation of a Rule 26(a) disclosure where "additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e). As evidenced by its move to depose him, Outlaw was on notice of Mr. Noble and his communications with Counterclaimants, and any failure to disclose may be rectified by a later supplementation. *See Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Ass'n*, No. CV-01324-JAD(NJK), 2016 WL 1611585, at *2 (D. Nev. Apr. 21, 2016). Rule 37 commands a similar conclusion: "A failure to disclose witness information is harmless if the other party was well aware of the identity of the undisclosed witness and the scope of their relevant knowledge." *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, No. CV0508891MMMFMOX, 2013 WL 12080306, at *8 (C.D. Cal. Oct. 8, 2013), *aff'd in part,* 884 F.3d 812 (9th Cir. 2018)

Accordingly, the Court **DENIES** Outlaw's motion to strike. The related evidentiary objections are consequently **OVERRULED**, and for the additional reason that Counterclaimants are "under no obligation to demonstrate that [their] documents would be admissible at trial when those documents are considered for the very limited purpose of evaluating whether leave to amend should be granted." *Burns v. Barreto*, No. 2:10-CV-01563 MCE KJ, 2011 WL 1749932, at *6 (E.D. Cal. May 6, 2011).

discerns no bad faith arising from Counterclaimants' reliance of information they generated as a result of having been involved in the Vice News investigation.

### 2. New Information Based on *DG in PB* discovery

Outlaw's objection to use of the *DG in PB* discovery materials is similarly unwarranted. Outlaw argues that it is mere speculation for Counterclaimants to allege that Outlaw engaged in evidence-gathering before creating the TriSteel product in late 2017, especially when the DG in PB discovery responses specifically aver that Outlaw began to sell TriSteel as early as October 10, 2016. (ECF No. 97, at 6.) But, as Counterclaimants correctly point out, Outlaw's argument is not so much a bad faith allegation as it is a merits contention better resolved upon a motion to dismiss. *See Defazio v. Hollister, Inc.*, No. 06cv1726–GGH, 2008 WL 2825045, at *3 n.5 (E.D. Cal. July 21, 2008) ("[O]pposition papers arguing the merits of plaintiffs' proffered amendments [are] premature in that they require the court to assume that there are no facts that could support plaintiff's proposed claims.").

The Court finds no bad faith or improper motive in the timing of Counterclaimants' motion for leave to amend. *Adams*, 739 F.2d at 868.

### D. Repeated Failures to Cure Deficiencies By Amendments Previously Permitted

"Repeated failure to cure deficiencies by amendments previously allowed is another valid reason for a district court to deny a party leave to amend." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 809–10 (9th Cir. 1988). Counterclaimants were given an opportunity to amend their original counterclaims; the first amended counterclaims were challenged twice, first by Outlaw's motion to dismiss (ECF No. 38) and then again by its motion for judgment on the pleadings (ECF No. 80). The first amended counterclaims were sustained both times. Outlaw does not dispute that Counterclaimants' success in amending their original pleadings counts in their favor.

### E. Prejudice to New Counterclaim Defendants

In considering the potential prejudice of any amendment, the Court considers

whether the amended complaint "would 'greatly change the parties' positions in the action, and require the assertion of new defenses.'" *See Phoenix Solutions, Inc. v. Sony Elec., Inc.*, 637 F. Supp. 2d 683, 690 (N.D. Cal. 2009) (citing *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

Outlaw argues that adding new defendants would require the modification of the operative scheduling order, since the new defendants would have the right to propound discovery and raise Rule 12 motions. (ECF No. 97, at 6.) Specifically, Outlaw argues that any leave to amend would require the Court "to amend its scheduling order, given the current discovery cut off of September 6, 2019," which in turn necessitates a showing of "good cause" under Rule 16, rather than a Rule 15(a) analysis.[5] (*Id.* at 6–7.) However, as Counterclaimants point out, the September 6, 2019 deadline is for class discovery; the deadline for fact discovery is not until December 4, 2019, undermining Outlaw's suggestion that the addition of new parties would necessarily require an amendment of the scheduling order. (ECF No. 98, at 6; ECF No. 86, at 5). Consequently, the Court discerns no present need to amend the scheduling order. In any event, the scheduling order itself specifies that Rule 15(a) "shall govern" amendment of the pleadings. (ECF No. 86, at 5.)

