# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORY, LP LITIGATION | Case No.: 3:18-cv-840-GPC-BGS consolidated with 3:18-cv-1882-GPC-BGS<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT.**<br><br>**ECF NO. 90.** |

Defendants Eashou, Inc. (dba San Diego Cash & Carry), Fountain Trading Corp., Kachi Enterprises Inc., Main Calif, Inc., R&M Palm, Inc., and Zaya Enterprises Inc. ("Defendants") – five independent convenience and liquor stores in the San Diego area as well as one local wholesaler – move the Court for summary judgment on Plaintiff Outlaw Laboratory, LP's ("Plaintiff") claim of false advertising under the Lanham Act, 15 U.S.C. § 1051 *et seq.* Plaintiff has alleged that Defendants are engaged in a scheme to sell sexual enhancement pills, which contain hidden prescription drugs, and which Defendants market as "all natural," among other false advertisements. Defendants reject this claim on the reasoning that the undisputed facts do not show they have contributed to any false advertising, and thus cannot be held liable for lawfully re-selling a third party's products.

This case thus presents the following question for the Court: can a local retail or wholesale store that sells another company's product, without independently advertising

1

that product, be held liable under Lanham Act for any false statements on the product's packaging? The Court finds that it cannot. Consequently, based on the undisputed facts of this case, the Court finds that no reasonable juror could find Defendants liable under the Lanham Act and directs summary judgment as to the Lanham Act claim in *DG in PB*.

## I. Factual and Procedural Background[1]

### a. The Parties.

Plaintiff is a Texas-based manufacturer of male-enhancement products called "TriSteel" and "TriSteel 8 hour." (ECF No. 1, Complaint at ¶ 4.)[2] Plaintiff's products are made in the United States, distributed for sale in all 50 states, and comply with the Dietary Supplement Health and Education Act. (*Id.*) Plaintiff's products are not sold in any retail stores in California. (ECF No. 90-7, Requests for admission ("RFA") Nos. 1–5). Instead, Plaintiff only sells its products at www.outlawlaboratory.com. (ECF No. 90-7, RFA No. 6.)[3] Plaintiff formed in Texas in September 2016, has two employees, and is co-owned by two individuals – Michael Wear and Shawn Lynch. (ECF No. 133-2, Responses to Interrogatories ("RTI") Nos. 1, 3; ECF No. 90-6, Requests for Production ("RFP") No. 11; ECF No. 114 at ¶¶ 2, 16, 17, 65.)

The Defendants in this case are proprietors of gas stations, liquor stores, and corner stores. (ECF No. 114 at ¶¶ 26–27.) Defendants sell male-enhancement pills, i.e. "the Enhancement Products."[4] (ECF No. 1, Complaint at ¶ 1; ECF No. 94-7, Decl. of Michael

---

[1] This factual summary does not recount the lengthy procedural history of this case, including the existing Second Amended Cross-Complaint filed by Counterclaimants Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc., (ECF No. 114), and the many motions filed in relation to it and its predecessor complaints. Because the full procedural history of this matter is not critical to the instant motion, and is familiar to the parties, it is not set out here. For a more fulsome understanding of the procedural history in this matter, the Court directs the reader to its past orders. (ECF Nos. 31, 56, 85, 110, 113, 119, 123.)
[2] All ECF numbers correspond to the docket for Case No. 18-cv-840 unless explicitly noted.
[3] Plaintiff disputes this by reference to Mr. Wear's July 11, 2019 Declaration. (ECF No. 94-19, Statement of Undisputed Material Fact (SUMF) No. 2.) Mr. Wear stated that "Outlaw Laboratory's TriSteel and TriSteel 8hour products are sold in retail stores and not just online at www.outlawlaboratory.com." (*Id.*)
[4] Specifically, Plaintiff asserts that the recipients sold the following products: "Black Mamba, Rhino 25K 15000, Boss-Rhino Gold X-tra Strength, Rhino 5 1500, Bl4ck 4k Capsules, Rhino 7 Platinum 5000,

Wear at ¶¶ 2–6; ECF Nos. 94-8 (Kachi Enterprises Inc.), 94-9 (Main Calif, Inc.), 94-10 (R&M Palm, Inc.), 94-11 (Zaya Enterprise, Inc.), 94-12 (Foundation Trading Corp.)). As of July 2019, Defendants continue to sell Enhancement Products, (ECF No. 94-1, Decl. of Ruhl at ¶¶ 4–8),[5] which are displayed on racks "at or near the checkout counter" without the use of additional, in-store advertisements. (ECF No. 1, Complaint at ¶ 33; ECF Nos. 94-2 at 3 (Kachi Enterprises Inc.), 94-4 at 3 (R&M Palm, Inc.), 94-5 at 2 (Zaya Enterprise, Inc.).)

