# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

IN RE OUTLAW LABORATORY, LP LITIGATION

Case No.: 3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

**ORDER DENYING LEAVE TO AMEND.**

**(ECF No. 126.)**

On November 4, 2019, counterclaimant Roma Mikha, Inc., and third-party plaintiffs NMRM, Inc., and Skyline Market (the "Stores") filed a motion for leave to file third amended counterclaims and a third-party complaint which seeks to add a counterclaim/third-party defendant, Boss Law PLLC ("Boss"), and a third-party plaintiff, Eureka and Inkster Shell ("Shell"). (ECF No. 126.) On December 2, 2019, Defendant Outlaw Laboratory, LP filed a response. (ECF No. 146.) On December 3, 2019, the Stores filed a reply. (ECF No. 149.) Having reviewed the papers, the Court **DENIES** the Stores' motion for the following reasons.

## I. Background

The lengthy facts and procedural history of this matter are familiar to both parties, and the Court will not set them out in detail here. The Court relies on the factual summaries contained in its prior orders. (ECF Nos. 31, 56, 85, 110, 113, 119, 123, 147.)

///

## II. Legal Standards

### a. Rule 19

Federal Rules of Civil Procedure ("Rules") "19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. Pro. 13(h); *see Aliya Medcare Fin., LLC v. Nickell*, No. CV-14-07806-MMM, 2015 WL 4163088, at *12 (C.D. Cal. July 9, 2015) (when a court considers amending a counterclaim to join new parties, it should analyze joinder under Rules 19 and 20).[1]

Under Rule 19, a person or entity is a "required party" and "must be joined" if feasible when (1) "in that [party]'s absence, the court cannot accord complete relief among existing parties," or (2) "that [party] claims an interest relating to the subject of the action and is so situated that disposing of the action in the [party]'s absence may . . . as a practical matter impair or impede the [party]'s ability to protect the interest' or 'leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.'" *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 851 (9th Cir. 2019) (quoting Fed. R. Civ. P. 19(a)(1)); *see also Alto v. Black*, 738 F.3d 1111, 1125 (9th Cir. 2013) (explaining the Rule 19 standard). If the party "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." *Dine Citizens*, 932 F.3d at 851 (quoting Fed. R. Civ. P. 19(b)).

### b. Rule 20

Alternatively, a court may permit a party to be joined under Rule 20. *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1374 (9th Cir. 1980). Under Rule 20, a party may be joined as a plaintiff if "they assert any right to relief . . . with respect to or

---

[1] Notably, the parties have not raised Rules 19 and 20 in their papers. However, the clear text of the Rules requires that the Court consider the issue, and thus the Court does so now *sua sponte*. *See Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015) (addressing a court's *sua sponte* order dismissing multiple parties that were improperly joined under Rule 20).

arising out of the same transaction, occurrence, or series of transactions or occurrences" as the instant suit, and if "any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1); *see Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). Likewise, a party may be permissively joined as a defendant under Rule 20 if "any right to relief is asserted against them . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" as the instant suit, and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2); *see also Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015). "If the test for permissive joinder is not satisfied, a court, in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance." *Coughlin*, 130 F.3d at 1350.

### c. Rule 15

In considering an amendment to a countercomplaint that seeks to add parties, the Court must also address Rule 15. *See* Fed. R. Civ. P. 15(a); *SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1085 (S.D. Cal. 2002) ("At the outset, then, provided the requirements of Rules 13(f) and 13(h) are met, a court's decision whether to permit amendment of a pleading to add counterclaims or counterdefendants is governed by Rule 15(a)").[2]

Under Rule 15(a), a party may amend a complaint after a responsive pleading has been filed by leave of the court and "shall freely be given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Granting leave to amend rests in the sound discretion of the trial court. *Int'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines*, 761 F.2d 1386, 1390 (9th Cir. 1985). However, this discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting

---

[2] In 2009, Rule 13(f) was abrogated as "largely redundant and potentially misleading." Fed. R. Civ. P. 13(f) advisory committee's note to 2009 amendment. Rule 13(h), as noted, directs the Court to consider whether a third party may be joined through a counterclaim per Rules 19 and 20.

amendments with "extreme liberality." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (citing *Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765 (9th Cir. 1986)). "This liberality in granting leave to amend is not dependent on whether the amendment will add causes of action or parties." *Id.*; *cf. Union Pacific R.R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (noting that, in practice, courts more freely grant plaintiffs leave to amend pleadings to add claims than new parties).

