1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| In re Outlaw Laboratory, LLP. | Case No.: 3:18-CV-0840-GPC (consolidated with 3:18-CV-1882) |
|---|---|
| | **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS.** |
| | **(ECF No. 168.)** |

This Order addresses the Defendants' motion for judgment on the pleadings as to Plaintiff Outlaw Laboratory LLP's ("Outlaw") Complaint in Case No. 18-CV-1882. (*See* Case No. 18-CV-1882, ECF No. 1-2) (hereinafter, the "Complaint" or "Compl.")[1] The Court finds that Outlaw has failed to adequately plead a claim for which relief can be granted as to all three causes action and dismisses the Complaint with prejudice, except as to a claim arising under the "unfair" prong of California's Unfair Competition Law.

I.     **Background.**

       **A. The Parties.**

       Plaintiff is a Texas-based manufacturer of two products called "TriSteel" and "TriSteel 8hour," which are male enhancement products made in the United States of

---

[1] Unless otherwise noted, all cited ECF Nos. pertain to the docket for Case No. 18-cv-0840. Case Nos. 18-cv-0840 and 18-cv-1882 were consolidated on November 14, 2018. (ECF No. 28.)

America, distributed for sale in all 50 States, and which comply with the Dietary Supplement Health and Education Act of 1994. (Compl. at ¶ 4.) On July 25, 2018, Outlaw filed the Complaint in the Superior Court of California, County of San Diego. (Compl. at p. 48.) The Complaint was removed on August 12, 2018. (ECF No. 1.)

Originally, the Defendants consisted of fifty-one (51) convenience and liquor stores in the San Diego, California area. To date, twenty-three (23) of the Defendants have been terminated. *See* (Case No. 18-CV-1882, ECF Nos. 9, 11, 13, 2, 24, 27, 31); (Case No. 18-CV-0840, ECF Nos. 35, 36, 37, 40, 54, 57, 60, 88.)[2] Of the Defendants remaining, twenty (20) have filed Answers to the Complaint and are actively litigating this matter. (ECF Nos. 41, 43, 45, 47.)[3] The other eight Defendants have neither filed appearances nor Answers to the Complaint, and seven of these eight Defendants have been in default since April 9, 2019.[4] (ECF Nos. 71–79.)

**B. Plaintiff Outlaw's Alleged Scheme.**

Outlaw alleges that the Defendants engaged in a scheme to distribute and sell "male enhancement" pills containing undisclosed pharmaceuticals to the general public. (Compl. at ¶ 1.) Specifically, Defendants are alleged to sell various falsely advertised

---

[2] The 23 terminated Defendants include San Diego Outlet, Inc.; Youhanna Inc; Smokers Smoke Shop; Division Market, Inc.; Hillcrest News; Mega Dollar Stores, Inc.; Smokey J Tobacco Shop; Smoke & Snacks; MA Smoke Shop; Newport Farms Market & liquor; CDK Business Enterprise, Inc.; 76 Gas Station Located at 9606 Aero Drive, San Diego CA 92123; Andy's Smoke Shop, Inc.; ARCO Gas Station located at 5401 University Ave., San Diego, CA 92105; Convenient Corner, Inc.; Goodfellas Smoke Shop, LLC; Happy Daze liquor, Inc.; Smoke N Stuff Smoke Shop; Stars and Stripes Mart, Inc.; Valero Gas Station located at 3150 Adams Ave., San Diego, CA 92116; 2 Liquor Store; Paras News LLC; and Eagle's Nest Property Management, LLC.

[3] The 20 active Defendants include Roma Mikha, Inc.; Bel Air Market; Big City Liquor; Cardiff Gas, Inc.; Criscola's liquor Store; F&F Food Bargain, Inc.; Greene Cat liquors; HH Eagles Market; Hillcrest Smoke Shop; Kalyana Inc.; Little Brown Jug Liquor; Magic Market; Midway Cigars & Smoke Shop; Midway M3, Inc.; Point Loma Liquor, Inc.; Servall Market, Inc.; Sunset Mini Mart; Blaze Smoke Shop; EBM Jr Market; and Ideal Market.

[4] These 8 inactive Defendants are 5109 Imperial Avenue, LLC; Apple Tree Market; ARCO Gas Station Located at 3860 Old Town Ave, San Diego, CA 92110; ARCO Gas Station Located at 4357 El Cajon Blvd., San Diego, CA 92105; Fuel Team Inc.; Rock City Inc.; Rolling J's Smoke Shop; and Sonny's liquor Market. On April 9, 2019, the Clerk of Court entered Default against each of these Defendants, except Defendant Fuel Team, Inc. (ECF Nos. 71–79.)

products, including Rhino 7 Platinum 5000, Rhino 12 Titanium 6000, Rhino 7 Platinum 3000, Rhino 8 Platinum 8000, Rhino 7 Blue 9000, Rhino 69 Platinum 9000, and Rhino 12 Titanium 6000 (collectively, the "Rhino Products"). (Compl. at ¶ 1.) According to laboratory testing and public announcements by the Federal Drug Administration ("FDA"), some of the Rhino Products contain hidden ingredients including sildenafil, the consumption of which can cause "life-threatening hypotension" and greatly "increase[s] the risk of heart attack," among other effects. (Compl. at ¶¶ 67–71, 77.)

To execute the scheme, the unnamed "Supplier Defendants," i.e., "wholesale suppliers and distributors of [the] sexual enhancement supplements," first "contract with importers of the Rhino Products" to bring in the products China. (Compl. at ¶¶ 72, 74.) Then, the Supplier Defendants distribute them to a "network of Retail Defendants." (Compl. at ¶ 72.) Finally, those "Retail Defendants," i.e., independent businesses in the San Diego area, "sell[] the Rhino Products, disseminate false claims about the Rhino Products, and profit from the sale of dangerous products to consumers at a large markup on each pill." (Compl. at ¶ 72.) The retail stores named as co-defendants in Case No. 18-cv-1882 are all alleged to be "Retail Defendants." (Compl. at ¶ 2.)

