UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORIES, LP LITIGATION, | Case No.:  18CV840 GPC (BGS)<br><br>**ORDER REGARDING JUNE 1, 2020 JOINT LETTER BRIEFS** |

Counter-claimant Roma Mikha and Third-Party Plaintiff NMRM, Inc. and Skyline Market, Inc. (collectively the "Stores") and Plaintiff Outlaw Laboratories, LP ("Outlaw") submitted a joint letter brief on June 1, 2020.  (Exhibit 1.)  The Stores and Third-Party Defendant Tauler Smith ("Tauler Smith") also submitted a joint letter brief on June 1, 2020.  (Exhibit 2.)

The joint letter briefs concern requests for production of documents ("RFPs") from the Stores to Outlaw and Tauler Smith.[1]  The primary issue raised by Tauler Smith and Outlaw is that the RFPs seek privileged attorney-client communications.  The Stores

---

[1] The Stores and Tauler Smith raise disputes as to RFP Nos. 18, 19, 21, 24, 25.  The Stores and Outlaw raise disputes as to RFP Nos. 19, 20, 22, 25, and 31.

1

argue any claims of privilege are vitiated by the crime-fraud exception. However, Outlaw indicates there are also non-privilege objections to the RFPs. Additionally, the Stores' and Outlaw's joint letter brief raise three interrogatories (Nos. 3, 7, and 8) that the Court previously found Outlaw was not required to respond to because they were cumulative of a document production. Outlaw concedes it has not been able to fully respond to that document production, but argues it would not be able to respond because it lacks information needed to respond. Given these settlement agreements were ordered to be produced by March 20, 2020, this dispute may also be untimely.

The Stores and Outlaw recently filed a Joint Statement addressing whether certain documents are subject to privilege and whether the crime fraud exception applies to them. (ECF 214.) The Stores' portion of that Joint Statement indicates that "whether the documents are exempt from privilege claims under the 'crime fraud exception' . . . is central to numerous ongoing discovery disputes between the litigants, so resolution of it now will provide much-needed guidance, hopefully obviating the need for future motions." (*Id.* at 11.[2])

Based on the two joint letter briefs and pending discovery dispute on attorney-client privilege and the application of the crime-fraud exception, the Court addresses the privilege issues and other issues separately.

As to any non-privilege objections that have been raised by Outlaw or Tauler Smith regarding the RFPs identified in the joint letter briefs, the parties must file a Joint Statement addressing the relevancy of the identified RFPs, whether they are proportional under Federal Rule of Civil Procedure 26(b)(1), and any non-privilege objections raised in response. To the extent the parties have not fully met and conferred regarding these issues, they must do so prior to submitting the Joint Statement. Outlaw and Tauler Smith are limited to five pages each on these issues and the Stores' portion on these issues is

---

[2] The Court cites the CM/ECF pagination.

limited to eight pages total if both Tauler Smith and Outlaw have raised non-privilege objections and seek to brief the issues. If only Outlaw has raised non-privilege objections they seek to brief, then the Stores are limited to five pages. As to the Stores Interrogatories 3, 7, and 8 to Outlaw, the Stores and Outlaw may provide one page of briefing each on these interrogatories and the timeliness of raising this dispute. The Joint Statement must be submitted by **June 10, 2020**.[3]

As to the privilege issues, the parties must meet and confer on whether the privilege issues raised in the joint letter briefs overlap with the issues raised in the pending Joint Statement. The parties must consider whether the Court's decision on the pending Joint Statement would resolve, moot, or otherwise narrow the issues raised in the two joint letter briefs. These positions should be included in the June 10, 2020 Joint Statement. Each party is limited to one concise paragraph explaining their position. This portion of the Joint Statement should not exceed two pages total.

**IT IS SO ORDERED.**

Dated: June 4, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge

---

[3] The Court again reminds the parties that the Court expects the Joint Statement set forth each parties' arguments and their responses to the other parties' positions. This requires exchanging their respective positions in advance of filing.

