UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE OUTLAW LABORATORY, LP LITIGATION.

Case No.: 18-CV-0840-GPC-BGS

**ORDER DENYING MOTION FOR DISQUALIFICATION OF COUNSEL.**

**(ECF No. 191.)**

Before the Court is Tauler Smith, LLP's ("Tauler Smith") motion to disqualify counsel for the Defendants, Gaw | Poe, in connection with counsel's representation of Tauler Smith's former bookkeeper in a separate litigation. Having considered the Parties' papers and the applicable law, the Court **DENIES** Tauler Smith's motion for the reasons below.

## I. Background

### A. The Instant Litigation

The instant litigation arises from two consolidated lawsuits brought by Plaintiff Outlaw Laboratory, LP alleging that convenience and liquor stores (the "Stores") around the San Diego area were falsely advertising sexual enhancement products. (ECF Nos. 1, 28.) During these lawsuits, the Stores filed counterclaims against Outlaw and obtained

leave to add Outlaw's attorneys, the firm of Tauler Smith, LLP, as a third-party defendant to the suit. (ECF Nos. 113, 114.) Now, Tauler Smith seeks to have the Stores' counsel, Gaw | Poe, disqualified for representing a former employee of Tauler Smith in a separate action. (ECF No. 191.)

On April 24, 2020, Tauler Smith filed the motion to disqualify. (*Id.*) On May 20, 2020, Gaw | Poe filed a response. (ECF No. 203). On May 29, 2020, Tauler Smith filed a reply. (ECF No. 212.) Tauler Smith then filed a supplemental brief on June 5, 2020, and Gaw | Poe responded on June 9, 2020. (ECF Nos. 220, 223.) Tauler Smith and Plaintiff Outlaw filed additional supplemental briefs on June 15 and 16, 2020, respectively. (ECF Nos. 227, 228.)[1]

**B. Factual Allegations Relevant to the Motion to Disqualify.**

Tauler Smith's motion to disqualify relies on the following factual allegations. A company named CTRLR, which employs Mr. Joseph Valerio as an independent contractor, acted as Tauler Smith's bookkeeper from 2016 through January 2019. (ECF No. 191-1 at 3.) CTRLR's role included bookkeeping, preparing taxes, and handling all financials for the law firm. (ECF No. 191-2, Decl. of Robert Tauler at ¶ 3.)

In February 2019, CTRLR and Mr. Valerio resigned from Tauler Smith. (ECF No. 203-1, Decl. of Joseph Valerio at ¶ 2.) Upon resigning, Mr. Valerio submitted invoices to Tauler Smith seeking outstanding payment for services rendered, (Valerio Decl. at ¶ 2; ECF No. 212-1, Ex. B), which Tauler Smith disputed. In June 2019, CTRLR filed a small claims court action to collect the outstanding invoices, which CTRLR then amended in December 2019. (Valerio Decl. at ¶ 3.)

---

[1] The Court **GRANTS** Tauler Smith and Outlaw's requests to file successive, supplemental fillings given the allegations therein, and accepts the Stores' response. (ECF Nos. 220, 223, 227, 228.) The Court reminds Tauler Smith and Outlaw that supplemental filings are discouraged. The Court expects that any facts and authorities pertinent to a motion will be included in the movant's opening brief.

On December 16, 2019, Tauler Smith responded in small claims court and filed a limited jurisdiction action[2] against CTRLR (hereinafter, the "CTRLR Action.")[3] (Valerio Decl. at ¶ 3.) Tauler Smith alleged, among other claims, that CTRLR stole and refused to return confidential information. (Tauler Decl. at ¶ 3.) Thereafter, Mr. Valerio hired Gaw | Poe to represent CTRLR in the CTRLR Action. (Tauler Decl. at ¶ 5.) Tauler Smith alleges that "CTRLR purposely sought out the adverse party's counsel Gaw | Poe to represent it in its lawsuit . . . because it was aware of the instant action that Gaw | Poe is prosecuting against [Tauler Smith]." (Tauler Decl. at ¶ 4.) Mr. Valerio's first contact with the firm of Gaw | Poe reportedly occurred on or about December 19, 2019. (Valerio Decl. at ¶ 4.)

