UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORIES, LP LITIGATION, | Case No.: 18CV840 GPC (BGS) <br><br> **ORDER ON NON-PRIVILEGE ISSUES AS TO THE STORES' RFPS TO TAULER SMITH AND OUTLAW** <br><br> [ECF 224] |

## I.   INTRODUCTION

Counter-claimant Roma Mikha and Third-Party Plaintiff NMRM, Inc. and Skyline Market, Inc. (collectively the "Stores") move to compel Plaintiff Outlaw Laboratory, L.P. ("Outlaw") and Third-Party Defendant Tauler Smith LLP ("Tauler Smith") to provide full and complete responses to the Stores' Request for Production based on non-privilege issues.[1]  (ECF 224.)  As discussed in more detail below, the Stores' RFPs to Tauler Smith and Outlaw seek documents related to the following topics: funding for the Outlaw

---

[1] The Court ordered the parties to differentiate between their privilege and non-privilege objections to the RFPs identified in the parties' June 1, 2020 joint letter briefs.  Because the privilege issues are being briefed separately, (ECF 239, 242), this Order does not address privilege issues.

1

litigation; agreements with the Pulaski Law Firm about the litigation; actual or potential lost sales of the TriSteel product; pharmacological testing of the supposedly competing products sold by stores; Outlaw's decision to retain Tauler Smith; and notes of conversations with targeted stores. (ECF 224.)

## II.   BACKGROUND

As the Court has explained in prior orders on discovery disputes, this consolidated action encompasses two cases brought by Outlaw against retail stores for false advertising under the Lanham Act, and as to the *SD Outlet* action, California False Advertising and California Unfair Competition claims. (Case Nos. 18cv840 ("*DG in PB*") and 18cv1882 ("*SD Outlet*"); ECF 147[2] at 4-5.). Three of the stores in the *SD Outlet* action have filed counterclaims as a class action on behalf of themselves and other targeted stores against Outlaw and Tauler Smith under the Racketeer Influenced and Corrupt Organizations Act ("RICO") along with a rescission claim. ("Second Amended Counter Claims ("SACC") [ECF 114].) Given the Court has summarized these claims in numerous previous orders on discovery disputes, the Court only very briefly summarizes the claims below.

Outlaw's Lanham Act claims are premised on the defendants selling "male-enhancement pills, . . . 'the Enhancement Products'" with packaging that indicate they are all natural, but contain undisclosed drugs with Outlaw claiming it has lost out on sales to those products. (ECF 147 at 1, 3-6; ECF 209 (*San Diego Outlet* action.) Summary Judgment was granted to defendants in the *DG in PB* action on this claim. (ECF 147.) The court found the defendant stores could not be found liable for false advertising for information on the packaging of the products they only sold. (*Id.* at 9-12.) As to the *San*

---

[2] In summarizing Outlaw's claims and their status, the Court again draws from Judge Curiel's December 3, 2019 Order granting summary judgment to defendants in the *DG in PB* action and his May 29, 2020 Order granting in part defendants' motion for judgment on the pleadings in the *San Diego Outlet* action. (ECF 147 and ECF 209.)

*Diego Outlet* action, Judge Curiel recently granted a motion for judgment on the pleadings dismissing with prejudice almost all of Outlaw's claims. (ECF 209.) Judgment on the pleadings was granted on the Lanham Act claim as to both direct and contributory liability as well as its California's False Advertising Law ("FAL") claim and the fraudulent and unlawful prongs of Outlaw's California Unfair Competition Claim ("UCL") claim. Only the unfairness prong of the UCL survived. (ECF 209 at 24-26.[3])

The Stores have alleged counterclaims under RICO on behalf of a class of similarly situated stores. (ECF 114.) The SACC alleges that since at least December 2017, Outlaw, Outlaw's former attorneys Tauler Smith, and Outlaw's principles, Michael Wear and Shawn Lynch, have engaged in a scheme that includes sending demand letters via U.S. mail to small businesses that threaten the store could be held liable for over $100,000 based on false and misleading statements about potential liability for the sale of certain products by the stores. (SACC ¶¶ 2, 26, 82-88.) The SACC alleges Outlaw employs "investigators," some hired through craigslist postings by Outlaw's counsel Tauler Smith, who identify stores selling the products, take pictures of storefronts and shelves in the store with the products and provide that information to others participating in the scheme to target these stores. (SACC ¶¶ 66, 73, 86, 92.) The SACC alleges that Outlaw and its attorneys then send the demand letters, with FDA notice attached, that falsely indicate the store is illegally selling products in violation of RICO and the Lanham Act. (SACC ¶¶ 2, 23-24, 26-52, 84-86, 88.)

