1  **Sergenian Ashby LLP**
2  David A. Sergenian (SBN 230174)
   david@sergenianashby.com
3  1055 West Seventh Street, 33rd Floor
4  Los Angeles, California 90017
   Tel. (323) 318-7771
5
6  *Attorneys for Third-Party Defendant*
   *Tauler Smith LLP*
7
8
9           THE UNITED STATES DISTRICT COURT
10         FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11

| | |
|---|---|
| **In re Outlaw Laboratory, LP Litigation** | Case No. 3:18–cv–840–GPC–BGS consolidated with 3:18–cv–1882–GPC–BGS |
| | **Declaration of Robert Tauler in Support of Third-Party Defendant Tauler Smith LLP's Motion for Summary Judgment, or in the Alternative, Summary Adjudication** |
| | Date:    September 18, 2020 |
| | Time:    1:30 p.m. |
| | Hon. Gonzalo P. Curiel |
| | Courtroom 2D |

# DECLARATION OF ROBERT TAULER

I, Robert Tauler, declare as follows:

1. I am the managing partner of Tauler Smith LLP ("TSLLP"). The facts set forth in this Declaration are true of my own knowledge, and if called upon to testify, I could and would testify as thereto.

2. Tauler Smith LLP is a litigation firm that I started in 2015 with Matthew Smith, my law school classmate. Matthew and I previously practiced at Greenberg Traurig LLP and McDermott Will & Emery LLP

3. I worked largely in nutritional supplement litigation from 2013 until 2019, and represented various national supplement companies, including those manufacturing sports supplements, anti-aging supplements, and health supplements.

4. Over the years, I have become very familiar with the nutritional supplement marketplace, including the federal regulatory regime that allows for unfair competition and illicit practices claims and I have been cited in numerous articles regarding the illicit sale of unlawful supplements. I have also been engaged as an expert witness in this area of law. Some of the evidence generated in other cases has been used by the federal government to prosecute companies selling misbranded drugs including *United States v. Braun, et. al* (S.D. Fla. Case No. 9:19-cr-80030-WPD), which is currently pending. Attached hereto as **Exhibit 1** is a true and correct copy of a news article from Natural Products Insider Dated December 5, 2018, entitled "FDA isn't alone in targeting male enhancement products laced with drugs" where I was interviewed on the topics at issue in this action.

5. In the ordinary course of its practice, TSLLP was engaged to represent Outlaw Laboratory, LP ("Outlaw Labs"), a manufacturer and retailer of nutritional supplements, in November of 2017 regarding legal disputes concerning competing male sexual enhancement dietary supplements sold

– 1 –

through a network of distributors in convenience stores (the "Competing Products"). My understanding is that Outlaw Labs is a successor-in-interest to JST Distribution, another client of TSLLP.

6. The Competing Products were sold often as a single dose in the form of a capsule pill. These products had packaging that advertised the pill as a dietary supplement, however, based after researching various FDA public notices and the client's own independent testing, I came to the conclusion that the competing products did not meet the legal definition of a dietary supplement.

7. TSLLP was first contacted by Outlaw, Mike Wear and Shawn Lynch based on TSLLP's prior work in nutritional supplement litigation.

8. TSLLP was engaged to provide legal services for claims that already existed.

9. TSLLP had no role in starting, creating, or participating in the creation of the entity, Outlaw Laboratory, LP.

10. Tauler Smith did not collaborate with Shawn Lynch and Michael Wear to create Outlaw Laboratory's "TriSteel product."

11. Outlaw Labs created, manufactured, and sold supplement products called TriSteel 8 Hour and TriSteel ("TriSteel Products"), which it sold in addition to numerous other sports supplements, including various pre-workout products and muscle building supplements.

12. When Outlaw Labs engaged TSLLP as legal counsel, it sought to take legal action against convenience stores and distributors that offered for sale competing sexual enhancement "supplement" products.

13. Outlaw Labs gathered evidence regarding the sale of the competing products. Attorneys at TSLLP verified the information provided by Outlaw Labs, including confirming that the infringing products identified in each photo corresponded to FDA notices, identifying the specific infringing

– 2 –

products in each separate letter, and attaching the corresponding FDA notices as an exhibit to the letter. As an additional measure of due diligence, TSLLP also confirmed that the photos taken corresponded to the GPS coordinates of each respective store.

14. Amongst other representations, the competing products were advertised as "all natural" when in fact they were not because they contained manmade substances including sildenafil and tadalafil. Attached hereto as **Exhibit 2** is a true and correct copy of Laboratory test records provided by TSLLP's clients that show how some of the competing products contain drugs including sildenafil and tadalafil.

15. Based on TSLLP's investigation of its clients' claims, TSLLP became aware that the federal government has successfully prosecuted the sale and distribution of these products on numerous instances. Attached hereto as **Exhibit 3** is a true and correct copy of criminal prosecution court records.

16. Based on TSLLP's investigation of its clients' claims, TSLLP became aware that the sale of these illicit products also led to many reported deaths and frequent warnings from the FDA, which failed to abate the sale of the illicit products. Attached hereto as **Exhibit 4** is a true and correct copy of various news articles on the harmfulness of the competing products at issue in this case.

17. Based on my work in nutritional supplement litigation, which has included working with various experts, I have become aware that consumers seeking performance supplements like male enhancement products choose synthetic drugs over natural products like Outlaw Labs' TriSteel Products, because synthetic drugs are typically cheaper, more powerful, and, since they are often sold as dietary supplements, consumers assume they are safe, particularly when, as in this case, the products are readily accessible. Outlaw

– 3 –

Labs' TriSteel Products contain legal dietary ingredients, and as a result are more expensive to manufacture.

18. Outlaw Labs hired TSLLP to pursue legal action against stores and distributors advertising and offering for sale the competing products. Stores are the point of sale of the illicit products and are at the end of a covert distribution network. Because of the illegality of the products, information regarding the importers and distributors is not readily available.

19. TSLLP did standard research into Outlaw's claims about the marketplace for the competing products, and confirmed Outlaw's claims that the competing products were generated by illegal importation, relabeling, and distribution of ingredients containing the active ingredients in Viagra and Cialis.

20. TSLLP's client Outlaw Labs (not the firm) took on the task of identifying stores that sold products identified by the FDA as tainted.

21. TSLLP's client Outlaw Labs (not the firm) conducted its own investigation of those stores, hired their own investigators, and compiled and produced evidence of the illicit sale of products.

22. TSLLP had no role in developing the TriSteel Products and did not direct Outlaw Labs to create its TriSteel Products, which were first sold on October 1, 2016 by Outlaw Labs, long before TSLLP was engaged.

23. Given that RICO claims had been successfully prosecuted by the government for the sale of the subject products, TSLLP stated in its initial demand letters, sent from November 2017 through April 2018, that the stores could be liable for civil RICO for their sale of the subject products.

24. Recipients of the demand letters were asked to provide invoices from their distributors so that Outlaw could eventually pursue distributors, as well as a nominal settlement, in exchange for a release of all claims. TSLLP did in fact pursue various distributors, on behalf of its client Outlaw Labs, based on information provided by the stores, including for RICO. Attached

– 4 –

hereto as **Exhibit 5** is a true and correct copy of Outlaw Laboratory, LP's Lawsuits against two distributors for RICO, including Trepco Imports, which operates from Nevada and San Diego.

25. In April of 2018, TSLLP no longer included RICO in its demand letters since the remedies for violations of the Lanham Act were largely duplicative and since TSLLP believed at that time that RICO claims were more difficult to advance past pleading challenges.

26. If stores did not settle, TSLLP filed lawsuits on behalf of Outlaw Labs on numerous occasions, always with the client's authorization. If the store was located out of state, local counsel was found to prosecute the lawsuit. TSLLP ceased filing lawsuits on behalf of Outlaw Labs after being named as a third-party defendant in the present lawsuit, however, Outlaw Labs continued pursuing claims in other states.

27. In addition to sending demand letters and filing lawsuits, TSLLP litigated several actions, successfully defending challenges to the pleadings in three instances. Attached hereto as **Exhibit 6** is a true and correct copy of Outlaw Labs' Orders granting Motions to Dismiss obtained by TSLLP.

28. TSLLP also obtained default judgments, drafted discovery and negotiated and drafted settlements with opposing counsel or parties on behalf of its client.

29. TSLLP always kept its clients apprised of developments in its cases and no settlement was ever made without the client's signature and consent.

30. As is standard with any attorney-client representation, TSLLP had to (and did) obtain its client's approval before agreeing to any settlements on behalf of Outlaw Labs.

– 5 –

31.    Outlaw Labs engaged different law firms to represent it in similar litigation against convenient stores located in different states while TSLLP represented Outlaw Labs.

32.    TSLLP did not manage any of the affairs of Outlaw's other attorneys. TSLLP would in some instances share its expertise with nutritional supplement litigation and the Outlaw's claims with other attorneys when asked. TSLLP understands that Outlaw entered into their own engagement agreement with those law firms, to which TSLLP was not a party.

33.    On or around January 2019, Outlaw Labs chose to terminate its engagement of TSLLP with the exception of the defense of this action and two other matters still pending.

34.    During the course of TSLLP's representation of Outlaw, it settled a claim against Counter-claimant Skyline Market.  In entering the written settlement agreement entitled "GLOBAL AGREEMENT OF COMPROMISE, SETTLEMENT AND MUTUAL GENERAL RELEASES" Skyline was represented by attorney Freddie Garmo, an attorney who had been practicing law since 1995. Attached hereto as **Exhibit 7** is a true and correct copy of Outlaw Labs and Skyline Market's Settlement Agreement and Release.

35.    Mr. Garmo's law firm is in El Cajon, California, delivered Skyline's signature pages for the settlement agreement to Tauler Smith in Los Angeles, California on May 17, 2018.

36.    TSLLP represented Outlaw as its attorneys in entering the settlement agreement itself.

37.    Based on TSLLP's communications with Mr. Garmo's office, I know that Skyline and its counsel had an opportunity to review the allegations of the demand letter and the truth or falsity of its allegations and legal assertions and did not raise any concern to my office regarding the settlement that I am aware of before executing the settlement agreement.

– 6 –

38. Skyline knew that Tauler Smith was the payee of the settlement by the plain terms of the contract. Attached hereto as **Exhibit 8** is a true and correct copy of Skyline Market's communication from Mr. Garmo to TSLLP evidencing Skyline's payment to Outlaw Labs.

39. It was Outlaw Labs, not TSLLP, that gathered evidence to support its legal claims against the Stores.

40. TSLLP did not and could not have "conceived of the demand letters" since they were acting on behalf of their client.

41. TSLLP did pursue RICO litigation on behalf of Outlaw Labs as evidenced by multiple lawsuits filed on its behalf in January and February of 2018. Attached hereto as **Exhibit 9** is a true and correct copy of Complaints filed by Outlaw Labs.

42. These RICO lawsuits were predicated on theories advanced in criminal prosecutions related to the same products. (*See* Ex. 3.)

43. TSLLP was not the "sole financial beneficiary" of the demand letters as it worked on a contingency basis with Outlaw Labs.

44. TSLLP is unaware of any subpoenas issued outside of the present case involving its representation of Outlaw Labs, let alone any subpoenas that were "baseless."

45. As is typical with attorney representation, Outlaw permitted TSLLP to negotiate settlements with businesses that received demand letters or were sued. TSLLP also drafted complaints and filed them on behalf of Outlaw, and drafted settlement agreements on behalf of Outlaw, which only Outlaw signed and executed with the businesses.

46. At no time did TSLLP act without the guidance or direction of Outlaw Labs in prosecuting claims on behalf of its clients.

– 7 –

47. Based on their discovery responses, Outlaw Labs continued to pursue claims with other law firms it engaged in different states long after the contractual relationship between Outlaw Labs and TSLLP was terminated.

48. I am aware through Westlaw searches that some of the subsequent lawsuits Outlaw Labs pursued led to substantial default judgments in federal court. TSLLP was not involved in obtaining these default judgments.

49. Outlaw Labs continued pursuing claims with other attorneys after it ended its engagement with TSLLP.

50. TSLLP engaged in an arms-length contractual relationship for legal services that TSLLP provided before being terminated.

51. TSLLP never "enforced settlement agreements predicated on fraudulent conduct." At no time did TSLLP "enforce" any settlement agreements to which Outlaw Labs was a party through subsequent litigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: July 22, 2020

*/s/Robert Tauler*
Robert Tauler

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# CERTIFICATE OF SERVICE

*In Re: Outlaw Laboratory, LP Litigation*, Case No.: 3:18-cv-00840-GPC-BGS

I hereby certify that on July 22, 2020, copies of **Declaration of Robert Tauler in Support of Third-Party Defendant Tauler Smith LLP's Motion for Summary Judgment, or in the Alternative, Summary Adjudication** were filed electronically through the Court's CM/ECG system, and served by U.S. mail on all counsel of record unable to accept electronic filing.

**Sergenian Ashby LLP**

By: */s/David A. Sergenian*
David A. Sergenian
*Attorneys for Third-Party Defendant Tauler Smith LLP*

– 1 –