UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORIES, LP LITIGATION, | Case No.: 18CV840 GPC (BGS)<br><br>**ORDER ON TAULER SMITH'S MOTION TO COMPEL**<br><br>[ECF 192] |

Third-Party Defendant Tauler Smith has filed a Motion to Compel Counter-claimant Roma Mikha and Third-Party Plaintiff NMRM, Inc. and Skyline Market, Inc. (collectively the "Stores") to provide further responses to discovery requests. (ECF 192.) The Stores have filed an Opposition. (ECF 196.)

**I.    BACKGROUND**

The Court has summarized the allegations and claims of the Second Amended Counter Claims and Third-Party Claims ("SACC" [ECF 114]) in detail in some of the Court's prior orders on discovery disputes. The Court incorporates those summaries here and only briefly summarizes the claims at issue in this consolidated action. (ECF 177 at I.; ECF 215 at II.; ECF 230 at II.; ECF 246 at II.)

As the Court has explained in prior orders on discovery disputes, this consolidated action encompasses two cases brought by Outlaw against retail stores for false advertising under the Lanham Act, and as to the *SD Outlet* action, California False Advertising and California Unfair Competition claims. (Case Nos. 18cv840 ("*DG in PB*") and 18cv1882 ("*SD Outlet*"); ECF 147 at 4-5.[1]) Three of the stores in the *SD Outlet* action have filed counterclaims as a class action on behalf of themselves and other targeted stores against Outlaw and its former counsel, Tauler Smith, under the Racketeer Influenced and Corrupt Organizations Act ("RICO") along with a rescission claim. ("Second Amended Counter Claims ("SACC") [ECF 114].)

Outlaw's Lanham Act claims are premised on the defendants selling "male-enhancement pills, . . . 'the Enhancement Products'" with packaging that indicate they are all natural, but contain undisclosed drugs with Outlaw claiming it has lost out on sales to those products. (ECF 147 at 1, 3-6; ECF 209 (*San Diego Outlet* action.) Summary Judgment was granted to defendants in the *DG in PB* action on this claim. (ECF 147.) As to the *San Diego Outlet* action, Judge Curiel recently granted a motion for judgment on the pleadings and a subsequent motion for reconsideration dismissing with prejudice all of Outlaw's claims. (ECF 209, 251.)

The Stores have alleged counterclaims under RICO on behalf of a class of similarly situated stores. (ECF 114.) The SACC alleges Outlaw, Tauler Smith, and Outlaw's principles, Michael Wear and Shawn Lynch, have engaged in a scheme that includes sending demand letters via U.S. mail to small businesses that threaten the store could be held liable for over $100,000 based on false and misleading statements about potential liability for the sale of certain products by the stores. (SACC ¶¶ 2, 26, 82-88.) Outlaw or Tauler Smith on its behalf then follows up with offers to settle for increasingly lower amounts, including as low as $2,500. (SACC ¶¶ 3-4, 56, 72, 87, 98.)

---

[1] All page citations throughout this Order are the CM/ECF pagination unless otherwise noted.

## II. DISCUSSION

### A. Legal Standards

#### 1. Requests for Production of Documents

"A party may serve on any other party a request within the scope of Rule 26(b) to produce any designated documents or electronically stored information." Rule 34(a)(1)(A). The request must describe the document sought "with reasonable particularity" and any "objection must state whether any responsive materials are being withheld on the basis of that objection." Rule 34(b)(2). The requesting party may move to compel the production of responsive documents if a party fails to produce documents. Rule 37(a)(3)(B)(iv).

#### 2. Interrogatories

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity." Rule 33(b)(4). The party propounding the interrogatory may move to compel an answer if the party fails to answer. Rule 37(a)(3)(B)(iii).

#### 3. Rule 26

As the party seeking to compel discovery, Tauler Smith has "the burden of establishing that [their] request[s] satisfy the relevancy requirements of Federal Rule 26(b)(1)." *Louisiana Pac. Corp. v. Money Market 1 Inst. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012) (citing *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). The Stores, as the parties opposing discovery, "ha[ve] the burden of showing that discovery should not be allowed, and also ha[ve] the burden of clarifying, explaining, and supporting [their] objections with competent evidence." *Id.* (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)). "An opposing party can meet its burden by demonstrating that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails

to show need for the information." *Colaco v. ASIC Advantage Simplified Pension Plan*, 301 F.R.D. 431, 434 (N.D. Cal. 2014) (citing *Khalilpour v. CELLCO P'ship*, No. C 09-02712 CW (MEJ), 2010 WL 1267749, at *3 (N.D. Cal. April 1, 2010)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 n. 17 (1978).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "District courts have broad discretion in controlling discovery" and "in determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).

Following the 2015 Amendments to Rule 26, it is clear that "[r]elevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case." *In re Bard IVC Filters Prods. Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). "The court's responsibility, using all the information provided by the parties, is to consider these, [undue burden or expense and importance of information sought,] and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26 advisory committee's notes.  In deciding whether a request is unduly burdensome, a court must balance the burden to the responding party against the benefit to the party seeking the discovery.  *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1032 (E.D. Cal. 2010)(collecting cases).

Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking

discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

### B.     Analysis

Tauler Smith generally challenges objections made by the Stores to requests for production of documents ("RFPs") and Special Interrogatories as well as sanctions against them. (ECF 192.)  Before proceeding, the Court first addresses a broader issue with this Motion.  The Court's Order setting the briefing on these disputes indicated that any exhibits relied on by either party must be summarized or quoted within the briefs. (ECF 189 at 3.)  Tauler Smith has attached numerous exhibits, including portions of the subject discovery requests, but has largely failed to quote or summarize them.  As explained further below, there are even instances, despite the Court best efforts, when the Court has simply been unable to locate the objection or language Tauler Smith references in the Motion because the citation, if any, is insufficient.

#### 1.     RFPs

Tauler Smith raises three general topics in its Motion regarding the Stores' responses to the RFPs: (1) failure to provide documents; (2) failure to withdraw improper objections; and (3) failure to indicate if any documents have been withheld.  (ECF 192 at 6-8.)  However, as discussed more below, Tauler Smith does not identify or address any particular RFPs in its Motion.

The Stores argue the Court should deny Tauler Smith's Motion as to the RFPs because it never identifies which RFPs are at issue in its motion to compel.  (ECF 196 at 2 (citing *UMG Recordings, Inc. v. Am. Home Assurance Co.*, No. CV073257GAFAGRX, 2008 WL 11343400, at *2 (C.D. Cal. July 29, 2008)).)  This is a fair point; however, the Court has attempted to address the issues raised where possible despite this deficiency.

### a) Failure to Provide Documents[2]

Tauler Smith argues it should have received more responsive documents than the 33 it has received, the Stores have not indicated they have engaged in a search for documents, and the Stores have not "confirmed the existence of" responsive records the Stores identified in a hard copy version or confirmed whether an electronic version of those hard copies exists. (*Id.* at 6.)

Tauler Smith argues that the Stores have produced only 33 pages of documents in response to Tauler Smith's RFPs. (*Id.* at 6.) This alone is not a reason to grant a motion to compel and certainly not impose sanctions. Although the Court recognizes Tauler Smith is suggesting the Stores are withholding documents because it was expecting more, there is no explanation why it was expecting more. (*Id.*) Tauler Smith does not identify any documents it would have expected to receive in response to any RFP. (*Id.*) In fact, there is no discussion or even identification of any RFPs at all in this section. (*Id.*)

As to Tauler Smith's assertion that the Stores have not indicated they have engaged in any search for documents, Tauler Smith states and quotes the following, "the Stores respond that the[y] 'do not believe [they have] any responsive documents, but will conduct a reasonably diligent search for the same, and produce any that it can locate.'" (*Id.* at 6.) Tauler Smith does not cite the source of the language it quotes. The Stores response does not provide the Court with much more guidance. The Stores argue that this "assertion is incorrect, as is seen simply by reviewing the Stores' amended responses." (ECF 196 at 6 (citing Decl. of David A. Sergenian ("Sergenian Decl."), Exs. G (ECF 192-8), H (ECF 192-9), and I (ECF 192-10).) Exhibits G, H, and I are collectively almost 120 pages of RFPs from Tauler Smith with supplemental responses

---

[2] As to the RFPs, the Motion largely does not address the discovery at issue by discovery request, issue, or based on the organization set by the Court in its briefing order. The Court largely follows Tauler Smith's headings, as the Stores did, and relies on the same heading titles utilized by the parties in their briefing.

from Roma Mika (Ex. G), NMRM (Ex. H), Skyline Market (Ex. I.)  A very cursory review of the 120 pages reveals the language Tauler Smith quotes appears in responses to numerous RFPs along with objections.  However, that still does not explain the dispute.  Tauler Smith has failed to identify which RFPs are at issue or explain how a response indicating a diligent search will be conducted and documents produced if located is deficient.  Absent any explanation, the Court cannot compel the Stores to search or produce documents, particularly when the Court does not even know what it would be ordering to Stores to search for or produce.  To the extent Tauler Smith is seeking only confirmation that a search was conducted and any responsive documents, the Court will order the Stores to provide Tauler Smith confirmation that a diligent search for responsive documents was conducted and any responsive documents have been produced.  That confirmation must be provided by **August 7, 2020**.

As to the final point in this category, Tauler Smith provides another confusing argument with little information.  It appears to concern Tauler Smith obtaining copies of records the Stores have not confirmed the existence of and the availability of them electronically. (ECF 192 at 6.)  Again, there are no RFPs identified and even the topic the Stores would be responding to is not clear from Tauler Smith's Motion.  (*Id.*)  However, the Court presumes, as the Stores do in responding, that this argument concerns the sufficiency of some financial records identified by the Stores. (ECF 196 at 6.)  Assuming Tauler Smith is referring to purchase and sales records, the Stores respond that Roma Mika and NMRM do not have transaction-by-transaction sales records for the products at issue and Skyline's sales do not matter because they are not claiming lost sales.  (*Id.*)  Additionally, the Stores indicate that the purchase records for the products do not exist in an electronic form but exist only in the paper invoices NMRA and Roma Mika receive with the order from the wholesalers.  (*Id.*)  And, as to Tauler Smith's assertion that the Stores have not confirmed the existence of these records, the Stores respond that counsel sent a picture of the records showing the manner in which they are kept – compiled monthly in a manila envelope and then organized by year.  (*Id.*)

When the Court indicated Tauler Smith could move to compel production of these documents electronically, it was only if the parties were not able to compromise on the issue of obtaining them electronically.  Based on the briefing, it appears the parties have not even communicated on the issue between the Court's briefing Order and the filing of this Motion.  Although the Stores dispute Tauler Smith's assertion that the Stores have not confirmed the existence of these documents, the Court's own interpretation of the Stores' statement leaves that question somewhat open.  The Stores seem to indicate that if there are responsive documents, *i.e.* invoices for the purchase of the products, they would be in these hard copy files the Stores have identified.  However, that does not necessarily mean they are there.  This may be unwarranted skepticism, but out of an abundance of caution, the Court will require the Stores to confirm that the hard copy files identified by Stores do in fact contain some responsive documents, *i.e.* the hard copy invoices for the purchase of the products, before Tauler Smith incurs the expense of either going to review them and copy those it wants or hires a vendor to transfer them to an electronic format.  Given Tauler Smith has not provided any briefing that would suggest the burden or expense of converting the hard-copy documents to an electronic format should be shifted to the Stores, the Court will not order it, particularly in the absence of any relevancy or proportionality argument from Tauler Smith.[3]

### b) Failure to Withdraw Improper Objections

Tauler Smith argues "[t]he Stores persist in violation of the Court's April 20, 2020 Order and without explanation, that [Tauler Smith]'s requests are (1) overbroad; (2) irrelevant; (3) burdensome; (4) vague and ambiguous; and (5) subject to expert testimony were improper." (ECF 192 at 7.)  It then asserts the Court must order these objections

---

[3] The Court notes that there is a reference in a recent filing by Tauler Smith (related to subpoenas) that suggests Tauler Smith has already obtained copies of these records. (ECF 264 at 5.)  That might render this dispute moot.  However, given the lack of clarity in what Tauler Smith is referring to here, the Court addresses the dispute based on this briefing.

withdrawn. (*Id.*) Other than this blanket assertion, the only argument is "[t]he Stores complain that they do not understand terms like 'RICO' and 'sildenafil' which are the subject of this action" and "no expert testimony is needed to provide simple accounting records and evidence of 'duress.'" (*Id.*) The Stores respond that nothing in the Court's April 20, 2020 Order required the Stores to withdraw any objections. (ECF 196 at 7.)

The Court agrees that it never ordered the Stores to withdraw any objections. The only references to objections in the briefing Order related to acknowledging Tauler Smith's challenges to the Stores' objections based on privilege and to interrogatories. (ECF 189 ¶¶ 5-6). The objections to RFPs quoted above do not appear to concern either. Additionally, even those references in the Order were just acknowledging the issues to set them for briefing. The only portion of the Order that ordered anything specific was the Court setting a deadline for the Stores to complete a rolling production. (*Id.* at ¶ 1.) The Stores sought to complete the productions by May 1, 2020 and the Court ordered them to complete them by April 24, 2020. (*Id.*) The Court did not order the Stores to withdraw objections. Rather, the Order specifically stated, "[i]n ordering the completion of the production of documents, the Court is simply setting a deadline. The Court is not reaching any dispute that might arise regarding the actual production." (*Id.* n. 1.) Accordingly, the Court will not order any objections withdrawn based on the Court's April 20, 2020 Order.

As to Tauler Smith's arguments that the Stores complain they do not understand terms like "RICO" and "sildenafil" and that no expert testimony is needed to provide accounting records and evidence of "duress," there is little the Court can order on these points without any further explanation. Again, Tauler Smith does not reference, cite, quote, or summarize any RFPs on this point. The Court cannot assess whether an objection is proper or not, particularly as to certain terms, without any idea where they appear amongst 120 pages of RFPs with objections. For example, Tauler Smith states no expert testimony is needed to provide evidence of "duress," but it does not appear that term is in any of the RFPs or responses to them. The Court cannot order the Stores to

1  produce discovery regarding "duress" when it does not appear in any request and there is
2  no argument on it.
3       Even if the Court reached the substance of this argument, the outcome would likely
4  not be different.  Based on a cursory search through the 120-pages of RFPs and
5  supplemental responses, it appears that "sildenafil" is listed numerous times in objections
6  to RFPs that use the term "Subject Products."  It would only be a guess given the lack of
7  explanation from Tauler Smith or inclusion of the definitions of any defined terms like
8  Subject Products, but it appears the Stores have objected to the overly broad definition of
9  "Subject Products."  In one of their objections, the Stores argue the RFP is overbroad and
10 unduly burdensome because it includes products not at issue in the case "including, but
11 not limited to 'any other' unspecified 'products containing hidden drug ingredients,
12 including *but not limited to* sildenafil, tadalafil, sulfoaildenafil, or dapoxetine.'"
13 (Sergenian Decl., Ex. G (ECF 192-8 at 5) (emphasis added).)  The Court would agree
14 with phrases like "not limited to any other unspecified products containing hidden drug
15 ingredients" the RFPs are overbroad and no further response is required on this basis
16 alone.

          **c)**    **Failure to Indicate If Any Documents Have Been Withheld**

18      Tauler Smith argues the Stores have failed to follow the Court's Order that they
19 comply with Rules 26(b)(5)'s requirements.  (ECF 192 at 7-8.)  Tauler Smith indicates in
20 the Motion that "[f]or every category of documents, no indication is made whether any
21 documents are being withheld on the basis of any objection.  The Court should find the
22 Stores' in contempt of the Court's April 20, 2020 Order and order appropriate issue
23 sanctions so that the Stores comply with their obligations." (*Id.* at 8.)  The Stores
24 respond that "the Order of course invoked Rule 26(b)(5) to say that the Stores must
25 produce a privilege log only if 'documents have been withheld based on privilege.'"
26 (ECF 196 at 7-8 (quoting ECF 189 ¶ 4).)  The Stores note Tauler Smith has not identified
27 any particular request where the Stores agreed to produce documents, but invoke
28 privilege, but also indicate that "there are no responsive documents that the Stores are

10

withholding on privilege, which explains why they did not produce a privilege log. (*Id.* at 8 (citing Poe Decl. ¶ 5).)

Again, like the prior issues discussed, Tauler Smith fails to identify which RFPs are at issue. This alone is a sufficient reason to deny Tauler Smith's Motion on this issue. However, the Court has still considered the issue. As reflected in the Court's Order setting the briefing on the disputes the parties raised, Tauler Smith asserted that the Stores failed to indicate whether they were withholding documents based on privilege. (ECF 189 ¶ 4.) The entire paragraph states:

> Tauler Smith asserts that the Stores have failed to indicate if documents have been withheld based on privilege. The Stores must comply with Rule 26(b)(5)'s requirement that when withholding something based on privilege, the party withholding it must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable [other parties to] assess the claim." The Stores must do so by **April 24, 2020**.

(ECF 189 ¶ 4.) Although the Court did not specifically state that the Stores were only required to provide a privilege log if they were withholding documents based on privilege, the Court would agree, consistent with the Rule, that they are only required to produce a log if documents are withheld based on privilege. *See* Rule 26(b)(5) (Requirements must be met "[w]hen a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material"). The Stores have now confirmed that they have not withheld any responsive documents based on privilege.[4] Accordingly, the Court will not require

---

[4] The Court does note that this issue could have been resolved without the Court's involvement if the Stores' counsel had verified for Tauler Smith what it has now verified by declaration to the Court – that it has not withheld responsive documents based on privilege.

11

the Stores to provide a privilege log and does not find the Stores in contempt of the April 20, 2020 Order.

### 2. Interrogatories

As to its interrogatories, Tauler Smith titles its issues as follows: (1) boilerplate response (Special Interrogatories 1-7); (2) objections on the grounds of relevance (SROGs 1-7; 13); and (3) objections on grounds of "attorney client privilege" (SROGS 1-7 (All Stores); 19, 22-25 (Roma), 10, 12-13 (NMRM), and 14 (Skyline). The Court addresses each.

#### a) Boilerplate Responses (Special Interrogatories 1-7)

Within this section, Tauler Smith raises numerous arguments. The Court considers each below.

First, Tauler Smith argues the Stores' "responses to Special Interrogatories ("SROG") 1-7, namely that the Stores do not understand the various terms in the requests, including 'conspiracy' (SROG Nos. 2-3) 'RICO' (SROG Nos. 4-6) and 'restitution' (SROG No. 7) all of which are the basis of the Stores claims against [Tauler Smith] are improper." (ECF 192 at 8.) The Stores first respond that they "have no idea what Tauler Smith is talking about" and "do not profess to fail to understand any of those terms, as review of their responses will show." (ECF 196 at 8.)

Tauler Smith does not cite any exhibits in support of the argument. Although it generally references seven interrogatories there are six sets of interrogatories with responses attached to Tauler Smith's Motion – three with initial responses and three with supplemental responses from each store. Tauler Smith has also failed to summarize or quote the relevant interrogatories. This is of particular consequence here because the Court, despite reviewing Interrogatories 1-7 with the Stores' supplemental responses, is unable to locate the objections Tauler Smith references. (Sergenian Decl., Exs. J (ECF 192-11), K (ECF 192-12), and L (ECF 192-13)). The Court cannot find the objection improper if it cannot locate the objection having been made.

Tauler Smith also challenges the Stores' objections to Interrogatories 1-7 by each of the stores that the documents referenced in the interrogatories were not attached to the discovery when sent.  (ECF 192 at 8-9.)  Tauler Smith relies on the references to the page lengths of the documents in the Stores' responses to argue they were in fact sent.  (*Id.* at 9.)  As noted below, the Stores respond at some length on an issue Tauler Smith does not address in any meaningful sense concerning these interrogatories in this section but the Stores do not specifically address having received or not received the documents referenced in the interrogatories.  However, the Stores do accurately point out that they have responded to these interrogatories.  Accordingly, there is nothing for the Court to do except find the documents referenced must have been received, but there is nothing else to order since the Stores have provided responses.

In the same sentence Tauler Smith takes issue with the objections regarding the Stores' receipt of attached documents, it states that the Stores objected "that the various criminal indictments, information and judgments ('the RICO documents') referenced in SROGs 1-7 'call for an interpretation of an extrinsic document from other litigation, and which was not attached to the interrogatories served.'" (ECF 192 at 8.)  However, Tauler Smith only addresses the receipt issue discussed above.  (*Id.* at 8-9.)  The Stores responded, accurately summarizing these interrogatories as asking the Stores, essentially store owners, to offer opinions on criminal indictments and restitution orders that do not involve the parties in this case.  (ECF 196 at 8-9.)  The Stores also note that despite the interrogatories being "nonsensical" the Stores have responded to them.[5]  (*Id.* at 9.) To the extent that Tauler Smith was attempting to challenge the objection that these interrogatories call for an interpretation of an extrinsic document, it failed to do so.  It

---

[5] For example, Interrogatory No. 7 "Considering the conduct alleged in the JOHN SEIL LEE INFORMATION, do you believe that $133,739.49 in restitution ordered by Judge Percy Anderson in the JOHN SEIL LEE JUDGMENT was reasonable? If not, DESCRIBE IN DETAIL the basis of your belief. (Sergenian Decl., Ex. J (ECF 192-11, Interrogatory No. 7.)

provides no argument on that point here and the Court is not going to analyze an issue Tauler Smith does not substantively raise.

Tauler Smith also challenges the Stores' claim of ignorance as to FDA notices. (ECF 192 at 9 (citing SROG No. 1).) However, despite having reviewed the three interrogatories that are numbered one in each set and their supplemental responses, (Sergenian Decl., Exs. J, K, and L), the Court cannot find any reference to FDA notices or a claim of ignorance related to them in any supplemental responses to them. The Court could speculate that the parties simple disagree about the legal significance of notices issued by the FDA, but the Court certainly cannot order a further response from the Stores when the Court cannot even locate the objection at issue.

### b) Relevance Objections (SROGS 1-7, 13)

Tauler Smith raises two issues in this section. First, it challenges the Stores' objections to Interrogatories 1-7 based on relevance. (ECF 192 at 9-10.) Tauler Smith argues they are relevant to a defense, *i.e.* that the Stores engaged in a RICO conspiracy. (*Id.*) The Stores respond that these interrogatories do not inquire whether the Stores have engaged in a RICO conspiracy, but even if they did, the Stores have answered them. (ECF 196 at 9-10.) They argue Tauler Smith is simply seeking different answers. (*Id.*) Second, Tauler Smith challenges the Stores' relevance objection to Interrogatory 13. (ECF 192 at 10.) It argues discovery regarding how damages would be substantially similar across class members is relevant. (*Id.*) The Stores first assert that Interrogatory No. 13 was not among those presented for this motion, but regardless, the Stores have answered it. (ECF 196 at 10.)

As to both issues, there is an overarching problem. Tauler Smith raises these as relevancy issues, presumably seeking the Court's determination that they are relevant to the case, but these interrogatories have all been answered. Tauler Smith would not necessarily be precluded from challenging the sufficiency of the responses, but that is not what it has raised. It does not in any respect raise any issue with the responses to these interrogatories. For example, the Court would agree Interrogatory 13 seeks relevant

information. The Stores contentions regarding damages among the payment class are relevant. However, the Stores have answered and indicate that damages among the payment class are set forth in each settlement agreement those members entered into with the Outlaw Enterprise. (ECF 192-11 at 12.) Tauler Smith does not address why this answer is insufficient and the Court cannot order them to provide a different or additional answer without a reason. A similar issue arises with Interrogatories 1-7. Even if the Court agreed these were proper interrogatories,[6] seeking information relevant to a valid defense, they have each been answered. And, Tauler Smith has not addressed why those responses are insufficient.[7]

                c)       **Objections on the Grounds of "Attorney Client Privilege" (SROGS 1-7 (All Stores); 19, 22-25 (Roma); 10; 12-13 (NMRM); 14 (Skyline)**

Under this heading, Tauler Smith characterizes the Stores as "object[ing] that communications regarding their sale of misbranded drugs in violation of federal law is protected by the work-product doctrine." (ECF 192 at 10.) It then cites the Stores response to only one interrogatory, Interrogatory No. 10. It states, "DESCRIBE IN DETAIL why YOU began selling the products again." (ECF 192-12 at 11.) In addition

---

[6] The Court would not agree they are proper or that they seek relevant information even assuming the propriety of the defense Tauler Smith asserts. As another example, Interrogatory No. 1 ask the Stores, essentially layman store owners, to offer their opinion whether the sale of an ill-defined group of products would constitute the same conduct as alleged in a criminal indictment unrelated to this case. (*See* Sergenian Decl., Ex. J (ECF 192-11, Interrogatory No. 1.) ("Do you believe that selling the SUBJECT PRODUCTS constitutes 'introducing misbranded drugs into interstate commerce' as detailed in the NAM HYUN LEE INDICTMENT? If not, DESCRIBE IN DETAIL the basis of your belief.") The only significant distinction among Interrogatories 1-7 is a different factually unrelated criminal filing is referenced in each. These requests simply run too far afield from the facts of this case to be proper or relevant.

[7] Although the Court has significant latitude in managing discovery, even if the Court were to identify problems with the sufficiency of any of these responses, it would then be ruling against the Stores on a basis the Stores have not had any opportunity to address.

to other objections, "NMRM objects to this Interrogatory as calling for information protected from disclosure by the attorney-client privilege and/or the work product doctrine." (*Id.*)  Without citation to any applicable authority, Tauler Smith argues NMRM waived the privilege by answering a question during a deposition.[8]

> Q.  And your lawyers said, Put them back on; don't worry about it?
> A. He said, You can sell this pill.  There is no legal problem.  You can sell.

Additionally, Tauler Smith also argues the privilege does not apply because the communications are regarding ongoing criminal conduct.  Although not entirely clear, it appears Tauler Smith is arguing the sale of misbranded products is the underling crime to which the crime-fraud exception would apply.

The Stores again first respond that Tauler Smith has failed to direct the Court to the objections at issue.[9]  (ECF 196 at 10.)  The Stores also accurately point out that they have answered this interrogatory, stating, "NMRM responds that once it came to understand that the threats set forth in the demand letter were baseless and intended only to defraud it of 'settlement' money, it resumed selling certain 'male enhancement products.'" (*Id.* at 11 (citing Sergenian Decl., Ex. K, Interrogatory No.10).)  The Stores also respond that Tauler Smith has failed to provide any argument or authority for finding waiver of privilege based on the deposition question.  Additionally, the Stores argue there can be no crime-fraud exception applied because there is not even an allegation the Stores and their counsel are engaged in a crime or fraud.  (*Id.* at 12.)

The Court cannot find, based on Tauler Smith's Motion, that the attorney-client privileged has been waived or that the communications at issue are subject to the crime-

---

[8] Although Tauler Smith cites a transcript, there is no reference to an attached exhibit that contains the transcript and it does not appear to be attached to the Motion for the Court's consideration.
[9] The Stores accurately point out that Tauler Smith makes no arguments as to any of the other interrogatories

fraud exception. As to a waiver based on answering the deposition question, Tauler Smith has not established this constitutes waiver of privilege. Putting aside the lack of citation to any legal authority, it quotes two lines from a deposition concerning an unidentified pill he was apparently told by a lawyer he could sell with no context or explanation. (ECF 192 at 11.) The Court is not going to waive privilege as to all communications between all the Stores and its counsel based on this minimal and vague factual basis.

Tauler Smith has also not established the crime fraud exception applies. Although not abundantly clear, it appears Tauler Smith is seeking outright disclosure of attorney-client communications or work product. As this Court has explained at length in a prior order, (ECF 230 at 8-10) "in a civil case the burden of proof that must be carried by a party seeking outright disclosure of attorney-client communications under the crime-fraud exception is preponderance of the evidence." *In re Napster, Inc. Copyright Litig.,* 479 F.3d 1078, 1094-95 (9th Cir.2007), *abrogated in part on other grounds by Mohawk Indus., Inc. v. Carpenter,* 558 U.S. 100, 130 S. Ct. 599 (2009). Tauler Smith has not even identified a crime or fraud other than a reference to selling a misbranded drug. It certainly has not carried its burden is establishing the Stores were "engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme" or "demonstrate[d] that the attorney-client communications for which production is sought are sufficiently related to and were made '*in furtherance of* [the] intended, or present, continuing illegality.'" *Id.* at 1090 (internal quotations omitted).

### 3. Failure to Provide Verifications for Skyline Market

At the time this Motion was filed, Tauler Smith had not received a verification for discovery responses from Skyline Market. (ECF 192 at 11.) The Stores acknowledge the oversight and indicate that the verification has now been provided to Tauler Smith.

### 4. Sanctions

Based on the Court's rulings above, no sanctions or fee-shifting under Rule 37 are warranted.

### III. CONCLUSION

With the exception of ordering confirmation of diligent searches and confirming the hard-copy files contain some responsive documents as set forth above (II.B.1.a) the Motion to Compel is **DENIED**.

**IT IS SO ORDERED.**

Dated: August 3, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge