MARK POE (Bar No. 223714)
  mpoe@gawpoe.com
RANDOLPH GAW (Bar No. 223718)
  rgaw@gawpoe.com
SAMUEL SONG (Bar No. 245007)
  ssong@gawpoe.com
VICTOR MENG (Bar No. 254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Defendant Roma Mikha, Inc.
and Third-Party Plaintiffs NMRM, Inc.
and Skyline Market, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORY, LP LITIGATION | Case No. 3:18-cv-840-GPC-BGS<br><br>**THE STORES' MOTION FOR SANCTIONS AND FURTHER ORDER COMPELLING DOCUMENT PRODUCTION AND INTERROGATORY RESPONSES BY TAULER SMITH** |

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

I.  THE STORES ARE ENTITLED TO MONETARY SANCTIONS FOR MR. TAULER'S ABUSIVE CONDUCT DURING HIS DEPOSITION. .................. 1

II. TAULER SMITH SHOULD *AGAIN* BE ORDERED TO PROVIDE TRUTHFUL INTERROGATORY RESPONSES AND PRODUCE ITS RESPONSIVE DOCUMENTS ........................................................................... 5

    A.  The Timeliness of the Stores' Presentation of These Issues. ....................... 6

    B.  Tauler Smith Was Lying About Its Documents, and Mr. Tauler's Declaration is Perjurious. ............................................................................ 8

    C.  Tauler Smith Also Served False Interrogatory Responses In Response to the June 1 Order. ....................................................................................... 12

    D.  Tauler Smith Should be Ordered (Again) to Produce Responsive Documents and Provide Truthful Interrogatory Responses, and It and Its Counsel Should be Jointly Sanctioned. ..................................................... 14

Pursuant to the Court's August 6 Order Regarding July 29, 2020 and July 30, 2020 Letter Briefs (ECF No. 266), Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc. (together, the "Stores") hereby submit their motion seeking sanctions and further discovery from third-party defendant Tauler Smith LLP.

**INTRODUCTION**

This motion follows from certain testimony given by Robert Tauler during the Rule 30(b)(6) deposition he gave on behalf of third-party defendant Tauler Smith LLP on June 29, 2020. The Stores seek (1) monetary sanctions for Mr. Tauler's abusive conduct during that deposition, and (2) a further discovery order compelling Tauler Smith to produce documents that Mr. Tauler has attempted to conceal through his false declaration dated June 10, 2020, and to give truthful interrogatory responses.

**I. THE STORES ARE ENTITLED TO MONETARY SANCTIONS FOR MR. TAULER'S ABUSIVE CONDUCT DURING HIS DEPOSITION.**

On June 29, 2020, Mr. Tauler gave deposition testimony in both his personal capacity and as the Rule 30(b)(6) designee for Tauler Smith. Mr. Tauler's conduct during that deposition was unlike anything the undersigned has witnessed in eighteen years of federal practice. Mr. Tauler was abusive, personally insulting, disdainful of any standards of civility, and ended up unilaterally terminating the remote deposition when presented with an exhibit (authored by his firm) that he did not care to address.

"The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). As another court in this District recently observed prior to awarding sanctions under that rule, "[i]ncivility is a scourge upon the once-venerable legal profession and has unfortunately become increasingly more rampant in the profession in recent years." *La Jolla Spa MD, Inc. v. Avidas Pharm., LLC*, No. 17-CV-1124-MMA(WVG), 2019 WL 4141237, at *1 (S.D. Cal. Aug. 30, 2019). "[O]utside the fictional absurdities of television drama, attorneys in the real world—presumably educated in the law and

presumably committed to upholding the honor of the profession—should know and behave much more honorably." *Id.* Although the conduct by Mr. Tauler more than warrants such a finding, "[d]istrict courts within the Ninth Circuit have held that Rule 30(d)(2) sanctions do not require a finding of bad faith." *Id.* at *4.

Examples of Mr. Tauler's "testimony" include the following:

[To counsel:] ███████████████████████████ ████████████████████████████████ ████████ (125:11-13.)

[To counsel:] ████████████████████████████ ████████████████████████████████ ████████████████████████████████ ███████████████████████████. (172:3-9)

[To counsel:] And guess what? Time has a funny way of wrapping up on people. And I'm going to have you fully wrapped up like the little worm in my spider web by the end of this year. You mark my word, son. (178:16-19)

[To counsel:] And I must have hurt your feelings, because I know you're really sensitive. I know you have daddy issues. So, really, I'm going to be your daddy for the next two years. (192:12-15.)

Q: Let's look next at Exhibit 117.
A: Oh, yeah. This is where I say you're a fucking idiot, basically. Well, strike that. Basically, you're so dumb. (191:21-24.)

[To counsel:] You are going to get destroyed. (194:15-16.)

[To counsel:] He's laughing. He's giggling. He's playing with his hair. He's like a school girl. . . . You like to giggle when you're nervous, like a little school girl, don't you, Mark? (194:24-195:7)

[To counsel:] Mark, it's okay if you're scared. It's okay if you're scared. You had a really rotten year. You had the worst year imaginable. (195:20-23.)

(Poe Decl. Ex. A (excerpts of transcript).)

Later that afternoon, when the Stores' counsel presented Mr. Tauler with an invoice that Tauler Smith had presented to its then-client Outlaw Laboratory, Mr. Tauler invoked "Rule 30(d)(3)," and announced: "I'm terminating the deposition. We'll take this up with the judge." (*Id.* at 238:17-21.) Mr. Tauler then terminated his remote connection to the deposition. (*Id.* at 239:20-24.) Later that afternoon—at 4:56 p.m.—Tauler Smith's counsel professed that Mr. Tauler was willing to resume his deposition, but by that time the connection to the remote court reporter and the separate remote videographer had been terminated. (Poe Decl. ¶ 2, Ex. B.) Following Mr. Tauler's unilateral termination, Tauler Smith did not then follow through with his invocation of Rule 30(d)(3) as grounds to terminate the deposition. *See Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 233 F.R.D. 648, 653 (C.D. Cal. 2006) ("If plaintiffs' counsel believed that the deposition was being conducted in bad faith, or that [the deponent] was being unreasonably annoyed, embarrassed or harassed, he should have suspended the deposition at that juncture, stated his complaints on the record, and applied immediately to the court for protection under Rule 30(d).") (citation omitted).

The exhibit that Mr. Tauler did not want to testify about was a January 9, 2019 invoice whereby he purported to bill his client Outlaw Laboratory $1,159,908.36 for Tauler Smith's work on the scheme. (Poe Decl. ¶ 5, Ex. C.) While Mr. Tauler gave false testimony that he did not know what the invoice was and that it must be a "forg[ery]" created by Tauler Smith's former bookkeeper (Tauler Dep. 235:20-22), Outlaw's counsel then acknowledged that *he* was the one who had provided the document to the Stores. (*Id.* 236:1-4.) After the deposition concluded, Outlaw's counsel sent all parties the very email (*authored by Mr. Tauler*) in which he had tendered the invoice, proving the falsity of his testimony denying knowledge of the document and claiming it to be have been "forged." (Poe Decl. Ex. D.)

In addition to the sanctions available under Rule 30(d)(2) against anyone who "impedes, delays, or frustrates the fair examination of the deponent," Rule

30(d)(3)(C) provides that "Rule 37(a)(5) applies to the award of expenses" as to a party that purports to terminate a deposition mid-course. Accordingly, the Stores seek an Order requiring Mr. Tauler to resume his deposition at Tauler Smith's expense (for the cost of the reporting services and the original transcript for the Stores), and to pay for the cost of the aborted deposition, which is **$3,362.25**. (Poe Decl. ¶ 26, Ex. U.) The Stores do not seek fees for their counsel's time.

Moreover, Mr. Tauler has been involved in this case for two years, subject to this Court's direction that "[p]rofessionalism and civility . . . are of paramount importance to the Court," and noting that violation of such standards is subject to sanctions under Local Rules 83.1 and 83.5. *See* Chambers' Rules, Section VII. Mr. Tauler's quest for vengeance against the Stores' counsel extends to emailing their opposing counsel in other cases in an effort to defame them. (*See, e.g.*, Poe Decl. Exs. E, F.) Naturally the Stores have good relationships with their opposing counsel in other matters, so those attorneys give little heed to Mr. Tauler's unusual behavior. (*Id.* Ex. G.)

Finally, the Stores must respond to Outlaw's fanciful defense that the undersigned made "kissing gestures to the witness during questioning." (July 29, 2020 Joint Letter brief at 3.) In fact, the expression that Tauler Smith's counsel claims to have observed was the vocalization of counsel's incredulous response "oh!" in response to one of Mr. Tauler's rants:

> **Q:** Exhibit 117 is an e-mail that you sent to me on August 9, 2018, after receiving from me Exhibit 116. Correct?
>
> **A:** That's right, because I couldn't believe that anyone could possibly defend a criminal enterprise.
>
> And you know it's unethical to defend an ongoing fraud. You know that some of these products have been prosecuted over a dozen times by the federal government. You –
>
> I did not fathom for one second that there was someone like you in the world that would be so criminally dishonest.

> However, I learned, after you got busted at the Trendsettah case, that there are people like you that are willing to break any law just to line their own pockets. Because all you care about is money. That's why you're charging 20 percent to these poor liquor stores.
>
> You represent -- You represent to the court that you're some good guy, but all you care about is money.
>
> You lied to the litigation funders. I know you did. You use Randy Raheed to finance -- I have all the testimony.
>
> You used the same dirty accountant you used in Trendsettah to -- and you went to trial –
>
> MR. SERGENIAN: Wait, wait. Let me just state for the record –
>
> THE WITNESS: You are going to get destroyed.
>
> MR. SERGENIAN: Wait, Mr. Tauler. Let me just state for the record that Mr. Poe made a kissing expression, like he was kissing you, which was weird –

(Tauler Dep. 193:10-194:20; Poe Decl. ¶ 8.)

Should the Court find Tauler Smith's imaginary "kissing expression defense" worthy of further consideration, the Stores are willing to pay for the audio and video of Mr. Tauler's deposition and provide it to the Court, so the Court can confirm for itself which side is more credible on this point.[1]

## II. TAULER SMITH SHOULD *AGAIN* BE ORDERED TO PROVIDE TRUTHFUL INTERROGATORY RESPONSES AND PRODUCE ITS RESPONSIVE DOCUMENTS.

On June 1, 2020 this Court issued an order requiring Tauler Smith to produce documents in response to several of the Stores' document requests, and to respond to three interrogatories. (Order on Discovery Dispute Regarding Tauler Smith's Responses to the Stores' Discovery Requests ("June 1 Order") (ECF No. 215).) In

---

[1] With regard to the series of false statements that Mr. Tauler made in this exchange, the Stores respectfully reserve the right to seek further sanctions to the extent that the signatory of Tauler Smith's opposition brief fails to conduct a good-faith inquiry, and repeats those false statements as if they were true.

the Court's words, the requests for which it ordered production were:

- "Document Request Nos. 7 (documents showing how much money Tauler Smith took in through settlements) and 9 (Tauler Smith's communications with stores or their counsel);"

- Document Request Nos. 1 (demand letters), 2 (settlement agreements), and 10 (communications with Outlaw's other counsel concerning the scheme)

(*Id.* at 7, 9.)

The Court further ordered responses to the Stores' "Interrogatories 1, 3, and 7 requesting identities of [1] demand letter recipients, [3] identities of settling stores, and [7] the amount of money received from settling stores." (*Id.* at 8-9.)

With respect to the documents, the Court noted:

> If Tauler Smith is claiming it has produced all of these documents to the Stores, then there is little the Court can do <u>absent a showing that Tauler Smith is lying</u> to the Court in explicitly indicating to the Court that it has produced all documents in its possession.

(*Id.* at 9 (emphasis added).) In an attempt "to provide the Stores some assurance," the Court required Tauler Smith to "provide the Stores with a declaration indicating they do not have any more responsive documents than those already produced to the Stores." (*Id.* at 10.) On June 10, Mr. Tauler provided that declaration, attesting that Tauler Smith had produced all responsive documents. (Poe Decl. Ex. H.) Therein, Mr. Tauler attested: "TSLLP does not have any more documents responsive to the Stores' discovery requests than those already produced." (*Id.* ¶ 3.) Tauler Smith served its supplemental interrogatory responses on June 10 as well. (*Id.* Ex. I.)

**A.   The Timeliness of the Stores' Presentation of These Issues.**

The Court's August 6 order instructed the Stores to "address as a threshold matter when they became aware that Tauler Smith's responses were deficient and, as the Stores assert, 'perjurious.'" (ECF No. 266 at 3.) It further specified that the Stores "must specifically address by declaration when and how it determined the responses were insufficient to fully address Tauler Smith's waiver argument." (*Id.*)

That description is set forth at paragraphs 11 to 21 of the Poe Declaration. In sum, while the Stores' could have had *suspicions* about the untruthfulness of *some aspects* of Tauler Smith's interrogatory responses and Mr. Tauler's declaration, the great majority of the information demonstrating the falseness of those responses came to light only during Mr. Tauler's deposition, and through additional documents produced by Outlaw Laboratory *after* the deposition. Until then, when faced with the signed interrogatory responses and Mr. Tauler's sworn declaration, the Stores were in the same position that the Court was in back in June: "If Tauler Smith is claiming it has produced all of these documents to the Stores [and claims to have given truthful interrogatory responses], then there is little the [Stores] can do absent a showing that Tauler Smith is lying[.]" (June 1 Order at 9.) It required the deposition of Mr. Tauler and Outlaw's subsequently produced information for the Stores to be comfortable that they were "substantially justified" in asserting that Tauler Smith was lying about the responses discussed herein.[2]

Moreover, even if the Court finds that the Stores could have presented their suspicions as to *some* of these issues by July 10 (30 days after receipt of the declaration and interrogatory responses, but before receiving the deposition transcript) the Stores respectfully suggest that "good cause" exists (Chambers' Rules V.C.) for the Stores to have waited until receiving the transcript on July 16 (and their ensuing meet-and-confer efforts with Tauler Smith's counsel) to present these issues in a combined submission. As the Court will recall, Tauler Smith's deposition *had* been ordered to occur on June 18 (one week after service of Mr. Tauler's declaration and the supplemental discovery responses). (ECF No. 219.) The Court will further recall that two days beforehand, Tauler Smith moved *ex parte* to stay the deposition, which the Court granted the day before the deposition was to take place, over the

---

[2] The Stores leave it to Tauler Smith to explain how the Stores should have recognized the falsity of its signed and sworn responses earlier.

Stores' objection. (ECF No. 233.) That order required the deposition to instead take place between June 29 and July 3. (*Id.*) The Stores selected the first of those dates.

Had the deposition gone forward on June 18 as initially agreed and ordered, all of this could have presented neatly to the Court by July 10. As it played out—and even if *some* aspects of the deficiencies arguably could have been presented before Mr. Tauler testified—the Stores respectfully suggest that it would have made little sense to have teed up *part* of the dispute before the deposition based on suspicions, and then taken Mr. Tauler's deposition on June 29, received the transcript on July 16, and then sought permission for a *second* motion to present the *other* (overlapping) aspects of deficiency and false testimony that came to light only through Mr. Tauler's deposition, and Outlaw's productions thereafter. In other words, any prejudice flowing from the 19 days between July 10 (when *parts* of this motion arguably could have been presented upon *partial* proof) and July 29 (when all parts *were* presented upon full proof) is dwarfed by the efficiency of adjudicating these issues in a single motion upon a full body of facts, rather than through one motion based on partial facts, and a second motion based on complete facts. *See* Fed. R. Civ. P. 1. The Stores' "good cause" in waiting is doubly justified given the Court's expressed frustration as to the number of discovery motions this case has necessitated.

### B. Tauler Smith <u>Was</u> Lying About Its Documents, and Mr. Tauler's Declaration is Perjurious.

Tauler Smith was in fact "lying" about having produced all responsive documents, as presaged in the June 1 Order. There is also no doubt that the declaration Mr. Tauler submitted to the Stores attesting to the same was perjurious. This applies to all five requests specified in the June 1 Order.

As for **RFP No. 7** (documents showing how much money Tauler Smith took in through settlements), on June 10 Tauler Smith produced a single document (referred to as TSLLP007630-31) listing settlements with just 107 stores, for a total of **$276,675**. (Poe Decl. Ex. Q.) But a month later—on July 7, *after the deposition*—

Tauler Smith's co-defendant Outlaw Laboratory produced invoices **prepared by and issued by Tauler Smith**, showing Tauler Smith's receipt into its trust account of settlements from literally **hundreds** of additional stores. (Poe Decl. Exs. J, K, L, M (Tauler Smith invoices).) Those invoices do not cover the entire period of the scheme, but amount to total deposits into Tauler Smith's trust account of **$1,183,886.13**. (*Id.* (sum of "Total Deposits" field on the four invoices).)

At his deposition, Mr. Tauler testified that the Court had only ordered Tauler Smith to identify its settlements with stores in California. (Tauler Dep. 199:20-200:6; 201:25-202:11.) No good faith can support such an interpretation, under either the language of the June 1 Order, or the RFP (referencing "anyone in the United States"). But even if Tauler Smith's position had any support either in the text of the request or in the June 1 Order, the list it prepared (and Mr. Tauler's supporting declaration) is obviously false. The invoices produced by Outlaw on July 7 (a week after the deposition) include dozens of California stores not included on the sole document produced by Tauler Smith. (Poe Decl. ¶ 19.)

Tauler Smith has not produced any documents in response to **RFP No. 9** (Tauler Smith's communications with absent class-member stores or their counsel). (Poe Decl. ¶ 9.) At his deposition, Mr. Tauler testified that all other responsive documents (evidently including email) had been ███████████████████ ███████████████████████████████████████████. (Tauler Dep. 138:19-139:12.) But Outlaw's counsel has now produced a **May 1, 2019** email authored by Mr. Tauler (three months *after* the farcical "theft") in which he stated that Tauler Smith has a "database, which will have more information . . . including attorney notes regarding the defendants' prior responses, settlement offers, etc." (Poe Decl. Ex. S.) And the Stores' counsel has received numerous emails between Mr. Tauler and counsel for other absent class member victims from around the country, none of which have been produced by Tauler Smith. (*Id.* ¶ 13; Exs. N, O.) In sum, Tauler Smith defied the Court's order to produce documents in response to this request, and

1  then Mr. Tauler lied about it under oath.

2  On **RFP No. 1** (demand letters), Mr. Tauler testified at his deposition that the
3  demand letters were included "on a hard drive containing all of the materials,
4  containing the letters that were sent." (Tauler Dep. 48:4-10.) He later clarified that
5  "I don't know that it contains all of them," but testified that "I had Joseph Valerio
6  [the allegedly thieving bookkeeper] prepare that in late January, and had the hard
7  drive here. And that's what was produced to you." (*Id.* 48:24-49:2.) This testimony
8  is also obviously false. The hard drive contains only 332,441 .tiff photographs of
9  stores from around the country, along with a summary page identifying the store.
10 (Poe Decl. ¶ 17.) There is no index, summary information, nor any demand letters,
11 settlement agreements, etc.; nothing but images. (*Id.*) Mr. Tauler admits that he did
12 not "review the contents of that hard drive prior to producing it." (Tauler Dep. at
13 49:4-6.) And his attempt to pin the blame on Mr. Valerio is doubly perjurious. The
14 "Properties" tab for every photo on that drive shows that they were loaded in July
15 2019, (Poe Decl. ¶ 23-24), *five months after Mr. Valerio had left Tauler Smith in*
16 *February 2019.* (Tauler Dep. 48:1-4.) Here too, Mr. Tauler undoubtedly lied about
17 the preparation of the hard drive during his deposition, and his declaration that Tauler
18 Smith has produced all responsive documents is again shown to be false. At a
19 minimum, Mr. Tauler had no basis for believing it to be true that Tauler Smith had
20 produced all responsive documents, given his admission that he did not review the
21 drive's contents. (Tauler Dep. at 49:4-6.)

22 On **RFP No. 2** (settlement agreements), Mr. Tauler also testified that he
23 "instructed Mr. Valerio to include all the settlement agreements" on the hard drive.
24 (*Id.* 49:11-14.) But again, this is not possible, because the drive does not contain *any*
25 settlement agreements, and was created in July, five months after Mr. Valerio had
26 left. As to the settlement agreements, Mr. Tauler further testified that "[w]e had
27 paper copies that we printed out and that Marisa would print out, and we would keep
28 those in a paper file." (*Id.* 133:23-134:5.) He testified that "we sent them to my

former clients," *i.e.*, to Outlaw's current counsel Sean Reagan. (*Id.* 134:12-135:6.) As the Court has already noted, "[p]roducing records to Outlaw in no way satisfies Tauler Smith's obligation." (June 1 Order at 9.) But even then, it is abjectly false that Tauler Smith sent every settlement agreement to Mr. Reagan. (*See* ECF No. 142 ¶¶ 5-17.) In any event, even if it is true that Tauler Smith "had paper copies that we printed out," what happened to the electronic copies from which they were printed?[3] Tauler Smith has neither explained, nor produced those records, while stating under oath that it has produced all responsive documents. (Poe Decl. Ex. H (Tauler Decl. ¶ 3).) Here too, any attempt to pin the missing settlements on Mr. Valerio is proven false by an email Mr. Tauler authored to Outlaw's current counsel in **June 2019** (four months after Mr. Valerio's departure) in which Mr. Tauler claimed to have "all the information you need like who we have already settled with."[4] (Poe Decl. Ex. R.)

Finally, on **RFP No. 10** (communications with Outlaw's other counsel concerning the scheme), Tauler Smith has also disobeyed the Court's order, and Mr. Tauler's declaration is also false. Outlaw has produced, for example, certain emails Mr. Tauler exchanged with an Arizona attorney named Daniel Miranda, who helped prosecute the scheme in that state. (Poe Decl. Ex. P.) As the architect of the entire scam, it simply cannot be believed that Mr. Tauler did not exchange email with the other counsel who perpetuated it. Here too, Mr. Tauler apparently wants people to believe that Mr. Valerio ▬▬▬▬▬▬▬▬▬▬ when he departed in

---

[3] Mr. Valerio attests that Tauler Smith rigorously kept all case-related documents on its Box.com account. (Decl. of Joseph Valerio ¶ 6.)

[4] Mr. Tauler further committed perjury in trying to distance himself from the responsive information and documents by testifying: "I haven't been involved in this project in several years," and "how the heck am I supposed to know what kind of notes [Tauler Smith attorneys were] taking. I'm not working on this project." (Tauler Dep. at 151:24-152:7; 117:12-14.) Mr. Tauler presumably felt safe in making those false statements, because at the time he did not know that Outlaw had provided the Stores with Tauler Smith's self-reported time records, in which Mr. Tauler recorded *187* time entries spanning from July 2017 through December 2018, for *hundreds of hours* that he had spent working on the project. (Poe Decl. Ex. C.)

February 2019. (Tauler Dep. 220:4-222:21.) Beyond the preposterous notion that an independently contracted "bookkeeper" would be in a position to pull off such a heist, Mr. Tauler had no explanation for why Tauler Smith had never mentioned this year-and-a-half old theft of discoverable information until his deposition, other than to say "███████████████████████████." (*Id.* 222:19-224:18). Indeed, had the theft been true, it would have been a great excuse to offer in response to the Stores' motion to compel production. It also would have been a great excuse to include in Mr. Tauler's June 10 declaration. Instead, Mr. Tauler obviously made up that claim at his deposition, and testified falsely about it under oath.[5]

### C. Tauler Smith Also Served False Interrogatory Responses In Response to the June 1 Order.

In its June 1 Order, the Court also ordered Tauler Smith to provide supplemental interrogatory responses to Rog. 1 ("Identify each retail store in the United States to which you have sent a Demand Letter"), Rog. 3 ("Identify each retail store in the United States with which Outlaw Laboratory has entered a Settlement Agreement bearing the name or endorsement of You or any of Your partners, and state the dollar amount of such settlement."), and Rog 7 ("State the total amount of all checks, wire transfers, money orders, or other forms of monetary transfer that You have deposited to any bank accounts controlled by You, relating to all Settlement Agreements."). (*See* June 1 Order at 9; Poe Decl. Ex. I (Tauler Smith's supplemental responses).) Subsequent events have shown that each supplemental response was knowingly false, and that Tauler Smith's counsel could not have believed the responses to be "complete and correct" "to the best of [his] knowledge, information, and belief formed after a reasonable inquiry," as required by Rule 26(g).

As for **Rog. 1**, Tauler Smith invoked Rule 33(d) in its response, "and

---

[5] Should the Court be independently troubled by a member of this District's bar giving false testimony under oath, Mr. Valerio would be happy to participate in an evidentiary hearing. (Valerio Decl. ¶ 1.)

references the concurrently served hard drive provided for copying." (Poe Decl. Ex. I.) But Mr. Tauler admits that he did not review that drive before producing it, and evidently his counsel did not do so either. The drive contains only 332,441 photographs of stores from around the country, and zero copies of demand letters. (Poe Decl. ¶ 22.) Any "reasonable inquiry" under Rule 26(g) (for example, counsel's *review* of the hard drive) would have shown that the response to Rog. 1 was false.

As for **Rog. 3** (identities of the settling stores) Tauler Smith likewise invoked Rule 33(d), "and references the concurrently served documents bates labeled TSLLP007630-31." (Poe Decl. Ex. I.) The referenced document was marked at Mr. Tauler's deposition as Exhibit 119,[6] and as noted above, includes only an incomplete list of 107 stores located in California. (Poe Decl. ¶ 19, Ex. Q.) No "reasonable inquiry" by Tauler Smith's counsel could have led to the belief that TSLLP007630-31 was a "complete and correct" list of all "retail stores in the United States" (or even California) with which Tauler Smith had arranged a settlement, as the interrogatory called for, and as the Court ordered. As noted, a week after the deposition Outlaw produced a number of Tauler Smith invoices (covering only part of the period of the scam) listing *hundreds* of additional stores (including many other stores in California), and the Stores marked multiple copies of settlement agreements bearing Tauler Smith's name from other states, as well as Tauler Smith's settlement agreement with Skyline Market itself, which is not among the list it provided in response to Rog. 3. (*See* Poe Decl. Exs. J-M (invoices listing stores); ¶ 19 (identifying examples of California stores among those); Ex. T (exemplary Tauler Smith settlements from other states).) Of course, Tauler Smith cannot claim that the invoices produced by Outlaw are a sufficient substitute for its false interrogatory response. Those documents were produced by Outlaw on July 7, almost a month

---

[6] The document itself is not Bates labeled, but was produced under the file name "TSLLP007630-31.pdf." (*See* Poe Decl. ¶ 19.)

after Tauler Smith made its false response on June 10. (Poe Decl. ¶ 12.) The obvious implication is that Tauler Smith was hoping that the Stores and the Court could be misled into believing that it had facilitated settlements with only 107 stores totaling just $276,675 in settlements, when in fact it had coordinated hundreds of additional settlements, and received **$1,183,886.13**, over only a *portion* of the period at issue.

As for **Rog. 7**, Tauler Smith similarly referenced TSLLP007630-31 as its response to the question to state the total amount of money that it had deposited into any bank account controlled by it. (Poe Decl. Ex. I.) For the same reasons as above, that response was knowingly false, and counsel who signed the response could not have believed that it was "complete and correct" upon a "reasonable inquiry." Fed. R. Civ. P. 26(g).

### D. Tauler Smith Should be Ordered (Again) to Produce Responsive Documents and Provide Truthful Interrogatory Responses, and It and Its Counsel Should be Jointly Sanctioned.

The question becomes: What is the Court to do when faced with a litigant willing to commit perjury in discovery, represented by an attorney willing to facilitate that effort? While the Stores leave it to the Court's discretion as to whether perjury by a member of the bar requires some additional disciplinary action or referral, with respect to the litigation itself, the answers are found in Rules 37 and 26(g).

Under Rule 37(a), in granting this *second* motion to compel the same information, the Court "must" require "the party or attorney advising that conduct, or both to pay the movant's reasonable expenses" including attorneys' fees, unless the failure was substantially justified.[7] But this is not a mere failure to respond to discovery, it is also a "failure to comply with a court order," as described in Rule 37(b). Under that Rule, the scope of relief ranges from deeming the matters admitted

---

[7] Rule 37(a)(4) notes that "evasive or incomplete" answers "must be treated as a failure to disclose, answer, or respond." Even if Tauler Smith's counsel cannot be held responsible for its client's perjury, no reasonable person could have believed that the documents and interrogatories were limited only to California.

in the Stores' favor, to rendering a default judgment against Tauler Smith, to treating the response as contempt of court. Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). That rule also requires the payment of expenses including attorneys' fees against Tauler Smith or its counsel or both. Fed. R. Civ. P. 37(c).

With respect to the false interrogatory responses, under Rule 26(g)(1) the attorney signing the responses "certifies to the best of the person's knowledge, information, and belief formed after a reasonable inquiry," that it is "complete and correct." Fed. R. Civ. P. 26(g)(1)(A). And Rule 26(g)(3) provides that a court "must impose an appropriate sanction on the signer" for an improper certification that is made without substantial justification, which may include "an order to pay the reasonable expenses, including attorney's fees, caused by the violation." *Id.*

The Stores desire to prove their claims on the merits, not to win by procedural default under Rule 37(b)(2). Accordingly, they request that Tauler Smith and its counsel be ordered *again* to fully respond to RFP Nos. 1, 2, 7, 9, and 10; and Rogs. 1, 3, and 7.[8] They further request that once those responses have been completed, that Tauler Smith be ordered to again sit for its deposition (at its expense) to provide (truthful this time) testimony on that complete record. The Stores further respectfully request the Court to warn Tauler Smith that further disobedience may result in a default judgment or contempt of court. Finally, the Stores seek an order that Tauler Smith be required to pay the **$3,362.25** cost of the aborted deposition, and that Tauler Smith and its counsel be ordered to jointly and severally pay the Stores' reasonable attorneys' fees in bringing this motion. Those reasonable amounts are set forth at paragraphs 27-37 in the accompanying Poe Declaration, and total **$18,300**.

---

[8] The Stores note that their motion to compel responses to several additional document requests to Tauler Smith remains outstanding. (*See* Order on Non-Privilege Issues as to the Stores' RFPs to Tauler Smith and Outlaw at 19 (finding the RFPs relevant and proportional, but deferring ruling until deciding certain privilege issues) (ECF No. 246).)

Dated:  August 10, 2020               GAW | POE LLP


                                       By:  *Mark Poe*
                                            Mark Poe
                                            Attorneys for the Stores

**CERTIFICATE OF SERVICE**

Case No. 3:18-cv-840-GPC-BGS

I HEREBY CERTIFY that on August 10, 2020, I filed the following documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

**THE STORES' MOTION FOR SANCTIONS AND FURTHER ORDER COMPELLING DOCUMENT PRODUCTION AND INTERROGATORY RESPONSES BY TAULER SMITH**

GAW | POE LLP

By: /s/ Mark Poe

Mark Poe
Attorneys for Roma Mikha, Inc.,
NMRM, Inc., and Skyline Market, Inc.