1  MARK POE (Bar No. 223714)
     mpoe@gawpoe.com
2  RANDOLPH GAW (Bar No. 223718)
     rgaw@gawpoe.com
3  SAMUEL SONG (Bar No. 245007)
     ssong@gawpoe.com
4  VICTOR MENG (Bar No. 254102)
     vmeng@gawpoe.com
5  GAW | POE LLP
6  4 Embarcadero, Suite 1400
   San Francisco, CA 94111
7  Telephone: (415) 766-7451
   Facsimile: (415) 737-0642
8

9  Attorneys for Defendant Roma Mikha, Inc.
   and Third-Party Plaintiffs NMRM, Inc.
10 and Skyline Market, Inc.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: OUTLAW LABORATORY, LP LITIGATION | Case No. 3:18-cv-840-GPC-BGS <br><br> **THE STORES' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS AND FURTHER ORDER COMPELLING DOCUMENT PRODUCTION AND INTERROGATORY RESPONSES BY TAULER SMITH** |
|---|---|

Tauler Smith responds to the evidence laid out in the Stores' brief by doubling-down on its falsehoods, and adding others. It is not unusual for those accused of dishonesty to try to turn the tables by alleging the dishonesty of their accusers. Tauler Smith seeks to implement such a strategy here, proclaiming that "Mr. Poe previously has presented false representations in this case." (Opp. at 3.) But it proffers only one supposed example: "Mr. Poe claimed that his firm was representing the named plaintiffs for free, when in fact, as Outlaw pointed out, Gaw Poe LLP has a contingency agreement with plaintiffs." (*Id.*) Beyond being wholly irrelevant, Tauler Smith fails to identify *where* the undersigned supposedly made that claim. The truth is that the undersigned has never concealed the firm's contingency interest, freely detailing it in the video made by Vice News, for example. *See* https://youtu.be/3WooOIPcRI0?t=1044 (at 17:57). Tauler Smith cannot avoid the consequences of its dishonesty by making false claims about the Stores' counsel.

"On considering a motion for sanctions, a district court may make factual findings and assess the credibility of witnesses." *WeRide Corp. v. Kun Huang*, 2020 WL 1967209, at *9 (N.D. Cal. Apr. 24, 2020) (citations omitted). The Stores respectfully suggest that one way to gain a handle on these proceedings is to impose consequences on both the party who makes serial falsehoods, and counsel who facilitates them. Counsel seeks to avoid responsibility by asserting that he "cannot address [Tauler Smith's conduct] without violating the attorney-client privilege." (Opp. at 12.) But officers of the court owe a duty of candor and honesty to the Court in the filings and discovery responses they sign, regardless of the privilege.

**I.     TAULER SMITH'S DEPOSITION CONDUCT IS INEXCUSABLE.**

Tauler Smith first seeks to excuse Mr. Tauler's termination of his deposition on the ground that it was "bad faith" for the Stores to examine him with "documents produced secretly the week prior by Outlaw, which neither Outlaw nor the Stores disclosed to TSLLP." (Opp. at 4; *see also id.* at 1.) There was only *one* such document, and it had been *sent by Mr. Tauler to Outlaw*, in an email Mr. Tauler had

authored. (*See* Poe Decl. Ex. D.) Tauler Smith does not even try to argue that the exhibit was responsive to any document request such that it should have been formally produced either by the Stores or Outlaw as part of discovery. Under Tauler Smith's view, a deponent is entitled to claim "bad faith" and terminate a deposition whenever he is presented with a document he did not expect to see.

As for the "kissing gesture" excuse, it is preposterous. For one, making a "kissing gesture" wouldn't make any sense in the context of the question and answer. In their declarations, Mr. Tauler and Mr. Sergenian tell the Court that "notably" and "most importantly," the undersigned did not correct the record when they engaged in this attempt to fabricate "unprofessional behavior." (Tauler Decl. ¶ 14, Sergenian Decl. ¶ 9.) But the Court has the transcript, and will see that the undersigned responded to the silliness of the accusation with the deadpan: "You two are quite a pair. And you'll see what happens in this case." (Poe Decl. Ex. A at 195:11-12.) Outlaw's counsel also attended, and confirms that there was no "kissing gesture," nor was there any "mocking or taunting" during the examination, other than by Mr. Tauler. (Decl. of Sean Reagan ¶¶ 3-4.) Tauler Smith's effort to fabricate a "both sides" defense should be rejected. But even if the Court prefers to not explicitly decide the "kissing gesture" issue, it will see that it appears on page 195 of the transcript, *after* all of Mr. Tauler's other 'testimony' on which this motion is based, including his description of his examiner as a "fucking idiot." (Mot. at 2.)

**II. TAULER SMITH'S "TIMELINESS" ARGUMENT FAILS.**

Tauler Smith next argues that the issues raised in this motion are untimely for violating the Court's 30-day rule. Here too, Tauler Smith seeks to misdirect from Mr. Tauler's dishonesty by attributing dishonesty to the Stores: "The Stores also claim—falsely—that Exhibit T was produced on July 7." (Opp. at 5 (citing Mot. at 13).) But the Stores' motion very clearly distinguishes between "Exs. J-M (invoices listing [settling] stores)" and "Ex. T (exemplary Tauler Smith settlements from other states)," and asserts that "Tauler Smith cannot claim that the invoices produced by

Outlaw are a sufficient substitute" because "[t]hese documents were produced by Outlaw on July 7." (Mot. at 13 (emphasis added).) The Stores did not suggest that Ex. T was produced on July 7, as Tauler Smith falsely attributes. Here too, the Stores' brief is honest, while Tauler Smith's *claim* of dishonesty is false, and pure projection.

In any event, Tauler Smith's timeliness argument collapses by its own description. At one point it says that "as of July 7, if not earlier, the Stores were in possession of all the evidence relied on in the motion." (Opp. at 7.) Later it says that "all the documentary proof relied on by the Stores was in their possession by July 9 or earlier." (*Id.* at 8.) But whether July 7 or 9, it would mean that the Stores were required to present these issues by August 7 or 9. They did so on July 29.

### III. TAULER SMITH'S EXPLANATION AS TO THE DOCUMENT REQUESTS AND ROGS IS EQUALLY UNAVAILING.

Tauler Smith's arguments responding to the falsity of Mr. Tauler's declaration and its interrogatory responses make no sense. As for RFP 7 (docs showing total money from settlements) it offers the mystifying excuse that the invoices showing the falseness of the declaration were not produced by Outlaw until July 7. (Opp. at 9.) But they were not *created* on July 7—*Tauler Smith* created them on the dates shown on the faces of the documents. Similarly for RFP 9 (communications with absent stores and counsel), its excuse is that the existence of the database described in Mr. Tauler's May 1, 2019 email (Poe Decl. Ex. S), "was not made known to the Stores until after the June 29 deposition." (*Id.*) How is that relevant to whether Tauler Smith had produced all responsive documents? Tauler Smith seems to believe it can make false statements in discovery unless the Stores *knew* they were false at the time. Beyond that, Tauler Smith's defense to RFP 9 says nothing about its failure to produce *any* emails with stores, as shown by Exs. N and O to the Poe declaration.[1]

---

[1] Mr. Tauler testified that he communicated with stores through his robert.tauler@taulersmith.com account, which was somehow stolen by Mr. Valerio. (Ex. A at

(Footnote continues on next page.)

1    On RFP 1 (demand letters), it doubles down on the lie that Mr. Tauler had Mr. Valerio load all such documents to a hard drive in January 2019, despite the files (*i.e.*, only photos) being dated as having been copied to the drive in July 2019. (Opp. at 10.) It casually suggests that the undersigned must have altered the dates. As noted in Sergenian Ex. D, we are happy to provide the drive to the Court if it has any doubts about who is being honest here, but we cannot help but note that Mr. Tauler has already been sanctioned for making false statements in this District.[2] Tauler Smith further notes that Mr. Valerio did not deny "Mr. Tauler's sworn testimony." But that is because—as noted in the letter brief—that testimony could not be shared with him because Tauler Smith had designated the entire transcript "For Counsel Only" until the end of the day on August 10. Now that it has presented that testimony in a public filing, Mr. Valerio responds. (Valerio Reply Decl. ¶ 2.) RFP 2 presents the same issue, but for settlement agreements. But even if—contrary to fact—the demand letters and settlements were on the drive, did Tauler Smith then delete all of its electronic originals? If so, why? It doesn't say. Also on both, what are the odds that in January 2019 (when it wasn't even a party), Mr. Tauler asked Mr. Valerio to load to a hard drive the documents that were coincidentally responsive to requests served ten months later? He now shifts his testimony to say the drive contained "every digital file provided to my firm <u>by the client</u>." (Tauler Decl. ¶ 23.) This seems more true, but demand letters and settlements are not provided by the client.

Nor does Tauler Smith explain why it didn't produce any of the email it exchanged with Outlaw's other attorneys (RFP 10), other than to say that the example the Stores offered (Ex. P) is not responsive. It is. But even so, what about the others?

Finally, as to all requests, why was the role of the supposedly nefarious Mr.

---

220:9-22.) This is false—Exs. N and O are from and to his rtauler@taulersmith.com account. He clearly has full access to that account. (*See* Tauler Decl. Ex. C.)

[2] *Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, No. 16-CV-02810-BEN-BGS, 2018 WL 4385368, at *7 (S.D. Cal. Sept. 14, 2018).

Valerio never mentioned as an excuse in any of the briefing, or in Tauler's declaration stating that all documents had been produced? It nowhere explains why it waited until deposition to make up that excuse. This further suggests it's all a fabrication.

On Rog 1, it says that Mr. Tauler "believed" the drive contained the demand letters. But he now says it was only documents *from* his client. (Tauler Decl. ¶ 23.)

On Rog 3 (identifying settling stores) and 7 (total money taken in), Tauler Smith again tries to excuse the falsity of its responses by explaining that the Stores did not know their falsity until July 7 when Outlaw produced Exs. J-M. (Opp. at 11.) Next it explains that it only listed California stores in those responses due to language in a completely unrelated order. (*Id.* at 12.) It cannot be "substantially justified" for Tauler Smith and its counsel to have decided to (silently) import such a limitation, ignoring the plain language of the interrogatories themselves, and this Court's order. They simply *chose* to give false answers. Moreover, Ex. Q is not even a full list of *California* stores, making the responses false even *with* the limitation. (Mot. at 13.)

**IV.   COUNSEL SHOULD BE JOINTLY LIABLE UNDER 37(d) AND 26(g).**

For legal proceedings to function properly, attorneys cannot be allowed to lend their signature to whatever their client wishes to assert. To that end, Rule 26(g) imposes an independent duty of "reasonable inquiry" upon counsel who sign discovery responses. "Under Rule 26(g)(3), the Court *must* impose appropriate sanctions for violation of counsel's certification obligations unless it finds 'substantial justification' for the violation." *Optronic Tech. v. Ningbo Sunny Elec.*, 2020 WL 2838806, at *6 (N.D. Cal. June 1, 2020) (emphasis in original). Mr. Sergenian does not offer *any* justification for believing that Tauler Smith's document production was complete, or that its interrogatory responses were accurate. Indeed, his declaration offers no description of any inquiry at all that *he* did. Thus, he is jointly liable for the Stores' fees of up to $1,000/hour. *See, e.g.*, *Lopez v. Management and Training Corp.*, No. 17-CV-1624-JM, 2020 WL 1911571, at *8 (S.D. Cal. April 20, 2020) (approving rates up to $900/hour for class counsel).

Dated:  August 17, 2020               GAW | POE LLP


                                      By:   *Mark Poe*
                                            Mark Poe
                                            Attorneys for the Stores

# CERTIFICATE OF SERVICE

Case No. 3:18-cv-840-GPC-BGS

I HEREBY CERTIFY that on August 17, 2020, I filed the following documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

**THE STORES' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS AND FURTHER ORDER COMPELLING DOCUMENT PRODUCTION AND INTERROGATORY RESPONSES BY TAULER SMITH**

GAW | POE LLP

By: /s/ Mark Poe
Mark Poe
Attorneys for Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc.