MARK POE (Bar No. 223714)
  mpoe@gawpoe.com
RANDOLPH GAW (Bar No. 223718)
  rgaw@gawpoe.com
SAMUEL SONG (Bar No. 245007)
  ssong@gawpoe.com
VICTOR MENG (Bar No. 254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Defendants,
Counterclaimant, and Third-Party
Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE OUTLAW LABORATORY, LP LITIGATION | Case No. 3:18-cv-840-GPC-BGS |
|  | **THE STORES' OPPOSITION TO TAULER SMITH'S *EX PARTE* APPLICATION TO QUASH SUBPOENA TO JOSEPH VALERIO** |

This is another frivolous discovery dispute that Tauler Smith has foisted on the Stores and the Court.  It is both procedurally defective, and substantively wrong.

## I.  TAULER SMITH FAILED TO MEET AND CONFER, AND FILED IN THE WRONG DISTRICT.

As an initial matter, the motion is beset with procedural problems.  **First**, this Court's clear Chambers' Rule require litigants to "meet and confer regarding all disputed issues" before raising them with the Court.  (Chambers' Rules V.A.)  If that Rule wasn't clear enough on its face, the Court later "remind[ed] the parties of their obligation to thoroughly meet and confer regarding any discovery disputes and attempt to resolve and narrow disputes efficiently and without Court intervention." (Order Granting and Denying Mot. to Modify Schedule at 9 (hereafter, "May 4 Order") (ECF No. 197).)  In the next sentence the Court reminded the litigants that they may be required to bear the costs of unnecessary or unjustified motions.  (*Id.*) The Court also requires the parties to informally raise any disputes directly with the Court prior to filing.  (*Id.* at 10.)  **Second** and relatedly, and with particular respect to *ex parte* applications, Local Rule 83.3(g)(2) holds that such motions "must not be made" unless supported by an "affidavit or declaration" that the applicant gave advance notice of the application to the responding party, or was unable to do so. Tauler Smith's counsel has filed a declaration, but it nowhere describes counsel's compliance either with the Chambers' Rule, the May 4 Order, or Local Rule 83.3(g)(2).  (ECF No. 277-2.)  That is because the filing of this *ex parte* application on August 18 was the first notice the undersigned received of Tauler Smith's discontent with the Stores' August 10 subpoena.[1]  (Decl. of Mark Poe ¶ 2; Sergenian

---

[1] Given the eight days between issuance and filing, Tauler Smith clearly cannot claim that some exigent circumstances excused its compliance, necessitating disregard of the Court's requirement that the parties meet and confer, and then contact Chambers regarding any dispute.  Tauler Smith could have picked up the phone on any one of those days, and learned that (A) it intended to file its motion in the wrong court, (B) the subpoena specifically instructs Mr. Valerio *not* to produce privileged documents, and (C) reached the compromise offered below.  *Infra* at 4-6.

STORES' OPP. TO EX PARTE

Decl. Ex. A (reflecting subpoena date).)  The Stores certainly recognize that these motions are a great burden on the Court, but so too are they a burden on the Stores. The Court should not overlook Tauler Smith's wholesale non-compliance with its Chambers Rule, the May 4 Order, and the Local Rule on *ex parte* filings.  And since the last warning in the May 4 Order went unheeded, there would seem to be little point in simply issuing *another* warning.  The requirements set out by the Court and in the Local Rules are not pointless formalities.  At a minimum, compliance with those rules would have resulted in (A) Tauler Smith filing in the proper court, and (B) Tauler Smith being alerted to the instruction in the subpoena that it does *not* request privileged documents.  (*See infra* at 2, 4.)  Alternatively, the dispute might have been resolved entirely via the requisite joint contact to Chambers, or the 3-page letter brief process the Court has established.  (May 4 Order at 10.)

**Third**, and perhaps most legally significant, Tauler Smith filed in the wrong court.  In its own motion, Tauler Smith recites that under Rule 45(d)(3)(A), "[o]n timely motion, the court for the district <u>where compliance is required</u> must quash or modify a subpoena. . . ."  (Mot. at 5.)  The subpoena plainly sets forth that the Northern District (San Francisco) is the place "where compliance is required."[2]  (*Id.*; *see* Sergenian Decl. Ex. A.)  The authority since the 2013 venue amendments to Rule 45 is uniform that "when a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion."  *Europlay Capital Advisors, LLC v. Does*, 323 F.R.D. 628, 629 (C.D. Cal. 2018); *Short v. United States*, No. 1:18-CV-00074-DCN, 2019 WL 5457994, at *2 (D. Idaho Oct. 23, 2019) ("Rule 45 repeatedly highlights that the district where compliance is required is the appropriate court to enforce or quash a subpoena.");

---

[2] Mr. Valerio is a resident of Los Angeles, but given that the production was to be electronic, he raised no objection to compliance in the Northern District.  (Poe Decl. ¶ 3.)

*Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *3 (D. Nev. 2014) ("Under the current version of the Rule, when a motion to quash a subpoena is filed in a court other than the court where compliances is required, that court lacks jurisdiction to resolve the motion.").[3]  Nor can a party seeking to quash a subpoena simply skip past the venue requirement in anticipation that such a motion might be transferred under Rule 45(f).  *Nat. Immunogenics Corp. v. Newport Trial Grp.*, No. 15-CV-02034-JVS-JCGX, 2017 WL 6060621, at *2 (C.D. Cal. May 2, 2017) ("Because Franco did not initially file in the Southern District of Florida, no motion existed that could be transferred to this Court and Franco could not have obtained TracFone's consent to transfer.").

The language of the Rule itself and the uniform authority is so clear, that it can no longer be deemed "substantially justified" to willfully file a motion to quash in the wrong district and hope for the best.  For example, in reviewing a Special Master's discovery order in *Natural Immunogenics*, as far back as 2017 a court in the Central District affirmed that the moving party's "motion to quash was not substantially justified" where it filed in the issuing court, given that "Rule 45's language [and] related case law" was so clear on the matter.  *Id.* at *4 (C.D. Cal. May 2, 2017).[4]  The volume of authority repeating that motions to quash must be filed in the district where compliance is required has only grown since then, making it even less justified than it might have been shortly after the 2013 amendments were adopted.   Moreover—and circling back to the first and second points—this

---

[3] The Court is surely familiar with the current version of the Rule 45, and won't get sidetracked with authority like *S.E.C. v. CMKM Diamonds, Inc.*, which concerned the prior version, under which "'[o]n timely motion, the issuing court must quash or modify a subpoena. . . .'" 656 F.3d 829, 832 (9th Cir. 2011) (quoting Fed. R. Civ. P. 45(c) (2011)).

[4] The Court declined to award fees in that instance, however, because—unlike Tauler Smith here—the movant had in the alternative sought a protective order under Rule 26(c).  *Id.* at *4.

procedural failing in Tauler Smith's motion could have been cured in two seconds, had it deigned to meet and confer prior to filing.

## II.   EVEN IF THE COURT OVERLOOKS THE PROCEDURAL DEFECTS, THE MOTION IS NOT SUBSTANTIALLY JUSTIFIED ON THE MERITS.

Given the motion's procedural defects, it should be unnecessary to demonstrate the meritlessness of each of Tauler Smith's arguments, but the Stores will do so for the sake of completeness.  To begin, Tauler Smith complains about the content of a declaration Mr. Valerio signed in support of the Stores' opposition to Tauler Smith's summary judgment motion, which describes certain aspects of Tauler Smith's role in conducting the affairs of the Enterprise.  (Mot. at 2.)  Obviously the propriety of those statements has no bearing on the subpoena.  Next, based on an email Mr. Valerio had sent to the Stores' counsel on April 8, it accuses Mr. Valerio of "submitting a false declaration" in attesting on May 20 that he had not "'provided anyone from Gaw | Poe LLP with any materials related to the work I had done for Tauler Smith LLP.'"  (Mot. at 3 (quoting the declaration).)  It directs the Court to where that email can be found in the record.  (*Id.* (citing ECF No. 269-25).)  If the Court reviews that email, it will see that it is not any "materials related to the work [he] had done for Tauler Smith," but is Mr. Valerio's resignation email, and his and Mr. Tauler's cordial exchange the next day.  But no matter, for Tauler Smith fails to explain how this  issue has anything to do with the subpoena, either.

Turning to the subpoena, Tauler Smith previews that the Stores' subpoena "seeks on its face and by necessity requires production of documents that are privileged and confidential."  (*Id.*)  Over the next several pages of argument, it repeats this claim that the subpoena seeks "privileged" documents numerous times.  (Mot. at 5-8.)  It can only have made this claim by jumping to conclusions instead of taking the time to read the subpoena itself.   The subpoena includes only a single "Instruction" to Mr. Valerio, and that is that he is *not* to produce "any attorney-client privileged communications," with an explanation of what that term means.

(Sergenian Decl. Ex. A at 5 ("Instructions").)  Accordingly, neither Tauler Smith's arguments about privilege, nor recitations about ethical obligations respecting privilege, have any relevance here.[5]

The *Argument* section of Tauler Smith's brief sets out two arguments:  (1) "The subpoena calls for privileged and confidential information," and (2) "Gaw Poe LLP's receipt of privileged and confidential information from Valerio is impermissible."  (Mot. at 6-7.)

In the first section, Tauler Smith devotes one sentence to each of the subpoena's nine requests.  (*Id.*)  Its argument as to each (including, for example, the first request for "[e]ach and ever demand letter") is that they call for documents that are (1) privileged, (2) work product, and/or (3) "confidential financial information." (*Id.*)  None of those arguments is availing.  On the first—as noted—the subpoena explicitly instructs Mr. Valerio not to produce privileged information.  As for the second, the work-product doctrine is not absolute; Rule 26 makes plain that such materials "may be discovered if:  (*i*) they are otherwise discoverable under Rule 26(b)(1), and (*ii*) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A).  Tauler Smith makes no argument that the requested documents are irrelevant to the Stores' claims, and the whole reason *why* the Stores sought leave to issue the subpoena to Mr. Valerio in the first place is that both Tauler Smith and Outlaw have been ordered to produce the same materials previously, but have both claimed an inability to do so.  The fundamental problem with Tauler Smith's motion is that it offers no solution for how it can, on the one hand, claim that Mr. Valerio stole all of its records and that it is thus unable to comply with court orders requiring their production, while on the other

---

[5] This is another issue that could have been clarified very easily had Tauler Smith heeded the Court's meet-and-confer requirements.

1    hand insist that Mr. Valerio should be prevented from producing those same records.

2    Surely the Court will not countenance such a neat discovery trick.

3          Tauler Smith's arguments about "privilege" and "work product" thus being

4    unavailing, that leaves its vague argument about "confidential financial information."

5    But there is no authority that removes "confidential" information from the scope of

6    discovery, which would be another neat trick that literally every litigant would invoke

7    if it were countenanced by courts.

8          Elsewhere, Tauler Smith points out that in a footnote, the August 6 order

9    permitting issuance of the subpoena limited it to the documents that Mr. Valerio

10   supposedly "stole" from Tauler Smith, "based on the Stores only recently finding out

11   Mr. Valerio may be in possession of them." (Order Regarding July 29, 2020 and July

12   30, 2020 Letter Briefs at 4 n.4 (ECF No. 266).)  But the scope of the materials that

13   Mr. Valerio supposedly "stole" is set out at page 139, line 9 of Mr. Tauler's

14   deposition.[6]  (*See* Decl. of Mark Poe ISO Mot. for Sanctions Ex. A at 139:9 (ECF

15   No. 269-2 (proposed under seal version)).)  That would obviously subsume requests

16   1-8 in the subpoena.

17         While Tauler Smith does not specifically make the argument, upon reflection

18   request 9 in the subpoena ("communications between you and Tauler Smith related

19   to this action") is not something that could have been "stolen" by Mr. Valerio.  The

20   Stores will accordingly withdraw that request, and so advise Mr. Valerio.  While this

21   would have been a correct argument had Tauler Smith made it, it is also a very simple

22   resolution, and only further points up the salutary purposes of the meet-and-confer

23   requirement, and the time that has been wasted through Tauler Smith's wholesale

24   failure to meet and confer, let alone to "thoroughly" meet and confer, and to

25   informally raise any disputes prior to filing, as the parties have been ordered to do.

26   _____

27         [6] The Stores do not quote that testimony here because Tauler Smith has
     designated it "For Counsel Only" under the protective order.

28

(May 4 Order at 10.)

## III.    THE STORES ARE ENTITLED TO FEE-SHIFTING SANCTIONS.

The Stores hope that the Court appreciates that they have not been overly aggressive about demanding fee-shifting sanctions in conjunction with the numerous discovery disputes in this matter.  They did not request fees, for example, in their successful motion challenging Tauler Smith's refusal to even make written responses to the Stores' discovery, which had been based on Tauler Smith's spurious position that no discovery could be had against it without a successive Rule 26(f) conference (which it simultaneously refused to participate in).  (*See* ECF No. 165 at 4-7.)  Nor did they seek fees in conjunction with their successful letter brief regarding Tauler Smith's refusal to produce the most basic possible discovery in this dispute—the demand letters, settlement agreements, communications with stores, revenue from the scheme, etc.  (*See* ECF No. 215.)  Nor did they seek fees in moving to compel Tauler Smith's responses to five document requests from the Stores' second set of discovery requests.  (*See generally* Order Regarding June 1 Joint Letter Briefs (ECF No. 218 (setting forth the disputes)).)

It cannot be overlooked, however, that the Stores have substantially prevailed in literally every discovery dispute in this matter, including specifically their disputes with Tauler Smith.  (*See* Order on Discovery Dispute (Apr. 6, 2020, ECF No. 180) (requiring Tauler Smith to make written responses); Order on Discovery Dispute Regarding Tauler Smith's Responses to the Stores Discovery Requests (June 1, 2020, ECF No. 215 (requiring Tauler Smith to produce documents in response to five requests, and answer three interrogatories); Order on Tauler Smith's Mot. to Compel (Aug. 3, 2020, ECF No. 265) (denying Tauler Smith's motion to compel further documents and interrogatory responses).)

"'The great operative principle of Rule 37(a)(4) is that the loser pays.'" *In re Commercial Money Ctr.*, No. ADV. 04-90191-H7, 2006 WL 6589751, at *5 (Bankr.

S.D. Cal. June 29, 2006) (quoting *Rickels v. City of South Bend*, 33 F.3d 785 (7th Cir.1994)).  The rationale for that presumption—as set forth in *Rickels* and quoted in *In re Commercial Money Center*—could not possibly be more apt than to this dispute: "Fee shifting when the judge must rule on discovery disputes encourages their voluntary resolution and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims." *Id.*  Here, Tauler Smith did not attempt *any* sort of "voluntary resolution" regarding this dispute.

As numerous courts have held,  "[t]he provisions of the Rule 37 fee-shift apply to disputes arising under Rule 45." *Rodriguez v. AmericanWest Bank*, 2017 WL 11470636, at *3 (C.D. Cal., Apr. 20, 2017) (citing *ESG Capital Partners LP v. Stratos*, 2014 WL 12588637 at *7-8 (C.D. Cal. 2014) (affirming award of fees regarding Rule 45 subpoena motion).  Consequently, "if a motion to quash is opposed and the moving party loses, the opposing party may seek attorney's fees and expenses unless the court is convinced that the losing party was 'substantially justified' or 'other circumstances' exist making such an award 'unjust.'" *Ceramic Corp. of America v. Inka Maritime Corp., Inc.*, 163 F.R.D. 584, 589 (C.D. Cal. 1995) (citing *In re Akros Installations, Inc.*, 834 F.2d 1526 (9th Cir. 1987); *Rockwell Int'l, Inc. v. Pos–A–Traction Indus.*, 712 F.2d 1324 (9th Cir. 1983)).[7]

---

[7] *See also MGA Entertainment, Inc. v. National Products Ltd.*, 2012 WL 12883974, at *7 (C.D. Cal., Jan. 19, 2012) (nothing that "[w]hile Rule 45 does not expressly identify failed motions to quash as a basis for sanctions, district courts have imposed reasonable expenses upon moving parties following an unsuccessful motion to quash.") (citing *O'Neal v. Capital One Auto Finance, Inc.*, 2011 WL 2649711 at *4 (N.D. W. Va. July 6, 2011); *Robertson v. Cartinhour*, 711 F. Supp. 2d 136, 138 (D.D.C. 2010) (awarding attorneys' fees where plaintiff's "decision ... to move to quash" was "reckless and in bad faith"); *Baldus v. Members of the Wisconsin Gov't Accountability Bd.*, 2012 WL 10610 at *3-4 (E.D. Wis. Jan. 3, 2012) (imposing sanctions against defendants' attorneys for filing "frivolous motions to quash" that were part of a pattern of "disinformation, foot-dragging and obfuscation" by the attorneys); *American Seeds, LLC v. Watson*, 2010 WL 3843002 at *2 (D.S.D. Sept.

(Footnote continues on next page.)

As noted above, a party cannot be "substantially justified" in moving to quash a subpoena in the issuing court, where the language of Rule 45(d)(3)(A) is so clear that such motions must be filed in the court where compliance is required. *Nat. Immunogenics Corp. v. Newport Trial Grp.*, 2017 WL 6060621, at *4. Nor can it be "substantially justified" to ignore this Court's Chambers' Rule, the explicit May 4 Order, and Local Rule 83.3(g)(2), all of which required Tauler Smith to meet and confer prior to filing this motion, and required Tauler Smith to raise this dispute informally with the Court before filing. (May 4 Order at 10). Nor can it be substantially justified to claim that the subpoena "on its face" requires the production of privileged documents, when "on its face" it actually only gives one instruction, which is to *not* produce privileged documents. Nor can it be substantially justified to claim that a third party stole all of one's records that the Court had ordered to be produced, and then to seek to quash a subpoena directed at that party on "work product" or "confidentiality" grounds.

The Stores want to avoid being hyperbolic, but if—despite the Court's explicit warnings about fee-shifting (May 4 Order at 10)—Tauler Smith faces no disincentive to filing frivolous motions other than losing them, the Court should expect that it will keep doing so from now through trial, and thereafter. It is not fair to the Stores for Tauler Smith to burden them with frivolous motions, nor is it fair to the Court, nor to the other litigants on the Court's docket who have *bona fide* discovery and merits disputes for which they need prompt rulings. The only way to disincentive such motions is to follow "the great operative principle" that the loser pays.

Here, fee shifting against Tauler Smith alone is insufficient. Its counsel is writing and signing all of these briefs, ratifying them as being well-founded and filed in good faith. To properly disincentive further motions and Tauler Smith's disregard

---

27, 2010) (ordering third party to pay plaintiff's attorneys' fees incurred in responding to a "late frivolous motion to quash")).

STORES' OPP. TO EX PARTE

of the Court's Rules, Orders, and Local Rules, the fee-shifting must be awarded jointly against both the party and the "attorney advising that conduct." Fed. R. Civ. P. 37(b)(5)(A). Furthermore, all of the procedural defects identified herein—to meet and confer, to informally present the dispute to the Court, to submit a declaration regarding notice under L.R. 83.3(g)(2), and to select the right venue—are explicitly the responsibility of *counsel*, not the "party."

The Stores' counsel researched and wrote this ten-page brief in a very efficient 6.6 hours. (Poe Decl. ¶ 12.) In class proceedings for which fees were recently awarded to the Stores' counsel, the Northern District has found that $1,000/hour is a reasonable rate for the undersigned. *See AdTrader v. Google*, No. 17-CV-07082-BLF, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020) (approving the $1,000 rate and finding that "Gaw Poe's rates for the attorneys are reasonable and comparable to the fees generally charged by attorneys with similar experience, ability, and reputation"); *see also Lopez v. Management and Training Corp.*, No. 17-CV-1624-JM, 2020 WL 1911571, at *8 (S.D. Cal. April 20, 2020) (approving rates up to $900/hour for class counsel). Accordingly, in denying Tauler Smith's "ex parte" motion to quash, the Court should also award fee-shifting in the amount of $6,600, jointly against Tauler Smith and the counsel who is advising its conduct.

Dated: August 20, 2020                    GAW | POE LLP


                                          By: _____
                                                Mark Poe
                                                Attorneys for the Stores

**CERTIFICATE OF SERVICE**

Case No. 3:18-cv-840-GPC-BGS

I HEREBY CERTIFY that on the date stamped in the CM/ECF header information above I filed the following documents with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

**THE STORES' OPPOSITION TO TAULER SMITH'S EX PARTE APPLICATION TO QUASH SUBPOENA TO JOSEPH VALERIO**

**DECLARATION OF MARK POE IN OPPOSITION TO TAULER SMITH'S EX PARTE APPLICATION TO QUASH VALERIO SUBPOENA**

GAW | POE LLP


By: _____
Mark Poe
Attorneys for the Stores