1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Sergenian Ashby LLP**
David A. Sergenian (SBN 230174)
david@sergenianashby.com
1055 West Seventh Street, 33rd Floor
Los Angeles, California 90017
Tel. (323) 318-7771

*Attorneys for Third-Party Defendant*
*Tauler Smith LLP*

THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**In re Outlaw Laboratory, LP Litigation**

Case No. 3:18–cv–840–GPC–BGS consolidated with 3:18–cv–1882–GPC–BGS

**Reply in Support of Third-Party Defendant Tauler Smith LLP's Motion for Summary Judgment, or in the Alternative, Summary Adjudication**

Date:        September 11, 2020

Time:        1:30 p.m.

Hon. Gonzalo P. Curiel

Courtroom 2D

1

**TABLE OF CONTENTS**

2   I.   Introduction .............................................................................. 1

3   II.   Argument .................................................................................. 2

4        A.   Skyline Market Waived Its Right to Sue Under RICO ................. 2

5             1.   Skyline Market Cannot Rescind the Release by Alleging

6                  Duress........................................................................... 2

7             2.   Skyline Market's Attempt to Invoke Fraud Fails ................. 4

8             3.   Skyline Market Waived Its Right to Assert RICO ............... 5

9        B.   The Stores Cannot Establish RICO Violations ............................ 7

10  III.   Conclusion ............................................................................... 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**

*Celotex Corp. v. Catrett*,

    477 U.S. 317 (1986) ........................................................................... 7

*Colton v. Pekarcik*,

    2015 WL 357825 (Cal. Ct. App. Jan. 28, 2015) .................................... 2 n.1

*San Diego Hospice v. County of San Diego*,

    321 Cal. App. 4th 1048 (1995) ........................................................... 4

*Wallack v. Idexx Labs, Inc.*,

    2015 WL 1727875 (S.D. Cal. Apr. 15, 2015) ................................. 2, 5, 6 n.5, 7

**Statutes**

18 U.S.C. § 1961 ..................................................................................... 3

Cal. Civil Code § 1542 ............................................................................ 4

## I.   INTRODUCTION

Despite having the opportunity to depose all of the Counterclaim-Defendants in this action and obtain declarations from its own clients, the Stores offer insufficient testimony or evidence to create a genuine dispute of material fact. As to TSLLP's first argument (waiver), Skyline Market cannot dispute that it had an opportunity to review the allegations of the demand letter before entering into a settlement and release of its claims against TSLLP. The settlement agreement it signed expressly warrants that Skyline "relied solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel," and "that they have not been influenced to any extent whatsoever in executing the same by any representations or statements covering any matters made by the other party hereto or by any person representing him or it." (ECF 360-10 § 3.3 (a).) The Settlement Agreement also states that Skyline "do[es] not rely on any statements, representations, or promises in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement …" (*Id.* § 3.3 (b).) It also declares that "[t]he Parties, and their attorneys, if desired, have made such investigation of the facts pertaining to this Agreement and all of the matters pertaining thereto, as they deem necessary." (*Id.* § 3.3(c).) Nothing contained in the opposition contradicts these warranties.

The Stores also cannot demonstrate that TSLLP engaged in any of the allegations of participating in a RICO enterprise, as asserted in the SACC, thus conceding that the sordid allegations against TSLLP are simply false. TSLLP had no role in creating TriSteel, did not direct Outlaw Labs to create the product, and did not "dispatch" investigators to collect evidence of Outlaw's claims, as alleged. Rather, TSLLP acted in its capacity as counsel for Outlaw, by asserting and prosecuting claims (including RICO claims) on behalf of their client. None of the Stores' evidence contradicts this truth.

– 1 –

Reply in Support of Tauler Smith's                          Case No. 3:18–cv–840–GPC–BGS
Motion for Summary Judgment                       Consolidated with 3:18–cv–1882–GPC–BGS

## II.   ARGUMENT

### A.   Skyline Market Waived Its Right to Sue Under RICO

#### 1.   Skyline Market Cannot Rescind the Release by Alleging Duress

Skyline Market's argument on the effect of the release in the settlement agreement fails to address the issues raised in the motion. As set forth in the moving papers, a general release can be completely enforceable and acts as a complete bar to all known and unknown claims. *Wallack v. Idexx Labs, Inc.*, 2015 WL 1727875, at *6 (S.D. Cal. Apr. 15, 2015). Pursuant to *Wallack* (cited in the moving papers), the inquiry as to enforceability addresses three issues:

First, was Skyline Market represented by counsel? *Wallack*, 2015 WL 172785, at *6. Yes. (UF 31, 32, 39.)

Second, was the releasor aware of any potential claims? *Wallack*, 2015 WL 172785, at *6. Yes. It is undisputed that the merits of the Lanham Act and RICO claims were openly addressed in the original demand letter to Skyline, that the letter alleged wrongdoing by Skyline Market, that Skyline was able to investigate the claims, and Skyline's attorney evaluated the legal merits of the claims. (UF 37–39.) Skyline Market was aware of whether or not it was under duress at the time it executed the release (it was not), and decided to enter into the settlement agreement, on advice of counsel, including the release contained therein. (UF 47, 48.) Presumably because one necessarily knows if one is under duress at the time a release is signed, duress is not recognized as a basis to later void a release when a party is represented by counsel. *See Wallack*, 2015 WL 1727875, at *6 (circumstances under which a release may be voided if the releasor is represented by counsel).[1]

---

[1] Skyline Market does not cite to any authority for the proposition that a release that states that it was approved by counsel is voidable upon a showing of duress. It cites to the unpublished, non-precedential case of *Colton v. Pekarcik*, 2015 WL 357825 (Cal. Ct. App. Jan.

– 2 –

1
2
3
4
5
6
7
8

Third, was Skyline Market aware of any potential claims and on advice of counsel decided to release unknown claims explicitly waiving the protection of California Civil Code § 1542? *Wallack*, 2015 WL 172785, at *6. Yes. Skyline Market stated in the release that it was represented by counsel and received the advice of counsel with respect to the release. (UF 37–39.) Curiously, Skyline Market offers none of its own testimony—or any other evidence—to dispute this fact. Accordingly, it is undisputed that under applicable law, the release in the settlement agreement bars any duress "claim" by Skyline Market.

9
10
11
12
13
14
15

The duress "claim" fails for the further reason that duress is not a basis for RICO liability, *see* 18 U.S.C. § 1961, nor is it alleged to be by Skyline Market. (ECF No. 114 ¶¶ 82–95.) Skyline Market has no basis to seek rescission based on duress because the remedy of rescission is only available to Skyline Market if it prevails on its RICO claim.[2] This was addressed in the moving papers (ECF No. 260-1 at 15), yet Skyline Market offers no response, thereby conceding that TSLLP's argument is correct.

16
17
18
19
20
21
22
23

Because the foregoing two bases for summary adjudication are dispositive with respect to duress, Skyline Market's attempt to argue (without any evidence or even a declaration from the rescinding party) that there was "no reasonable" alternative to signing the settlement agreement should not be considered. In any event, Skyline Market's testimony plainly states that it was presented with two alternatives by its counsel. Instead of presenting evidence of duress, the opposition suggests that a summary judgment ruling in the *DG in PB* action (over one year **after** the settlement agreement), indicates that the

24

25
26
27

28

---

28, 2015). However, in *Colton*, unlike here, the rescinding party was not represented by counsel. Moreover, rescission was based on mistake, not duress. *Id.* at *6. Accordingly, *Colton* has no application here.

[2] For example, Skyline Market could file a state-law action asserting duress and seeking rescission. However, as set forth in TSLLP's anti-SLAPP motion, such an action would be subject to dismissal under California's anti-SLAPP statute. (ECF No. 156.)

– 3 –

Reply in Support of Tauler Smith's
Motion for Summary Judgment                    Case No. 3:18–cv–840–GPC–BGS
                                               Consolidated with 3:18–cv–1882–GPC–BGS

demand letter was "baseless," and therefore duress may be inferred retroactively such that the release Skyline bargained for should not be enforced. This would turn the objectives of California Civil Code § 1542 on its head, Moreover, Skyline Market cites to no legal authority to support this conclusion.

Separately, the duress theory raises no genuine issue of fact because Skyline Market cites to no evidence to support its contention that TSLLP engaged in any "'wrongful exploitation of business exigencies to obtain disproportionate exchanges of value.'" *San Diego Hospice v. County of San Diego*, 321 Cal. App. 4th 1048, 1058 (1995) (citation omitted). No California court has ever rescinded a settlement agreement that the parties signed with the benefit of counsel representation—like the one here—based upon wrongful exploitation of business exigencies to obtain disproportionate exchanges of value, and no such authority is cited by Skyline Market.

### 2.     Skyline Market's Attempt to Invoke Fraud Fails

Skyline Market tries to argue that the release is not enforceable because TSLLP fraudulently prevented Skyline Market from discovering potential claims against TSLLP. It offers only two facts in support. First, Skyline Market asserts that TSLLP's letter falsely asserted that TriSteel was sold in 2016. Skyline Market offers no evidence stating when TriSteel was originally sold, even though it secured the cooperation of Outlaw Labs in opposing this motion and could have included that fact in Wear and Lynch's declaration if there were any factual basis to include it. Further, the evidence cited by Skyline Market (responses to RFAs), only establishes that **as of January 31, 2019**, TriSteel was not being sold in stores. (Ex. D, Resp. to RFAs 4 and 5).) This does not contradict the fact that when Skyline Market received a demand letter, TriSteel was sold in stores and online, as confirmed by Outlaw Labs. (*See* Tauler Reply Decl.,

Ex. 32 to (Lynch confirming that TriSteel was "[D]istributed in all 50 states").)[3]
Critically, Skyline Market offers no testimony from which a jury could conclude
that Skyline Market relied on the representation that TriSteel was sold in
stores and online, and as stated, Skyline Market expressly denied relying on
any such facts in the settlement agreement.

Second, Skyline Market points to TSLLP's statement that it would file a
lawsuit and would double its demand if the demand was not accepted within a
month. However, Skyline Market fails to explain how this was a fraudulent
statement when made (especially given that the parties settled the dispute).
Skyline Market fails to present any evidence that TSLLP did not believe it
would file a lawsuit or double its client's demand. In addition, Skyline Market
offers no evidence that it relied on TSLLP's allegedly false misrepresentation
(as stated above, it expressly denied such reliance in the settlement agree-
ment). Accordingly, these two scant pieces of evidence cannot establish fraud.[4]

### 3.   Skyline Market Waived Its Right to Assert RICO

Skyline Market can only avoid the release if it shows that TSLLP commit-
ted fraud that prevented Skyline Market from knowing about the claim. *Wal-*

---

[3] This was the basis for the allegation in the draft complaints sent to the Stores that the
TriSteel products were "distributed for sale in all 50 US States." (ECF No. 114-1 at p. 7 of 8
(¶ 3 of draft complaint).)

[4] Skyline Market incorrectly asserts that TSLLP did not address rescission based on fraud.
(ECF No. 272 at 10–11.) TSLLP specifically address the failure of the Stores to establish its
allegations of fraud. (ECF No. 260-1 at 12–13, 15–19.) Furthermore, TSLLP's discussion of
RICO is necessarily directed to Skyline Market's fraud allegations because the allegations of
mail and wire fraud are the predicate bases for the Stores' RICO claims. Skyline Market did
not assert a separate fraud claim against TSLLP. The Court previously ruled that the Stores
can only get rescission as a remedy for RICO. (ECF No. 190 at 4, 7, 22–23.) Accordingly, any
discussion of alleged fraudulent misrepresentation in the moving papers necessarily applies
both to the predicate RICO predicate acts alleged in the SACC and to rescission. Moreover,
as discussed below, fraud would only be a basis to avoid the release if Skyline Market could
show that the fraudulent statements prevented Skyline Market from discovering it had
claims against TSLLP. *Wallack*, 2015 WL 1727875, at *6.

– 5 –

*lack*, 2015 WL 1727875, at *6.[5] Skyline Market first argues that this Court's order granting leave to amend Skyline Market's claims against TSLLP proves that such fraud occurred. (ECF No. 272 at 11.) However, the cited portion of the Court's order concerned whether delay in seeking leave to amend was made in bad faith, which has no bearing here. Moreover, Skyline Market offers no declaration or other evidence showing it was unaware of potential claims against TSLLP when it signed the release.

Skyline Market also disputes whether the advice it received about FDA warnings referenced by the demand letter were directed to consumers or showed Skyline Market's conduct was illegal came from Skyline Market's counsel or from a friend. In either case, Skyline Market's deposition testimony shows that it was aware that the FDA warnings were directed only to consumers. Accordingly, Skyline Market cannot establish that it was unaware of the truth or falsity of the statements in TSLLP's letter due to fraud; Skyline Market admits that it believed this statement in the demand letter was false.[6]

Skyline Market also asserts that TSLLP has the burden of negating that Skyline Market's argument that the release it signed was voidable, and indicates it will produce evidence at trial as to when it received advice regarding the allegations in TSLLP's letter. (ECF No. 272 at 12 n.7) This misconstrues summary judgment procedure. TSLLP met its burden by showing that the release was signed by Skyline Market when it was represented by counsel and

---

[5] Skyline Market's brief states the following: "this section of Tauler Smith's argument [§ IV.B.1] does not cite a single case having to do with the adjudication of a release on summary judgment." (ECF No. 272 at 12.) That is untrue: TSLLP relies in its moving papers (ECF No. 260-1 at 9) on *Wallack*, in which this Court found **on summary judgment** that the plaintiff failed to raise a material fact that a release was voidable based on non-disclosure of relevant facts by fiduciaries. *Wallack*, 2015 WL 1727875, at *14.

[6] Skyline Market also tries to raise a triable issue by implausibly suggesting that this advice **might** have been given after the settlement agreement was signed. This speculation is not supported by the deposition testimony taken as a whole. Moreover, Skyline Market fails to offer even a simple declaration from its client to substantiate this speculation.

– 6 –

had knowledge of basis for potential claims it was waiving, based in part on its own independent investigation of the facts undertaken with assistance of counsel. It is now Skyline Market's burden to establish the release is voidable, as Skyline Market will have that burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Wallack*, 2015 WL 1727875, at \*5–15. Skyline Market has not met its burden since it submits no evidence—not even a declaration from Skyline Market—that TSLLP committed fraud that prevented Skyline Market from discovering it had a basis to sue TSLLP. Accordingly, as a matter of law, the release is enforceable against Skyline Market as to its RICO claims.

### B.  The Stores Cannot Establish RICO Violations

As set forth in the moving papers, there is no support for the nine categories of allegations by the Stores that TSLLP did anything but conduct its own legal affairs in representing Outlaw Labs. None of the Stores' arguments in opposition create a material dispute of fact on these issues.

1.  The Stores' evidence does not show that TSLLP was involved in the genesis of the alleged RICO scheme. It is undisputed that Outlaw Labs engaged TSLLP, not the other way around. (UF 4.) Nothing in Wear or Lynch's declarations states that "the scheme originated with Tauler Smith and … JST Distribution" as the Stores argue. Instead, JST Distribution, not TSLLP, identified recipients of demand letters and provided evidence to TSLLP. (Wear Decl. ¶ 4; *see also* Lynch Decl. ¶ 8 ("We relied on our attorneys to make the right decisions about who to sue **based on the evidence we provided**.") (emphasis added).) The evidence cited by the Stores only establishes that TSLLP drafted demand letters for Outlaw Labs based on evidence provided by Outlaw Labs' predecessors. That is what any litigator does: prepare correspondence for a client that has engaged the attorney, based on information provided by the client.

2.     The Stores concede that TSLLP had no role in creating TriSteel and did not direct Outlaw Labs to create the product.[7]

3.     None of the Stores' evidence disputes that TSLLP did not dispatch investigators, as alleged in the SACC. The Stores admit it was a third party, JST Distribution, that did so. (*See* Wear Decl. ¶ 4 (JST Distribution handled investigation of claims).)

4.     The Stores' assertion that Outlaw Labs had "little input" into the demand letters is belied by: (a) Wear and Lynch's admission that JST Distribution and/or Outlaw Labs provided the factual basis for the demand letters (Wear Decl. ¶ 4 (JST Distribution handled investigation of claims); Lynch Decl. (ECF No. 272-18) ¶ 8 ("We relied on our attorneys to make the right decisions about who to sue based on the evidence we provided."); and (b) the fact that Outlaw Labs confirmed facts in TSLLP's drafts (Tauler Reply Decl. Ex. 32). As attorneys do, TSLLP relied on information provided by its clients and applied the law to those facts. The Stores do not dispute that TSLLP acted at the behest of its client based on information the client provided.

5.     It is undisputed that TSLLP had a genuine interest in pursuing litigation and did pursue litigation. The Stores point to the fact that Outlaw Labs amended one complaint to drop a RICO claim, which is explained in paragraph 25 of the Tauler Declaration in the moving papers. Amending claims in the middle of litigation is common; the Stores have done so in this very case by amending their class claims on behalf of two putative classes to no longer seek any form of relief. (ECF No. 179-1 at 14–15; ECF No. 274.) Amending a com-

---

[7] The fact that TSLLP sought compensation for services provided to JST from July to November 2017 is addressed in the Reply Separate Statement at Paragraph 4. In any event, that issue is not relevant to the conceded fact that Outlaw Labs, not TSLLP, created its product, contrary to the Stores' allegation in the SACC.

plaint to eliminate one claim does not establish that TSLLP's stated intent to pursue litigation on behalf of its client was in anyway fraudulent.

6.     The Stores concede TSLLP was not the sole beneficiary of settlements, contrary to the allegations in the SACC. They point to $1,183,866.13 in settlements proceeds, but do not address how much of that money went to expenses or other attorneys. In fact, according to Wear, **TSLLP only kept 16%** of that amount. (Wear Decl. ¶ 14.) In any event, it is undisputed that the Stores' allegation that TSLLP was the sole beneficiary of the settlements is false.

7.     As addressed in the moving papers (ECF No. 260-1 at 17 n.3), with respect to one summons mistakenly issued with a state-court form, this was a mistake in litigation made after the demand letters were sent. It does not somehow evidence mail fraud or wire fraud.[8]

8.     It is undisputed that TSLLP did not enforce any settlements. The Stores suggest that it can avoid summary judgment by vaguely pointing to "the entire process that Tauler Smith orchestrated." However, there is no actual evidence of TSLLP orchestrating the "entire process," and as discussed above, TSLLP prosecuted claims on behalf of its clients based on evidence and information provided by and confirmed by its clients.

9.     The sole evidence the Store have that TSLLP acted without the guidance or direction of Outlaw Labs is the Stores' argument that TSLLP did not consult with its client with respect to one piece of correspondence to opposing counsel. As a preliminary matter, the evidence does not support this allegation, as Wear's declaration states that TSLLP **did** consult Outlaw Labs about this particular letter. (*See* Wear Decl. ¶ 12 ("I vaguely remember Tauler bringing up the demand letter during a conference call, but I cannot recall any spe-

---

[8] The Stores seem to argue that using a state court subpoena was meant to deceive parties to litigation—represented by counsel—into believing that federal litigation was being conducted in state court. This theory is convoluted and in any event, not based on any evidence.

– 9 –

cifics").) Nor does Outlaw Labs state that it disagreed with TSLLP's response to Gaw Poe's letter, or that Tauler's email to Poe was inconsistent with any strategy discussed between attorney and client.

The Stores' opposition merely confirms what TSLLP has stated all along: the demand letters it sent were based on information it believed to be true based on information provided by its client and the fanciful allegations in the SACC, largely asserted on information and belief, have no basis in fact.

None of the other evidence the Stores presents changes this conclusion. For example, evidence that Outlaw Labs delegated to TSLLP the final decision of which retailers to sue—based on candidates Outlaw Labs or its predecessor identified—does not show that TSLLP crossed the line into criminal conduct. Instead, TSLLP was doing its job by pursuing the most meritorious and worthwhile claims based on information provided by its client and stores identified by JST Distribution.

Similarly, the fact that Outlaw Labs claims it did not retain copies of settlement agreements—which it indisputably signed—does not establish TSLLP as a mastermind of any alleged scheme. If anything, it shows that Outlaw Labs, like any client, decided whether it would settle its claims.

Nor do the Stores explain how TSLLP continuing to represent Outlaw Labs after a dust-up establishes that TSLLP directed or participated in a RICO enterprise. It merely shows that after a dispute, Outlaw Labs agreed to have TSLLP continue to represent it. There is nothing criminal or fraudulent about doing so, nor does it establish that TSLLP was part of a RICO conspiracy.

## III.  CONCLUSION

For the foregoing reasons, TSLLP respectfully requests that the Court grant its motion for summary judgment, or in the alternative, summary adjudication.

1

Dated: August 21, 2020                Respectfully submitted,

2

**Sergenian Ashby LLP**

3

4

By: _/s/David A. Sergenian_

David A. Sergenian

5

_Attorneys for Third-Party Defendant_

6

_Tauler Smith LLP_

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

– 11 –

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

In Re: Outlaw Laboratory, LP Litigation, Case No.: 3:18-cv-00840-GPC-BGS

I hereby certify that on August 21, 2020, copies of **Reply in Support of Third-Party Defendant Tauler Smith LLP's Motion for Summary Judgment, or in the Alternative, Summary Adjudication** were filed electronically through the Court's CM/ECG system, and served by U.S. mail on all counsel of record unable to accept electronic filing.

**Sergenian Ashby LLP**


By: */s/David A. Sergenian*
David A. Sergenian
*Attorneys for Third-Party Defendant*
*Tauler Smith LLP*

Reply in Support of Tauler Smith's
Motion for Summary Judgment

Case No. 3:18–cv–840–GPC–BGS
Consolidated with 3:18–cv–1882–GPC–BGS