MARK POE (Bar No. 223714)
  mpoe@gawpoe.com
RANDOLPH GAW (Bar No. 223718)
  rgaw@gawpoe.com
SAMUEL SONG (Bar No. 245007)
  ssong@gawpoe.com
VICTOR MENG (Bar No. 254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

*Counsel for the Stores*

SEAN M. REAGAN (*pro hac vice*)
Leyh, Payne & Mallia, PPC
sreagan@lpmfirm.com
9545 Katy Freeway, Suite 200
Houston, Texas 77024
Telephone: (713) 785-0881
Facsimile: (713) 784-0338

MICHAEL R. DUFOUR (No. 290981)
mrd@dufourlawfirm.com
8675 Falmouth Ave., Suite 307
Playa Del Rey, California 90293
Telephone: (213) 200-9809
Facsimile: (424) 389-7236

*Counsel for Outlaw Laboratory, LP,
Michael Wear and Shawn Lynch*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORY, LP LITIGATION | Case No. 3:18-cv-840-GPC-BGS<br><br>**THE STORES' AND OUTLAW'S JOINT SUPPLEMENTAL RESPONSE RE: *DIAZ* NOTICE** |

Pursuant to the Court's Order Denying Motion for Permanent Injunction and Ordering Production of Settlement Agreement (hereafter "Order) (ECF No. 290), the Stores, Michael Wear, Shawn Lynch, and Outlaw Laboratory (the latter three hereafter referred to as "Outlaw") submit their joint response regarding whether they must give notice of their settlement to absent class members under *Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401 (9th Cir. 1989).

As an initial matter, the Court already noted the fact that "settlements made before a class is certified are not governed by Rule 23." Order at 9. Thus, the Court ordered supplemental briefing as to whether the "settlement passes muster under *Diaz*." Order at 12. Presumably the phrase "passes muster" was meant only to refer to whether *notice* of the settlement is required, not whether or not the Court will *approve* the settlement. *See Diaz*, 876 F.2d at 1408 (recognizing, even *before* the current version of Rule 23(e), that "[i]n no pre-certification dismissal would the court reject the dismissal and require anything more than notice to the class and an opportunity to intervene.").

Nevertheless, the majority of Tauler Smith's brief seeks to return to square one, asking that "the Court reject the Settlement Agreement between Outlaw and Counterclaimants[.]"[1] Tauler Smith Mem. at 7. If there is any power in a federal court to "reject" a pre-certification settlement between a class representative and a subset of the defendants, Tauler Smith does not identify what it is, and we are aware of none. *Id.* at 1-7.

Furthermore, the Court has already found the first *Diaz* factor—whether absent

---

[1] Tauler Smith's argument in this respect seems to be based on a reading of the settlement under which the reference to the agreement having "resolve[d] all dealings of the **Parties**," means that the *absent class members'* potential claims against Outlaw have also been released. Mem. at 2-3. But "Parties" is a defined term that includes only Outlaw and Gaw | Poe's store clients. Settlement at 1. And as the Stores have noted numerous times, they have no *power* to release claims of absent class members even if they wanted to.

members have been relying on the claims against *Outlaw per se* (rather than merely reliant on Skyline Market and class counsel to pursue these claims against the law firm that took their money)—to be "neutral." Order at 10. And it found the second factor—"lack of adequate time for class members to file other actions"—to weigh against requiring notice. *Id.* at 11. Thus, Outlaw and the Stores understand the supplemental briefing to be intended to address the third *Diaz* factor—inquiring whether "the parties have [ ] compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney." *Id.* at 11 (quoting *Del Rio v. CreditAnswers, LLC*, No. 10-CV-346-WQH, 2011 WL 1869881, at *3 (S.D. Cal. May 16, 2011)).

As a starting point, this articulation of the third *Diaz* factor from the unpublished *Del Rio* opinion is imprecise. The third factor from *Diaz* is actually "into **possible prejudice from** . . . (3) any settlement or concession of class interests made by the class representative or counsel in order to further **their own interests**." 876 F.2d at 1408 (emphasis added). Here, the absent class members will not suffer any "possible prejudice," *id.*, because their claims against Outlaw remain independently viable, should anyone choose to pursue them. And as to whether the settlement "further[s] their [*i.e.*, the class representative or counsel's] *own* interests," *id.*, the monetary component of the Outlaw settlement was payable only "to Gaw Poe's IOLTA," (Settlement at I.2.), and as the Stores' counsel has already demonstrated to Tauler Smith's counsel in meet-and-confer correspondence, *the entire amount remains there*. Decl. of Mark Poe ¶ 2, Ex. A. As the Stores' counsel has further explained to Tauler Smith, "the first priority for the funds is to cover the costs of the litigation, to include class notice and trial." *Id.* Ex. A at 2. As the Stores stated in other correspondence in response to Tauler Smith's same inquiries:

> We fully expect that all of these proceeds will be used to cover the out-of-pocket costs of this litigation and the costs of class notice. We doubt there will be anything left once those costs are paid for, but if there is any residue, its distribution will be a matter for ourselves and the counterclaimant/third-party plaintiffs to decide.

Sergenian Decl. Ex. C at 1.

By using the settlement funds for litigation costs, notice, and trial, the plan for the proceeds is not "prejudic[ial]" to the absent members of the class. *Diaz*, 876 F.2d at 1408. Rather, the proceeds are unquestionably to be used to *pursue* the interests of the absent class members, in obtaining relief from the law firm that took their money. *Cf.* ECF No. 272-17 (Wear Decl. ¶ 9 (attesting that Outlaw itself "received a total of only approximately $120,000 in settlements from retail stores.")).

Beyond bizarrely adding $100,000 to the actual settlement amount without explanation (*see* Mem. at 5:17, 6 n.6), Tauler Smith seems to believe that the amount of the monetary settlement will far exceed the litigation costs, thereby "enriching Gaw Poe with what is essentially a self-administered award of *fees*." Mem. at 5 (emphasis added). If that is Tauler Smith's sincere belief, it is only based on a lack of actual trial experience, or at least a lack of experience in conducting a *proper* trial (let alone experience with the cost of class notice). The Court has overseen a number of class actions and an untold number of well-conducted trials, so will know from its own experience that once the cost of an expert witness, class notice,[2] a trial tech, printing, travel, and lodging and meals are factored in, it is unlikely that *any* amount of the Outlaw settlement will remain.

In any event, Tauler Smith contends that it is "enriching" for the Stores' counsel to have their out-of-pocket costs covered, and directs the Court to the Stores' engagement agreement with Skyline Market to contend that class counsel "'is contractually obligated to pay [costs] out of its own pocket.'" Mem. at 5 (quoting Sergenian Decl. Ex. D at 2). This is a baldly incorrect reading of the costs language of the engagement. It very clearly reads "we will pay these costs for you, and will

---

[2] As a benchmark, the cost of mailing the demand letters to the (unidentified, and unknown number of) recipients was at least $162,722. *See* Poe Decl. ¶ 3, Ex. B.

only be entitled to *reimbursement of our out-of-pocket expenses if money is recovered for the class we envision, through settlement or judgment.*" *Id.* (emphasis added). The Stores' counsel have diligently recovered money "through settlement" with Outlaw, and thus are entitled to use it as "reimbursement of our out-of-pocket costs." In any event, even if Tauler Smith's argument in this regard were not based on a frivolous interpretation of the engagement agreement, it is hard to imagine that Tauler Smith is genuinely concerned about the well-being of the store owners whom it defrauded for money.

Finally, with respect to Tauler Smith's "alternative" request that the Court "require notice to absent class members," Mem. at 7, it fails to mention the monumental obstacle to that plan: As set out in the Stores' motion for class certification, both Outlaw and Tauler Smith profess that they do not know the identities of the class members. *See* ECF No. 179-1 at 25. While the declarations of Mr. Wear and Mr. Lynch make this a far more credible assertion for *them* to make—since Tauler Smith did not provide them with a list of the demand letter recipients, "final copies of each settlement after both parties had signed," or "a full accounting showing how much [money] was taken in," ECF No. 272-17 (Wear Decl. ¶¶ 6, 9)—Tauler Smith simply *refuses* to identify the recipients of the Demand Letters it mailed, *and* the identities of the unknown number of Payment Class members who wired money to Tauler Smith's bank account. *See* Stores' Mot for Sanctions and Further Order Compelling Document Production and Interrogatory Responses by Tauler Smith at 12-14 (ECF No. 269).[3] Tauler Smith does not propose how class counsel should go about giving notice to entities that Tauler Smith itself steadfastly refuses to identify. But that is of little consequence at this immediate juncture, since as explained above, the need for notice isn't indicated by the three *Diaz* factors in the first place.

---

[3] This motion remains pending.

# CONCLUSION

Because notice is not indicated by the Diaz factors, because there is no practical means of giving notice to the absent class members, and because the cost of notice would only deplete the resources with which class counsel intend to pursue the absent members' claims against Tauler Smith, no notice should be ordered.

Dated: October 8, 2020                    GAW | POE LLP

                                          By:  s/ *Mark Poe*
                                               Mark Poe
                                               Counsel for the Stores

Dated: October 8, 2020                    LEYH, PAYNE & MALLIA, PLLC

                                          By: */s/ Sean Reagan*
                                              Sean M. Reagan
                                              Counsel for Outlaw, Mr. Lynch, Mr. Wear

**CERTIFICATE OF SERVICE**

Case No. 3:18-cv-840-GPC-BGS

I HEREBY CERTIFY that on the date stamped in the header above, I filed the following documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

**THE STORES' AND OUTLAW'S JOINT SUPPLEMENTAL RESPONSE RE:** *DIAZ* **NOTICE**

GAW | POE LLP

By:   s/ *Mark Poe*
    Mark Poe