1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT
9                      SOUTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11 IN RE: OUTLAW LABORATORIES, LP LITIGATION, | Case No.: 18CV840 GPC (BGS) |

11  IN RE: OUTLAW LABORATORIES, LP
12  LITIGATION,

Case No.:  18CV840 GPC (BGS)

**ORDER:**
**(1) DENYING WITHOUT**
**PREJUDICE TAULER SMITH'S**
**MOTION TO MODIFY IN PART**
**THE CASE SCHEDULE**
**(2) CONDITIONALLY GRANTING**
**MOTION TO FILE UNDER SEAL**
**(3) SETTING BRIEFING ON**
**CONFIDENTIALITY**
**DESIGNATION ON SETTLEMENT**
**AGREEMENT**

[ECF 298, ]

## I.    INTRODUCTION

Third-Party Defendant Tauler Smith has filed a Motion to Modify in Part the Case Schedule.  (ECF 298.)  Counter-claimant Roma Mikha and third-party plaintiffs NMRM, Inc. and Skyline Market, Inc. (collectively the "Stores") and third-party defendants Outlaw Laboratory, LP, Michael Wear, and Shawn Lynch (collectively "Outlaw") have filed a Joint Opposition.  (ECF 299.)  Tauler Smith moves to modify the June 1, 2020 fact

1

discovery deadline, the deadline to amend the pleadings, and other pretrial deadlines. Tauler Smith argues these modifications are necessary to allow Tauler Smith to conduct discovery related to the Stores' and Outlaw's settlement.  For the reasons set forth below, the Motion is **DENIED** without prejudice.

II.    BACKGROUND

The Court detailed the prior extensions of the Scheduling Order in this consolidated action in detail in the Court's May 4, 2020 Order on the Stores' and Outlaw's request to extend the schedule that was opposed by Tauler Smith.  (ECF 197 at 2.[1])  The Court incorporates that summary here and will not repeat it in its entirety.  (*Id.*)  In short, based on the addition of new claims, new parties, and a stay necessitated by the addition of new parties, the Court has previously granted three extensions of the Scheduling Order with the fact discovery deadline extended collectively more than sixteen months.  (ECF 25, 86, 155, 197.)

In the most recent decision granting a much shorter extension than requested, the Court ordered that any party seeking an extension of discovery "must identify the **specific** written discovery or deposition they are unable to complete by the June 1, 2020 deadline."  (ECF 197 at 9 (emphasis in original).)  It also ordered that:

In order to demonstrate diligence for purposes of analyzing good cause the party seeking an extension must specifically address[2] the following:
- When they first sought the discovery or noticed the deposition they need an extension to complete
- Why they did not initiate the discovery earlier
- Why it is not possible to complete the discovery by the existing deadline
- The date by which the discovery can be completed

---

[1] Unless otherwise noted, all page citations are to the CM/ECF electronic pagination.
[2] That Order also specified that a declaration in support must be provided by counsel seeking an extension.

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- The other parties' positions on whether an extension should be granted

(*Id.*)

On September 29, 2020, the Court was first made aware Tauler Smith wanted to reopen discovery and seek an extension of the Scheduling Order.  (ECF 296.)  Tauler Smith's counsel contacted Judge Skomal's chambers regarding filing a motion to reopen discovery to conduct discovery related to the Stores' and Outlaw's settlement and to amend the Scheduling Order.  (*Id.*)  The same day, the Court issued an Order addressing the issue.  (ECF 296.)  The Court's Order indicated that Tauler Smith had to substantively and jointly meet and confer by phone with the Stores and Outlaw regarding the issue, set a six-page limit for each brief, and set a briefing schedule: Motion filed by October 2, 2020 and Opposition filed by October 6, 2020.[3]  (*Id.*)  The Court indicated that any motion must comply with the undersigned's Chambers Rules and "any request to reopen discovery must identify the specific discovery the party seeks, why it is only being sought now, and address how the discovery is relevant and proportional to the needs of the case."  (*Id.*)  Tauler Smith filed their Motion on the same day and the Stores and Outlaw filed their joint Opposition on September 30, 2020. (ECF 298-299.)

The first record of the settlement between Outlaw and the Stores in the case docket was the Stores' and Outlaw's Joint Notice of Settlement with an accompanying request to enter a stipulated injunction, filed on July 7, 2020 before the district judge.  (ECF 249.) Additional filings followed with Tauler Smith objecting, the Stores and Outlaw separately responding to the objections, Tauler Smith responding to their response to the objections, and the Stores and Tauler Smith then filing additional briefs following a

---

[3] The Order indicated that the motion must include a declaration attesting to the parties' meet and confer efforts and that necessary exhibits must be summarized or quoted within the briefs.  (*Id.*)

hearing before the district judge.  (ECF 250, 252-254, 261-262.[4])  On September 15, 2020, an order was issued by the district judge denying the request to enter an injunction, finding Tauler Smith lacked standing to challenge the settlement, but ordering the Settlement Agreement be produced to the court and Tauler Smith to consider the collusive effect of the settlement.  (ECF 290 at 9-12.)

## III.   DISCUSSION

### A.   Legal Standards

"When ruling on a motion to amend a Rule 16 scheduling order to reopen discovery, [the Ninth Circuit] instructs" courts to consider:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

*City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017) (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th Cir. 1995) *vacated on other grounds*, 520 U.S. 939 (1997)).

This standard has many similarities with the excusable neglect standard implicated when a party moves to extend a deadline after the deadline has passed.  When a motion to extend time is made after time has expired, "the court may, for good cause, extend the time . . . if the party failed to act because of excusable neglect."  Fed. R. Civ. P 6(b)(1).  The determination of excusable neglect considers: (1) the danger of prejudice; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay which includes whether it was within the reasonable control of the party seeking to

---

[4] Judge Curiel's September 15, 2020 Order provides a thorough summary of these filings. (ECF 290 at 2-4.)

show excusable neglect; and (4) whether that party acted in good faith.  *Coleman v. Blue Cross Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1234-35 (D. Kan. 2007).

Federal Rule of Civil Procedure 16 states that a schedule may be modified only for good cause and with the judge's consent.  In the absence of good cause, the court will not modify the scheduling order.  *See Johnson v Mammoth Recreations, Inc.,* 975 F.2d 604, 608-09 (9th Cir. 1992).  The inquiry under Rule 16(b)'s good cause standard primarily focuses on the diligence of the party seeking the amendment.  *Id.* at 609.  "The district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  *Id.* (quoting Advisory Committee Notes to Federal Rule of Civil Procedure 16 (1983 amendment) and collecting cases). Carelessness is not the same as diligence and offers no reason for a grant of relief.  *Id.*  If the party was not diligent, the inquiry should end.  *Id.*

### B.   Parties' Positions

#### 1.   Tauler Smith

Tauler Smith argues the schedule must be amended to "permit limited additional discovery arising from the recent settlement agreement between" the Stores and Outlaw. (ECF 298-1 at 4.)  Tauler Smith seeks to conduct discovery on:

> (a) The settlement and the related preparation of testimony provided by Lynch and Wear pursuant to Section I.3 of the settlement agreement, and (b) the disposition of the . . . settlement payment by Outlaw under Section I.2 of the agreement that could reduce or eliminate the Stores' damages claimed against [Tauler Smith]

> (*Id.*)

As to subsection (a), Tauler Smith is seeking discovery related to interviews the Stores conducted with Wear and Lynch leading to their provision of declarations the Stores relied on in opposing Tauler Smith's motion for summary judgment.  (*Id.* at 5, 8 (arguing Wear and Lynch's credibility is at issue).)

As to subsection (b) Tauler Smith argues Outlaw's settlement payment to the Stores may have satisfied some or all of the Stores' damages claim against Tauler

Smith—$3,300 as to Skyline, $5,280 as to NMRM, and $4,400 as to Roma Mika.  (*Id.* at 5, 6, 8.)  Tauler Smith quotes from the district judge's September 15, 2020 Order [ECF 290 at 8] finding Tauler Smith lacked standing to challenge the settlement but could "still present 'a defense that the settlement agreement has adequately compensated Skyline Market' for RICO damages Skyline Market is seeking to recover from all four counterclaim defendants."  (*Id.* at 6.)  Tauler Smith argues that while it received the Settlement Agreement pursuant to the district judge's order, it is not clear how the settlement payment has been allocated. (*Id.* at 6-7, 8.)

Tauler Smith asserts not having this discovery would be prejudicial because it would lack information needed to undermine Wear and Lynch's credibility and to determine if the Stores' damages against Tauler Smith have been offset by Outlaw's settlement payment.  (*Id.* at 8.)  Tauler Smith argues that no amount of diligence would have allowed it to obtain this discovery about the Settlement Agreement, the interviews of Wear and Lynch, the declarations that followed, or the allocation of payments before the June 1, 2020 deadline because the Settlement Agreement was not entered until June 24, 2020 and only disclosed to Tauler Smith on September 15, 2020.  (*Id.* at 7-8.)  In short, it argues it has been diligent in seeking this discovery since receiving the Settlement Agreement and Tauler Smith's "'neglect' in not conducting the requested discovery earlier (prior to the June 1, 2020 deadline) [is] also excusable under Fed. R. Civ. P. 6(b)(1)."  (*Id.* at 8.)

Tauler Smith also argues that if the Court extends the June 1, 2020 fact discovery cut off for Tauler Smith to conduct this additional discovery, this would justify extension of other subsequent deadlines by the same amount.  (ECF 298-1 at 4 (citing ECF 155 for deadlines for pretrial disclosures, meeting of counsel, proposed pretrial order, and pretrial conference).)  Tauler Smith also seeks to extend the October 5, 2018 deadline to amend the pleadings to amend its Answer to the RICO counterclaims to assert an affirmative defense of "payment."  (ECF 298-1 at 4-5.)

///

6

1

### 2.    Outlaw and the Stores

2    The Stores and Outlaw respond that despite the Court's Order to do so, Tauler

3 Smith has failed to identity what discovery it seeks to conduct—depositions of Outlaw

4 and its owners, more depositions of the Stores, document requests, interrogatories, or

5 requests for admission. (ECF 299 at 2.)  In arguing the discovery Tauler Smith will

6 pursue will likely be burdensome and expensive simply out of spite for its former client,

7 Outlaw and the Stores rely on emails and another court's decision.  (*Id.* at 4-7.)  They

8 quote portions of numerous emails from Robert Tauler to Outlaw's counsel. (*Id.* at 4-5

9 (citing Decl. of Mark Poe, Exs. A, B. and C).)  They also cite and quote from a decision

10 by another court dismissing Tauler Smith's RICO claim against the Stores' counsel and a

11 client with citation to Rule 11(b)(1).  (*Id.* at 5 (quoting *Tauler Smith, LLP v. Valerio*,

12 2020 WL 1921789, at *5 (C.D. Cal. March 6, 2020) as finding "'by appearances' the

13 RICO claim was added for an 'improper purpose.'").)

14    They also argue Tauler Smith failed to cite any authority for obtaining discovery

15 about a plaintiff's settlement with one or more of several defendants.  (*Id.* at 3-4

16 ("Neither the Court nor Outlaw or the Stores should be forced to hunt around Westlaw to

17 find authority pertaining to the discoverability *vel non* of information pertaining to a

18 plaintiff's settlement with one or more of the several defendants, and then make Tauler

19 Smith's arguments for it, or in opposition to arguments that were never made.")

20 Additionally, specifically as to the interviews, they argue Tauler Smith was told these

21 interviews are subject to the work product doctrine during their meet and confer but have

22 not addressed that in this Motion.  (*Id.* at 3.)

23    The Stores and Outlaw also respond that in addition to citing no authority for

24 extending discovery under similar circumstances, Tauler Smith has not stated what length

25 of extension it is seeking for fact discovery or amendment of the pleadings or identified

26 existing or extended dates for any other deadlines or proposed extended dates for those

27 deadlines.  (*Id.* at 2-3.)  They also argue the district judge's decision requiring the

28

Settlement Agreement be produced already rejected the idea Tauler Smith has been prejudiced by the settlement.  (*Id.* at 3.)

### C.    Analysis

Tauler Smith's request does not fall squarely and entirely within any of the standards listed above.  It seeks a modification of the Scheduling Order to reopen discovery which implicates the standard articulated in *City of Pomona v. SQM North America*. 866 F.3d 1060, 1066 (9th Cir. 2017) (Standard for "a motion to amend a Rule 16 scheduling order to reopen discovery.").  This may also implicate the excusable neglect standard because "[w]hen an act . . .must be done within a specified time [completion of fact discovery], the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired *if the party failed to* act *because of excusable neglect*." Rule 6(b)(1) (emphasis added).  This standard would certainly apply to the request to modify the deadline to amend the pleadings years after it passed.  And, the request to move the upcoming pretrial deadlines would be subject to the Rule 16 good cause standard which primarily focuses on the moving party's diligence.  Diligence is a factor in all the standards.  Rather than take each standard factor-by-factor, the Court first addresses several issues that are significant to the Court's analysis under any standard and then explains why Tauler Smith has not met these standards in this Motion.

### 1.    Failure to Comply with the Court's Orders

As noted above, Tauler Smith was required by both the Court's May 4, 2020 Order and the Order setting the briefing on this Motion to identify the specific discovery sought. (*See* Section II (discussing May 4, 2020 and September 29, 2020 orders).)  It has identified topics of discovery but has failed to identify "the **specific** written discovery or deposition" it seeks to conduct.  (ECF 197 at 9; ECF 296 ("any request to reopen discovery must identify the specific discovery the party seeks.").)  Additionally, Tauler Smith has only partially addressed why it did not initiate discovery earlier, failed to identify a date by which the discovery can be completed, failed to fully address relevancy, and has not addressed proportionality at all as ordered by the Court.  (ECF 296

1    ("any request to reopen discovery must . . . address how the discovery is relevant and

2    proportional to the needs of the case."); ECF 197 (Moving party must identify "[t]he date

3    by which the discovery can be completed" and "[w]hy they did not initiate discovery

4    earlier").)  As discussed further below, these deficiencies are not just a failure to comply

5    with the Court's orders.  They are also the reason Tauler Smith has not met any of the

6    standards identified above.

7                              **2.    Specific Discovery Sought**

8              As noted above, Tauler Smith has failed to identify the specific discovery it plans

9    to seek.  In addition to failing to comply with the Court's orders, this is significant to

10   numerous factors identified above.  The specific discovery Tauler Smith seeks implicates

11   the length of delay, impact on judicial proceedings, whether Tauler Smith is acting in

12   good faith, and prejudice to the opposing party.[5]  For example, the length of delay and the

13   impact on judicial proceedings could vary drastically depending on the specific discovery

14   sought.  Responding to a narrowly drafted interrogatory could be done within days, but

15   multiple depositions or responding to broad requests for documents could take weeks.

16   Similarly, the prejudice to the opposing parties could be minimal if the specific discovery

17   sought is itself minimal, but if it's excessively burdensome there could be prejudice in

18   responding to overbroad requests, repeating depositions already taken, and delaying trial

19   of this case.  Additionally, identification of the specific discovery could have dispelled or

20   at least minimized the Stores' and Outlaw's concern that Tauler Smith is seeking this

21   discovery in bad faith.  Without detailing the specifics, the ill-will between the parties in

22

23   _____

24   [5] This is of particular concern in this case because the parties' discovery disputes in this
     case, most of which Tauler Smith has lost on in seeking to compel or prevent disclosure,
25   have already required eight lengthy orders following full briefing by the parties.  (ECF
     177, 180, 215, 230, 246, 265, 298, 294.)  The potential for delay as to any additional
26   discovery is great, particularly given Tauler Smith is seeking discovery the Stores have
     already asserted is subject to the work-product doctrine.  This is not to say it might
27   ultimately be entitled to discovery on an issue, but the failure to identify the specific
     discovery sought factors into the delay reopening discovery will cause.
28

1    this case is apparent from their filings and their concern that Tauler Smith is seeking to

2    reopen discovery to try and impose burdensome and expensive discovery out of spite is

3    not a completely unjustified concern.  Without information on the specific discovery or

4    Tauler Smith's timeline for completion, the Court can only find reopening fact discovery

5    could cause significant delay to judicial proceedings and prejudice to the opposing

6    parties.

### 3.    Relevance and Proportionality

8           Tauler Smith has argued the discovery it seeks is relevant to Lynch and Wear's

9    credibility and to Tauler Smith's claim that the settlement payment from Outlaw to the

10   Stores offsets the Stores damages claim against Tauler Smith.  The Stores and Outlaw

11   accurately note that other than the good cause standard, "Tauler Smith's motion is not

12   supported by *any authority at all*."  (ECF 299 at 3.)  And, the Court agrees that it should

13   not be forced to research and find authority to support or contradict Tauler Smith's

14   unsupported assertion that it is entitled to discovery regarding a plaintiff's settlement with

15   a co-defendant under these circumstances.  Tauler Smith identifies the factual

16   circumstances and then asserts in a conclusory fashion that it is entitled to discovery

17   regarding Lynch and Wear's testimony and how the settlement payment is allocated.  It

18   may be relevant, but Tauler Smith has not provided support for the assertion and the

19   Court is not inclined to do the work for them, particularly when the Court specifically

20   ordered them to address relevancy and proportionality and they failed to do so.

21          Tauler Smith has not addressed proportionality at all despite the Court specifically

22   ordering it to "address how the discovery is relevant and proportional to the needs of the

23   case." (ECF 296.)  Proportionality is pertinent here because if the discovery Tauler

24   Smith seeks it is proportional it would mean that taking into account the amount in

25   controversy and the burden and expense of the proposed discovery, it is sufficiently

26   essential to resolving important issues in the case that it should be permitted.  *See* Rule

27   26(b)(1).  This would weigh in favor of allowing the discovery because it would suggest

28   the discovery is being sought in good faith and it is likely to lead to relevant evidence.

#### 4.    Diligence

Tauler Smith's diligence is, at best, questionable.  Tauler Smith argues it could not have sought this discovery prior to the June 1, 2020 deadline to complete fact discovery because the Stores and Outlaw did not settle until after that deadline and Tauler Smith did not receive the Settlement Agreement until September 15, 2020.  However, Tauler Smith has delayed seeking this discovery without sufficient explanation.

Tauler Smith argues it needs discovery related to the truth of Wear and Lynch's testimony because their credibility is at issue.  It claims that no amount of diligence would have allowed it to obtain discovery about the Settlement Agreement, the interviews of Wear and Lynch, and the declarations that followed.  However, the possibility that co-defendants in a civil action may settle and even turn against a co-defendant existed before the Stores settled with Outlaw.[6]  It knew of this possibility, but for whatever reason did not seek discovery into their credibility when fact discovery was open or explain why it could not have done this discovery earlier.  Additionally, Tauler Smith cites no legal authority to support its claim it is entitled to discovery about a plaintiff's settlement with one or more of several defendants.  Now it wants to reopen discovery to request unspecified discovery without limitation that could have been requested during the extended fact discovery period.  Tauler Smith's tactical decision not to do earlier does not establish due diligence.[7]

---

[6] The Stores' argument supports this conclusion. "Tauler Smith is doubtless at a tactical disadvantage for having Outlaw, Mr. Lynch, and Mr. Wear settle out of the case and agree to testify, but that is the same tactical disadvantage faced by any co-defendant who prefers trial over settlement.  Tauler Smith does not cite any authority suggesting that the routine circumstance of one co-defendant settling out of a case justifies the reopening of discovery."  (ECF 299 at 4.)

[7] If the Court were to take Tauler Smith's request at face value, then anytime a co-defendant settles and agrees to testify would be good cause to re-open discovery into their credibility.

In addition, even if the settlement were a point from which to gauge Tauler Smith's diligence, it had most of the information it relies on to reopen discovery months ago and waited until September 29, 2020 to raise the issue with the Court.  It attempts to rely on receipt of the Settlement Agreement on September 15, 2020, but Tauler Smith knew no later than July 7, 2020 that Wear and Lynch had agreed to testify as part of the settlement.  (ECF 249-1 (filed July 7, 2020) at 4 (proposed injunction includes their providing testimony); ECF 254 (filed July 9, 2020) at 4 (Tauler Smith filing acknowledging proposed injunction includes their agreement to provide testimony).)  Based on Tauler Smith's Motion and a review of its prior filings, the only true new information disclosed by the Settlement Agreement was the interviews preceding Lynch and Wear's declarations.

Tauler Smith argues it needs to know how the settlement payment is being allocated to determine if Outlaw's payment to the Stores offsets the Stores' damages against Tauler Smith.  Specifically, it argues Outlaw's settlement payment to the Stores may have satisfied some or all of the Stores' damages claim against Tauler Smith— $3,300 as to Skyline, $5,280 as to NMRM, and $4,400 as to Roma Mika.  (298-1 at 5, 6, 8.)  However, Tauler Smith knew Outlaw had paid a settlement amount well in excess of the amount of damages it contends should be offset no later than June 30, 2020.  (ECF 262-1, Decl. of David Sergenian ¶ 9 (indicating Tauler Smith became aware the settlement amount was in excess of six-figures on June 30, 2020 phone call with opposing counsel); ECF 262 at 10-11 (arguing, in a July 24, 2020 brief that Skyline Market has been fully compensated by the settlement payment).  Similarly, Tauler Smith knew the facts supporting its contention that the settlement payment would impact its "payment" affirmative defense no later than July 24, 2020.  (ECF 262 at 9-10 (arguing the same).)  Yet Tauler Smith provides no basis for the Court to conclude re-opening discovery as to this issue would not be duplicative to information it already has, or why it did not timely request to re-open discovery when it became aware of all this information.

1    While the Court would not characterize Tauler Smith's conduct as careless, its

2    diligence is at best questionable.  Even assuming, as it argues, that these settlement issues

3    did not arise until after the close of fact discovery, that does not mean it could wait

4    almost three months to pursue discovery on the topic.  It appears that Tauler Smith simple

5    waited until the last minute with pretrial deadlines fast approaching to seek to reopen

6    discovery based on facts it had been aware of for months and seek a continuance of the

7    remainder of the Scheduling Order on that basis.  That is not diligent.

8        **5.    Application**

9        "When ruling on a motion to amend a Rule 16 scheduling order to reopen

10   discovery, [the Ninth Circuit] instructs" courts to consider:

11       1) whether trial is imminent, 2) whether the request is opposed, 3) whether the
12       non-moving party would be prejudiced, 4) whether the moving party was diligent
         in obtaining discovery within the guidelines established by the court, 5) the
13       foreseeability of the need for additional discovery in light of the time allowed for
         discovery by the district court, and 6) the likelihood that the discovery will lead to
14       relevant evidence.

15   *City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1066 (9th Cir. 2017)

16   (quoting *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1526 (9th

17   Cir. 1995) *vacated on other grounds*, 520 U.S. 939 (1997).

18       Trial is not imminent because it has not been set, however this is a function of the

19   practice of many district judges to wait until the pretrial conference to set the trial date.

20   The pretrial conference is currently a month away, set for November 6, 2020.  The

21   request is opposed.  Whether the Stores and Outlaw would be prejudiced by reopening

22   discovery is not clear.  As discussed above, Tauler Smith failed to address what specific

23   discovery it was seeking despite two Court orders to do so for this very reason.  It is

24   possible if fact discovery is reopened, Tauler Smith will pursue unnecessarily expensive

25   and burdensome discovery.  Forcing the Stores and Outlaw to incur that excessive and

26   unjustified burden and expense when, as discussed above, it is not at all clear the

27   discovery sought is relevant or proportional to the needs of the case, could be prejudicial.

28

1      Further, Tauler Smith has not provide an explanation nor authority as to why it did

2   not or could not seek discovery into Wear and Lynchs' credibility when it had an

3   opportunity to do so.  And, even if it could not, Tauler Smith's diligence since the

4   settlement is questionable because it was aware of most of the facts it relies on to reopen

5   discovery in July, at the latest, but waited to move to reopen discovery until the end of

6   September.  Finally, as also discussed at length above, the likelihood the discovery will

7   lead to relevant evidence is questionable because Tauler Smith has provided no authority

8   for its assertion a co-defendant is entitled to discovery about a plaintiff's settlement with

9   a co-defendant even though the Court specifically ordered it to address relevancy.[8]

10      Taking all these factors into account, the Court finds Tauler Smith has not

11   established good cause to modify the Scheduling Order to reopen discovery.  In addition,

12   to the extent the excusable neglect standard also applies, it is not met either.  The

13   determination of excusable neglect considers: (1) the danger of prejudice; (2) the length

14   of the delay and its potential impact on judicial proceedings; (3) the reasons for the delay

15   which includes whether it was within the reasonable control of the party seeking to show

16   excusable neglect; and (4) whether that party acted in good faith.  *Coleman v. Blue Cross*

17   *Blue Shield of Kan.*, 487 F. Supp. 2d 1225, 1234-35 (D. Kan. 2007).  As discussed above,

18   without knowing how long Tauler Smith anticipates it will take it to complete the

19   unidentified discovery, there is a danger of prejudice to the opposing party in potentially

20   having to endure needlessly burdensome discovery and significant delay.  Although this

21   alone does not indicate it is being sought in bad faith, the history of the parties' conduct

22   in this case, including their sometimes less-than-professional communications in

23   conjunction with the complete lack of time limitation or any parameters on the discovery

24   sought leaves this ripe for abuse.  Tauler Smith's delay in seeking this discovery until the

25   settlement was reached is questionable for reasons stated herein.  In addition, Tauler

26

27   ─────────────────────

28   [8] Tauler Smith also failed to address the Stores' claim that such discovery is protected by
     the work product privilege.

1  Smith has not provided any reasons for failing to seek to reopen discovery in July when it

2  knew about the settlement, a rough amount of the total settlement, and that the settlement

3  included Lynch and Wear testifying.

4        The only basis Tauler Smith puts forward for modification of the pretrial deadlines

5  is the need to reopen fact discovery.  (ECF 298-1 (seeking to postpone pretrial deadlines

6  "equally" based on extension of fact discovery).[9])  Although there may be good reason to

7  continue those deadlines under Rule 16(b)'s good cause standard, the Court is not

8  inclined to extend them *sua sponte* on a basis not addressed by any of the parties in the

9  briefing.

10        Tauler Smith also seeks to modify the Scheduling Order to extend the deadline to

11  amend the pleadings to allow it to plead a "new affirmative defense of 'payment' under

12  [Federal Rule of Civil Procedure] 8(c)(1)" based on the settlement payment having

13  satisfied some or all of the damages claimed by the Stores.  (ECF 298-1 at 5.)  There are

14  two significant issues with the request that are both largely based on Tauler Smith not

15  sufficiently addressing this issue.  As discussed at length above, Tauler Smith does not

16  explain why it waited two months to seek this extension.  It knew on June 30, 2020 that

17  Outlaw had paid the Stores more than six figures in settlement but did not seek leave to

18  amend until now.  That delay is not explained.  Additionally, Tauler Smith has asserted in

19  prior filings that it has already pled an affirmative defense based on payment.  It states

20  Tauler Smith "has asserted an affirmative defense based on plaintiff's settlement with

21  Outlaw."  (ECF 262 (July 24, 2020 filing) at 10 (citing ECF 202 [Tauler Smith's Answer

22  and Affirmative Defenses] ¶¶ 25, 26, 33).)  It goes on to argue in the same section that it

23  is being deprived of the ability to "assert its affirmative defenses and prove that named

24

25  _____

26  [9] The Court is only addressing the reasons given by Tauler Smith for modification of the

27  Scheduling Order.  The Court does not speculate as to other reasons that might justify
modifications of the remaining pretrial deadlines and nothing in this Order precludes the

28  parties from seeking that relief for other reasons.

plaintiff Skyline Market has fully satisfied its claim by receiving the full amount of damages it has demanded in the [Second Amended Counter Claims]." (*Id.*) There may be a distinction between what Tauler Smith argued before the district judge in this filing to try and establish its standing to challenge the settlement[10] and what it argues here in an attempt to modify the schedule to amend its pleading. However, Tauler Smith has not explained that distinction. In fact, it addresses amendment of its pleading very little. Accordingly, given the lack of explanation for its delay in seeking to amend or further explanation why it needs to amend its existing pleading, the request is denied.

## IV.   CONCLUSION

Tauler Smith's Motion to Modify in Part the Case Schedule is **DENIED** without prejudice. As noted above, the parties are not precluded from seeking extension of the remaining deadlines for other reasons than those addressed in this Order. (*See* above n.9.)

## V.   MOTION TO FILE UNDER SEAL AND CONFIDENTIALITY DESIGNATION

In support of this Motion, Tauler Smith filed a motion to file the Settlement Agreement under seal because it has been designated as confidential by the Stores under the Protective Order. (ECF 295.) However, Tauler Smith argues it should not be filed under seal. Tauler Smith has also submitted a discovery dispute to the Court challenged the confidentiality designation.

The Court conditionally **GRANTS** the request to file under seal because the Court has considered the filing in ruling on this Motion. (ECF 295.) However, given the Stores have not addressed Tauler Smith's position in the Motion to file under seal and have only very briefly addressed the confidentiality designation under the Protective Order without

---

[10] The Court is not reaching any conclusions as to the sufficiency of the existing pleading on this affirmative defense or its scope. Rather, the Court is simply noting, in the absence of any explanation from Tauler Smith, it is odd to argue the need to amend a pleading to plead something very similar to what you have already asserted you pled.

citation of any authority, these issues must be briefed. The parties shall file a joint statement[11] by **October 16, 2020** addressing (1) whether the Settlement Agreement has been properly designated as confidential under the terms of the Protective Order and (2) whether the Settlement Agreement should be filed under seal in support of a discovery motion.[12] Each party shall have five pages of briefing.

      **IT IS SO ORDERED.**

Dated: October 13, 2020

_____
Hon. Bernard G. Skomal
United States Magistrate Judge

---

[11] The Court again reminds the parties that any exhibits must be quoted or summarized in the joint statement and the parties must exchange their respective briefing in advance of the October 16, 2020 deadline to allow the opposing party the opportunity to modify their own briefing to address the opposing parties' arguments.

[12] The Court notes that the standard for filing under seal in support of a discovery motion is different than a motion to file under seal in support of a potentially dispositive motion. The parties should address the appropriate standard. *See Kamankana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179-80 (9th Cir. 2003); *see also Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135-37 (9th Cir. 2003).