1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   IN RE: OUTLAW LABORATORIES, LP          Case No.:  18CV840 GPC (BGS)
     LITIGATION,
12                                           **ORDER DENYING TAULER**
                                        .    **SMITH'S MOTION TO COMPEL**
13                                           **COMPLIANCE WITH SUBPOENAS**
14
15                                           [ECF 255]
16

17

18   **I.      INTRODUCTION**

19           Third-party defendant Tauler Smith LLP ("Tauler Smith") has filed a Motion to

20   Compel Compliance with Subpoenas.  (ECF 255.)  The Subpoenaed Parties[1] have filed a

21   Joint Opposition and Counter Motion to Quash and Tauler Smith has filed a Reply in

22   support of its Motion.  (ECF 259, 264.)[2])

23

24   _____

25   [1] The Joint Opposition identifies it as being filed on behalf of Trepco Imports and
     Distribution, Ltd. (dba Kennedy Wholesale and Trepco El Cajon Cash and Carry), Ayad
26   Mansour aka Jeff Mansour, Wail Al Paulus, Wiam Paulus, Margart Paulus, Dominic
27   Arabo, and Steven A. Elia, Esq. (incorrectly identified as Stephen Elia) of the Elia Law
     Firm, APC, the "Subpoenaed Parties" and San Diego Cash & Carry.  (ECF 259 at 1.)
28   [2] All citations to the Joint Statement are to the CM/ECF electronic pagination.

                                           1

1    For the reasons set forth below, the Motion to Compel is **DENIED**.

2    **II.    BACKGROUND**

3        **A.    Claims in Consolidated Action**

4        The Court has summarized the claims, counterclaims, and third-party claims of this

5    consolidated action in detail in numerous prior orders on discovery disputes.  The Court

6    incorporates those summaries here and only briefly summarizes the case here.  (ECF 177

7    at I.; ECF 215 at II.; ECF 230 at II.; ECF 246 at II; ECF 265 at II.)

8        This consolidated action encompasses two cases brought by Outlaw Laboratory,

9    LP against retail stores.  (Case Nos. 18cv840 ("*DG in PB*") and 18cv1882 ("*SD Outlet*").)

10   Three stores, Roma Mikha, NMRM, Inc., and Skyline Market, Inc. (collectively the

11   "Stores") have filed counterclaims as a class action on behalf of themselves and other

12   targeted stores against Outlaw and its former counsel, Tauler Smith, under the Racketeer

13   Influenced and Corrupt Organizations Act ("RICO") along with a rescission claim.

14   ("Second Amended Counter Claims ("SACC") [ECF 114].)

15       Outlaw's claims were premised on the defendant stores selling "male-enhancement

16   pills, . . . 'the Enhancement Products'" with packaging indicating they were all natural,

17   but allegedly containing undisclosed drugs with Outlaw claiming it lost out on sales of its

18   products to those products. (ECF 147 at 1, 3-6; ECF 209 (*San Diego Outlet* action).)

19   Summary Judgment was granted to defendants in the *DG in PB* action, and a motion for

20   judgment on the pleadings and subsequent motion for reconsideration in the San Diego

21   Outlet action were granted dismissing with prejudice all of Outlaw's claims.  (ECF 147,

22   209, 251.)

23       The Stores counterclaims under RICO are being brought on behalf of a class of

24   similarly situated stores.  (ECF 114.)  The SACC alleges Outlaw, Tauler Smith, and

25   Outlaw's principles, Michael Wear and Shawn Lynch, have engaged in a scheme that

26   includes sending demand letters to small businesses that threaten the store could be held

27   liable for over $100,000 based on false and misleading statements about potential liability

28   for the sale of certain products by the stores.  (SACC ¶¶ 2, 26, 82-88.)  The SACC alleges

2

Outlaw employs "investigators," some hired by Outlaw's counsel Tauler Smith, who identify stores selling the products, take pictures of storefronts and shelves in the store with the products and provide that information to others participating in the scheme to target these stores.  (SACC ¶¶ 66, 73, 86, 92.)  The SACC alleges that Outlaw and its attorneys then send the demand letters that falsely indicate Outlaw sells a competitive product, TriSteel, in retail stores through the United States and that the store is illegally selling products in violation of RICO and the Lanham Act.  (SACC ¶¶ 2, 15, 23-24, 26-52, 66-68, 84-86, 88, 92.)  The demand letters also allegedly include pictures taken of receipts for purchase of the products by investigators.  (SACC ¶¶ 68, 73, 91.)  Follow-up communications then offer to settle for increasingly lower amounts, including as low as $2,500.  (SACC ¶¶ 3-4, 56, 72, 87, 98.)

## III.   DISCUSSION

### A.   Parties Positions

Tauler Smith seeks to compel compliance with the subpoenas, however, Tauler Smith never explains in its Motion what it seeks in the subpoenas.  It very briefly indicates it "must obtain documents and testimony" to establish the Subpoenaed Parties' role in the sale of the "SUBJECT PRODUCTS."  (ECF 255-1 at 3.)  Although not entirely clear, it appears Tauler Smith is arguing it is seeking evidence that Trepco is engaged in a RICO conspiracy with stores that are selling Trepco's products and that this conspiracy is a defense for Tauler Smith in this case.  (*Id.* at 4.)  Tauler Smith also argues sales of the subject products may show sales to the stores continued after the stores received the demand letters.  This, Tauler Smith asserts, would mean the stores suffered no damages, presumably from lost sales.  Tauler Smith also asserts it has not been able to obtain this information from the Stores. (*Id.*)  Tauler Smith cites the Stores' response to a Request for Production of Documents ("RFP"), Exhibit H, and asserts it indicates that the Stores have claimed they have no responsive documents.  (*Id.*)  Tauler Smith asserts the information it seeks can easily be generated from "spin reports" and transaction history.  (*Id.* at 4-5.)  Tauler Smith does quote deposition testimony that indicates "spin reports"

can be run, although as to transaction history at stores, it only indicates transactions are recorded when scanned at the cash register.  (*Id.* at 5 n.4.)  There is no explanation where that information is compiled or how it would be extracted.

As discussed in more detail below, the Subpoenaed Parties oppose the Motion for numerous reasons.  They argue the information and documents sought are not relevant, are subject to attorney-client privilege, should have been obtained from the parties in this case rather than the non-parties subpoenaed, some were not properly served, and some are unenforceable as to certain subpoenaed parties for violating Rule 45's 100-mile requirement.  (ECF 259 at 6-8 (no relevance), 8-9 (should have been obtained from parties), 10-12 (attorney-client privilege), 12-13 (service), 14 (beyond 100 miles).)  Additionally, they argue Tauler Smith has attempted to circumvent the untimeliness of this Motion in two respects.  First, Tauler Smith reissued subpoenas in May that were originally issued in March 2020 and objected to in April 2020 to restart the time to raise the exact same dispute.  (*Id.* at 2-3, 4-5, 14.)  Second, even as to the second set of subpoenas, Tauler Smith raised this dispute a second time, thirty days after the first time it was raised, to avoid its untimeliness.  (*Id.* at 3-5, 14-16.)

### B.    Analysis

The Court begins with the two issues Tauler Smith and the Subpoenaed Parties both, at least in part, address in their briefing: (1) whether the discovery sought it relevant and (2) whether Tauler Smith could have obtained this discovery from a party in this case rather than burdening non-parties.  Because the Court finds the sought discovery is not relevant and some of it could have been obtained from the parties in this case, the Court need not reach the additional issues of service and whether that challenge was waived, untimeliness by Tauler Smith, and whether the discovery sought it subject to attorney client privilege.  The Court also notes that there may be other issues with these subpoenas or responses that have not been raised in the briefing.  However, the Court is not going to create arguments for the Subpoenaed Parties or Tauler Smith that they have not made for themselves.

"The scope of discovery through a subpoena under Rule 45 is the same as the scope of discovery permitted under Rule 26(b)." *Intermarine, LLC v. Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015); *see also* Fed. R. Civ. P. 26(b)(1) (describing the scope of discovery).  In this respect, parties cannot obtain discovery through a Rule 45 subpoena that is not within the scope of Rule 26(b)(1) and (2).  "A party or lawyer responsible for issuing and serving a subpoena therefore must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* (citing Fed. R. Civ. P. 45(d)(1)).

"An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party and, in particular, requires the court to consider . . . such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metro. Life Ins. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005))

In determining whether a subpoena imposes an undue burden, the Court may also evaluate whether the discovery sought through a Rule 45 subpoena of a *nonparty* is available from a *party* in the case.  *See e.g. Moon*, 232 F.R.D. at 638 (finding subpoena imposed undue burden because discovery sought could be obtained from a party in the case) (citing *Dart Indus. Co., Inc. v. Westwood Chem. Co.*, 649 F.2d 646, 649 (9th Cir.1980) and *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993)) (emphasis added).  "Courts are particularly reluctant to require a non-party to provide discovery that can be produced by a party." *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014).  "[N]onparties subject to discovery requests deserve extra protection from the courts." *Intermarine*, 123 F. Supp. 3d at 1218-19 ("[T]he Court notes that the Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts.") (quoting *High*

*Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D.Cal.1995).

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).  "District courts have broad discretion in controlling discovery" and "in determining relevancy." *Laub v. Horbaczewski*, 331 F.R.D. 516, 521 (C.D. Cal. 2019) (citing *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) and *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005)).  Rule 26(b)(2) also requires the court, on motion or on its own, to limit the frequency or extent of discovery otherwise allowed by the rules if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action;" or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

Tauler Smith provides no explanation or description of what it seeks in the subpoenas and the Subpoenaed Parties simply describe them as seeking "business records of the Subpoenaed Parties for the 'SUBJECT PRODUCTS.'"[3]  (ECF 259 at 7.)  The Court's own review of them indicates they seek a broad range of records for a four-year period regarding more than 20 products.  (ECF 255-2.)  For example, the records sought encompass all documents and any communications between the subpoenaed party and anyone else regarding the products, including sales of the products, documents showing

---

[3] As to Tauler Smith this is not a result of the Court's page limit.  The Court allowed 15 pages of briefing and Tauler Smith's Motion is only four pages.

6

gross profits from them, documents showing all SKU numbers, every supplier of the products, and all communications with every supplier.

Although a bit unclear, it appears Tauler Smith is arguing that it needs this discovery to establish the Subpoenaed Parties have been engaged in a RICO conspiracy with the Stores to sell these products.  Tauler Smith claims, without explanation or citation to any authority that this would constitute a "complete defense to the case." (ECF 255-1 at 4.)  Tauler Smith argues that if the Subpoenaed Parties "have in fact engaged in a RICO offense, then it cannot also be true that [Tauler Smith's] sending of demand letters contained false allegations as the Stores allege."  (ECF 264 at 4.)

However, the Subpoenaed Parties accurately point out that these records are not relevant because they would not show what Outlaw and Tauler Smith knew when they sent the demand letters.  To succeed on a RICO claim:

> a plaintiff must prove (1) conduct, (2) of an enterprise, (3) through a
> pattern, (4) of racketeering activity (known as "predicate acts"), (5)
> causing injury to the plaintiff's "business or property" by the conduct
> constituting the violation. *See Living Designs, Inc. v. E.I. Dupont de
> Numours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).
> 
> One type of predicate act of racketeering activity recognized by
> RICO, 18 U.S.C. § 1961(1) is mail fraud under 18 U.S.C. § 1341. A
> mail fraud violation consists of (1) the formation of a scheme or
> artifice to defraud; (2) use of the United States mails or causing a use
> of the United States mail in furtherance of the scheme; and (3)
> specific intent to deceive or defraud. *See Schreiber Distrib. Co. v.
> Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986);
> *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S. Ct.
> 2131, 170 L.Ed.2d 1012 (2008) ("Mail fraud occurs whenever a
> person, "having devised or intending to devise any scheme or artifice
> to defraud," uses the mail "for the purpose of executing such scheme
> or artifice or attempting so to do." (quoting 18 U.S.C. § 1341)).

*In re Outlaw, LP Litig.*, 352 F. Supp. 3d 992, 1000 (S.D. Cal. 2018).  The requirement of specific intent under this statute is satisfied by "the existence of a scheme which was 'reasonably calculated to deceive persons of ordinary prudence and comprehension,' and this intention is shown by examining the scheme itself." *United States v. Green,* 745 F.2d

1205, 1207 (9th Cir. 1984) (quoting *United States v. Bohonus,* 628 F.2d 1167, 1172 (9th Cir. 1980)).  The conduct of the stores that received letters asserting they faced $100,000 in liability for RICO and Lanham Act violations, is not an element of the RICO claim against Tauler Smith.  The elements of the claim focus on the conduct of the scheme itself, not those it targeted by the scheme.  Even when the Court looks to the particular facts of this case, at best, it appears Tauler Smith is trying to make its baseless threats of RICO and Lanham Act liability less baseless after the fact.  Essentially, it seeks to burden nonparties with overbroad subpoenas in hopes of finding out its baseless threats were actually true.  Not only is it a fishing expedition, but it is one that the Court is not convinced would have any relevance.  Even if there were some conspiracy to sell these products, Tauler Smith did not know that when it was sending demand letters.

Tauler Smith also argues the discovery sought may show that sales of the subject products to the Stores continued after the Stores received the demand letters and this could mean the Stores suffered no damages.  Again, this argument is not explained in any detail, but it appears Tauler Smith is arguing that if the Stores continued to sell the products despite the letters they received then they did not suffer damages in lost sales from pulling products from their shelves as alleged in the SACC.  (SACC ¶¶ 33-35.)

At the outset, to be clear, this information about stores beyond Roma Mikha, NMRM, Inc., and Skyline Market, Inc., it is untimely.  Class discovery in this case closed on March 17, 2020, almost two months prior to the reissued subpoenas raised here that were issued on May 12, 2020, and more than a week before these subpoenas were first issued on March 26, 2020.  However, even limited to the three Stores, these discovery requests are vastly overbroad in seeking this information for a four-year period when the only time that sales could be remotely relevant would be immediately after the demand letter was received and the products removed from the shelves for the loss.  But even if narrowed, records showing the Stores purchased these products from the Subpoenaed Parties would not show whether they were sold in the individual stores or pulled from the shelves after receiving a demand letter.  Additionally, the Subpoenaed parties indicate

that they do not have information on the Stores' sales. Given this is the only information that could possibly be relevant to the Stores' lost sales damages, that information would have to be obtained from the Stores themselves.

This is another reason Tauler Smith cannot obtain this discovery from the Subpoenaed Parties. It should have obtained this discovery from the parties in this case. On this point, the Court must first address Tauler Smith's representation to this Court on this issue. Tauler Smith states "[r]egarding the ability to obtain the records from the Stores, however, they have stated that no records exist." (ECF 255-1 at 4.) The Motion then quotes its RFP seeking any documents and communications relating to the Stores purchase of the subject products. (*Id.*) Then Tauler Smith states "[t]he Stores responded that they had no responsive documents. A copy of the Stores' Responses is enclosed as Exhibit H." (*Id.*) However, as the Subpoenaed Parties point out in Opposition, that statement was not accurate when made. By the time Tauler Smith filed this Motion and these representations were made, the Stores had not only provided an amended response to this RFP indicating that they would provide responsive documents, they had also already made invoices available and those invoices had been copied. (ECF 259 at 9 (citing Decl. of Mark Poe ¶¶ 3-4, Ex. A.) In Reply, Tauler Smith does not explain this apparent misrepresentation to the Court, but instead complains that the records it received from the Stores were not useful because the "Stores did not prepare any Trepco records for copying beforehand." (ECF 264 at 5.) Although not entirely clear, it appears that the documents were likely provided "as they are kept in the usual course of business" under Federal Rule of Civil Procedure 34(b)(2)(E)(i).

Second, Tauler Smith's dissatisfaction with this production does not mean it could not obtain this discovery from parties in this case. Tauler Smith has or could have deposed all the Stores and questioned them about whether they removed any products from the shelves to determine whether they actually lost sales in response to the demand letters. It is not necessary to burden nonparties with responding to subpoenas for information on individual stores' sales of its products.

**IV.   CONCLUSION**

The Court finds the subpoenas are overbroad and seek discovery that is either not relevant or could have been obtained from the parties in this case.  Accordingly, Tauler Smith request to compel the Subpoenaed Parties to comply with the subpoenas is **DENIED**.  Because the Court denies the motion for these reasons, the Court need not reach the Subpoenaed Parties' additional arguments regarding improper service, untimeliness of this Motion, and attorney-client privilege.

**IT IS SO ORDERED.**

Dated:  October 22, 2020

Hon. Bernard G. Skomal
United States Magistrate Judge