Outlaw also argues that naming Mr. Lynch and Mr. Wear, as well as their legal representation, would "fundamentally change the parties' positions, since the parties would need to obtain new counsel." (ECF No. 97, at 8.) While the Court recognizes that Outlaw will be impacted by obtaining substitute counsel if Tauler Smith LLP is named as a co-defendant, the Court does not find that such impact would fundamentally change the parties' positions. For one, as counsel to, and constituent members of Outlaw, none of the three proposed defendants can argue unfair surprise. *Cf. Luma Pictures, Inc. v.*

---

[5] Even assuming that Rule 16 applies, the Court finds that good cause exists for the proposed amendments given Counterclaimants' reasonable diligence in filing the motion for leave to amend after conducting additional research based on information arising from the Vice News investigative process.

13

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

*Betuel*, No. CV 16-2625-GW(PLAX), 2016 WL 11519331, at *3 (C.D. Cal. Sept. 29, 2016) (expressing hesitation about granting leave to amend to add a new third party because the same "has no reason to know of this lawsuit"). Indeed, Counterclaimants have long alleged in their pleadings—as early as Counterclaimants' August 24, 2018 answer and original countercomplaint[6]—that the lawyers at Tauler Smith LLP, and Outlaw's principals, jointly participated in the RICO scheme.

Second, even if the amendment will require Outlaw to secure new counsel, the Court does not find the inconvenience prejudicial given the relative infancy of the stage of discovery. *Jefferson v. Rowe*, No. S-06-0299 RRBDADP, 2008 WL 669894, at *1-2 (E.D. Cal. Mar. 7, 2008) ("Although the addition of a new party may result in some additional discovery and may delay the final resolution of this action to some degree, [Counterclaimants] ought to be granted an opportunity to test [their] claims on the merits."). As the district court in *Luma* recognized, "prejudice is inherent in an amendment;" therefore, the "need for additional discovery, expenses, or delay is insufficient" to deny amendment unless there is a "showing of an inability to respond to the proposed amendment." *Luma*, 2016 WL 11519331, at *3. To the extent that the present scheduling order proves constrictive, the Court would be prepared to entertain motions seeking deadline extensions required in the event of a change in counsel. *Id.* The Court will not bar the proposed amendment based on prejudice.

### F. Futility of Amendment

Outlaw makes four arguments for why amendment would be futile. The Court addresses them in turn.

#### 1. Lack of Specificity for Fraud Pleadings

Outlaw asserts that amendment would be futile because Counterclaimants' RICO allegations—which are premised on predicate acts of mail fraud—are not pled with

---

[6] *See* Case 3:18-CV-1882-GPC-BGS, ECF No. 4, at 15.

14

specificity under Rule 9(b) as to each new party.

However, the Court agrees with Counterclaimants that given the liberal amendment standards, arguments concerning the sufficiency of the proposed pleadings, even if meritorious, are better left for briefing on a motion to dismiss. *Lillis v. Apria Healthcare*, No. 12cv52-IEG(KSC), 2012 WL 4760908, at * 1 (S.D. Cal. Oct. 5, 2012). As such, "the Court is not willing to decide a Rule 9(b) motion prematurely," at the Rule 15(a) threshold, "without the parties having had a full opportunity to brief the issue." *Gross v. Hanover Ins. Co.*, No. 91 CIV. 0079 (PKL), 1991 WL 102401, at *3 (S.D.N.Y. June 5, 1991).

In any event, the Court is prepared to hold in the alternative that Counterclaimants' allegations are specific enough with respect to each new proposed defendant.

Fed. R. Civ. P. 9(b) provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This rule requires the identification of the circumstances constituting fraud so that the defending parties can prepare an adequate answer from the allegations. *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973). To satisfy this requirement, Counterclaimants must state the time, date and specific content or nature of the fraudulent representations or omissions. *Misc. Service Workers, Etc. v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981). In addition, Counterclaimants must satisfy the above requirements for each defendant. *McFarland v. Memorex Corp.*, 493 F. Supp. 631, 637–39 (N.D. Cal. 1980); *see also Bruns v. Ledbetter*, 583 F. Supp. 1050, 1052 (S.D. Cal. 1984).

Here, the Court is satisfied that the proposed amendments adequately identify the circumstances constituting fraud with respect to each defendant. And to the extent that Outlaw has suggested that two predicate acts are necessary with respect to each defendant under the RICO conspiracy count, that notion must also be rejected. *See Carlin v. Dairyamerica, Inc.*, No. 1:09-CV-0430 AWI DLB, 2016 WL 1734182, at *8 (E.D. Cal. May 2, 2016) ("The requirement that a conspirator participate or agree to participate in at

15

least two predicate offenses was expressly overruled by the Supreme Court in *Salinas v. United States*, 522 U.S. 52 (1997).").

### 2. Proximate Cause

Outlaw also contends that the Counterclaimants have failed to allege that the proposed defendants' RICO violations was a substantial factor, or proximate cause, of any injury they sustained. (ECF No. 97, at 9.)

Outlaw argues that Counterclaimants Roma Mikha and NMRM have not suffered any injury because they continue to sell the Rhino products, despite the fact that they claim to have pulled the Rhino products from their shelves as a result of the demand letter. (ECF No. 97, citing Declaration of Michael Wear, dated July 15, 2019 (ECF No. 97-8).). The Court does not find a lack of proximate cause here. Counterclaimants plead that Roma Mikha and NMRM suffered injury because they "initially believed the demand letter's false assertions, and removed the[ Rhino products] from [their] shelves, thereby losing legitimate sales." This statement articulates a loss of business profits resulting from allegedly unlawful RICO conduct, and is not contradicted by the fact that the two stores may have resumed selling the products after "initially" withdrawing the products.

Similarly, Outlaw argues that there in no injury in Counterclaimant Skyline Market's cause of action for rescission because rescission is not a cause of action under California law, and that in any event there can be no such claim because Skyline Market, had been represented by counsel when it signed the settlement agreement. Both these arguments were previously addressed by the Court in its order denying Outlaw's motion to dismiss: "While rescission is not an "'affirmative' claim," California courts have recognized that "claims such as 'economic duress' can be asserted offensively." *CrossTalk Prods. Inc. v. Jacobson*, 65 Cal. App. 4th 731, 845 (1998). Moreover, there is no authority for Outlaw's proposition that the presence of a lawyer vitiates a claim of economic duress as a matter of law. (*See* ECF No. 38, at 20 ("Even assuming an attorney was hired, however, a reasonable person in Skyline Market's position might nonetheless have felt powerless against the threat of $100.000 in liabilities.").) As before, these

arguments are unavailing.

### 3. Futility as to Mr. Wear and Mr. Lynch

Outlaw argues amendment would be futile because there are no allegations demonstrating that Mr. Wear and Mr. Lynch were the "moving, active conscious force" behind the wrongdoing of Outlaw, the corporate entity. (ECF No. 97, at 10 (quoting *BioZone Labs., Inc. v. Next Step Labs. Corps.*, Case No. 17-CV-02768-NC, 2017 WL 5665658, at *4 (N.D. Cal. Nov. 27, 2017).) To plead personal liability against a corporate officer or director, "[m]ere authority to direct the infringing behavior is not enough; personal involvement is necessary." (*Id.*)

Here, the Court finds allegations of Mr. Wear and Mr. Lynch's personal involvement sufficient to state that they were a "moving, active conscious force" in the alleged RICO scheme. Counterclaimants allege that Mr. Wear and Mr. Lynch "participate with the other members of the Outlaw Enterprise in conducting the enterprise's affairs, including by creating the 'competing' TriSteel products upon which to found the false advertising claims, and by working with other members to decide the geographies in which to conduct the scheme, and by signing for, and accepting receipt of the ill-gotten gains" from settlement agreements like the one entered into by Skyline Market. (ECF No. 92-2, at 21.) There are also additional allegations that "Tauler Smith worked directly with Mr. Wear and Mr. Lynch to orchestrate the very formation of this shakedown scheme." (*Id.* at 22.) Any amendment including Mr. Wear and Mr. Lynch would not be futile on the ground asserted by Outlaw.

### 4. Futility as to Tauler Smith LLP

Finally, Outlaw urges that amendment would be futile to Tauler Smith because its conduct would be protected under the *Noerr-Pennington* doctrine. (ECF No. 97, at 11.) In so arguing, Outlaw repeats many of the arguments it previously raised in connection with its motion to dismiss the RICO claims; it also urges an especial First Amendment protection for lawyers who engage in pre-litigation petitioning conduct on the part of a client.

17

The Court disagrees, and sees no need to revisit its previous determination with respect to the Frist Amended Counterclaims that Counterclaimants satisfied *Noerr-Pennington*'s heightened pleading standard and sufficiently alleged Outlaw's demand letters—which Tauler Smith LLP is alleged to have masterminded—fall within the doctrine's sham litigation exception. (ECF No. 56, at 18–19.) The Court rejects Outlaw's attempt to relitigate the issue in the Rule 15(a) posture.

Moreover, the fact that Tauler Smith, LLP is a law firm does not change the sham litigation analysis or give it any additional *Noerr-Pennington* leeway. Although Outlaw raises the hue and cry about the potential chilling effect of allowing suits against law firms "for simply sending letters, filing complaints, and negotiating settlements," (ECF No. 97, at 13), it is apparent that Counterclaimants are alleging more than just garden-variety advocacy. To wit, Counterclaimants have alleged that "Tauler Smith's role in the Outlaw Enterprise far exceeded that of merely serving as its legal counsel," and encompassed the firm's genesis of the scheme, its creation of "TriSteel" as a front product, and its dispatch of "investigators" to take photos of storefronts to identify new demand letter recipients. (ECF No. 92-2, at 22–25.)

Where a law firm "crosses the line between traditional rendition of legal services and active patriation in directing the enterprise," it, like any other entity cognized by law, may be held to account under RICO. *Handeen v. Lemaire*, 112 F.3d 1339, 1349 (8th Cir. 1997). As the Eighth Circuit held in *Handeen*, neither case law nor "RICO exempts professionals, as a class, from the law's proscriptions, and the fact that a defendant has the good fortune to possess the title 'attorney at law' is, standing alone, completely irrelevant to the analysis dictated by the Supreme Court." *Id.* Indeed, "[a]n attorney's license is not an invitation to engage in racketeering, and a lawyer no less than anyone else is bound by generally applicable legislative enactments." *Id.*

There is no futility to naming Tauler Smith LLP. In so holding, this Court, like the Eighth Circuit in *Handeen*, "underscore[s] that [it has] no basis for speculating whether [Counterclaimants] will, in the end, be able to substantiate th[eir] narrative." *Id.* at 1350.

But, for purposes of this motion for leave to amend, the Court concludes that "relief is available under a set of facts that could be proved consistent with the allegations." *Id.* (quotation marks and citations omitted).

### C. Conclusion as to Counterclaimants' motion for leave to amend

As the opposing party, Outlaw bore the burden of proving why amendment should not be freely granted. *Genentech, Inc.*, 127 F.R.D. at 530–31. It did not bear that burden. Accordingly, the Court **GRANTS** Counterclaimants' motion for leave to file a second amended counterclaim. The amended pleading must be submitted no later than **five (5) days** after the entry of this order.[7]

## VII. Conclusion

In light of the foregoing, the Court **GRANTS** Counterclaimants' motion for leave to file a second amended counterclaim. (ECF No. 102.) The amended pleading must be docketed no later than **five (5) days** after the entry of this order.

Outlaw's motion to strike the reply declaration of Mr. Poe (ECF No. 99) is **DENIED**, and its evidentiary objections thereto are **OVERRULED** (ECF No. 100).

Dated: August 19, 2019

Hon. Gonzalo P. Curiel
United States District Judge

---

[7] As discussed at the August 16, 2019, hearing, Counterclaimants need not submit a carbon copy of the proposed amendments which they attached to their motion for leave to file a second amended counterclaim. They may, within reason, add additional supporting factual allegations to the filing which do not dramatically stray from their original proposed claims.
  Counterclaimants are also reminded of the Court's concerns about some of the editorializing language in the proposed amended counterclaims.