The Food and Drug Administration has issued multiple notices warning that some of the Enhancement Products contain hidden drugs, including sildenafil (a prescription drug found in Viagra), desmethyl carbodenafil (an analogue of sildenafil), dapoxetine (an anti-depressant drug), and tadalafil (a prescription drug found in Cialis). (ECF No. 90-21 at 13–20, 42–53, 80–87, 110–21, 147–54). Plaintiff has provided independent testing that shows at least five such products – Blue Fusion, Premier Zen Platinum 5000, King Kung 8000, Black Stallion 9000, and Rhino 25 Titanium 8000 – contain the hidden prescription drugs. (ECF No. 94-13.)

Plaintiff has supplied no evidence to suggest that Defendants had "any role in formulating the challenged products or had any role in drafting the language on their packaging." (ECF No. 90-6, RFP Nos. 23–77; ECF Nos. 90-20, 90-21.) When asked for all facts supporting the allegation that Defendants advertise the Enhancement Products, Plaintiff relied only on some sales receipts from San Diego Cash & Carry to two stores not named as defendants – S&N Market and Spotts Liquor. (ECF No. 1, Complaint at ¶ 33; ECF No. 133-2, RTI No. 17; ECF No. 90-20, Receipts.)

---

Rhino 12 Titanium 6000, New Stiff Nights Platinum 10K, Grande X 5800, Royal Honey VIP, Blue Diamond, Triple Green, Libigrow XXXTREME, Rhino 7 Platinum 3000, Extreme Diamond 3000, Libigirl, Libigrow, Herb Viagra, Hard Ten Days, Rhino 12 Titanium 6000, Rhino 8 Platinum 8000, and OrgaZen 3500." (ECF No. 1, Complaint at ¶ 1.)

[5] Defendants object to Plaintiff's inclusion of Ms. Ruhl's declaration and the accompanying exhibits. (ECF No. 96.) As these documents are not material to the question of whether Defendants are liable under the Lanham Act, the Court denies the objection as moot.

### b. Plaintiff's Letters to Defendants

Since December 2017, Plaintiff has mailed demand letters to proprietors of stores that sell Enhancement Products. (ECF No. 114 at ¶¶ 26–27.) Outlaw's demand letters warned recipients that they were "selling illegal sexual enhancement drugs," which "subject your company to legal action for racketeering . . . under RICO (Racketeer Influenced Corrupt Organizations) and the Federal Lanham Act" and obligate the recipients to pay to Outlaw "profits from the sale of Illicit Products dating back four years," "Attorney's fees," "Punitive damages," and "Triple damages." (ECF No. 90-21 at 3; ECF No. 90-21 at 1–168 (containing letters and attachments sent to five of six Defendants.)) The letters estimated the recipients' liabilities at "over $100,000" but stated that Outlaw would "settle all claims in exchange for a one-time settlement agreement of [$9,765, in the sample demand letter] and your agreement to stop selling the Illicit Products." (*Id.* at 4).

The letters conclude by warning that, "[i]f this matter is not fully resolved before [a date typically within 30 days]," a lawsuit will be filed against the recipient. (*Id.*) Attached to the letters are typically three exhibits: (1) "photographs taken at [Defendants' stores] capturing [the] sale of the Illicit Products," (2) "notices from the Food and Drug Administration regarding the illegality of the Illicit Products," and (3) a draft complaint with the recipient's name filled in as defendant. (*See, e.g.*, *id.* at 2–34).

Some recipients, like Skyline Market, Inc., acquiesced to the demand letter and settled with Outlaw. (ECF No. 114 at ¶ 35). Others, like NMRM, Inc. and Roma Mikha, Inc., did not settle but removed the products from their shelves. (*Id.* at ¶ 33–34).

### c. Plaintiff Initiated Two Lawsuits, which the Court then Consolidated.

On May 2, 2018, Outlaw filed a complaint in the Southern District of California against eleven defendants, all of whom had received a demand letter, and 100 Does. *See* ECF No. 1 at ¶¶ 2, 15–26, *Outlaw Laboratory, LP v. DG in PB, LLC et al* (hereinafter, the "*DG in PB*" action), Case No. 18-CV-0840-GPC (S.D. Cal. 2018). Plaintiff alleges that the defendants sold the Enhancement Products and that the packaging contained false

advertisements, including that the products are "all natural," contain "no harmful synthetic chemicals," "no prescription necessary," and have limited side effects. (*Id.* at ¶¶ 3, 32–33). In this action, Plaintiff has pled one claim for false advertising in violation of § 43(a)(1)(B) of the Lanham Act. (*Id.* at ¶¶ 49–55).

On July 24, 2018, Outlaw filed a second complaint in San Diego Superior Court against fifty-one defendants, all of whom had received a demand letter, and 100 Does. *See* ECF No. 1-2 at 13, *Outlet Laboratory, LP v. San Diego Outlet, Inc.* (hereinafter, the "*San Diego Outlet*" action), Case No. 18-CV-1882-GPC (S.D. Cal. 2018). Like the *DG in PB* Complaint, the *San Diego Outlet* complaint alleges that the defendants engaged in a scheme to sell unlawful "Rhino products,"[6] which contain hidden prescription drugs. (*Id.* at ¶¶ 1–3). As with the Enhancement Products, Outlaw claims that, by selling the Rhino products at their stores, the defendants disseminate false statements including that the products are "all natural," contain "no harmful synthetic chemicals," "no prescription necessary," and have limited side effects. (*Id.* at ¶ 57.) In the *San Diego Outlet* complaint, Plaintiff pleads three causes of action: (1) a violation of California Business and Profession Code § 17200 (prohibiting unlawful, unfair, or fraudulent business acts); (2) a violation of the California False Advertising Law § 17500 (prohibiting false and misleading advertising), and (3) a violation of § 43(a)(1)(B) of the Lanham Act (prohibiting false advertising). **(***Id.* at ¶¶ 132–160.) Notably, neither the *DG in PB* nor the *San Diego Outlet* complaints plead causes of action under RICO.

Mr. Wear, one of Plaintiff's general partners, contends that Defendants' sale of Enhancement Products "caused Plaintiff to lose opportunities to expand into the male enhancement market, and fail to realize gains in sales." (ECF No. 94-7, Decl. of Michael Wear at ¶ 8.) Mr. Wear also believes that some of Plaintiff's customers now purchase

---

[6] Plaintiff alleges that the *San Diego Outlet* action defendants sold the following products: "Rhino 7 Platinum 5000, Rhino 12 Titanium 6000, Rhino 7 Platinum 3000, Rhino 8 Platinum 8000, Rhino 7 Blue 9000, Rhino 69 Platinum 9000, and Rhino 12 Titanium 6000." (ECF No. 1-2, *San Diego Outlet* Complaint at ¶ 1.)

Defendants' products, and that the general consumer has "no reason to purchase [Plaintiff's] products if they can easily purchase pharmaceuticals over the counter." (*Id.*; ECF No. 133-2, RTI Nos. 24, 25.) Nothing in the record quantifies the loss of Plaintiff's sales or identifies specific customers who diverted their purchases. (ECF No. 90-1 at 18.)

On August 12, 2018, Roma Mikha, Inc. removed the *San Diego Outlet* action to federal court. (ECF No. 1-2, *San Diego Outlet* Complaint.) On November 14, 2018, the Court granted an unopposed motion to consolidate the *San Diego Outlet* action with the *DG in PB* action. (ECF No. 28.) The Court determined that consolidation was appropriate because the actions' complaints were brought by Plaintiff, pled against similarly situated defendants, and shared identical factual allegations and alleged bad acts. (*Id.* at 2.)

While the case was consolidated, the discovery schedule for the two cases was not consolidated. (ECF No. 86.) Discovery in the *DG in PB* action concluded on January 4, 2019, while discovery in the *San Diego Outlet* case will continue until December 4, 2019 (*Id.* at 3, 6.) The parties, moreover, continue to litigate discovery-related issues pertinent to the *San Diego Outlet* action. (*See* ECF Nos. 116, 138, 141.)

### d. Defendant's Motion for Summary Judgment in *DG in PB*.

On June 26, 2019, six Defendants filed a motion for summary judgment as to Outlaw's original complaint in the *DG in PB* action. (ECF No. 90.) On July 11, 2019, Plaintiff filed a response. (ECF No. 94.) Then, on July 15, 2019, Defendants filed both a reply to Plaintiff's response and an objection to the evidentiary materials Plaintiff submitted in its response brief. (ECF Nos. 95, 96.) On November 8, 2019, Defendants filed a notice of errata, alerting the parties and the Court that Defendants inadvertently "attached as Exhibits J-O [of their motion for summary judgment] the interrogatories that Outlaw had propounded on the movants, rather than the responses that Outlaw had made to the interrogatories propounded by the movants." (ECF No. 133.)

Upon consideration of the parties' papers, the record, and the applicable law, the Court **GRANTS** Defendants' motion for summary judgment as to the *DG in PB a*ction.

## II. Legal Standard

6

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

Federal Rule of Civil Procedure ("Rule") 56 empowers courts to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment should be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted) (emphasis in original). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *United States v. Arango*, 670 F.3d 988, 992 (9th Cir. 2012) (quoting *Anderson*, 477 U.S. at 247). Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380.

The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element of his or her claim on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to bear the initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

Once the moving party has satisfied this burden, the nonmoving party cannot rest on the mere allegations or denials of his pleading but must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*,

7

477 U.S. at 324. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). If the non-moving party fails to make a sufficient showing of an element of its case, the moving party is entitled to judgment as a matter of law. *Id.* at 325.

When evaluating a motion for summary judgment, the court must "view[] the evidence in the light most favorable to the nonmoving party." *Fontana v. Haskin*, 262 F.3d 871, 876 (9th Cir. 2001). The court may not, however, engage in credibility determinations, weighing of evidence, or drawing of legitimate inferences from the facts as those functions are for the trier of fact. *Anderson*, 477 U.S. at 255. Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. *Anderson*, 477 U.S. at 250–51.

### III. Analysis

Under Section 43(a) of the Lanham Act, "[a]ny person who . . . uses in commerce any . . . false or misleading description of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable by civil action." 15 U.S.C. 1125(a)(1)(B). To succeed on a false advertising claim under the Act, a plaintiff must establish: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement." *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012). As to the second element, "a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014).

Defendants contend that Plaintiff's claim fails as a matter of law on the undisputed facts because (1) a retail or wholesale store who sells another company's product, without advertising that product, cannot be liable under the Lanham Act for any false statements on the products' packaging, (ECF No. 90-1 at 13–17), and (2) Defendants' sale of the Enhancement Products did not proximately cause Plaintiff's alleged harm. (ECF No. 90-1 at 17–19.) In response, Plaintiff contends that there is "[n]o requirement that commercial advertising and promotion be authored by a Lanham Act defendant" as long as retailer or supplier knows the product contains false advertising, (ECF No. 94 at 10–11), and that there is a dispute of material fact as to whether Defendants' conduct proximately caused Plaintiff's harm. (ECF No. 94 12–14.)

Addressing the first issue, the Court finds that Defendants are not liable under the Lanham Act given the undisputed facts of this case. As to the second issue, Plaintiff has failed to create a genuine issue of fact on the proximate cause requirement.

**a. Defendants Cannot be Found Liable under the Lanham Act.**

Under the Lanham Act, direct liability arises from "a false statement of fact by the defendant in a commercial advertisement about its own or another's product." *Skydive Arizona*, 673 F.3d at (citing 15 U.S.C. § 1125(a)(1)(B)); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Thus, if the defendant has not made the allegedly false statement, they are not liable for false advertising. *See Lasoff v. Amazon.com, Inc.*, 741 F. App'x 400, 402 (9th Cir. 2018) (affirming a district court's dismissal of a false advertising claim at summary judgment because "Amazon did not make any statements about the quality of Mr. Lasoff's products").

It is no surprise then that the traditional Lanham Defendant is the entity or person that makes the specific, false statements at issue in the litigation. *See, e.g.*, *AECOM Energy & Constr., Inc. v. Morrison Knudsen Corp.*, 748 F. App'x 115, 119 (9th Cir. 2018) (assessing a Lanham Act challenge to Defendants' deceptive logo and historical information); *Zakinov v. Blue Buffalo Pet Prod., Inc.*, No. 17-CV-01301-AJB, 2018 WL 1426932, at *1 (S.D. Cal. Mar. 22, 2018) (assessing a Lanham Act challenge to a pet

9

food company's nutritional statement about its products). Retail or wholesale stores differ from that typical defendant in that they usually do not produce or design the products they sell, and "cannot be held liable . . . on allegations that they displayed and sold [other companies' products] in their stores." *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 368 (N.D. Tex. 2019); *see also Lasoff v. Amazon.com Inc*, No. C-16-151-BJR, 2017 WL 372948, at *8 (W.D. Wash. Jan. 26, 2017), aff'd sub nom, *Lasoff*, 741 F. App'x at 400 (finding for defendant because "the misrepresentations of which [Plaintiff] complain[ed] originate[d] with third-party vendors, not with Defendant").

In the same way that an internet platform is not responsible for the veracity of vendors' advertisements, a retail or wholesale store cannot be found liable for false information appearing on the packages of the products that they sell. *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d 543, 550–51 (E.D. Va. 2015). Rather, for the store to be liable, it must, as is the case with any other defendant under the Lanham Act, actively "misrepresent[]" the products or make a "false or misleading representation." *Shenoor*, 371 F. Supp. 3d at 364–65 (citing 15 U.S.C. § 1125(a)(1)(B)).

Plaintiff's legal arguments to the contrary, moreover, are unavailing. Plaintiff relies on two cases for the proposition that Defendants are directly liable for the allegedly false advertisements on the Enhancement Products' packaging: *Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1065 (S.D.N.Y. 1991), and *Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511 (S.D.N.Y. 1986). ECF No. 94 at 10–11. As noted by the *Shenoor* Court, *Gucci* addresses a trademark infringement claim, not a false advertisement claim, and in no way relieves Plaintiff of his duty to show Defendants "made false statements in connection with advertising or promoting the [Enhancement] Products." *Shenoor*, 371 F. Supp. 3d at 364.

*Grant Airmass*, moreover, does not support Plaintiff's argument. The case actually undermines Plaintiff's position in that it requires a defendant to "knowingly cause[] a false representation to be used in connection with goods and services in commerce." *Grant Airmass Corp*, 645 F. Supp. at 1512. Here, Defendants have not independently

10

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

promulgated a misrepresentation or false advertisement as was the case in *Grant Airmass Corp*. *Id.* (noting that the defendant "distributed and presented in commerce the allegedly false report," assisted in the sales efforts, and promoted the product in speeches to staff, customers, and third-party organizations).

Rather, here, Defendants correctly argue that they are not directly liable under the Lanham Act, even if they were aware that the Enhancement Products' packaging contained false advertising. (ECF No. 90-1 at 13–17.) Plaintiff admits as "[u]ndisputed" that Defendants had no "role in formulating the challenged products, or had any role in drafting the language on their packaging." (ECF No. 94-19, Statement of Undisputed Material Fact (SUMF) No. 2.) Moreover, the record supports Defendants' assertion that there "is no evidence that any of the Defendants 'markets' or 'advertises' the challenged products beyond stocking them on their shelves." (ECF No. 94-19, SUMF No. 7.) For example, the photographs accompanying Ms. Ruhl's declaration show that Defendants did not use in-store advertisements to sell the Enhancement Products. (ECF Nos. 94-1, 94-2, 94-3, 94-4, 94-5, 94-6.) Likewise, there is no evidence to suggest that Defendants elsewhere advertised the Enhancement Products, including online. *See Shenoor*, 371 F. Supp. 3d at 365 ("Plaintiff has not made allegations that Defendants ran websites that published false advertisements").

In addition, none of the evidence that Plaintiff cites in the Undisputed Statement of Facts supports an alternate conclusion. Mr. Wear and Mr. Tauler do not assert any facts tending to show that Defendants independently advertised the Enhancement Products in their stores to consumers. (ECF No. 94-7, Decl. of Michael Wear; ECF No. 94-14, Decl. of Robert Tauler.) The photographs of Defendants' stores accompanying Mr. Wear's Declaration, moreover, contain no advertisements by Defendants. (ECF Nos. 94-8, 94-9, 94-10, 94-11, 94-12.) In addition, while Plaintiff's lab reports show that five products contain hidden prescription drugs, these reports say nothing as to how those products were advertised, nor do they even refer to the products that Defendants allegedly sold. (*Compare* ECF No. 94-13 *with* ECF No. 94 at 6–8 *and* ECF No. 1, Complaint at ¶ 1.)

11

Lastly, Plaintiff's three other citations – to various San Diego Cash & Carry sales receipts (ECF No. 94-15), an indictment from an unrelated case (ECF No. 94-17), and the FDA notices about the Enhancement Products' dangers (ECF No. 94-18) – are irrelevant in that they do not show how Defendants falsely advertised or misrepresented the Enhancement Products. (ECF No. 94-19, SUMF at ¶ 7.)

In sum, Defendants have not transgressed the central prohibition of 15 U.S.C. § 1125(a)(1)(B) – "misrepresent[ing] the . . . qualities . . . of his or her or another person's goods" – and thus cannot be held directly liable.

### b. Plaintiff Was Not Proximately Harmed by Defendants' Sales.

Defendants claim that *Lexmark* bars Plaintiff's suit because there is no evidence in the record that Defendants' sales proximately caused any injury to Plaintiff. (ECF No. 90-1 at 17–19.) Plaintiff responds that it has lost "market share" and been prevented from "enter[ing] the market[]" of San Diego, in part, because consumers may purchase Enhancement Products instead of TriSteel, and because the Enhancement Products reduce consumer interest in "complaint nutritional supplements." (ECF No. 94 at 14; ECF No. 133-2, RTI Nos. 24, 25; ECF No. 94-7, Decl. of Michael Wear at ¶¶ 8–10.) Even assuming Plaintiff's injury *arguendo*, the Court concludes that Defendants did not proximately cause Defendants' injuries.

To establish proximate cause under section 1125(a), a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought *by the defendant's advertising*." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133 (2014) (emphasis added). Plaintiffs must establish a "sufficiently close connection" between plaintiff's harm and "the conduct the statute prohibits." *Id.* Thus, for example, if "the deception produces injuries to a fellow commercial actor that in turn affect the plaintiff," *Lexmark* is not satisfied because the harm would be one step removed from the conduct the statute prohibits. *Id.* at 133–34.

Here, the principles of *Lexmark* prohibit the Court from finding that Defendant proximately caused Plaintiff's injury. No evidence suggests that Defendants created the

| | |
|---|---|
| 1 | Enhancement Products, designed their packages, or independently advertised the |
| 2 | products. Consequently, "it is difficult to see how merely placing products on display and |
| 3 | selling them qualifies as conduct that caused Plaintiff's injuries under Article III or the |
| 4 | Lanham Act." *See Shenoor*, 371 F. Supp. at 361–62. Under *Lexmark*, the injury must still |
| 5 | be traceable to some conduct by the defendant which violates the Lanham Act. Thus, |
| 6 | because Defendants have not "misrepresent[ed] the . . . qualities . . . of his or her or |
| 7 | another person's goods" in commerce, Defendants cannot be said to have proximately |
| 8 | caused Plaintiff's injuries. 15 U.S.C. § 1125(a)(1)(B). |

## IV. Conclusion

Given the foregoing reasons, the Court finds that the undisputed facts show no reasonable juror could find Defendants liable under the Lanham Act and directs summary judgment as to the Lanham Act claim in the *DG in PB* action.

**IT IS SO ORDERED.**

Dated: December 3, 2019

Hon. Gonzalo P. Curiel
United States District Judge