Because Rule 15(a) favors amendment, the non-moving party bears the burden of demonstrating why leave to amend should not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530–31 (N.D. Cal. 1989). In assessing the propriety of amendment, courts consider several factors: (1) undue delay, (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by amendments previously permitted; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman*, 371 U.S. at 182; *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

These factors are not equally weighted. It is the "consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) Also, "[f]utility of amendment can, by itself, justify the denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). In contrast, the possibility of undue "delay, by itself, is insufficient to justify denial of leave to amend," *DCD Programs*, 833 F.2d at 186, but when combined with a showing of prejudice, bad faith, or futility of amendment, undue delay may justify denial. *See Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999).

**III. Analysis**

    **a. Whether Eureka and Inkster Shell, LLC may be joined.**

As a threshold matter, the Court must consider whether it is appropriate under Rule 19 or 20(a)(1) to join Shell as a third-party plaintiff. *See E-Smart Techs., Inc. v. Drizin*, No. C-06-05528-MHP, 2008 WL 1930639, at *7 (N.D. Cal. May 1, 2008). The Court concludes that it is not and **DENIES** Shell's joinder for the following reasons.

        **i. Shell is Not a Required Party.**

4

Shell is not a "required party" to this litigation, and thus need not be joined under Rule 19(a). The instant RICO and rescission counterclaims arise from the Counterclaim Defendants' conspiracy to defraud and extort the Stores. The Court may award "complete relief" to the Stores, if they prevail, without joining Shell because that relief is in no way predicated upon Shell's consent or participation. *Cf., e.g.*, *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (finding the Secretary of Interior was a necessary party because the defendant might be able to sue the Secretary for indemnification); *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002) (finding the Navajo Nation was a necessary party because it could undermine the sought-after injunctive relief, even after a court order were issued, given the contracts involved in the dispute).

Likewise, Shell's participation in the instant litigation is not necessary to protect its interests. With respect to the rescission of its contract, Shell is free to file that claim independently in any jurisdiction laying proper venue. Also, with respect to Shell's interest in stopping the alleged Enterprise, Shell need not be joined because its interests will be "vigorously addressed by [the] arguments and evidence" of the similarly situated Payment Class. *See Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund,* 582 F.3d 30, 43 (1st Cir. 2009) (declining to find various absent parties necessary in a RICO class action where their interests were adequately represented by the existing parties).

Granted, it is possible that this would put Plaintiff Outlaw in a position where they would face lawsuits related to the demand letters and settlements resulting from the alleged Enterprise in multiple jurisdictions. However, because such lawsuits would arise from the specific facts and interests of the relevant plaintiffs, it cannot be said that this liability would result in "double, multiple, or otherwise inconsistent obligations" as to the same interest. *See N. Arapaho Tribe v. Harnsberger*, 697 F.3d 1272, 1279 (10th Cir. 2012) (holding that an Indian tribe was a required party because excluding them might lead to future, inconsistent legal determinations about the single interest in dispute by all

parties – whether a certain area of land qualified as Indian country). Consequently, there is no reason to consider Shell a "required party." Fed. R. Civ. Pro. 19(a).

### ii. Shell Will Not be Joined Under Rule 20 Because Its Claims for Relief Do Not Arise Out of the Same Transaction and Occurrence.

The Court also finds that Shell should not be permissively joined under Rule 20. Like many of the stores in the proposed classes, (ECF No. 126-2, Ex. A at ¶¶ 80–84), Shell allegedly received an "extortionate demand letter" and was ultimately "squeezed [for] $3,000" by the alleged Enterprise and its members. (*Id.* at ¶ 76.) Consequently, there is "at least one, and likely several, common questions of law or fact" between Shell and the Stores. *See SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1087 (S.D. Cal. 2002); (*see also* ECF No. 126-2, Ex. A at ¶ 85(c) (common questions of law)).

However, Shell's claim for relief does not "arise[] from the same aggregate set of operative facts" as the Stores' counterclaims. *Fid. Nat. Title Co.*, 2014 WL 1883939, at *5 (quoting *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013)). Shell's claim arises from a settlement agreement executed in Michigan, on some date between February 21, 2018 and September 13, 2019, and negotiated between Shell and Outlaw's counsel acting in Michigan, Boss Law PLLC – a firm whose alleged misconduct continues today. (ECF No. 126-1 at 2–4 (noting that Boss has initiated at least six lawsuits after the Stores added Tauler Smith as a third-party defendant); *see also* ECF No. 126-2, Ex. A at ¶ 39.) The California-based Stores' claims arise from the receipt of threatening letters – some of which resulted in settlements, some of which did not – sent as early as December 2017, and which were drafted, negotiated, and litigated by Outlaw's counsel at the time, Tauler Smith. (ECF No. 126-2, Ex. A at ¶¶ 29–40, 75.) Though there is some similarity, of course, in how these events occurred, they nonetheless occurred at different times, with different actors, and in different states. *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (finding that plaintiffs could not be joined under Rule 20 where they "own separate and unrelated properties across the country, they entered into separate loan transactions, and their dealings with

6

Defendants were necessarily varied"). Therefore, the events "do not arise from the same transaction or occurrence." *See Martinez v. Albertson's*, LLC, No. 2-18-CV-2319-JCM, 2019 WL 1230342, at *2 (D. Nev. Mar. 15, 2019) (a claim arising from an employee's use of force to restrain a dangerous patron entailed a separate transaction or occurrence to that employee's claim against Albertson's for his related termination); *Herrick v. S. Bay Labor Council*, No. C-04-02673-RMW, 2004 WL 2645980, at *3 (N.D. Cal. Nov. 19, 2004) (finding that two similar acts – employee terminations – could not be joined under Rule 20, in part, because they occurred in different locations and at different times).

Also, the fact that Shell is "an additional victim of the [alleged] Enterprise's scheme as a third-party plaintiff" is not dispositive. (ECF No. 126-1 at 2.) The Stores cannot merely add every party that was "victim[] to [the Counterclaim] Defendants' fraudulent scheme," and must still show that the harm to the proposed third-party plaintiff arose from the same set of operative facts. *See Boulton v. Am. Transfer Servs., Inc.*, No. 14-CV-00175-GPC, 2014 WL 3849915, at *4 (S.D. Cal. Aug. 5, 2014).

Consequently, the first prong of Rule 20 fails here because Shell does not assert a "right to relief . . . arising out of the same . . . transactions or occurrences" as the extant counterclaims. *See* Fed. R. Civ. P. 20(a)(1)(A).

**b. Whether Boss Law PLLC May be Joined as a Third-Party Defendant.**

Similarly, the Court must consider whether it is appropriate under Rule 19 or 20(a)(1) to join Boss as a third-party defendant. *See Fid. Nat. Title Co. v. U.S. Small Bus. Admin.*, No. 2:13-CV-02030-KJM, 2014 WL 1883939, at *5 (E.D. Cal. May 12, 2014) (considering joinder of third-party defendant by amended counterclaims). The Court concludes that it is not and **DENIES** Boss's joinder for the following reasons.

**i. Boss is Not a Required Party.**

Boss is not a "required party" to this litigation, and thus need not be joined under Rule 19(a). The instant RICO and rescission counterclaims brought forth by the Stores arise from the Counterclaim Defendants' conspiracy to extort them in California, not Michigan, during a period beginning in December 2017. Because Boss's involvement

7

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

began after the Enterprise's conduct in California, the Court may award complete relief to the currently-joined Stores, if they prevail, without joining Boss. Consequently, there is no reason to treat Boss as a "required party" this litigation. Fed. R. Civ. Pro. 19(a).[3]

### ii. Boss Will Not be Joined Under Rule 20 Because Its Alleged Actions Do Not Arise Out of the Same Transaction and Occurrence.

In deciding "whether to allow the permissive joinder of a party, a court should consider such factors as the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." *Desert Empire Bank*, 623 F.2d at 1375 (citation omitted).

Here, the Stores seek to join Boss as a third-party defendant on the basis that it has allegedly "conspired with the [alleged] Enterprise by carrying out its extortionate settlement scheme" and "now direct[s] the affairs of the [alleged] Enterprise." (ECF No. 126-1 at 3.) Specifically, the Stores contend that Boss procured Shell's settlement as well as that of a sister store in Michigan, (ECF No. 126-2, Ex. A at 73), "has filed nine separate actions against dozens of additional victims/class members in [Michigan]" as a part of the alleged Enterprise scheme, (ECF No. 126-1 at 4), and otherwise shared in the alleged "Enterprise by receiving a percentage of" their settlement income. (ECF No. 126-2, Ex. A at 89.) The Stores claim that Boss has "picked up immediately where [now third-party defendant] Tauler Smith left off" as the operative law firm enforcing the alleged Enterprise's settlements and litigation. (ECF No. 126-1 at 3.)

While there are some alleged common questions of law and fact, it is not clear that

---

[3] This, of course, does not preclude a suit against Boss elsewhere in the country, and means only that its conduct is sufficiently differentiated from that of the instant Counterclaimants that it should not be joined to this action.

8

Boss's conduct arises from the same transaction or occurrence as the conduct animating the counterclaims or the underlying suit. Fed. R. Civ. Pro. 20(a)(2)(A)–(B). The allegations against Boss suggest it joined in the conspiracy at some unknown – but recent – date, and that its involvement has remained limited to the Enterprise's alleged conduct in Michigan. (*See* ECF No. 126-2, Ex. A at ¶ 75 (describing "Boss's role" as taking place only in Michigan, and only after "Enterprise member Tauler Smith distributed the extortionate demanded letter")). In addition, though the Stores suggest Boss acted as Tauler Smith had before, Boss's misconduct is separate and distinct – as is evident, in part, because the relevant allegations are much less detailed – from Tauler Smith's alleged misconduct. (*Compare id.* at ¶ 76 with *id.* at ¶ 75 (alleging that Tauler Smith's misconduct was more involved and included, among other actions, "orchestrat[ing] the very formation of this shakedown scheme," becoming the "architect of . . . the fraudulent . . . demand letters," drafting legal complaints, and dispersing the letters to hundreds of stores across multiple states, including California and Arizona)).

Considering these differences, Boss's conduct, though allegedly part of the Enterprise, seems almost an afterthought to the instant countercomplaint in that Boss is not alleged to have drafted the extortionate letters, formed the Enterprise, directly harmed any of the named Stores, or otherwise participated the Enterprise's actions in California. *See Underwood v. 1450 SE Orient, LLC*, No. 3:18-CV-1366-JR, 2019 WL 1245805, at *3 (D. Or. Jan. 28, 2019) ("merely participating in the same violation is insufficient to demonstrate the same transaction or occurrence"); *Third Degree Films, Inc. v. Does 1-131*, 280 F.R.D. 493, 498 (D. Ariz. 2012) (BitTorrent users acting in the same unlawful file share do not all involve the same transaction or occurrence). Thus, Boss's alleged misconduct thus does not arise "out of the same series of occurrences" as the instant countercomplaint or the underlying suit by Plaintiff Outlaw in that Boss acted in another state, over a period of time that is seemingly still ongoing, and against other stores not currently joined to this action. *Cf. Desert Empire Bank*, 623 F.2d at 1375–76 (finding the district court properly joined a third-party defendant because all the claims centered on a

9

specific set of insurance bonds and in light of the "closeness of th[e] relationship between the parties").

Moreover, Rule 9(b)'s requirement that, in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity applies to civil RICO fraud claims. *See Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010) As explained, the Stores' allegations against Boss are lacking in specificity. Thus, to avoid dismissal for inadequacy under Rule 9(b), the allegations would need to "state the time, place, and specific content of the false content of the representations as well as the identities of the parties to the misrepresentation." *See Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392–93 (9th Cir. 1989) (*quoting Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

Consequently, the Court finds that Boss may not be permissively joined as a third-party defendant under Rule 20(a)(2).

### c. Whether the Court Grants Leave to File Third Amended Counterclaims and Third-Party Complaint.

Even if there were some doubt as to Boss or Shell's joinder under Rules 19 or 20, the proposed countercomplaint would also not pass muster under Rule 15 as the factors identified by the Supreme Court in *Foman* weigh in favor of denying the instant motion. *See Foman*, 371 U.S. at 182; *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).[4]

At first blush, the Stores' motion does not suffer from undue delay, bad faith, or repeated failures to cure pleading deficiencies. To the contrary, this motion was filed

---

[4] The Court pauses here to note that Plaintiff Outlaw's opposition neither explains nor applies the proper legal standard for Rule 15 and cites no authority whatsoever for its arguments. (ECF No. 146.) The other Counterclaim Defendants have not even filed no opposition. If ECF No. 146 is meant to speak for all defendants, it should state so clearly. The Court admonishes counsel. Such inadequate briefing will not be taken lightly going forward.

shortly after the expiration of a 45-day stay that resulted from the Court's order granting third-party plaintiffs' permission to add Tauler Smith as a third-party defendant. (ECF Nos. 113, 119, 123.) And, the Stores only "learned of Eureka and Inkster Shell's claims when its owner contacted the Stores on September 13, 2019." (ECF No. 126-1 at 7). The Stores' allegations, moreover, align with their prior counterclaims and, as the Stores have not attempted to join Shell or Boss before, there are no prior deficiencies to be cured.

Nonetheless, the addition of two parties from distant jurisdictions may unfairly prejudice the Counterclaim Defendants, which now include a law firm accused of engaging in racketeering, by threatening to complicate an already lengthy discovery process. *See Union Pac. R. Co. v. Nevada Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 324 (9th Cir. 1989)) (noting that amendments seeking to add new parties are granted less freely than those seeking only to amend claims). Even if some class discovery is common to all the parties, the complaints' mention of "at least a dozen new victims" in Michigan suggests further discovery is not likely to be resolved quickly. (ECF No. 126-2, Ex. A at ¶ 76(a)). Rather, in addition to permitting that the new parties undergo independent fact discovery, granting this motion would likely delay the class discovery deadline, which is set to elapse less than two months from now. (ECF No. 155 at ¶ 1 (deadline of March 17, 2020)). That concern is aggravated by the acrimonious relationship between the parties to date, as is evident from the Docket's minute entries regarding prior proceedings before the Magistrate, (*see* ECF Nos. 106, 111, 160, 161), the parties' briefing as to their ongoing discovery disputes, (*see* ECF Nos. 116, 137, 148), and the way in which the parties have communicated with one another. (*See* ECF No. 126-2, Ex. A at ¶ 7.) As it is, this case has been ongoing for nearly two years, (ECF No. 1 (filed on May 2, 2018)), and thus the prospect of further elongating discovery through the addition of two new parties is concerning.

Outlaw, moreover, asserts that permitting the joinder of Boss may open the door to a "flood[]" of litigation against other attorneys from dissatisfied parties to prior settlements. (ECF No. 146 at 3 at.) The Stores respond that such an outcome is at most

11

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS

hypothetical given the *Noerr-Penington* doctrine, which this Court discussed at length in prior orders. (*See generally* ECF No. 56; *see also* ECF No. 31 at 9–16; ECF No. 113 at 17–19.) The Stores, however, make no specific arguments now as to how Boss's conduct can be construed as "sham litigation," and thus constitute an exception to the *Noerr-Penington* doctrine. (ECF No. 149 at 2–3.) This is of particular concern because the sham litigation exception is highly fact-specific, *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1253–54 (9th Cir. 1982), and, as noted above, Boss's alleged conduct is not as pervasive as Tauler Smith's alleged conduct, nor is it as integral to the Enterprise. (*Cf.* ECF No. 113 at 18 (relying in part on Tauler Smith's role in starting the Enterprise, creation of a front-product, and direction of the Enterprise investigator-agents)).

Moreover, given the skimpy details as to the "who, what, when and where" of Boss's alleged actions, it is a foregone conclusion that a motion to dismiss the RICO cause of action will further delay these proceedings. (*See* ECF No. 126-2, Ex. A at ¶ 76 (repeatedly relying on the Stores "information and belief" instead of verifiable dates, documents, and events)). As a result, the instant motion raises some questions as to futility given the Stores' failure to properly allege specific facts relating to Boss's involvement in the RICO conspiracy.

Considering these various factors together, the Court denies the motion to amend the counterclaims because introduction of the new parties would unfairly prejudice the Plaintiff Outlaw and the Third-Party Defendants by further delaying a nearly two-year-old case with inevitable motions to dismiss and new discovery, and where the Parties have proven to be litigious, have been unwilling to cooperate in resolving discovery issues, and have engaged in scorched earth practices.

//
//
//
//

12

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Stores' motion to file third amended counterclaims and third-party complaint. The hearing set before this Court for January 31, 2020 is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: January 28, 2020

Hon. Gonzalo P. Curiel
United States District Judge

13

3:18-cv-840-GPC-BGS
consolidated with 3:18-cv-1882-GPC-BGS