In the process of selling the Rhino Products, Defendants "advertise" and "make numerous false and misleading representations regarding the Rhino Products," including labeling the Rhino Products as "dietary supplements," as containing "no chemicals," as using an "all natural herbal formula," and as requiring "no prescription." (Compl. at ¶¶ 75–76.) Defendants "fail to disclose that the Rhino Products contain prescription drug ingredients" or any of the ingredients' "adverse health consequences." (Compl. at ¶ 78.) Thus, "Defendants' false and misleading advertising" harms Outlaw by "creat[ing] an illegitimate marketplace" and diminishing consumers' incentives "to use other sexual performance Rhino Products, such as TriSteel." (Compl. at ¶¶ 79–80.) The Complaint alleges that each of the Defendants "advertises and offers for sale" at least one of the Rhino Products. (Compl. at ¶¶ 81–131.)

/ / /

### C. Plaintiff Outlaw's Causes of Action.

Outlaw pleads three causes of action: (1) a violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (2) a violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500; and (3) a violation of the Lanham Act. 15 U.S.C. §§ 1051 *et seq*. All three causes of action rely on the same factual allegations asserted as to Defendants' scheme, (Compl. at ¶¶ 67–131), and differ only marginally as pled in each cause of action. (Compl. at ¶¶ 132–160.)

As to the UCL violation, Outlaw pleads that Defendants have engaged in "unlawful conduct by selling pharmaceuticals without a prescription;" "unfair conduct because the use of pharmaceuticals in male Rhino Products provides them with a competitive advantage in the marketplace among consumers seeking effective products;" and "fraudulent conduct by way of their false, deceptive, and misleading marketing, advertising, and sale of the Rhino Products as detailed above." (Compl. at ¶ 134.) Defendants allegedly introduced false and misleading statements underlying these allegations "into California via marketing and advertising on various websites and shipment of its product containing false and misleading advertising into California." (Compl. at ¶ 138.) As a result, Outlaw "has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants," and seeks "a preliminary injunction and a permanent injunction against further unlawful and unfair conduct by Defendants." (Compl. at ¶¶ 135, 139.)

As to the FAL violation, Outlaw claims that Defendants "make numerous false and misleading representations regarding the Rhino Products," including the labeling of Rhino Products as "dietary supplements," as containing "no chemicals," as using an "all natural herbal formula," and as requiring "no prescription." (Compl. at ¶¶ 142–43.) Defendants also allegedly "introduced their false and misleading statements into California via marketing and advertising on various websites and shipment of its product containing false and misleading advertising into California." (Compl. at ¶ 147.) In addition to the falsity of the statements, Defendants allegedly violate the FAL by

4

"fail[ing] to disclose that the Rhino Products contain prescription drug ingredients, such as sildenafil." (Compl. at ¶ 144.) Defendants' conduct and omissions allegedly "deceive a substantial segment of the public and consumers in California into believing that they are purchasing a product with different characteristics." (Compl. at ¶ 145.) As a result, Outlaw "has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants," (Compl. at ¶¶ 148), and seeks "preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, and the Rhino Products." (Compl., Prayer for Relief, at ¶ 1.)

As to the Lanham Act violation, Plaintiff alleges that Defendants "make numerous false and misleading representations regarding the Rhino Products." (Compl. at ¶ 152.) Defendants also "fail to disclose that" the Rhino Products "unlawfully contain hidden drug ingredients, such as sildenafil" – a fact the Stores "knew, or should have known." (Compl. at ¶¶ 153–55.) Defendants thus "have knowingly and materially participated in a false and misleading advertising campaign . . ." (Compl at ¶ 155.) Defendants' deceptive statements are "likely to influence a consumer's purchasing decisions" and have been introduced "into interstate commerce via marketing and advertising at trade shows, on various websites and shipment of their products containing false and misleading advertising into interstate commerce." (Compl. at ¶¶ 157–58.) As a result, the Stores' misconduct has "resulted in the diversion of sales from Plaintiff and lost profits," for which Plaintiff now seeks multiple forms of damages, restitution, and injunctive relief. (*See* Compl. at ¶ 159; Compl., Prayer for Relief.)

**D. Procedural Background.**[5]

On January 27, 2020, eighteen of the Defendant Stores (hereinafter, the "Stores")[6] moved for judgement on the pleadings. (ECF No. 168.) On February 24, 2020, Plaintiff

---

[5] This matter contains a lengthy history unnecessary to the adjudication of this motion. Consequently, the Court does not set it out here. For additional factual background, see ECF No. 190 at 2–5.
[6] The Stores include all the Active Defendants, *see* fn. 3 *supra*, except EBM Jr Market and Ideal Market.

filed a response. (ECF No. 175.) On February 27, 2020, the Stores filed a reply. (ECF No. 176.) The Court took the matter on submission on April 16, 2020.

**II.    Legal Standard for Judgment on the Pleadings.**

"Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (internal quotation marks omitted). A Rule 12(b)(6) motion attacks the complaint as containing insufficient factual allegations to state a claim for relief. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "detailed factual allegations" are unnecessary, the complaint must allege more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

"In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "Judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000).

**III.   Analysis.**

**A. Threshold Arguments.**

**1.    The Stores' Rule 12(c) Motion is not Premature.**

A motion for judgment on the pleadings may be made at any time "after the pleadings are closed." Fed. R. Civ. P. 12(c). "[T]he pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made." *Doe v. United States*, 419 F.3d 1058, 1061 (9th

Cir. 2005). "Where a counterclaim is interposed, the filing of a reply to the counterclaim marks the close of proceedings." *Med-Sys., Inc. v. Masterson Mktg., Inc.*, No. 11-CV-695-JLS, 2011 WL 4715170, at *2 (S.D. Cal. Oct. 7, 2011)

Here, Outlaw asserts that the Stores arguments must be denied as "premature because the pleadings are not closed" for two reasons: (1) the Defendants' counterclaims "have not been fully answered" and (2) not all of the Defendants have answered the Complaint. (ECF No. 175 at 6–7.) Though Plaintiff correctly observes that a single Defendant has filed Counterclaims, (ECF No. 114), and Plaintiff had not answered the Counterclaims[7] when the Stores' motion was filed, that fact is immaterial here as the Stores' motion for judgment on the pleadings applies *only* to Outlaw's complaint. *See Tibarom NV, Inc. v. Shell Oil Prod. U.S.*, No. 3:08-CV-00060-BES, 2008 WL 11404229, at *2 (D. Nev. Sept. 24, 2008) ("In this case, although a counterclaim was filed, the Court finds that the pleadings were closed for the purpose of timeliness on this motion because the motion relates solely to the claims made in the Amended Complaint.")

As to Plaintiff's second argument, the Court finds that hearing the Stores' motion is appropriate now. First, Outlaw has filed its Complaint and the eighteen Stores have each filed an Answer. (*See* Compl.; ECF Nos. 41, 43.) Hence, the pleadings are closed as to the Parties to the Motion. Second, the Defendants who have yet to file an Answer are in default since April 9, 2019,[8] and Plaintiff has failed to prosecute its case against them in the year since the Clerk filed the entry of default. (ECF Nos. 71–79.) Plaintiff thus identifies no prejudice that can result from the Court's consideration of the motion. *See Johnson v. Dodson Pub. Sch., Dist. No. 2-A(C)*, 463 F. Supp. 2d 1151, 1156 (D. Mont.

---

[7] Notably, Outlaw, Sean Lynch, Michael Wear, and Tauler Smith have since filed Answers to the SACC. (ECF Nos. 200, 202.)

[8] This is true with one exception: Defendant Fuel Team, Inc. However, even as to this Defendant, Plaintiff incurs no prejudice as it has failed to prosecute its case altogether. Nearly two years have elapsed since Plaintiff filed its Complaint, and Plaintiff has yet to even move for Default against Defendant Fuel Team, Inc.

2006) (electing to hear Rule 12(c) motion that was filed prematurely because no parties were prejudiced by it).

Consequently, consideration of the Stores' motion is appropriate under these circumstances.

### 2.   Future Motion for Leave to Amend.

Outlaw also asserts that the Court should deny judgment on the pleadings on the basis that it will file a motion for leave to amend the Complaint. (ECF No. 175 at 8–9.) The Stores respond that "the prospect of that future filing has nothing to do with whether this motion should be granted." (ECF No. 176 at 2.) The instant motion for judgment on the pleadings was filed January 27, 2020. For whatever reason, four months later, Outlaw has not actually filed such a motion and has elected to proceed on its operative pleading. To deny the Stores' motion on the basis of a hypothetical amendment is nonsensical. Moreover, once judgment on the pleadings is granted, an amendment will not be an option. *See Weeks v. Bayer*, 246 F. 3d 1231, 1236 (9th Cir. 2001) (amendment not permitted after motion for judgment on the pleadings was granted where plaintiff failed to seek amendment during the seven months that the motion was pending).

### B. The Lanham Act Claim.

### 1.   Preclusion.

In addition to their arguments on the merits, the Stores assert that Outlaw's Lanham Act claim is precluded because it "is identical in substance to the Lanham Act claim it brought against the *DG in PB* defendants," which the Court decided against Outlaw on summary judgment in its December 3, 2019 Order. (ECF No. 168-1 at 10; ECF No. 176 at 3–4.) Collateral estoppel, i.e., issue preclusion, applies when: "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom [issue preclusion] is asserted was a party or in privity with a party at the first proceeding." *Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir.

2011) (quoting *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)) (internal quotation marks omitted).

Outlaw contests the second factor, arguing that "the December 3, 2019 summary judgment is an interlocutory order that can still be appealed" and thus cannot form the basis of the Stores' estoppel argument. (ECF No. 175 at 7–8.) However, "[t]o be 'final' for [issue preclusion] purposes, a decision need not possess 'finality' in the sense of 28 U.S.C. § 1291," the threshold for finality required on appeal. *Syverson v. IBM*, 472 F.3d 1072, 1079 (9th Cir. 2007) (quoting *Luben Indus., Inc. v. United States*, 707 F.2d 1037, 1040 (9th Cir. 1983)). Rather, "[i]ssue preclusion [has been applied to] matters resolved by preliminary rulings or to determinations of liability that have not yet been completed by an award of damages or other relief." *Id.* That the December 3, 2019 summary judgment applied to a related case makes the argument only more compelling. *See Bartel v. Tokyo Elec. Power Co., Inc.*, 371 F. Supp. 3d 769, 781 (S.D. Cal. 2019), *appeal dismissed*, No. 19-55442, 2019 WL 5260743 (9th Cir. July 30, 2019) (applying collateral estoppel to a dismissal for lack of personal jurisdiction determined in a related case); *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, 128 F. Supp. 3d 1249, 1255 (N.D. Cal. 2015) (emphasis in original), *aff'd sub nom. AIA Am., Inc. v. Eli Lilly & Co.*, 695 F. App'x 573 (Fed. Cir. 2017) (applying collateral estoppel to a decision awarding one party attorneys' fees under to 35 U.S.C. § 285 in a related case).

Outlaw, moreover, had a "full and fair" opportunity to litigate summary judgment on the *DG in PB* complaint, as is evidenced through the Court's reasoned decision and their briefing. *See Cygnus Telecommunications Tech., LLC v. Am. Int'l Telephonics, LLC*, 569 F. Supp. 2d 1035, 1037 (N.D. Cal. 2008) ("the focus for purposes of determining whether collateral estoppel applies . . . is simply whether [the litigant] has a full and fair opportunity to argue the [issue]"). Consequently, the Court finds that Outlaw is collaterally estopped from arguing that "a retail or wholesale store [is] liable for false information appearing on the packages of the products that they sell [where they are not

alleged to] actively 'misrepresent[]' the products or make a 'false or misleading representation.'" (ECF No. 147 at 10.)

Importantly, this finding applies only to the argument that the Stores are *directly* liable, and not the distinguishable theory that the Stores may be *contributorily* liable, which was not advanced in the briefing preceding the December 3, 2019 summary judgment. By conflating the two theories, the Court would ignore the first prong of issue preclusion, i.e., that "the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated." *Paulo*, 669 F.3d at 917.

## 2.   Direct Liability Under the Lanham Act.

The Stores argue that the Lanham Act claim fails because "Outlaw's only allegations as to the Stores in particular is that they sell the products." (ECF No. 168-1 at 12.) "[T]here are *no* allegations that the Stores are involved in formulating the Rhino Products or their labeling, and *no* allegations the Stores 'advertise' or 'market' the Rhino Products beyond merely placing them on their shelves for sale." (ECF No. 168-1 at 12.) To this, Outlaw offers no response, and the Court agrees.

As explained in the December 3, 2019 summary judgment order, an actor is directly liable under the Lanham Act where they actively "misrepresent[]" the products or make a "false or misleading representation" about the products. (ECF No. 147 at 10) (quoting *Outlaw Lab., LP v. Shenoor Enter., Inc.*, 371 F. Supp. 3d 355, 364, 368 (N.D. Tex. 2019) (rejecting Outlaw's position that a defendant can be liable for false advertising under the Lanham Act for merely displaying and selling goods in a retail store).

Here, though Outlaw claims that the Stores "advertise and offer for sale various sexual enhancement supplements," it appears the alleged advertising refers *only* the packaging itself. (Compl. at ¶¶ 75; 81–131.) Specifically, Outlaw alleges that the Stores "mislabel the Rhino Products" through their packaging, including by labeling them as "dietary supplements" and promoting them "as containing 'no chemicals,' 'all natural

herbal formula,' and 'no prescription necessary,' among other misrepresentations."
(Compl. at ¶ 76.)

Outlaw's theory of direct liability also relies on the allegation that the Stores violated the Lanham Act by "fail[ing] to disclose that the Rhino Products contain prescription drug ingredients, such as sildenafil," (Compl. at ¶ 154), and that is insufficient. Afterall, a Lanham Act violation cannot be predicated on an omission. *See Universal City Studios, Inc. v. Sony Corp. of Am.*, 429 F. Supp. 407, 410 (C.D. Cal. 1977) ("[n]o reference to omissions of material fact or obligation to disclose such as is found in other federal statutes . . . appears [in the Lanham Act]"); *see also Alexso, Inc. v. First Databank, Inc.*, No. CV-15-01893-DDP, 2015 WL 5554005, at *2 (C.D. Cal. Sept. 21, 2015) ("any claim under Section 43(a) requires some sort of material false or misleading description or statement of fact"); *K & N Eng'g, Inc. v. Spectre Performance*, No. ED-CV-09-01900-VAP, 2011 WL 4387094, at *18 (C.D. Cal. Sept. 20, 2011) (noting that "the case law indicates . . . a claim under the Lanham Act [cannot be] based on [an] omission of a fact from its product packaging"); *Expedia, Inc. v. Priceline.com Inc.*, No. C09-0712RSL, 2009 WL 4110851, at *3 (W.D. Wash. Nov. 23, 2009) (quotation and citation omitted) (acknowledging that "[a] simple failure to disclose is not a violation of the Lanham Act because the absence of any statement is neither false nor a representation").

Plaintiff's Lanham Act claim, moreover, is not saved by the conclusory allegation that "Defendants have introduced their false and misleading statements into interstate commerce via marketing and advertising at trade shows, on various websites and shipment of their products containing false and misleading advertising into interstate commerce." (Compl. ¶ 157.) This allegation fails to specificity the "who, what, when, where, and how" of the Stores' alleged misconduct as required of Federal Rule of Civil Procedure 9, *see Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087,

1095 (S.D. Cal. 2017),[9] and seems targeted only at the Supplier Defendants as they would be the ones presumably arranging the alleged "shipment[s]." (*Cf.* Compl. at ¶ 72.)

### 3. Contributory Liability Under the Lanham Act.

Outlaw also offers a theory of contributory liability to support its claim. Outlaw argues that the Stores cannot escape Lanham Act liability because they "either knew that illegal or tainted pills are being sold in their stores, or they were 'willfully blind' to the sale of illegal or tainted pills." (ECF No. 175 at 9–13.) The Stores respond that the Complaint does not include a claim for contributory liability and, even if it did, Outlaw could not allege sufficient facts to adequately plead it. (ECF No. 176 at 4–6.) Thus, the Court must decide two distinct questions: first, whether contributory liability is permitted under the Lanham Act and, second, whether the complaint alleges its elements.

### a. Contributory False Advertising Claims are Cognizable.

As a threshold matter, the Court finds that a theory of contributory liability for false advertising may arise under the Lanham Act. On this point, the Eleventh Circuit's reasoning in *Duty Free* is particularly compelling. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.* ("*Duty Free*")*,* 797 F.3d 1248, 1275 (11th Cir. 2015). The Lanham Act provides for two types of claims: trademark infringement and false advertising. *Id.* These claims arise from clauses that are "subpart[s] of a single statutory provision," "share the same introductory clause," "were motivated by a unitary purpose" to prohibit unfair competition, and are rooted in tort law (which, of course, permits contributory liability). *Id.* at 1275–77 (quotations and citations omitted). The Supreme Court, moreover, has recognized that, of these two provisions, false advertising is "the

---

[9] The Court recognizes that "the Ninth Circuit has not definitively spoken as to whether Rule 9(b) applies to Lanham Act claims." *See Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019). Nonetheless, "the better reasoned authority is that, where a Lanham Act claim is predicated on the theory that the defendant engaged in a knowing and intentional misrepresentation, then Rule 9(b) is applicable." *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 908 (N.D. Cal. 2018), aff'd, 778 F. App'x 966 (Fed. Cir. 2019).

broader remedy," *see POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014), and that contributory liability is well-established for trademark infringement claims. *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 853 (1982).

A review of this Circuit's cases addressing contributory liability reveals, moreover, that various courts have entertained contributory false advertising claims under the Lanham Act even if the Ninth Circuit has not expressly recognized it. *See, e.g.*, *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 847–49 (N.D. Cal. 2019) (considering contributory liability under *ADT Sec. Servs.* and *Duty Free*); *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.* ("*ADT Sec. Servs.*"), No. 11-CV-05149-YGR, 2012 WL 4068632, at *1 (N.D. Cal. Sept. 14, 2012) ("In light of other courts' reasoned extension of a claim for contributory false advertising and unfair contribution under the Lanham Act, the Court similarly finds such an extension to be appropriate."); *BioCell Tech. LLC v. Arthro-7*, No. CV-1200516-JVS, 2012 WL 12892937, at *12 (C.D. Cal. Nov. 19, 2012) ("Contributory liability under the Lanham Act is based on the theory that one who intentionally induces another to directly violate the Act is contributorily liable."); *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, No. C-08-1372-RSM, 2010 WL 2079694, at *4 (W.D. Wash. May 20, 2010), aff'd, 447 F. App'x 814 (9th Cir. 2011) ("Inducement is a cognizable theory of liability for false advertising"); *see also Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship*, L.P., 380 F.3d 126, 132 (2d Cir. 2004) (reinstating a claim for contributory false advertising that had been dismissed by the district court).

Consequently, the Court holds that it is possible for a party to allege a claim for false advertising under the theory of contributory liability.

### b. Outlaw's Allegations Fall Short of *Duty Free*.

*Duty Free* provides that, to "bring a claim for contributory false advertising under § 43(a) of the Lanham Act," the plaintiff must show that a "third party in fact directly engaged in false advertising that injured the plaintiff" and that "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially

participating in it." *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015). Thus, "[o]nce the plaintiff establishes the elements of a direct false advertising claim against a third party, it must allege that the defendant contributed to that conduct." *Id.* at 1277. In other words, the plaintiff "must allege that the defendant . . . intended to participate in or actually knew about the false advertising" and "that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about." *Id.* (quotations omitted).[10]

Here, the Outlaw complaint does not allege an "alternative theor[y] of liability" for contributory false advertising different from its claim for direct liability. *Cf. Jimenez v. GEICO Gen. Ins. Co.*, No. 19-CV-00984-APG, 2020 WL 1434311, at *2 (D. Nev. Mar. 24, 2020) ("A plaintiff may plead both breach of contract and breach of the implied covenants as alternative theories of liability, but all elements of each cause of action must be properly pleaded.") (quotation omitted). The term "contributory liability" does not appear even once in the Complaint, and Outlaw cannot now constructively amend the Complaint to incorporate this theory for the first time by simply briefing it in a motion two years into the litigation.

Moreover, even if the Complaint could be read as attempting to plead contributory liability, Outlaw has failed to allege the required elements with specificity. First, the complaint does not make out "the elements of a direct false advertising claim against a third party." *Duty Free*, 797 F.3d at 1277. While the Complaint names as defendants a

---

[10] The *Duty Free* Court, moreover, provides various factors to consider in determining whether the defendant's conduct amount to "materially participating" in the false advertising: (1) whether the defendant directly controlled or monitored the third party's false advertising, (2) whether the complaint contains a plausible inference of knowing or intentional participation, (3) whether the defendant encouraged the false advertising, (4) whether the false advertising is serious and widespread such that the defendant likely knew about and condoned the acts, (5) whether the defendant engaged in bad faith refusal to exercise a clear contractual power to halt the false advertising, and (6) the nature and extent of the communication between the third party and the defendant regarding the false advertising. *Duty Free*, 797 F.3d at 1278.

series of retail stores (the "Retail Defendants") and mentions some "unknown suppliers" (the "Supplier Defendants"), it fails to allege with specificity that either is directly responsible for "us[ing] in commerce . . . [a] false or misleading description of fact, or false or misleading representation of fact" as required under the Lanham Act. 15 U.S.C. § 1125(a)(1). The Complaint gives only passing reference to "[u]nscrupulous supplement manufacturers," (Compl. at ¶ 67), who *may* be responsible for such conduct, and thus alleges none of the facts necessary to establish direct Lanham Act liability for any third party. *See Seoul Laser Dieboard Sys. Co., Ltd. v. Serviform, S.r.l.*, 957 F. Supp. 2d 1189, 1200 (S.D. Cal. 2013) (requiring "the plaintiff to plead the 'time, place, and specific content of the false representations,' the identities of the parties to the misrepresentation, and what about the statement is claimed to be misleading.")

In addition, the second prong of *Duty Free* is not alleged with adequate specificity because the Complaint lacks facts evincing that the Stores "actively and materially furthered the unlawful conduct." *Duty Free*, 797 F.3d at 1277. It is not alleged, for example, that the Stores "controlled," "monitored," or even "encouraged" the false advertising. *Id.* at 1278. The Complaint, moreover, makes no reference to "a clear contractual power" the Stores could exercise to stop the false advertising, or any extensive communications with these unknown third parties "regarding the false advertising." *Id.* at 1278.

At most, the Complaint states that the Stores "knew" there was false advertising, (Compl. at ¶¶ 8, 155), but even the allegations of that requisite "state of mind" are lacking in specificity. *Duty Free*, 797 F.3d at 1277. The Complaint does not allege, for example, "how" or "when" each store defendant came to know that the specific products they sold contained false advertising. *See Bobbleheads.com, LLC*, 259 F. Supp. 3d at 1095. The Complaint also does not allege which FDA announcements supposedly put the Stores on notice. Rather, the Complaint offers blanket statements lacking the necessary specificity to establish a claim for contributory liability as to each store, including that the Stores "have knowingly and materially participated in a false and misleading advertising

15

campaign to promote and sell their Rhino Products" and that the "recent laboratory analyses by the FDA and otherwise have confirmed that the Rhino Products unlawfully contain hidden drug ingredients, such as sildenafil." (Compl. at ¶¶ 153, 155.)

Consequently, the Court finds that the Complaint fails to make out the elements of contributory liability as defined in *Duty Free* with adequate specificity.

### c.   Outlaw's Allegations Fall Short of *ADT Sec. Servs.*

The Court also analyzes Outlaw's Complaint in light of the co-existing test for contributory liability set out in *ADT Sec. Servs*. There, the Northern District of California held that a Party may plead a false advertising claim for contributory liability if it is shown that the defendant "(1) intentionally induced the primary Lanham Act violation; or (2) continued to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *ADT Sec. Servs., Inc. v. Sec. One Int'l, Inc.*, No. 11-CV-05149-YGR, 2012 WL 4068632, at *3 (N.D. Cal. Sept. 14, 2012). "Although the tests in *Duty Free* and *ADT Sec. Servs.* are different, the same theory animates both: the party accused of contributorily infringing essentially drives the infringing party's conduct." *Genus Lifesciences Inc. v. Lannett Co., Inc.*, 378 F. Supp. 3d 823, 849 (N.D. Cal. 2019).

Simply put, the Court's reasoning as to the *Duty Free* test applies with equal force here. Because the Complaint fails to allege with adequate specificity that the Stores drove the false advertising, or that the Stores knew the packing to contain false statements, it cannot satisfy the requirements of *ADT Sec. Servs*. Also, because Outlaw fails to allege the "infringing party," whomever that may be, was "induced" by the Stores to falsely advertise the Rhino Products, the Complaint fails to state a claim under *ADT Sec. Servs*.

### C. The False Advertising Law Claim.

Plaintiff brings another claim under California's False Advertising Law ("FAL"). Cal. Bus. & Prof. Code § 17500. Claims pursuant to the FAL are subject to the heightened pleading requirements of Rule 9(b). *See Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1123 (C.D. Cal. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

1097, 1106 (9th Cir. 2003)) (citing a complaint must plead "'the who, what, when, where, and how' of the misconduct charged" under the FAL). Here, Plaintiff's allegations under the FAL are deficient as to Plaintiff's standing to sue, the Stores' liability, and the FAL's permissible remedies.

### 1. Outlaw's Standing to Sue.

As a threshold issue, the Stores assert that Outlaw lacks "standing" to sue under the FAL because it "does not (and cannot) allege [that] it relied on the Stores' supposed misrepresentations." (ECF No. 168-1 at 14.) Outlaw does not address the Stores' standing argument. "Under Ninth Circuit precedent, the Court therefore may consider Plaintiff to have conceded the issue." *Pub. Watchdogs v. S. California Edison Co.*, No. 19-CV-1635-JLS, 2019 WL 6497886, at *6 (S.D. Cal. Dec. 3, 2019); *see Carrillo v. Fargo*, No. CV-16-02330-VAP, 2016 WL 11002363, at *4 (C.D. Cal. Dec. 27, 2016) (dismissing a state law claim where "Plaintiffs do not respond to Defendants' arguments that they fail to state a claim"). Nonetheless, even if Outlaw had contested standing, the Complaint does not adequately allege a required component of statutory standing: reliance.

"In 2004 . . . the voters of California passed Proposition 64, which restricts standing for individuals alleging UCL and FAL claims to persons who have suffered injury in fact and have lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quotation omitted); *see also* Cal. Bus. & Prof. Code § 17535. "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011) (quotation omitted). Consequently, to allege a claim under the FAL, "a plaintiff must show that the misrepresentation was an immediate cause of the injury-producing conduct." *Id.* at 327 (quoting *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009)). However, "[n]o California courts have explicitly considered whether third party reliance is sufficient to sustain a false advertising claim between competitors." *Youngevity Int'l,*

*Corp. v. Smith*, 224 F. Supp. 3d 1022, 1031 (S.D. Cal. 2016), *modified on reconsideration,* No. 16-CV-00704-L, 2016 WL 7626585 (S.D. Cal. Dec. 9, 2016) (quotation omitted). Among the federal courts to have considered the issue, the "majority approach" has been to require that the plaintiff plead its own reliance. *Id.*

Here, Plaintiff attempts to plead standing under the FAL by alleging that the Stores' customers purchased Rhino Products in reliance on the packaging's statements, and therefore decided not to purchase Outlaw's competitor products, "TriSteel" and "TriSteel 8hour." (Compl. at ¶ 146 (noting that the packaging "is likely to influence a *consumer's* purchasing decision") (emphasis added).) In the absence of any argument to the contrary from Outlaw, this Court adopts the majority approach and finds the FAL requires a plaintiff to plead their own reliance on the subject statements, not that of their customers. Consequently, Outlaw fails to allege standing under the FAL.

### 2. The Stores' Liability for Falsely Advertised Retail Products.

Outlaw alleges that Defendants "make numerous false and misleading representations regarding the Rhino Products," including mislabeling the Rhino Products as "dietary supplements," containing "no chemicals," using an "all natural herbal formula," and requiring "no prescription." (Compl. at ¶ 142.) Plaintiff likewise alleges that Defendants' "fail[ure] to disclose that the Rhino Products contain prescription drug ingredients" violates the FAL. (Compl. at ¶ 144.) The Stores respond that the FAL claim fails because "the Complaint does not allege the Stores did anything other than sell the Rhino products." (ECF No. 168-1 at 13) (quotations omitted). In response, Outlaw offers that, because the Stores' argument fails as to the Lanham Act claims, the FAL claim likewise survives. (ECF No. 175 at 13–14.)

Here, the Stores have the better argument. "California's False Advertising Law makes it unlawful for any person to 'induce the public to enter into any obligation' based on a statement that is 'untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 867 (9th Cir. 2018) (quoting *Davis v. HSBC Bank Nevada,*

*N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012)). "Whether an advertisement is misleading is determined by asking whether a reasonable consumer would likely be deceived." *Id.* at 867–68. And, "[a] defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500." *Emery v. Visa International Service Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (quotation omitted).

The Complaint does not adequately allege that the Stores "personally participat[ed]" in creating the advertisements on the Rhino Products' packaging or that the Stores had "unbridled control" over the packaging. As discussed with respect to the Lanham Act claim, the Complaint alleges only that unknown manufacturers created the Rhino Products (and their packaging), and that the Stores re-sell the products without the use of additional advertising including, for example, online advertisements or in-store displays.[11] The Complaint leverages the same factual allegations in support of the FAL claim and the Lanham Act claim, (Compl. at ¶¶ 67–131), and those allegations specific to both claims are likewise very similar. *Compare* (Compl. at ¶¶ 140–49) *with* (Compl. at ¶¶ 150–160.) As such, Outlaw's Complaint fails to allege that the Stores are directly liable under the FAL.

In addition, "the 'concept of vicarious liability has no application to actions brought under the unfair business practices act.'" *In re Jamster Mktg. Litig.*, No. 05-CV-0819-JM, 2009 WL 1456632, at *8 (S.D. Cal. May 22, 2009) (quotation omitted); *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 809 (9th Cir. 2007) (finding that defendant could not be "secondarily liable under California unfair competition and

---

[11] Again, as with the Lanham Act claim, Plaintiff's FAL claim is not saved by the conclusory allegation that "Defendants introduced their false and misleading statements into California via marketing and advertising on various websites and shipment of its product containing false and misleading advertising into California." (Compl. at ¶ 147.) This allegation fails to specificity the "who, what, when, where, and how" of the Stores' alleged misconduct as required of Rule 9, *Yumul*, 733 F. Supp. 2d at 1123, and seems targeted only at the Supplier Defendants as they would be the ones conducting the alleged "shipment[s]." (*Cf.* Compl. at ¶ 72.)

19

false advertising laws" for another entity's conduct). Consequently, Outlaw also cannot impute liability for the Rhino Products' packaging to the Stores as the Stores "played no part in preparing . . ." the packaging that allegedly contains the "untrue or misleading" statements. *See RPost Holdings, Inc. v. Trustifi Corp.*, No. CV 11-2118-PSG, 2011 WL 4802372, at *6 (C.D. Cal. Oct. 11, 2011).

Lastly, the Stores cannot be held liable for failing to investigate and disclose the falsity of the statements on the Rhino Products' packaging. *See Parent v. Millercoors LLC*, No. 3:15-CV-1204-GPC, 2016 WL 3348818, at *7 (S.D. Cal. June 16, 2016) ("In the context of false advertising, there is no duty to investigate the truth of statements made by others."); *accord Yordy v. Plimus, Inc.*, No. 12-CV-00229-TEH, 2014 WL 1466608, at *3 (N.D. Cal. Apr. 15, 2014) (quotation omitted).

Ultimately, as the Court found with respect to the Lanham Act claim, *see* §§ II.B.2–3 *supra*, Plaintiff's FAL claim fails. *See also R & A Synergy LLC v. Spanx, Inc.*, No. 2:17-CV-09147-SVW, 2019 WL 4390564, at *15 (C.D. Cal. May 1, 2019) (concurrently dismissing an FAL claim with a deficient Lanham Act claim where the state law claim "reallege[d] the same facts and reassert[ed] the same arguments as . . . [the] Lanham Act claims"). And, that is no surprise given that the FAL is "substantially congruent" to the Lanham Act. *Quidel Corp. v. Siemens Med. Sols. USA, Inc.*, No. 16-CV-3059-BAS, 2019 WL 5320390, at *4 (S.D. Cal. Oct. 21, 2019) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994)).

### 3.   Outlaw's Available Remedies Under the FAL.

The Stores also take issue with Outlaw's pled remedies. (ECF No. 168-1 at 19–21.) Outlaw seeks compensation for "an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants." (Compl. at ¶ 148.) However, the "recovery of damages is not authorized" under the FAL. *Buckland v. Threshold Enterprises*, *Ltd.*, 155 Cal. App. 4th 798, 819 (2007), *as modified* (Oct. 22, 2007), and *disapproved of on other grounds by Kwikset Corp.*, 51 Cal. 4th at 310. Instead, "remedies for individuals under the FAL are limited to restitution and injunctive

relief . . ." *Id.*; *see also Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, No. S250047, 2020 WL 2107914, at *10, *20–24 (Cal. Apr. 30, 2020) (describing the FAL at length as an equitable action whose remedies are limited to injunctive relief and restitution, except where the Attorney General seeks additional penalties).

In terms of equitable relief, Outlaw seeks "restitution of all Defendants' ill-gotten gains," (Compl., Prayer for Relief, at ¶ 2), and "preliminary and permanent injunctive relief enjoining Defendants from producing, licensing, marketing, and the Rhino Products." (Compl., Prayer for Relief, at ¶ 1.) As with damages, "Defendants' ill-gotten gains" are unavailable under the FAL because this necessarily "includes nonrestitutionary disgorgement." *Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635, at *8 (N.D. Cal. Dec. 13, 2012) (granting motion to dismiss, in part, because of plaintiff's improper request for "all ill-gotten gains"); *see also L.A. Taxi Coop., Inc. v. Uber Techs., Inc.*, 114 F. Supp. 3d 852, 867 (N.D. Cal. 2015) (finding that a taxi cooperative failed to allege restitution as to its FAL and UCL claims against Uber because the complaint did "allege an ownership interest in any of [Uber's] profits or a 'confirmed' contractual relationship with any of Uber's customers").

On the other hand, an injunction is permissible under the FAL. Thus, if Plaintiff were to adequately allege that the Stores "produc[ed], licens[ed], market[ed]" the Rhino Products in violation of the FAL, then an injunction against such conduct would seem permissible and adequately pled at this time. (Compl., Prayer for Relief, at ¶ 1.) Consequently, while the FAL claims are deficient for a number of reasons, the Court finds that an available remedy would exist under the FAL in the form of injunctive relief.

## D. The Unfair Competition Law Claims under the "Fraudulent" and "Unlawful" Prongs.

Plaintiff's also brings a cause of action under California's Unfair Competition Law ("UCL"). Cal. Bus. & Prof. Code § 17200. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial*

*of reh'g and reh'g en banc* (July 8, 2013). "Because Business & Professions Code § 17200 is written in the disjunctive, it establishes three varieties of unfair competition— acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, Plaintiff alleges that the Stores have violated each prong of the UCL and the Stores move for judgment on the pleadings under the "fraudulent" and "unlawful" prongs, only. (ECF No. 168-1 at 15–18.)

### 1.   The "Fraudulent" Prong

Plaintiff's UCL claim under the "fraudulent" prong is governed by the pleading requirements of Rule 9. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)) (noting, with reference to claim arising under the UCL that, if "the claim is said to be 'grounded in fraud' . . . the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).")

"A fraudulent business practice is one in which members of the public are likely to be deceived." *Morgan v. AT & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1254 (2009). Plaintiff alleges that "Defendants have engaged in fraudulent conduct by way of their false, deceptive, and misleading marketing, advertising, and sale of the Rhino Products . . ." (Compl. at ¶ 134.) However, a Defendant cannot be held liable under the UCL merely "for placing the falsely advertised Products on the shelf" and Plaintiff's allegations do not show that the "Retailer Defendants somehow participated in, controlled, or adopted the deceptive advertising." *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1012 (S.D. Cal. 2011). Plaintiff's allegations, moreover, fail to identify conduct by the Stores that adopts and furthers the advertising included in the Rhino Products' packaging. *See, e.g.*, *Dorfman v. Nutramax Labs., Inc.*, No. 13-CV0873-WQH, 2013 WL 5353043, at *14 (S.D. Cal. Sept. 23, 2013) (finding retailer defendant could be liable under the UCL where the defendant sold the products in their stores, entered into sales agreements with the manufacturer, provided pictures of the

deceptive packaging, and made statements on their website with misleading labeling).[12] And, the Stores have no affirmative obligation to investigate and disclose falsity as to the statements on a product's packaging. *See Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1169 (E.D. Cal. 2013) ("Failure to take on the role of 'global policeman' is insufficient to support liability under the UCL.")

In addition, as with Outlaw's FAL claim, Plaintiff's claim for false advertising under the UCL's fraudulent prong fails the standing requirement. *See U.S. Legal Support, Inc. v. Hofioni*, No. CIV. S-13-01770-LKK, 2013 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013) (finding claim fails for lack of reliance where "Plaintiff is not a consumer of Defendants' services"); *cf. Heartland Payment Sys., Inc. v. Mercury Payment Sys., LLC*, No. C 14-0437 CW, 2015 WL 3377662, at *7 (N.D. Cal. Feb. 24, 2015) (where competitor pled standing by alleging that it "lower[ed] its fees in order to compete" in reliance on the defendant's misrepresentations).

Consequently, as with the FAL and the Lanham Act, Plaintiff fails to state a claim for which relief can be granted under the UCL's fraudulent prong by alleging a scheme of false advertising. *See JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 996 n.4 (C.D. Cal. 2014) (noting that UCL is "substantially congruent" to the Lanham Act).

### 2.   The "Unlawful" Prong.

With respect to the UCL's "unlawful" prong, the Court considers whether the Plaintiff alleges an unlawful business practice, i.e., anything that can be called a business practice and that is forbidden by law. *Ticconi v. Blue Shield of Cal. Life & Health Ins.*,

---

[12] Again, as with the Lanham Act and FAL claims, Plaintiff's UCL fraud claim is not saved by the conclusory allegation that "Defendants introduced their false and misleading statements into California via marketing and advertising on various websites and shipment of its product containing false and misleading advertising into California." (Compl. at ¶ 138.) This allegation fails to specificity the who, what, when, where, and how of the Stores' alleged misconduct as required by Rule 9, *cf. Dorfman*, 2013 WL 5353043, at *3 (listing the specific statements placed on defendant's website), and seems targeted only at the Supplier Defendants as they would be the ones conducting the alleged "shipment[s]." (*Cf.* Compl. at ¶ 72.)

160 Cal. App. 4th 528, 539 (2008). Any federal, state or local law can serve as a predicate for an unlawful business practice action. *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 718 (2001). Thus, the UCL incorporates violations of other laws and treats them as unlawful practices independently actionable under the UCL. *Id.*; *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).

Plaintiff alleges that "Defendants have engaged in unlawful conduct by selling pharmaceuticals without a prescription." (Compl. at ¶ 134; *see also* ECF No. 175 at 14–15.) The Stores respond that Outlaw fails to state a claim because it "identifies no 'statute' or law the Stores supposedly violated by doing nothing other than sell Rhino Products that may or may not contain prescription ingredients." (ECF No. 168-1 at 18.)

Here, the Stores' argument is more persuasive. Outlaw cites to FDA notices warning the public against consuming Rhino Products and explains the adverse side-effects of consuming sildenafil. (Compl. at ¶¶ 67–71, 77–78; *see also* ECF No. 114-1.) Outlaw, however, does not "identify the particular section of [any] statute that was violated" by the Stores' sale of the Rhino Products or "describe with reasonable particularity the facts supporting the violation." *See LegalForce RAPC Worldwide P.C. v. UpCounsel, Inc.*, No. 18-CV-02573-YGR, 2019 WL 160335, at *13 (N.D. Cal. Jan. 10, 2019) (quoting *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016)); *see also Bros. v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2006 WL 3093685, at *7 (N.D. Cal. Oct. 31, 2006); *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 619 (1993).

Accordingly, Outlaw fails to state a claim for which relief can be granted under the UCL's "unlawful" prong.

### 3. Remedies.

Lastly, the Stores claim that the UCL does not provide for Outlaw's sought-after remedies. (ECF No. 168 at 18–20.) As with the FAL claim, Plaintiff seeks damages in the form of "an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendants." (Compl. at ¶ 139.) Plaintiff also

seeks equitable relief in the form of "a preliminary injunction and a permanent injunction against further unlawful and unfair conduct by Defendants," (Compl. at ¶ 135; *see also* Compl., Prayer for Relief, at ¶ 1), and "restitution of all Defendants' ill-gotten gains." (Compl., Prayer for Relief, at ¶ 2.)

"[D]amages cannot be recovered pursuant to a UCL claim." *A White & Yellow Cab, Inc. v. Uber Techs., Inc.*, No. 15-CV-05163-JSW, 2017 WL 1208384, at *10 (N.D. Cal. Mar. 31, 2017) (citation omitted). Instead, Plaintiff is limited to "seeking an injunction against unfair business practices" or, in the context of "[a]ctual direct victims of unfair competition," restitution. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1152 (2003); *see also U.S. Legal Support, Inc. v. Hofioni*, No. CIV. S-13-01770-LKK, 2013 WL 6844756, at *15 (E.D. Cal. Dec. 20, 2013) ("It is well-settled that the UCL provides only equitable remedies, typically in the form of injunctive relief and restitution.").

Consequently, Plaintiff fails to allege a recoverable remedy here outside of an injunction. Per the Complaint, Plaintiff is only *indirectly* harmed vis-a-vis the false advertising through the alleged loss of potential customers to the Stores, and thus Plaintiff's monetary requests cannot be described as "restitution" under the UCL. *See Korea Supply Co.*, 29 Cal. 4th at 1149 (quoting *Kraus v. Trinity Mgmt. Servs., Inc.*, 23 Cal. 4th 116, 126–27 (2000)) (defining restitution as "compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken . . ."). On the other hand, an injunction is permissible under the UCL in the event that Plaintiff prevails under the "unfairness" prong of the UCL. (Compl., Prayer for Relief, at ¶ 1.)

Consequently, the Court finds that Outlaw's sought-after remedies are inadequately pled under the UCL, with the exception of a potential injunction of conduct that violates the UCL "unfairness" prong.

/ / /

/ / /

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.   Conclusion.**

For the foregoing reasons, the Court **GRANTS** the Motion for Judgment on the Pleadings with respect to the Lanham Act cause of action, the FAL cause of action, and the claims for "fraudulent" and "unlawful" conduct under the UCL cause of action. (ECF No. 168.) Dismissal is **WITH PREJUDICE** and **WITHOUT LEAVE TO AMEND**, as (1) Outlaw's failure to amend the Complaint nearly two years after filing it evinces undue delay, (2) any amendment to these claims would be futile under the respective legal standards, and (3) granting leave to amend at this stage in the litigation would create undue prejudice to the Defendants.

Nonetheless, Outlaw's UCL cause of action survives insofar as it alleges a claim for "unfair" conduct.

**IT IS SO ORDERED.**

Dated:  May 29, 2020

Hon. Gonzalo P. Curiel
United States District Judge

3:18-CV-0840-GPC (consolidated with 3:18-CV-1882)