Exhibit 1

**GAW | POE LLP**

4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: (415) 766 7451
Fax: (415) 737 0642

**VIA EMAIL**

June 1, 2020

Magistrate Judge Skomal
United States Courthouse
333 West Broadway
San Diego, CA 92101

Re: *In re Outlaw Laboratory, LP Litig.*, No. 18-cv-840-GPC-BGS

Dear Chambers of Judge Skomal:

Pursuant to the Court's May 4, 2020 Order, the Stores and Outlaw Laboratory submit this joint three-page statement of a discovery dispute regarding Outlaw's responses to five document requests from the Stores' second set of document requests.

The current fact discovery deadline is June 1, 2020. The Stores served this discovery on April 16, 2020, and Outlaw timely served its responses on May 18, 2020. The Stores' counsel emailed Outlaw's counsel seeking to meet and confer on Thursday, May 21, and Outlaw's counsel agreed to meet and confer on that same day. Following the parties' conference of counsel, the Stores have dropped five of the ten requests on which they sought to meet and confer, but five disputed requests remain, along with an issue that has re-surfaced from this Court's March 5 order on the Stores' prior motion to compel.

The Stores' Position

The requested documents generally concern the origins and funding of the alleged Outlaw Enterprise:

- **RFP No. 19** asks for communications between Outlaw and the Pulaski Law Firm, which provided at least $1.3 million in funding to Outlaw and/or Tauler Smith to fund the Enterprise;
- **RFP No. 20** seeks communications between Outlaw and Pulaski or Tauler Smith related to actual or potential lost sales of Outlaw's putative "TriSteel" product, which was nominally the vehicle for demanding payments from the members of the classes;
- **RFP No. 22** seeks communications between those same parties related to any pharmacological testing of the supposedly competing products sold by the Stores;
- **RFP No. 25** seeks communications between Outlaw and Tauler Smith related to Outlaw's decision to retain Tauler Smith;
- **RFP No. 31** seeks any agreements between Outlaw and Pulaski about the project.

All of these requested documents will help illuminate the fundamental question in this dispute: Whether the Outlaw Enterprise was created for the legitimate purpose of trying

1

GP GAW | POE LLP

4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: (415) 766 7451
Fax: (415) 737 0642

to protect and bolster Outlaw's sales of its nominally competing product "TriSteel," or whether it was envisioned strictly as a money-getting scheme to defraud the class members. **RFP No. 20** will show whether there were ever any communications between Outlaw, Tauler Smith, and Pulaski about actual or potential lost sales of TriSteel. Similarly, **RFP No. 22** will prove or disprove whether the Enterprise had any regard for whether the recipients of the Demand Letter were *actually* selling tainted pills, or whether the letters were sent "without regard to and regardless of [their] merits" as to each individual store. (*See* Order Denying Mot. to Dismiss at 16 [ECF No. 56].)

**RFP No. 25** concerns Outlaw's decision to retain Tauler Smith. As noted in the joint filing made on May 29 (ECF No. 214 at 7-8), Tauler Smith had previously represented a company called JST Distribution in a very similar scheme. Outlaw's May 18 interrogatory responses state that Outlaw's project was merely a transition from the JST project, whereby "Outlaw obtained the information JST Distribution had gathered." **RFP Nos. 19** and **31** seek Outlaw's communications and agreement with Pulaski over its funding of the scheme, which will show that this was fundamentally a scheme to defraud.

Outlaw's primary objection to producing these documents is based on attorney-client privilege and the work-product doctrine. For the same reasons set forth at length in these litigants' May 27 joint filing (ECF No. 214 at 6-10), the Stores have more than laid out a "prima facie" case to give the Court "reasonable cause to believe" that all of these communications where made "in furtherance of the ongoing unlawful scheme," such that these claims of privilege are vitiated by the crime-fraud exception. *Cohen v. Trump*, No. 13-CV-2519-GPC WVG, 2015 WL 3617124, at *12 (S.D. Cal. June 9, 2015).

Lastly, the Court held that **if** Outlaw produces all of the settlement agreements, it need not respond to Rogs. 3, 7, and 8. (ECF No. 177 at 33.) Outlaw has not produced anywhere close to all of the settlements, so it must respond to these interrogatories. The Stores recognize footnote 1 in today's order (ECF No. 215), but the Stores did not immediately file a motion on March 20, in the spirit of being cooperative with Outlaw (given that it was in the process of producing settlements) and in hopes of avoiding an unnecessary motion. As Mr. Reagan indicates in the last paragraph below, it was not until May when it became clear that Outlaw could not produce all the settlements, despite its efforts. The Stores therefore respectfully suggest that this request is either timely under the 30-day rule, or that good cause exists for the Stores to still seek a ruling on this discrete issue.

Outlaw's Position

To begin, Outlaw asserted non–privilege objections to each of the requests identified above. The Stores ignore these objections. Regardless, each of the requests identified above patently seeks privileged attorney–client communications that are protected from disclosure.

**RFP No. 19** asks for all communications between Outlaw and the Pulaski Law Firm without any limitation as to time or scope. The Stores literally want each and every communication between a client and the law firm that funded their litigation activities—including communications exchanged by these parties in defending this very litigation. These communications are the epitome of privileged communications and are not subject to disclosure. For the same reasons, **RFP No. 31** seeks privileged material. The undersigned is unaware of any case requiring a litigant to disclose how it paid for its litigation costs.

**RFP No. 20 and RFP No. 22** likewise ask for attorney–client communications. But the Stores can simply question the Outlaw witnesses during their depositions about any lost sales. And the Stores can question the Outlaw witnesses during their depositions about any testing. Further, testing results have been produced by Outlaw. So, the Stores can obtain much of this information without destroying the attorney–client privilege. Regardless, it is axiomatic that the Stores cannot disregard the attorney–client privilege and seek all communications between Outlaw and its attorneys about their litigation strategy.

**RFP No. 25** is another improper attempt by the Stores to invade the attorney–client privilege. Communications between a client and its attorney about the client hiring the attorney are obviously privileged. And, again, the Stores can simply ask the Outlaw witnesses why they hired Tauler during their depositions. There is no need to destroy privilege.

At bottom, the Stores cannot pierce the attorney–client privilege merely because some lawyer misstated the law in a demand letter. This is not a RICO case. And this is not a case where the attorney–client privilege—one of the oldest privileges and the bedrock for effective representation—can be eviscerated by the Stores merely surviving dismissal at the pleadings stage. The Stores' requests are overbroad, improper, and abusive. Even if they were not, the attorney–client privilege protects the documents being sought from disclosure.

As for the Stores' complaints about settlement agreements, the undersigned produced each settlement agreement he was able to obtain from Outlaw's other attorneys. The undersigned has no idea whether it is a complete production of the settlement agreements, but suspects that it is not. It appears that additional settlement agreements and settlement information are in Tauler Smith's possession. Tauler Smith has refused to confirm whether it produced all settlement agreements, and it has refused to give Outlaw an accounting of the settlements despite multiple requests by the undersigned. So, even if Outlaw were ordered to respond, it couldn't do so because it lacks the information to do so.

Respectfully submitted,

/s/ *Mark Poe*
Mark Poe, counsel for the Stores

3



4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: (415) 766 7451
Fax: (415) 737 0642

/s/ *Sean Reagan*
Counsel for Outlaw Laboratory, Michael Wear, and Shawn Lynch

Exhibit 2

**GAW | POE LLP**

4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: (415) 766 7451
Fax: (415) 737 0642

**VIA EMAIL**

June 1, 2020

Magistrate Judge Skomal
United States Courthouse
333 West Broadway
San Diego, CA 92101

Re: *In re Outlaw Laboratory, LP Litig.*, No. 18-cv-840-GPC-BGS

Dear Chambers of Judge Skomal:

Pursuant to the Court's May 4, 2020 Order, the Stores and Tauler Smith submit this joint three-page statement of a discovery dispute regarding Tauler Smith's responses to five of the Stores' document requests.

The current fact discovery deadline is June 1, 2020. The Stores served this discovery on April 16, 2020, and Tauler Smith timely served its responses on May 18, 2020. The Stores' counsel emailed Tauler Smith's counsel that same day seeking to meet and confer. The parties met and conferred on May 21 concerning Tauler Smith's responses to eleven of the Stores' document requests, four interrogatories, and five requests for admission. On May 27 Tauler Smith supplemented its responses to the four interrogatories, the five requests for admission, and three of the document requests. However, five disputed document requests remain.

The Stores' Position
The requested documents concern the origins and operation of the Outlaw Enterprise:

- **RFP No. 18** asks for Tauler Smith's communications with Outlaw or the Pulaski Law Firm, relating to Pulaski's provision of at least $1.3 million in funding to Outlaw and/or Tauler Smith to fund the Enterprise;
- **RFP No. 19** seeks communications with Outlaw or Pulaski related to actual or potential lost sales of Outlaw's putative "TriSteel" product, which was the vehicle by which the Enterprise threatened the classes;
- **RFP No. 21** seeks communications between with Outlaw or Pulaski related to any pharmacological testing of the supposedly competing products sold by the Stores;
- **RFP No. 24** seeks communications between Outlaw and Tauler Smith related to Outlaw's decision to retain Tauler Smith for this project;
- **RFP No. 25** seeks any notes taken by Tauler Smith relating to telephonic calls it had with members of the classes;

As with the requests that the Stores seek to enforce against Outlaw in a contemporaneous letter, all of these requested documents will help resolve the fundamental question in this

1

GAW | POE LLP

4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: (415) 766 7451
Fax: (415) 737 0642

dispute: Whether the Outlaw Enterprise was created for the legitimate purpose of trying to protect and bolster Outlaw's sales of its nominally competing product "TriSteel," or whether it was envisioned strictly as a money-getting scheme to defraud the class members. **RFP No. 19** for example, will show whether there were ever any communications between Outlaw, Tauler Smith, and Pulaski about actual or potential lost sales of TriSteel. Similarly, **RFP No. 21** will show whether the Enterprise investigated whether the recipients of the Demand Letter were *actually* selling tainted pills, or whether the letters were sent "without regard to and regardless of [their] merits" as to each individual store. (*See* Order Denying Mot. to Dismiss at 16 [ECF No. 56].)

**RFP No. 24** concerns Outlaw's decision to retain Tauler Smith. As noted in the joint filing made on May 27 (ECF No. 207 at 7-8), Tauler Smith had previously represented a company called JST Distribution in a very similar scheme. Outlaw's May 18 interrogatory responses state that this scheme was merely a transition from that one, whereby "Outlaw obtained the information JST Distribution had gathered." **RFP No. 25** seeks Tauler Smith's notes logging its communications with the recipients of the Demand Letters, which will also illuminate whether the Enterprise had any concern for impacts on TriSteel, or whether the project was strictly a money-getting enterprise. The Court has already ordered Outlaw to produce its written communications with the class members. (*See* Order Granting in Part Mot. to Compel at 22-25.)

Tauler Smith's primary objection to producing these documents is based on attorney-client privilege and the work-product doctrine. For the same reasons set forth at length in Outlaw and the Stores' May 27 joint filing (ECF No. 207 at 6-10), the Stores have more than laid out a "prima facie" case to give the Court "reasonable cause to believe" that all of these communications where made "in furtherance of the ongoing unlawful scheme," such that these claims of privilege are vitiated by the crime-fraud exception. *Cohen v. Trump*, No. 13-CV-2519-GPC-WVG, 2015 WL 3617124, at *12 (S.D. Cal. June 9, 2015) (quoting *In re Grand Jury Proceedings*, 87 F.3d at 381 (9th Cir. 1996)).

The Stores respectfully suggest that briefing on this dispute should be combined with briefing on the Outlaw dispute, given the overlap in issues.

Tauler Smith's Position

The Stores seek discovery of clearly privileged materials despite not having made the required evidentiary showing that would justify a finding by the Court that the attorney-client privilege does not apply to the documents at issue. The Stores are not seeking *in camera* review of privileged documents; instead, the Stores seek an order requiring outright disclosure of attorney-client communications. Where the party seeking attorney-client privileged communications seeks outright disclosure of the information, a preponderance of the evidence showing for fraud is required. *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1090, 1094–95 (9th Cir. 2007), abrogated on other grounds by *Mohawk Indust. Inc. v. Carpenter*, 558 U.S. 100 (2009). In that regard, the Stores' citation to the "reasonable belief" standard discussed in *Cohen v. Trump* is inapposite



GAW | POE LLP

4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Phone: (415) 766 7451
Fax: (415) 737 0642

because that standard only applies when the party opposing the privilege requests *in camera* review, which the Stores have not requested. *See Cohen v. Trump,* 2015 WL 3617124, at *12 ("We further hold, however, that before a district court may engage in in camera review **at the request of the party opposing the privilege**, that party must present evidence sufficient to support a reasonable belief that *in camera* review may yield evidence that establishes the exception's applicability.") (quoting *U.S. v. Zolin*, 491 U.S. 554, 574–575 (1989)) (emphasis added). Moreover, even if the Stores had requested *in camera* review, they would be required to present evidence, not merely allegations, based on non-privileged information to support their request. *See Zolin*, 491 U.S. at 575 ("[T]he threshold showing to obtain *in camera* review may be met by using any relevant evidence, lawfully obtained, that has not been adjudicated to be privileged."). But where, as here, the party seeks outright disclosure of the attorney-client privilege, the preponderance of evidence standard governs the analysis. *Napster*, 479 F.3d at 1094–95.

The Stores ignore these applicable evidentiary standards and instead request that the Court find that the attorney-client privilege be vitiated without presenting any evidence that Outlaw utilized Tauler Smith's services to commit fraud. Despite having in its possession over ten thousand pages of documents produced in this case, the Stores are unable to present **any** actual evidence of fraud, apart from rank speculation and innuendo, and instead rely on the unsupported allegations in the Second Amended Counterclaim. (*See generally* ECF No. 214 (an earlier version of the joint motion, ECF No. 207, is cited by the Stores above.)[1] The Stores also distort an interrogatory response from Outlaw and incorrectly claim that it states that Outlaw admitted that JST had engaged in a "scheme" similar to the one alleged in the SACC. The interrogatory response says nothing of the sort. (ECF 214 at p. 9.)

The documents the Stores seek are clearly privileged and work-product. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996) ("The attorney–client privilege applies to communications between lawyers and their clients when the lawyers act in a counseling and planning role, as well as when lawyers represent their clients in litigation."); *see also United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989) (the attorney-client privilege may cover "communications made to agents of an attorney ... hired to assist in the rendition of legal services."). The Stores have failed to meet their evidentiary burden, and the Court, respectfully, should uphold the privilege. *See Napster*, 479 F.3d at 1095 ("[W]here attorney-client privilege is concerned, hard cases should be resolved in favor of the privilege, not in favor of disclosure…") (citations omitted).

Respectfully submitted,

/s/ *Mark Poe*
Counsel for the Stores

/s/ *David A. Sergenian*
Counsel for Tauler Smith

---

[1] Tauler Smith incorporates by reference the arguments made by Outlaw in the joint motion (ECF No. 214).