Tauler Smith further alleges that Gaw | Poe only agreed to represent CTRLR to gain leverage in this action. (Tauler Decl. at ¶ 5.) Tauler Smith offers three factual allegations in support of that assertion. First, Tauler Smith claims "Gaw | Poe has used information in discovery requests issued on April 17, 2020 that identifies one of TSLLP's financiers, Pulaski law firm, which Gaw | Poe would not know about absent disclosure from CTRLR." (Tauler Decl. at ¶ 7.) Second, Tauler Smith states that Mr. Mark Poe "has sworn under oath that his hourly rate is '$1,000 per hour' and the [CTRLR Action] was filed as a limited jurisdiction case – seeking less than $25,000 in damages." (Tauler Decl. at ¶ 5.) Third, Tauler Smith points to supplemental initial disclosures identifying Mr. Valerio "as likely to be in possession of discoverable information" regarding his "experience working within the Outlaw Enterprise, the operation of the Outlaw Enterprise, and how the various members of the Outlaw Enterprise participated in

---

[2] A limited jurisdiction action is limited to actions where the "amount in controversy does not exceed twenty-five thousand dollars ($25,000)." Code Civ. Proc, § 85(a).

[3] The Parties discuss the underlying CTRLR action and Mr. Valerio's collection efforts in more detail than is summarized here. However, as much of that discussion is irrelevant to the Court's decision, the Court does not set it out here.

conducting its operations." (ECF No. 220-2 at 5–6.) Tauler Smith and Outlaw also point to Mr. Poe's recent declaration stating that Mr. Valerio had access to "software in which Tauler Smith, among other Outlaw-related activities, logged its contacts with the recipients of the Demand Letters." (ECF No. 227-2, Ex. A at ¶ 6; *see also* ECF No. 228.)

Gaw | Poe responds that Attorney Mark Poe has not sworn under oath to charging $1,000/hour. Instead, "Gaw | Poe is charging its clients in this case $0 per hour, while charging Mr. Valerio a different amount . . . out of the sense that without help, the client is likely to get railroaded by lawyers intent on preying upon them." (ECF No. 203 at 12.) Gaw | Poe also offers that it "identifie[d] one of the recipients of a debit from Tauler Smith as 'Pulaski Law Firm, PLLC'" following Outlaw Laboratory's April 10, 2020 production of sixteen pages of documents, including a document titled "Tauler Smith, LLP – Trust Report." (ECF No. 203-1, Poe Decl. at ¶ 2.) Lastly, Gaw | Poe states the disclosure does not evince any misconduct but rather compliance with Rule 26's requirement that it list "each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." (ECF No. 223 at 3 (quoting Fed. R. Civ. P. 26(a), (e)(1)).

## II. Legal Standard for Disqualification

District courts have the inherent authority to disqualify counsel. *See United States v. Wunsch*, 84 F.3d 1110, 1114 (9th Cir. 1996); *Visa U.S.A., Inc. v. First Data Corp.*, 241 F. Supp. 2d 1100, 1103 (N.D. Cal. 2003). In determining whether to disqualify counsel, the Court applies California law. *In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *see also Bona Fide Conglomerate, Inc. v. Sourceamerica*, No. 3:14-CV-00751-GPC, 2016 WL 4361808, at *5 (S.D. Cal. Aug. 16, 2016) (citing Civil Local Rule 83.4(b)) ("Every member of the bar of this court and any attorney permitted to practice in this court shall be familiar with and comply with the standards of professional conduct required of members of the State Bar of California, and decisions of any court applicable thereto, which are hereby adopted as standards of professional conduct of this court.").

"A court should examine a motion to disqualify counsel carefully 'to ensure that literalism does not deny the parties substantial justice.'" *Gotham City Online, LLC v. Art.com, Inc.*, No. C 14-00991-JSW, 2014 WL 1025120, at *2 (N.D. Cal. Mar. 13, 2014) (citing *People ex rel Dept. of Corp. v. Speedee Oil Change Systems, Inc.*, 20 Cal. 4th 1135, 1144 (1999)). Thus, a court must balance such varied interests as a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that "tactical abuse underlies the disqualification motion." *Id.* (citing *Speedee Oil*, 20 Cal. 4th at 1145). "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *O'Gara Coach Co., LLC v. Ra*, 30 Cal. App. 5th 1115, 1124 (Ct. App. 2019) (citing *Speedee Oil*, 20 Cal. 4th at 1145).

Nonetheless, "disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *Roush v. Seagate Tech., LLC*, 150 Cal. App. 4th 210, 219 (2007); *see also In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000) (citing *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983)) ("courts should hesitate to impose [disqualification] except in circumstances of absolute necessity."). The moving party, therefore, carries a heavy burden and must satisfy a high standard of proof. *Gotham City Online, LLC*, 2014 WL 1025120 at *3 ("Motions for disqualification are often tactically motivated and they tend to derail the efficient progress of litigation.") (citing *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

Moreover, "[t]o be justified, a motion to disqualify must be based on present concerns and not concerns which are merely anticipatory and speculative." *In re Marvel*, 251 B.R. at 871 (citing *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981)); *DCH Health Servs. Corp. v. Waite*, 95 Cal. App. 4th 829, 833 (2002) (speculative contentions are insufficient to justify disqualification of counsel). "Because of the potential for abuse, disqualification motions should be subjected to particularly strict

judicial scrutiny." *Gotham City Online, LLC*, 2014 WL 1025120 at *3 (citing *Optyl Eyewear Fashion International Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1049 (9th Cir. 1985)).

## III. Analysis[4]

In short, Tauler Smith asks the Court to disqualify Gaw | Poe because, "by voluntarily taking on the representation of [Tauler Smith's] former bookkeeper, Gaw Poe knowingly and necessarily came into possession of confidential and privileged information belonging to [Tauler Smith] that it has already used in this case." (ECF No. 191-1 at 2.) Tauler Smith argues Gaw | Poe's conduct has undermined the integrity of this proceeding such that they must be disqualified. (*Id.* at 8–9.)

The Court finds Tauler Smith has failed to demonstrate that Gaw | Poe has come into possession of privileged information belonging to Tauler Smith or shown that Gaw | Poe's conduct has undermined the integrity of this proceeding. Accordingly, Tauler Smith's motion to disqualify counsel is **DENIED**. (ECF No. 191.)

### A. There is No "Bookkeeper" Privilege.

Tauler Smith's motion relies on an assumed "bookkeeper privilege." Tauler Smith avers that "CTRLR acted as [its] bookkeeper from 2016 through January 2019. CTRLR's role included bookkeeping, preparing taxes, and handling all financials for the law firm." (Tauler Decl. at ¶ 3.) Based on that relationship, Tauler Smith argues that "CTRLR's communications with [Tauler Smith] were privileged" and that "CTRLR has a duty of confidentiality to" Tauler Smith. (ECF No. 191-1 at 7; ECF No. 220 at 4.) Gaw | Poe responds that CTRLR owes no duty or privilege to Tauler Smith. (ECF No. 203 at 10)

---

[4] Tauler Smith asserts that it has standing to bring a motion for disqualification relying on *Decaview Distribution Co. v. Decaview Asia Corp.*, No. C 99-02555-MJJ, 2000 WL 1175583, at *12 (N.D. Cal. Aug. 14, 2000). As Gaw | Poe does not contest Tauler Smith's standing, the Court assumes without deciding that Tauler Smith may proceed on the instant motion.

("Tauler Smith has not identified any contractual or other form of duty that Mr. Valerio owes either to Tauler Smith (as a former independent contractor to the firm) . . .").

Gaw | Poe has the more persuasive argument. Under Federal Rule of Evidence 501, federal common law "governs a claim of privilege," Fed. R. Evid. 501, and Tauler Smith points to no cases establishing a "bookkeeper" privilege under federal common law. At most, Tauler Smith offers inapposite language from cases which address the attorney-client – not a "bookkeeper" – privilege. (ECF No. 191-1 at 6) (citing *United States v. Graf*, 610 F.3d 1148, 1159 (2010); *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994)).

To the contrary, "no confidential accountant-client privilege exists under federal law, and no state created privilege has been recognized in federal case[s]." *Couch v. United States*, 409 U.S. 322, 335 (1973); *see also Trump v. Mazars USA, LLP*, 940 F.3d 710, 724 (D.C. Cir.), *cert. granted*, 140 S. Ct. 660 (2019) (recognizing "no confidential accountant-client privilege exists under federal law"); *Cavallaro v. United States*, 284 F.3d 236, 246 (1st Cir. 2002) ("In contrast to the attorney-client privilege, no confidential accountant-client privilege exists under federal law.") (quotation omitted); *United States v. Galloway*, No. 1:14-CR-00114-DAD, 2017 WL 735730, at *5 (E.D. Cal. Feb. 24, 2017), *aff'd*, 802 F. App'x 247 (9th Cir. 2020) ("it is well established that a person has no expectation of privacy in business and tax records turned over to an accountant.")

The same conclusion results under state law. *See Bona Fide Conglomerate, Inc. v. Sourceamerica*, No. 14-CV-00751-GPC, 2016 WL 4361808, at *7 (S.D. Cal. Aug. 16, 2016) (applying California law to a privilege issue). In California, "evidentiary privileges shall be available only as defined by statute." *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 373 (1993) (citing Cal. Evid. Code § 911). "Courts may not add to the statutory privileges except as required by state or federal constitutional law . . . nor may courts imply unwritten exceptions to existing statutory privileges." *Wood v. Superior Court of San Diego Cty.*, 46 Cal. App. 5th 562, 585 (Ct. App. 2020), *as modified* (Apr. 8, 2020), *review filed* (May 21, 2020) (citation omitted).

Tauler Smith does not point the Court to any statute or constitutional provision that creates a "bookkeeper" privilege. The California Evidence Code, moreover, does not provide for a "bookkeeper" privilege, nor is the Court aware of any other statue that does. *See* Cal. Evid. Code § 917 (referring to the potential for privilege communications made "in the course of the lawyer-client, lawyer referral service-client, physician-patient, psychotherapist-patient, clergy-penitent, marital or domestic partnership, sexual assault counselor-victim, domestic violence counselor-victim, or human trafficking caseworker-victim relationship . . .").

Consequently, the Court finds no basis in federal or state law for Defendant's asserted "bookkeeper" privilege.

**B. The Attorney-Client Privilege Does Not Apply Here.**

Tauler Smith makes the blanket claim that all communication between Mr. Valerio and Tauler Smith is protected under the attorney client privilege. (*See* ECF No. 212 at 3 ("Any communications between Mr. Valerio's company CTRLR, LLC and TSLLP and its counsel in this action constitute privileged communications.")). The attorney–client privilege is codified at California Evidence Code § 950, *et seq.*, and permits the client to "refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . ." Cal. Evid. Code. § 954.

Section 952 defines the information that falls within this privilege:

> Confidential communication between client and lawyer means information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship.

*Layer2 Commc'ns Inc v. Flexera Software LLC*, No. C-13-02131-DMR, 2014 WL 2536993, at *6 (N.D. Cal. June 5, 2014). "[T]he contours of the statutory attorney–client privilege should continue to be strictly observed." *Gen. Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1190 (1994).

When a court examines a claim that a communication is protected by the attorney–client privilege, "[t]he party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of an attorney–client relationship." *Clark v. Superior Court*, 196 Cal. App. 4th 37, 49 (2011) (internal citations omitted). In other words, a party asserting this privilege has the burden of establishing the existence of an attorney-client relationship and the privileged nature of the communication. *United States v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) (quoting *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009)).

Here, Tauler Smith's motion fails as to both elements. First, as to an attorney-client relationship, Tauler Smith appears to argue that CTRLR was "functional employee" of Outlaw Enterprises, Tauler Smith's former client, and thus CTRLR's communications with Tauler Smith are covered by Outlaw's privilege. Tauler Smith cites to *In re Bieter*, wherein the Eighth Circuit found that a "commercial and retail development" consultant of a law firm's client was a "functional employee" of the client and, therefore, protected by the attorney-client privilege. *In re Bieter Co.*, 16 F.3d 929, 933, 938 (8th Cir. 1994). The Eighth Circuit reached this conclusion given that the consultant had "daily" involvement with the client including, among other conduct, developing a property "that serve[d] as the basis for the litigation" and representing the client to the law firm, "potential tenants," and "local officials." *Id.* Tauler Smith also cites to *Graf*, wherein the Ninth Circuit determined that a consultant to a law firm's client who "communicated with insurance brokers and others on behalf of [the client], marketed the [client's] insurance plans, managed its employees, and was the [client's] voice in its

communications with counsel" could be treated as a "functional employee" of the client for the purposes of the attorney-client privilege. *Graf*, 610 F.3d at 1157.

These cases are readily distinguishable. Here, Tauler Smith does not allege, much less demonstrate, that CTRLR acted on behalf of Outlaw Laboratory in its communications with Tauler Smith, managed Outlaw's employees, advertised Outlaw's products, functioned as a Controller to Outlaw, or represented Outlaw in any capacity to the third-parties outside Outlaw's relationship with Tauler Smith. Instead, it is undisputed that CTRLR was hired to work as a bookkeeper *to Tauler Smith*. Thus, unlike the *In re Bieter* and *Graf* consultants, CTRLR was a not a "functional employee" of Tauler Smith's former client, Outlaw, and thus their attorney-client relationship does not extend to Mr. Valerio's communications with Tauler Smith.

Tauler Smith also does not establish the "privileged nature of [Mr. Valerio's alleged] communication[s]" with Gaw | Poe. *Graf*, 610 F.3d at 1156. Having reviewed the Parties' papers, the Court finds no evidence that any privileged information concerning the instant matter was given to Gaw | Poe by CTRLR or that CTRLR learned of any such information from Tauler Smith. *See Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 843 (2002). Here, CTRLR admits to disclosing the invoices in dispute between CTRLR and Tauler Smith in the CTRLR action, as well as its services contract with Tauler Smith, to Gaw | Poe. (Valerio Decl. at ¶ 5.) As is evident from the undisputed facts, CTRLR provided these invoices to Tauler Smith around the time Mr. Valerio resigned for the purpose of collecting fees allegedly owed to CTRLR for work performed as a Controller to Tauler Smith. (*Id.* at ¶ 2; *see also* ECF No. 212-1, Exs. B at 8, 16, 20, 30, 34 (noting invoice dates of February 1 and 4, 2019.)) Consequently, the cited invoices were not communicated to Tauler Smith "for the purpose of legal consultation," and were instead submitted "for the purpose of billing the client." *Los Angeles Cty. Bd. of Supervisors v. Superior Court*, 2 Cal. 5th 282, 295 (2016). As such, even if an attorney-client relationship existed, the invoices would "fall outside the scope of an attorney's

professional representation" because they are not confidential communications. *Id.*; Cal. Evid. Code. § 952.

In addition, the Court finds that Tauler Smith fails to show how the sparse notations in the invoices would disclose privileged information either as to Outlaw or Tauler Smith. (*See, e.g.*, ECF No. 212-1 at 38 (noting in one entry that "Outsourced CFO: 1. Correspondence with RT re: Outlaw Lawyer Fees. 2. Call with RT re: Same. 3. Research, Review and Build report re: Same. 4. Build Summary and report to RT."). Simply mentioning "Outlaw" in one of the many entries is not sufficient. Tauler Smith also makes no specific allegations that CTRLR's contract is somehow privileged or what privileged information it could convey. Hence, Tauler fails to carry its burden as to both the invoices and the contract.

These materials aside, Tauler Smith also argues that Gaw | Poe must be disqualified because of the "foregone and unrebutted conclusion that Mr. Valerio did in fact trade confidential information acquired while working for [Tauler Smith] and its former client Outlaw to Gaw Poe LLP in exchange for legal services." (ECF No. 212 at 5.) The Court agrees with the unremarkable proposition that Mr. Valerio has likely spoken with Gaw | Poe regarding his prior employment at Tauler Smith. Afterall, Gaw | Poe's recent Rule 26 disclosure identifies Mr. Valerio "as likely to be in possession of discoverable information" regarding his "experience working within the Outlaw Enterprise, the operation of the Outlaw Enterprise, and how the various members of the Outlaw Enterprise participated in conducting its operations." (ECF No. 220-2 at 5–6.) And, Mr. Valerio's declaration does not expressly contradict that, noting only that Mr. Valerio has "not provided anyone from Gaw | Poe LLP with any *materials* related to the work I had done for Tauler Smith LLP." (Valerio Decl. at ¶ 5) (emphasis added).

Nonetheless, this is no basis from which to disqualify Gaw | Poe. The responding party to a motion for disqualification only carries "the burden of proof" to rebut an assertion of privilege after the movant first puts forward a prima facie case. *See Gotham*

*City Online, LLC v. Art.com, Inc.*, No. C 14-00991-JSW, 2014 WL 1025120, at *3 (N.D. Cal. Mar. 13, 2014) (quoting *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009)). Tauler Smith has failed to show how Mr. Valerio's knowledge or communications are governed by any privilege. Tauler Smith offers only "anticipatory and speculative" assertions about privileged communications[5] and that is insufficient. *In re Marvel*, 251 B.R. at 871 (citing *In re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361 (9th Cir. 1981)); *see also DCH Health Servs. Corp. v. Waite*, 95 Cal. App. 4th 829, 833 (2002) (speculative contentions do not justify disqualification of counsel).

**C. Tauler Smith Fails to Show that the Integrity of the Proceedings is at Risk Such that Disqualification is Appropriate at this Time.**

Tauler Smith further argues that, in light of Gaw | Poe's alleged use of its privileged information, disqualification is required to preserve the integrity of these proceedings. (ECF No. 191-1 at 8–9.) This argument is also unpersuasive.

A "lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged . . . must (1) refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and (2) immediately notify the sender that he or she possesses material that appears to be privileged." *Clark v. Superior Court*, 196 Cal. App. 4th 37, 53 (2011). "In an appropriate case, disqualification might be justified if an attorney inadvertently receives confidential materials and fails to conduct himself or herself in the manner specified above, assuming other factors compel disqualification,"

---

[5] For example, in reply, Tauler Smith offers the following conclusory statement. "As stated above, the Valerio Declaration makes allegations concerning the inner workings of Tauler Smith, which necessarily were communicated to Mr. Poe before his firm prepared Mr. Valerio's declaration. In other words, what little we know about what was communicated between Mr. Poe and Mr. Valerio clearly establishes that Mr. Valerio provided Tauler Smith's confidential information to Mr. Poe, which is completely improper." (ECF No. 212 at 7.)

such as the need to "preserve the integrity of the judicial proceedings." *Id.* at 54 (quotation omitted). The Court also considers a party's right to chosen counsel, the interest in representing a client, the burden placed on a client to find new counsel, and the possibility that tactical abuse underlies the disqualification motion. *See Gotham City Online, LLC*, 2014 WL 1025120, at *2 (citing *Speedee Oil*, 20 Cal. 4th at 1144–45).

At this time, the Court finds that there is no reason to think the integrity of the instant proceedings are under threat. Tauler Smith's claim that Gaw | Poe's representation of Mr. Valerio is "totally out of bounds" because Mr. Valerio once worked for Tauler Smith is without merit. (ECF No. 212 at 4.) A review of the "laundry list" of cases cited for that proposition provide no support. (*Id.*) Because Tauler Smith has failed to show that Gaw | Poe has come into possession of privileged information, *see supra* Sections III.A–B, disqualification is inappropriate.[6] *See O'Gara Coach Co., LLC v. Ra*, 30 Cal. App. 5th 1115, 1129, (Ct. App. 2019), *reh'g denied* (Jan. 23, 2019), *review denied* (Mar. 20, 2019) (disqualifying attorney as "a prophylactic measure" even though the attorney did not have an attorney-client relationship with the movant because there was "undisputed" evidence the attorney had participated in privileged "meetings, phone calls and email communications" while employed by the movant); *Clark* 196 Cal. App. 4th at 52, 54 (affirming disqualification as a "prophylactic" measure where "there was substantial evidence to support the trial court's finding that all of the disputed communications were privileged communications"); *Gotham City Online, LLC*, 2014 WL

---

[6] This point is bolstered by cases discussing an attorney's use of privileged information obtained from the prior employee of opposing counsel. There, the same rule applies, namely, that the movant must establish that opposing counsel ultimately obtained information protected by privilege. *See, e.g.*, *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 596–99 (1991) (finding disqualification appropriate where a law firm hired a paralegal that had worked for opposing counsel and learned information from him that, without "question," was covered by the "attorney-client" privilege); *Shadow Traffic Network v. Superior Court*, 24 Cal. App. 4th 1067, 1086 (1994) (finding disqualification appropriate where law firm learned information that was covered by the attorney-client privilege from an expert interviewed by opposing counsel in advance of litigation).

1025120, at *4 (disqualifying attorney where the movant made a prima facie claim of privilege and thus the Court presumed the subject emails were made in confidence). Moreover, in at least one case, even the possession of privileged information was deemed insufficient to require the drastic remedy of disqualification. *Sanchez Ritchie v. Energy*, No. 10-CV1513-CAB, 2014 WL 12637956, at *3 (S.D. Cal. Aug. 13, 2014).

In addition, much of the seemingly nefarious conduct attributed to Gaw | Poe was adequately explained in the briefing. For one, Gaw | Poe avers that it became aware of the Pulaski Law Firm's involvement in the alleged Outlaw Enterprise from documents produced by Outlaw in discovery April 10, 2020. (*Compare* Tauler Decl. at ¶ 7 *with* Poe Decl. at ¶ 2.) Also, Tauler Smith provides no citation for the speculative allegation "that Mark Poe has sworn under oath that his hourly rate is '$1,000 per hour.'"[7] (Tauler Decl. at ¶ 5.) And, in response, Gaw | Poe reasonably explains that its rate varies by matter, and states that it is not charging CTRLR $1,000/hour to represent them in the limited jurisdiction CTRLR Action. (ECF No. 203 at 12.) Moreover, the timing and context of the Stores Rule 26 disclosure does not evince improper conduct or "explosive evidence" as it is hardly surprising that the Stores may be interested in calling a former employee of Tauler Smith to testify, or that a former employee would have relevant, non-privileged information about his employer. (ECF No. 220-1 at 3.)

Importantly, these observations are not intended to negate the inference that Gaw | Poe has spoken to Mr. Valerio; that much seems clear. Rather, the Court takes away from

---

[7] Gaw | Poe acknowledges that, in another matter, a court assessed a $1,000/hour rate for the firm's partners as reasonable. (ECF No. 203 at 12.) In that matter, the Court specifically noted that "Mark Poe's 11.2 hours" were set "at $1,000 per hour." *AdTrader v. Google*, No. 17-CV-07082-BLF, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020). The *AdTrader* court appears to rely on an itemized spreadsheet not before the Court now as well as the affidavits of Gaw | Poe attorneys other than Mr. Poe, including Mr. Gerald G. Knapton and Mr. Randolph Gaw. *Id.* Outlaw's submission of Gaw | Poe's engagement letter with Skyline Market, showing the Gaw | Poe was hired on a contingency basis in this action, does not contradict Mr. Poe's representation that he is not charging $1,000 per hour to represent Mr. Valerio in the CTRLR Action. (ECF No. 228-1.)

these facts and responses that Gaw | Poe's conduct is not necessarily "improper" or "surreptitious[]" as Tauler Smith alleges. (ECF No. 191-1 at 8–9.) And, the Court will not order the "drastic" remedy of disqualification merely to avoid "the appearance of impropriety" when none is actually demonstrated, especially given the speculative claims at issue here. *Roush v. Seagate Tech., LLC*, 150 Cal. App. 4th 210, 219 (2007).

The other factors applicable to a disqualification motion likewise support a denial. *See Gotham City Online*, LLC, 2014 WL 1025120, at *2. First, Tauler Smith does not address the line of cases cited by Gaw | Poe for the proposition that California courts have "consistently concluded that a party cannot improperly disclose confidential information to one's own counsel in the prosecution of one's own lawsuit." *Layer2 Commc'ns Inc v. Flexera Software LLC*, No. C-13-02131-DMR, 2014 WL 2536993, at *10 (N.D. Cal. June 5, 2014); *see also Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 302 (2001) ("California courts have previously addressed the question whether attorneys should be disqualified after being exposed to the opposing party's confidential information by their client. In each case the court held disqualification was not warranted."); *In re Complex Asbestos Litigation*, 232 Cal. App. 3d 572, 591 (1991) ("If the disclosure is made by the attorney's own client, disqualification is neither justified nor an effective remedy").

The Court is mindful of the fact that Gaw | Poe is CTRLR's counsel of choice in the CTRLR Action. Mr. Valerio's relationship to Gaw | Poe as its client is a factor that must be considered on the issue of disqualification here and in the future. This conforms to California's public policy of ensuring "the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense." *Clark*, 196 Cal. App. 4th at 48. In addition, a "lay client should not be expected to make . . . distinctions in what can and cannot be told to the attorney at the risk of losing the attorney's services," *Neal*, 100 Cal. App. 4th at 848 (quoting *In re Complex Asbestos Litig.*, 232

Cal. App. 3d at 590), and that seems only more true where, as here, counsel is obtained to defend against a lawsuit.

The Court is also mindful of "the burden placed on [the Stores] to find new counsel" if Tauler Smith's motion were to be granted given the lengthy history and complexity of this matter. *See Gotham City Online, LLC*, 2014 WL 1025120, at *2. The instant litigation began over two years ago with Plaintiff's filing of a complaint on May 2, 2018. (ECF No. 1.) Since then, this case was consolidated with another Outlaw matter, (ECF No. 28), and later third-party plaintiffs and defendants were joined vis-à-vis the Stores' counterclaims. (ECF No. 113.) Moreover, the Stores have elected to proceed collectively through the representation of a single law firm, Gaw | Poe. (*See* ECF No. 87 (substituting Gaw | Poe)). And, during this process, the Parties have engaged in numerous discovery disputes and dispositive filings that increase the complexity of this litigation.

Also, in light of the tone, language, and timing of Tauler Smith's filings on this motion, the absence of any credible argument for privilege, and the longstanding acrimony between the Parties, the Court is reminded of the potential for disqualification motions to be used for "tactical purposes." *See Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). Consequently, the Court finds that these factors – i.e., unrebutted California law protecting Mr. Valerio's right to communicate with his counsel Gaw | Poe, the burden that would be placed on the Stores in obtaining new counsel were Gaw | Poe disqualified, and the Court's impression that the motion may have been filed for "tactical purposes" given Tauler Smith's inability to identify an applicable privilege – weigh against disqualification.

At the same time, the Court is sympathetic to Tauler Smith's concern that Gaw | Poe's relationship to Mr. Valerio may lead to an ethical violation. CTRLR appears to have conveyed – or, at least, will likely convey – information about its work with Tauler Smith to Gaw | Poe. And, while at this time Tauler Smith has failed to demonstrate Gaw | Poe is in possession of privileged information, CTRLR may well possess information

obtained during its work with Tauler Smith that is, in fact, privileged. Tauler Smith and Outlaw, for example, point to a recently-filed declaration by Mr. Poe indicating that Mr. Valerio was privy to Tauler Smith's use of Zoho, client relationship management "software in which Tauler Smith, among other Outlaw-related activities, logged its contacts with the recipients of the Demand Letters." (ECF No. 227-2, Ex. A at ¶ 6; *see also* ECF No. 228.)[8] Though this cursory allegation does not remedy the deficiencies identified as to Tauler Smith's motion, it nevertheless underscores why Gaw | Poe must be mindful of all applicable ethical canons and rules in its dealings with Mr. Valerio. Gaw | Poe's relationship with Mr. Valerio exposes counsel to the potential for an ethical violation and thus counsel should act cautiously to ensure that none takes place.

It should go without saying, moreover, that Gaw | Poe must also abide by the applicable ethical rules in the event privileged information is inadvertently disclosed. *See Clark*, 196 Cal. App. 4th 37, 53 (2011) (quoting *State Comp. Ins. Fund v. WPS, Inc.*, 70 Cal. App. 4th 644 (1999)) (describing two-step rule applicable to "a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged"); *see also* ABA Model Rule 4.4(b) ("[a] lawyer who receives a document . . . relating to the representation of the lawyer's client and knows or reasonably should know that the document . . . was inadvertently sent shall promptly notify the sender."); ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 382 (1994) ("A lawyer who receives on an unauthorized basis [privileged] materials .

---

[8] Tauler Smith and Outlaw also request that the Court order an evidentiary hearing to address the instant motion. However, as Tauler Smith has failed to carry its burden at this time in demonstrating the conveyance of privileged information, or a risk to the integrity of these proceedings, the Court deems it unnecessary to hold a hearing to assess the Parties' "credibility attacks." (ECF No. 228 at 3.) In addition, Plaintiff Outlaw's eleventh-hour assertion that the work product privilege applies is untimely. The Court is not in the habit of accepting newly raised arguments in reply, much less in successive, supplemental filings. *See Coos Cnty. v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008) (declining to consider an argument raised for the first time in reply); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (same).

. . should . . . review them only to the extent required . . . notify her adversary's lawyer . . . and should either follow instructions of the adversary's lawyer . . . or refrain from using the materials until a definitive resolution . . . is obtained from a court"). Any such violation will be dealt with accordingly, including through disqualification or a lesser sanction, as the Court deems appropriate. *See Neal v. Health Net, Inc.*, 100 Cal. App. 4th 831, 844 (2002) ("Rather than disqualification of counsel, other sanctions can suffice . . . such as: protective orders, limiting the admission of evidence; in camera proceedings; the use of sealed records; payment of attorney fees and costs; and disciplinary sanctions through the State Bar of California in appropriate circumstances").

In sum, the Court finds that Tauler Smith's allegations do not establish Gaw | Poe has acted in a manner that makes disqualification "proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed" in light of the facts before the Court at this time. *See Clark*, 196 Cal. App. 4th at 55; *see also Bona Fide Conglomerate, Inc. v. Sourceamerica*, No. 14-CV-00751-GPC, 2016 WL 4361808, at *6 (S.D. Cal. Aug. 16, 2016) (citation omitted) ("An order of disqualification of counsel is a drastic measure, which courts should hesitate to impose except in circumstances of absolute necessity.").

## IV. Conclusion

Tauler Smith has not shown that CTRLR's communications with Tauler Smith are protected by the attorney–client privilege or non-existent "bookkeeping" privilege, or that any privileged information has been conveyed to Gaw | Poe. Because of that, and in the light of the foregoing reasons, Tauler Smith has also not shown that the integrity of the proceedings is at risk such that disqualification is appropriate as a prophylactic measure. Consequently, the Court **DENIES** Tauler Smith's motion. (ECF No. 191.)

**IT IS SO ORDERED.**

Dated: June 25, 2020

Hon. Gonzalo P. Curiel
United States District Judge