The demand letters also include pictures taken of receipts for purchase of the products by investigators. (SACC ¶¶ 68, 73, 91.) The Stores allege the draft Complaint attached to the demand letters also falsely asserts that Outlaw sells a competitive product, the TriSteel products, in retail stores throughout the United States when it has never sold its products in stores and only started selling it online in October 2017. (SACC ¶¶ 66-

---

[3] A motion for reconsideration was recently filed on the surviving claim. (ECF 213.)

67.) This commencement of any sales was months after Outlaw had already been documenting sales of the Enhancement Products by stores through investigators in August 2017.  (SACC ¶ 68.)  Outlaw then follows up with offers to settle for increasingly lower amounts, including as low as $2,500.  (SACC ¶¶ 3-4, 56, 72, 87, 98.)

## III. DISCUSSION

### A. Legal Standards

#### 1. Requests for Production of Documents

"A party may serve on any other party a request within the scope of Rule 26(b) to produce any designated documents or electronically stored information." Fed. R. Civ. P. 34(a)(1)(A).  The request must describe the document sought "with reasonable particularity" and any "objection must state whether any responsive materials are being withheld on the basis of that objection." Rule 34(b)(2).  The requesting party may move to compel the production of responsive documents if a party fails to produce documents.  Rule 37(a)(3)(B)(iv).

#### 2. Rule 26

As the party seeking to compel discovery, the Stores have "the burden of establishing that [their] request[s] satisfy the relevancy requirements of Federal Rule 26(b)(1)." *Louisiana Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)).  Outlaw and Tauler Smith, as the parties opposing discovery, "ha[ve] the burden of showing that discovery should not be allowed, and also ha[ve] the burden of clarifying, explaining, and supporting its objections with competent evidence." *Id.* (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)).  "An opposing party can meet its burden by demonstrating that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 434 (N.D. Cal. 2014) (citing *Khalilpour v. CELLCO P'ship*, No. C 09-

02712 CW (MEJ), 2010 WL 1267749, at *3 (N.D. Cal. April 1, 2010)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n. 17 (1978).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion in controlling discovery" and "in determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).

Following the 2015 Amendments to Rule 26, it is clear that "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "The court's responsibility, using all the information provided by the parties, is to consider these, [undue burden or expense and importance of information sought,] and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26 advisory committee's notes. In deciding whether a request is unduly burdensome, a court must balance the burden to the responding party against the benefit to the party seeking the discovery. *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010) (collecting cases).

Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;"

or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

### 3. RICO

The Stores are seeking discovery they argue is relevant to their RICO claims. As the assigned district judge explained in one of his decisions in this case, to succeed on a RICO claim:

> a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (known as "predicate acts"), (5) causing injury to the plaintiff's "business or property" by the conduct constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de Numours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).
> One type of predicate act of racketeering activity recognized by RICO, 18 U.S.C. § 1961(1) is mail fraud under 18 U.S.C. § 1341. A mail fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States mails or causing a use of the United States mail in furtherance of the scheme; and (3) specific intent to deceive or defraud. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S. Ct. 2131, 170 L.Ed.2d 1012 (2008) ("Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice or attempting so to do." (quoting 18 U.S.C. § 1341)).

*In re Outlaw, LP Litig.*, 352 F. Supp. 3d 992, 1000 (S.D. Cal. 2018). The requirement of specific intent under this statute is satisfied by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." *United States v. Green,* 745 F.2d 1205, 1207 (9th Cir. 1984) (quoting *United States v. Bohonus,* 628 F.2d 1167, 1172 (9th Cir. 1980)).

As the Court explained in a prior order, here, the alleged predicate acts that constitute the pattern of racketeering activity are the drafting, signing, and mailing of false demand letters with draft complaints that also contain false statements with the intention of defrauding them of settlements.

6

### B. Analysis

The RFPs to Outlaw and Tauler Smith are largely the same. Given the significant overlap in the RFPs and the analysis, the Court analyzes them together by topic. Additionally, because the parties' briefing becomes largely repetitive of its arguments from one topic to the next, the Court's analysis does the same, relying on prior analysis rather than repeating it.

#### 1. Defined Terms

Before reaching the actual topics raised by the RFPs, the Court includes four of the defined terms that are included in multiple RFPs.[4]

> 'OUTLAW LITIGATION' means the matter by which YOU and/or OUTLAW investigated and sent DEMAND LETTERS to RETAIL STORES, and all subsequent interactions with those stores.
>
> 'ACTION' means the counterclaims/third party claims brought by Roma Mikha, Inc., NMRM, Inc. and Skyline Market, Inc. in this case.
>
> 'DEMAND LETTER' has the same meaning as used by the Court in this action in its Order dated March 5, 2020.
>
> 'RETAIL STORE' means the business entities to which YOU or TAULER SMITH sent a DEMAND LETTER.

(Decl. of Mark Poe, Ex. A and C.)

#### 2. Discovery Topics

##### a) Communications with the Pulaski Law Firm Regarding Funding

RFP 19 to Outlaw:

> All COMMUNICATIONS between YOU and any person employed by PULASKI LAW FIRM RELATING TO the role of PULASKI LAW FIRM in funding the OUTLAW LITIGATION or to the ACTION

---

[4] The definitions of all the terms are included in Ex. A and B to the Declaration of Mark Poe. (ECF 224-2 and 224-3).

7

RFP 18 to Tauler Smith:[5]

All COMMUNICATIONS between YOU and PULASKI LAW FIRM or OUTLAW RELATING TO the role of PULASKI LAW FIRM in funding the OUTLAW LITIGATION

RFP 31 to Outlaw:

All DOCUMENTS reflecting any agreements between YOU and PULASKI LAW FIRM RELATED TO the OUTLAW LITIGATION

Tauler Smith argues the Pulaski Law Firm's role in funding Outlaw's litigation is not proportional to the needs of the case because it will not resolve any issues in the case and is outside the scope of Rule 26(b)(1).  (ECF 224 at 10.)  It also characterizes the RFP as an attempt to catch a "bigger fish" and that Pulaski is not relevant to the issues in this case because Pulaski is not a party in this case.  (*Id.* at 11.)  Finally, it also states "the request seeks confidential, proprietary information, and [sic] subject to the right of privacy of third parties because it seeks communications between [Tauler Smith] and a third party, Pulaski Law Firm."  (*Id.* at 11.)

The only argument Outlaw makes regarding this specific RFP is that where a litigant receives its funding is irrelevant and inadmissible.  (*Id.* at 16.)  However, Outlaw cites no authority for this proposition and does not address the Stores' relevancy argument.  Outlaw generally argues as to all the RFPs and topics that there are less intrusive means of obtaining this information (deposing Outlaw's representative on the topic) and all the RFPs lack an appropriate "temporal scope" making them unduly

---

[5] There are some discrepancies in the RFP numbers identified in the briefing and those RFPs in exhibits attached to the Joint Statement.  For example, the language of RFP 19 between Exhibit A (RFPs to Tauler Smith) and B (RFPs to Tauler Smith with Tauler Smith's Responses).  However, it is clear from the parties' substantive briefing and quoted language which RFPs and topics they are discussing which RFPs are at issue.  (*See* ECF 224 at 3 (Stores discussing Pulaski funding specifically), 10 (Tauler Smith quoting RFP listed in Ex. B that discusses funding).)

8

burdensome and harassing. (*Id.*)  However, Outlaw does not specifically address this RFP or topic on these general points.

The Stores argue this information is highly relevant because it will demonstrate that the project was launched only as a "money-getting operation;" not to protect the competitive position of TriSteel.  Outlaw and Tauler Smith do not address this argument.  Tauler Smith states only that "[t]he Stores' fail to provide any explanation why this information is needed, or how this information will support any of the Stores' claims." (*Id.* at 11.)  As to proportionality, the Stores explain that the number of responsive documents is not likely great because it would only be the document "commenorat[ing]" the agreement and any adjustments made to that agreement.  (*Id.* at 3.)

The Court would agree that communications about the Pulaski Law Firm's funding of the Outlaw litigation and any agreements between Outlaw and Pulaski to pursue the Outlaw litigation could be relevant to the Stores' RICO claims.  As discussed in the Court's June 17, 2020 Order, when and how much funding Outlaw received to target stores could shed light on the inception of the scheme alleged in the SACC.  (ECF 230 at 18.)  Any agreements might provide a timeline for the inception of the scheme.  Additionally, communications about the purpose of the funds might reflect it was intended to fund meritless threats of litigations to extract settlement either explicitly or by implication when considered in combination with other conduct.  For example, evidence that Outlaw was receiving significant funding and allocating it all to sending false demand letters and taking no steps to market or sell its own products, might indicate Outlaw and Tauler Smith intended to deceive or defraud the stores.  There might be alternative explanations for significant funding long before Outlaw ever attempted to sell its own product, but at this point, the question is whether the responsive discovery is relevant to a claim or defense.  The timing, amount, and purpose for these funds may shed light on Outlaw and Tauler Smith's intent to deceive or defraud or the formation of a scheme to defraud or artifice to defraud, both elements of a mail fraud claim that are significant and important issues in this case.

The importance of this discovery also weighs in favor of finding it proportional to the needs of the case. Rule 26(b)(1) (In assessing proportionality, court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") Short of a deposition witness admitting to how the scheme was established and the principal's intentions to defraud, it is unlikely the Stores will have any other method of establishing these elements. In this respect, this discovery is both important and unlikely to be obtained through less intrusive means. Additionally, that Pulaski is not a party does not mean the discovery is not proportional. The communications are between parties *to this case* and Pulaski about conduct alleged *in this case*. The sought discovery is relevant and proportional to the needs of the case.

Although Outlaw made no specific argument as to a lack of time limitation on this RFP, the Court has also considered this argument. The Court would agree that time frames are often important in limiting the scope of an RFP to the time frame in which the conduct allegedly happened to ensure it both seeks relevant discovery and that the discovery is proportional to the needs of the case. However, here, the RFPs are appropriately limited in scope by the language of the RFPs in combination with the defined terms. The RFPs are limited to the Outlaw Litigation which is itself defined as investigating and sending demand letters to stores. This is a significant limitation because, as the Court explained in the March 5, 2020 Order, to be a "demand letter" it "must threaten litigation, concern an enhancement product, and offer settlement in exchange for money." (ECF 177 at 23.) The limitations of the definitions ensure that the communications are limited to funding of the conduct alleged in the SACC without any need for a specific date range.

Finally, Tauler Smith asserts "[a]dditionally, the request seeks confidential, proprietary information, and [sic] subject to the right of privacy of third parties because it seeks communications between [Tauler Smith] and a third party." (ECF 224 at 11.) As

10

to the confidentiality argument, the Stores explain "Tauler Smith has been professing its intent to file a protective order" and that "the Stores have agreed to the proposed draft, so if there were any real confidentiality concerns, they will be alleviated by that order, if it ever gets filed and entered." (*Id.* at 4.) Since this Joint Statement was filed, the parties have requested entry of, and the Court has entered, a Stipulated Protective Order. (ECF 226, 235.) The Stipulated Protective Order should alleviate the confidentiality concerns because it explicitly imposes limits on who may have access to materials designated confidential and how they may be used.[6] (ECF 235.) Additionally, the Court concludes that this blanket assertion without further explanation is not a sufficient reason for Tauler Smith not to respond to this RFP.

### b) Communications with Outlaw or Pulaski Regarding Lost Sales of Outlaw's TriSteel Product

RFP 20 to Outlaw:

All COMMUNICATIONS between YOU and PULASKI LAW FIRM or TAULER SMITH RELATING TO actual or potential lost or lowered sales of TRISTEEL resulting from the sale of SUBJECT PRODUCTS by RETAIL STORES

RFP 19 to Tauler Smith

All COMMUNICATIONS between YOU and PULASKI LAW FIRM or OUTLAW RELATING TO actual or potential lost sales or lowered sales of TRISTEEL resulting from the sale of SUBJECT PRODUCTS by RETAIL STORES

Tauler Smith argues this RFP is improper because it is compound in two respects. (ECF 224 at 11.) It seeks communications with both Outlaw and Pulaski and seeks documents as to lost sales, potential lost sales, and lowered sales of TriSteel. (*Id.*) Tauler

---

[6] As noted above, this Order does not address issues of attorney-client privilege as to these RFPS. That issue is in the process of being briefed by the parties.

11

Smith also references its prior argument, discussed above, that communications with Pulaski are not relevant to issues or defenses in this case because Pulaski is not a party and that the Stores do not explain how it will support their claims. (*Id.*) It also raises the same confidentiality concern discussed above. (*Id.*) Again, as discussed above, Outlaw argues generally as to all the RFPs that they lack time limitations, are a fishing expedition, and could be obtained through less intrusive means. As to this particular topic, Outlaw asserts that information about lost or lowered sales of TriSteel can be obtained through deposing Outlaw's representatives. (*Id.* at 16.)

The Stores argue communications about lost sales of TriSteel are relevant to demonstrate whether Outlaw and Tauler Smith were actually concerned about TriSteel's competitive position or if this was all just about extracting money from stores. (*Id.* at 4.) Additionally, the Stores question how this information could be confidential when the demand letters Tauler Smith and Outlaw sent are predicated on the existence of lost sales of TriSteel. (*Id.*)

The analysis here is similar to that above because the discovery sought may show that Outlaw and Tauler Smith intended to defraud the stores of settlements rather than protect the market for TriSteel. Communications about lost or lowered sales of TriSteel are relevant because they may show that Outlaw and Tauler Smith's conduct had nothing to do with lost sales of TriSteel and that they lied to the targets of the demand letters. For example, the draft complaint, attached to demand letters that Tauler Smith and Outlaw threatened to file against numerous stores alleges the target's sales of the enhancement products "negatively impacted Plaintiff's sales of TriSteel and TriSteel 8hour." (ECF 114-1 at 14.) There might be some highly relevant admission in communications indicating that Outlaw or Tauler Smith knew there were no lost or lessened sales of TriSteel, but they did not care because TriSteel was just a vehicle to extract settlements from target stores. Looking for this type of admission might be a fishing expedition. However, it is more likely there might be communications indicating simply that Tauler Smith or Outlaw was aware that sales of TriSteel were not suffering as a result of the

sales of these other products.  This, in combination with other discovery could demonstrate Tauler Smith and Outlaw knew they were lying to target stores about lost sales from competitive products with the intention of defrauding them of settlements.  In this respect, the sought discovery is relevant to the Stores claims.

As to Outlaw's assertion that information about lost or lower sales can be obtained through deposing Outlaw's representatives, the Court is not persuaded that is a sufficient or reliable substitute.  Communications regarding TriSteel sales at the time Outlaw and Tauler Smith were targeting stores may have more significance than general statements about lost or lower sales from an Outlaw representative in a deposition. They may reflect intentions to deceive or defraud that might not be as clear from deposition testimony.

The Court is also not convinced that Tauler Smith cannot respond to the RFP because it is compound.  Unlike interrogatories or requests for admissions, requests for production of documents are not limited in number.  The Stores are not circumventing a limit by asking for too many things in one request and the request is not so compound that Tauler Smith cannot understand what is being requested.  The Court's conclusion regarding confidentiality above, (III.B.2.a), applies equally to the same blanket assertion here.

### c) Communications with Outlaw or Pulaski Regarding Pharmacological Testing of Competing Products

RFP 22 to Outlaw:

> All COMMUNICATIONS between YOU and PULASKI LAW FIRM or TAULER SMITH RELATING TO any actual or pharmacological testing of any SUBJECT PRODUCTS purchased from any RETAIL STORE.

RFP 21 to Tauler Smith

> All COMMUNICATIONS between YOU and PULASKI LAW FIRM or OUTLAW RELATING any actual or potential pharmacological testing of any SUBJECT PRODUCTS purchased from any RETAIL STORES

13

In addition to two arguments briefly addressed below, Tauler Smith argues communications about pharmacological testing of competitor products purchased from targeted stores are not relevant. (ECF 224 at 13.) Outlaw again argues this information can be obtained from deposing Outlaw's representative. (*Id.* at 16.) The Stores argue, by reference to their arguments concerning lost sales of TriSteel that similarly, communications about pharmacological testing of competing products is relevant to demonstrate Outlaw and Tauler Smith were not concerned about competing products. (*Id.* at 4-5.)

As discussed above with the prior two topics, communications about testing products could show whether Tauler Smith and Outlaw were lying when they sent demand letters to store claiming they were selling products containing illegal drugs. The demand letters and draft complaints sent to stores asserted the products the stores were selling contained illegal drugs. Their communications about whether these products actually contained the drugs alleged based on testing, could show that they knew the threats on that basis were false. If Outlaw or Tauler Smith knew those representations to be false or without some basis and they continued to threaten stores to extract settlements, it could show an intent to defraud the stores. As discussed above, this would be relevant to the Stores claims.

The Court rejects Tauler Smith's challenge to the RFP being compound for the same reasons discussed above. (*See* III.B.2.b.) Similarly, the Court rejects Tauler Smith's confidentiality assertion for the same reasons discussed above. (*See* III.B.2.a).) Additionally, the Court is not persuaded that deposition testimony from an Outlaw representative on this topic is an adequate substitute for responsive documents.

///
///
///
///
///

### d) Communications Between Outlaw and Tauler Smith Regarding Outlaw Retaining Tauler Smith

RFP 25 to Outlaw:

All COMMUNICATIONS between YOU and TAULER SMITH RELATING TO YOUR decision to retain TAULER SMITH to work on the OUTLAW LITIGATION.

RFP 24 to Tauler Smith

All COMMUNICATIONS between YOU and OUTLAW RELATED TO the decision to retain YOU to work on the OUTLAW LITIGATION.

Tauler Smith again simple states the discovery is not relevant or proportional to the needs of the case without addressing the Stores relevancy arguments. Tauler Smith does make a more specific confidentiality argument here concerning disclosure of Outlaw's communications with it regarding Tauler Smith's engagement. (ECF 24 at 13.) Outlaw makes no arguments other than those generally already addressed above except to assert that why it hired a particular lawyer is irrelevant and inadmissible. (*Id.* at 16.)

The Stores argue this information is relevant to demonstrate the Outlaw litigation was a scheme to defraud rather than a genuine legal engagement. (*Id.* at 5.) In short, the Stores argue these communications will "focus[] strictly on how much money the members of the Enterprise expect to shake out of the Stores, with zero regard for the litigation vehicle of TriSteel." (*Id.*)

The Stores are hoping to obtain communications indicating that Outlaw retained Tauler Smith not to address false advertising of competitive products, but to run a shake down targeting thousands of stores. They are looking for communications indicating that Outlaw hired Tauler Smith to set up and run a scheme to deceive and defraud the stores out of settlements. And, it is certainly possible that in describing what work Outlaw was retaining Tauler Smith to do that either or both of them described the scheme alleged in the SACC. In this respect the Court finds the discovery relevant and proportional to the

needs of the case.  Additionally, because this was likely to have happened at the beginning of the scheme it is relevant to the formation of the scheme to defraud.

As to Tauler Smith's confidentiality objection as to this RFP, it is less clear that the Stipulated Protective Order resolves this issue.  To the extent it does not, it may be better addressed in conjunction with the Court's order on the privilege issues being addressed by separate briefing.  If the Protective Order did not resolve this issue, the parties must meet and confer on this issue by **June 29, 2020**.  If the parties cannot resolve it, the Stores, Tauler Smith, and Outlaw may file a three-page Joint Statement, one page each, by **July 2, 2020** explaining why the Stipulated Protective Order did not resolve it and to more fully address this issue.

### e) Notes Taken by Tauler Smith Related to Conversations with Class Members

RFP 25 to Tauler Smith

> All handwritten or electronic notes that YOU took RELATING TO any telephonic calls with anyone purporting to be acting on behalf of a RETAIL STORE, and seeking to discuss any aspect of the matters set forth in a DEMAND LETTER, including but not limited to settlement of the claims made.

Tauler Smith argues this discovery would not be relevant because Tauler Smith would have only taken notes on what the other party, the stores, communicated to it, not what it said to the other party. (ECF 224 at 14.)  In this respect, Tauler Smith argues these records would not illuminate whether there was any concern for the impact on sale of TriSteel. (*Id.*)  The Stores accurately note that the Court has already addressed the relevance of communications with the members of the class in a prior Order regarding discovery from Outlaw. (*Id.* at 5.)  Additionally, as to proportionality, the Stores explain that Tauler Smith used a customer relations management program to log the calls which should allow for very low burden in obtaining the information form the software. (*Id.* at 5-6.)

16

The Court already addressed the relevancy of communications with stores targeted with demand letters in its March 5, 2020 Order and found those communications could show how the scheme was carried out. (ECF 177 at 23-25.) As the Court explained, the demand letters were a part of the scheme, but how Outlaw and Tauler Smith followed up on those demand letters and ultimately obtained or did not obtain settlements could provide evidence of how the scheme was carried out. (*Id.*) However, Tauler Smith makes a different argument here, claiming that the responsive discovery would not be relevant because its logs of its calls to stores would only include the stores' communications to Tauler Smith, not its communications to the stores. This assertion is made without a declaration or even much explanation. (ECF 224 at 14.) Additionally, the records of the communications, regardless of their substance, may demonstrate the scale and breadth of Tauler Smith's activities. Additionally, as a recently filed declaration from Outlaw's counsel suggests, obtaining the records of Tauler Smith's conduct about targeted stores, even from its own former client it was apparently acting on behalf of, has been challenging. (ECF 241.) These records may be particularly necessary to fill gaps created by records that are either being withheld or are missing.

**IV. RFP No. 7 and Interrogatories Nos. 3 and 8 to Outlaw**

The Court ordered Outlaw to produce all its settlement agreements by March 20, 2020 in response to the Stores' RFP No. 2. (ECF 224 at 8; ECF 177.) The parties agree that Outlaw did not produce all the settlement agreements on March 20, 2020. Rather, Outlaw produced more than 400 settlement agreements over the course of March, April, and May as Outlaw's counsel collected them. (*Id.*) On May 21, 2020, Outlaw indicated that it had produced all the settlement agreements it had been able to obtain, but even then, acknowledged there might be more. (*Id.*)

When the parties raised the incomplete production, the Court raised the issue of the timeliness of this dispute under the Court's 30-day rule. It requires parties to raise any disputes within 30 days of the event giving rise to the dispute. The Stores argue the event giving rise to the dispute was Outlaw's acknowledgment on May 21, 2020 that it had

provided all the settlement agreements it had been able to obtain. (*Id.* at 9.) Outlaw does not object to and agrees to the extension of the 30-day rule for resolving discovery disputes, acknowledging that the Stores' counsel held off on contempt motions to allow counsel to get up to speed and attempt to obtain the relevant information and documents. (ECF 224 at 17.)

The parties should have jointly contacted the Court to seek tolling of the 30-day time to raise a discovery dispute. Outlaw's efforts to collect those documents, particularly given the obstacles it apparently faced getting those documents from its own former counsel, (ECF 241) would have likely justified additional time to raise any dispute. But the parties are not permitted to unilaterally extend the time to raise disputes by extending the time to complete productions. The dispute is untimely. However, in this one instance, the Court will allow the Stores to raise this untimely dispute given the ongoing productions and the challenges in obtaining the settlement agreements.

However, before pursuing further motion practice in this already very challenging discovery process, the Court orders Outlaw to respond to RFP No. 7 and Interrogatories 3 and 8 by July 6, 2020. When the Court ordered the documents produced, it found RFP No. 7 and Interrogatories 3 and 8 cumulative of the information that would be provided through the production of settlement agreements. (ECF 177 at 33.) After receiving those responses and considering Outlaw's counsel recently filed declaration on this issue (ECF 241), if the Stores still seek to bring a motion as to the sufficiency of Outlaw's response to any of these requests, they must meet and confer with Outlaw and attempt to resolve the issue. If they are unable to come to a resolution, the parties must file a joint proposal to address the issue by July 8, 2020.[7]

///

---

[7] Given the Stores' suggestion that the Court make the production contingent on the results of the class certification motion, the Court presumes the issue does not need to be addressed immediately.

18

## V.  CONCLUSION

Except for Section IV, above, the RFPs at issue here have additionally been briefed on privilege issues. Accordingly, although the Court finds the RFPs seek relevant discovery proportional to the needs of the case, Outlaw and Tauler Smith are not ordered to respond to them at this time. If the Court finds the documents must be produced after briefing on the privilege issues, it will set a date for production.

**IT IS SO ORDERED.**

Dated:  June 26, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge