UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORIES, LP LITIGATION, | Case No.:  18CV840 GPC (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART THE STORES' MOTION FOR SANCTIONS AND FURTHER ORDER COMPELLING DOCUMENT PRODUCTION AND INTERROGATORY RESPONSES BY TAULER SMITH**<br><br>[ECF 269] |

## I.    INTRODUCTION

Counter-claimant Roma Mikha and third-party plaintiffs NMRM, Inc. and Skyline Market, Inc. (collectively the "Stores") have filed a Motion seeking sanctions and further responses from third-party defendant Tauler Smith LLP ("Tauler Smith").  (ECF 269.) The Stores seek further responses to discovery requests and sanctions for Tauler Smith's provision of false and incomplete responses to these requests and for Tauler Smith's deposition conduct.  (*Id.*)  Tauler Smith has filed an Opposition, (ECF 273), and the Stores have filed a Reply.  (ECF 275.)[1])

---

[1] All citations are to the CM/ECF electronic pagination unless otherwise noted.

For the reasons set forth below, the Motion is **GRANTED in part and DENIED in part**.

## II.   BACKGROUND

### A.   Claims in Consolidated Action

The Court has summarized the claims, counterclaims, and third-party claims of this consolidated action in detail in the Court's numerous prior orders on discovery disputes.  The Court incorporates those summaries here and only briefly summarizes the case here.  (ECF 177 at I; ECF 215 at II; ECF 230 at II; ECF 246 at II; ECF 265 at II.)

This consolidated action encompasses two cases brought by Outlaw Laboratory, LP against retail stores.  (Case Nos. 18cv840 ("*DG in PB*") and 18cv1882 ("*SD Outlet*").)  Three stores, Roma Mikha, NMRM, Inc., and Skyline Market, Inc. have filed counterclaims as a class action on behalf of themselves and other targeted stores against Outlaw and its former counsel, Tauler Smith, under the Racketeer Influenced and Corrupt Organizations Act ("RICO") along with a rescission claim. ("Second Amended Counter Claims ("SACC") [ECF 114].)

Outlaw's claims were premised on the defendant stores selling "male-enhancement pills, . . . 'the Enhancement Products'" with packaging indicating they were all natural, but allegedly containing undisclosed drugs with Outlaw claiming it lost out on sales of its products to those other products. (ECF 147 at 1, 3-6; ECF 209 (*SD Outlet* action).)  Summary Judgment was granted to defendants in the *DG in PB* action, and a motion for judgment on the pleadings and subsequent motion for reconsideration in the *SD Outlet* action were granted dismissing with prejudice all of Outlaw's claims.  (ECF 147, 209, 251.)

The Stores' counterclaims under RICO are being brought on behalf of a class of similarly situated stores.  (ECF 114.)  The SACC alleges Outlaw, Tauler Smith, and Outlaw's principles, Michael Wear and Shawn Lynch, have engaged in a scheme that includes sending demand letters to small businesses that threaten the store could be held liable for over $100,000 based on false and misleading statements about potential liability

for the sale of certain products by the stores.  (SACC ¶¶ 2, 26, 82-88.)  The SACC alleges Outlaw employs "investigators," some hired by Outlaw's counsel Tauler Smith, who identify stores selling the products, take pictures of storefronts and shelves in the store with the products and provide that information to others participating in the scheme to target these stores.  (SACC ¶¶ 66, 73, 86, 92.)  The SACC alleges that Outlaw and its attorneys then send the demand letters that falsely indicate Outlaw sells a competitive product, TriSteel, in retail stores through the United States and that the store is illegally selling products in violation of RICO and the Lanham Act.  (SACC ¶¶ 2, 15, 23-24, 26-52, 66-68, 84-86, 88, 92.)  The demand letters also allegedly include pictures taken of receipts for purchase of the products by investigators.  (SACC ¶¶ 68, 73, 91.)  Follow-up communications then offer to settle for increasingly lower amounts, including as low as $2,500.  (SACC ¶¶ 3-4, 56, 72, 87, 98.)

The Stores' SACC sought to bring these claims on behalf of a Store Class, "All business entities in the Unites States that received a demand letter substantially similar to the letter received by the class representatives" with three subclasses: (1) Sued Stores; (2) Threatened Stores; and (3) a Payment Class. (SACC ¶¶ 77-81.)  These subclasses encompassed three different outcomes that allegedly resulted for stores as a result of Outlaw's demand letters: (1) sued stores that did not settle and were sued (SACC ¶¶ 33, 77, 89); (2) threatened stores that did not settle and were not sued (SACC ¶¶ 34, 78, 89); and (3) the payment class that paid a settlement (SACC ¶¶ 4, 22, 35, 69, 71, 89, 97-99).[2]

## B.    Discovery Requests as Issue

The Court issued an Order on June 1, 2020 compelling Tauler Smith to respond to the discovery requests at issue in this Motion—the Stores' requests for production of

---

[2] On August 17, 2020, the Stores filed a Notice of Conditional Withdrawal of their Motion to Certify the Proposed "Sued Stores" and "Threatened Stores" Classes related to their Motion for Class Certification (ECF 179) based on their attempted settlement with Outlaw.  (ECF 274.)

documents ("RFPs") 1, 2, 7, 9, 10 and interrogatories ("ROGs") 1, 3, and 7. (ECF 215.[3]) As detailed in the Court's Order, RFPs 1, 2, 7, 9, and 10 sought copies of the demand letters, settlement agreements, documents showing how much money Tauler Smith took in through settlements, Tauler Smith's communications with targeted stores or their counsel, and communications between Tauler Smith and other Outlaw lawyers related to the scheme. (ECF 215 at 6-10.)  Interrogatories 1, 3, and 7 sought the identities of demand letter recipients, the identities of settling stores, and the amount of money received from the class members.  (*Id.*)  The Court addressed Tauler Smith's specific arguments and incorporated most of the Court's prior analysis on relevancy, proportionality, and proper scope[4] in ruling on identical discovery requests to Outlaw. (*Id.*)

The Order required Tauler Smith to provide the Stores with responses to RFPs 7 and 9 (*id.* at 7-8) and ROGs 1, 3, and 7 (*id.* at 8-9).  As to RFPs 1, 2, and 10, Tauler Smith had claimed that it had produced all responsive documents.  The Court's decision explained that that Court could not order Tauler Smith to produce something it claimed it did not have, however, the Court did order it to provide the Stores with a declaration indicating that it did not have any additional responsive documents than those already produced.  (*Id.* at 9-10.)  The Order required Tauler Smith to provide these responses by

---

[3] The Court analyzed the relevancy, proportionality, and scope of these discovery requests in detail in a prior Order on the same discovery requests to Outlaw (ECF 177) and incorporated much that analysis in the June 1, 2020 Order as to Tauler Smith's responses, (ECF 215 at 6-7), but addressed all of Tauler Smith's specific arguments. (ECF 215.)

[4] The Court had previously found some interrogatories were duplicative of document requests.  However, based on the additional information provided by the parties at the time of ruling on Tauler Smith's responses, the Court found the interrogatories were not duplicative and must be responded to.  (ECF 215 at 9 n.2.)

June 10, 2020 and required any dispute arising from the responses or lack thereof be raised no later than June 24, 2020.[5]  (*Id.* at 10.)

## III.   DISCUSSION

There are three primary issues before the Court: (1) timeliness of the Stores' Motion as to Tauler Smith's discovery responses;[6] (2) whether the Court should order Tauler Smith to provide further responses to those discovery requests; and (3) whether the Court should impose sanctions or order Tauler Smith to pay the expenses of the Motion and Mr. Tauler's deposition for Tauler Smith's allegedly false responses to these discovery requests and Tauler Smith's deposition conduct.  Because timeliness is only at issue as to the Store's challenges to Tauler Smith's discovery responses, the Court provides an overview of the timeliness issue and then briefly addresses timeliness as to each group of discovery requests in conjunction with addressing whether further responses are required.  The Court then addresses whether sanctions are appropriate as to the discovery responses and Tauler Smith's deposition conduct.

### A.   Requests for Production of Documents and Interrogatories

#### 1.   Legal Standards

"A party may serve on any other party a request within the scope of Rule 26(b) to produce any designated documents or electronically stored information."  Rule 34(a)(1)(A).  The request must describe the document sought "with reasonable particularity" and any "objection must state whether any responsive materials are being withheld on the basis of that objection."  Rule 34(b)(2).

---

[5] As explained below, the Court's Chambers Rules require discovery disputes be raised within 30 days of the dispute arising.  By setting a specific deadline for disputes regarding Tauler Smith's responses to be raised, the Court was shortening the 30-day time to raise a dispute regarding these responses.

[6] There is no issue with the timeliness of the Stores seeking sanctions for Mr. Tauler's deposition conduct.

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Rule 33(b)(3). "The grounds for objecting to an interrogatory must be stated with specificity." Rule 33(b)(4). "If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records . . . , and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by" producing or providing an opportunity for the moving party to examine records. Rule 33(d).

If a party fails to produce documents under Rule 34 or fails to answer an interrogatory under Rule 33, the propounding party may move to compel production of documents or an answer. Rule 37(a)(3)(B)(iii) (interrogatories) and (iv) (requests for production of documents).

As explained above, the Court has already addressed the relevancy proportionality, and proper scope of these discovery requests under Rule 26(b) in a prior Order. The parties have not briefed and the Court does not revisit those issues in this Order. The Court has not addressed Federal Rule of Civil Procedure 26(e)(1) in those prior orders. It requires:

> a party . . . who has responded to an interrogatory, request for production, or request for admission -- must supplement or correct its . . . response: (A) in a timely manner if the party learns that in some material respect the . . . response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process for in writing.

Fed. R. Civ. P. 26(e)(1).

## 2. Timeliness

When the Stores and Tauler Smith raised these disputes, among numerous others through letter briefs, Tauler Smith argued any challenges regarding Tauler Smith's responses to these discovery requests were untimely. (ECF 266 ¶ 2 (summarizing

parties' arguments in letter briefs).)  Accordingly, in addition to allowing briefing regarding Tauler Smith's discovery responses, Mr. Tauler's deposition conduct, and whether sanctions were proper for either, the Court's briefing Order required the Stores to address the timeliness of the Stores' challenges regarding Tauler Smith's discovery responses.  (*Id.*)  The Stores and Tauler Smith have both addressed timeliness in their briefing. (ECF 269 at 8-10; ECF 273 at 8; ECF 275 at 3-4.)

The Stores argue they did not have a sufficient basis to challenge Tauler Smith's discovery responses as false until Mr. Tauler was deposed on June 29, 2020 and when the Stores received additional documents from Outlaw on July 7, 2020.  (ECF 269 at 8-10; ECF 269-1 ¶¶ 11-21.)  The Stores argue that by raising these disputes within 30 days of the June 29, 2020 deposition or within 30 days of when documents were disclosed to the Stores by Outlaw on July 7, 2020, they have complied with the Court's 30-day Rule.

Tauler Smith generally argues the Stores were required to raise any dispute regarding its June 10, 2020 supplemental responses by July 10, 2020 and that "as of July 7, if not earlier, the Stores were in possession of all the evidence relied upon in the motion."  (ECF 272 at 11.)  As discussed further below, Tauler Smith also identifies specific documents the Stores rely on that Tauler Smith claims the Stores had possession of before Tauler Smith's deposition.  (*Id.* at 9-11.)

The Court's Chambers Rules require discovery disputes be raised within 30 days of the dispute arising.  (Judge Skomal's Chambers Rules, Section IV.C.)  Generally, "[f]or written discovery, the event giving rise to the discovery dispute is service of the initial response or the time for such service if no response is given."  (*Id.*)

The Stores argue that Tauler Smith has provided deficient responses to RFPs 1, 2, 7, 9, 10 and ROGs 1, 3, and 7 and should be sanctioned and required to provide further responses.[7]  (ECF 269 at 7-8, 10-17.)  Whether these challenges are timely turns on when

---

[7] As note above, Tauler Smith has, as every party does, a continuing obligation to supplement discovery responses when a discovery response is incorrect or incomplete.

the Stores had a basis to challenge the accuracy or sufficiency of Tauler Smith's responses.  As explained below as to each group of discovery requests, the Stores' challenges are largely based on information that was not available to them when they received the supplemental responses on June 10, 2020 or even before the June 24, 2020 deadline to challenge the responses.  Rather, the Stores' challenges are based primarily on information obtained during Tauler Smith's deposition on June 29, 2020 or documents the Stores received from Outlaw on July 7, 2020.[8]  Because the Stores raised these issues on July 29, 2020, most of them were raised within 30 days of the Stores obtaining information sufficient to challenge the responses.  As to the others, the Stores have shown good cause for the delay.

### 3.   Discovery Request

The Court groups the analysis of the discovery requests based on the similarity of the discovery sought and the parties' arguments.

#### a)   RFP 7, ROGs 3, and 7

##### (1)   Parties' Positions

As to RFP 7 (documents showing how much money Tauler Smith took in through settlements from stores), ROG 3 (identities of settling stores), and ROG 7 (total amount of money Tauler Smith received from settling stores) the Stores argue that Tauler Smith produced a document providing only a partial list of settling stores with an inaccurate total amount received from settlements.  (ECF 269 at 10-11 (citing Ex. Q to Poe Decl.)

---

Fed. R. Civ. P. 26(e)(1).  In this respect, even if this dispute were untimely as to Tauler Smith's compliance with the Court's Order compelling further responses, it would still be obligated to supplement its responses to make them complete and accurate.

[8] Tauler Smith does not seem to dispute this, arguing that by both July 7, 2020 and July 10, 2020 the Stores had the information needed to raise these challenges.  (ECF 273 at 11-12 ("[T]he Stores had all the knowledge they needed to bring the issue before July 10") 12 ("[A]ll the documentary proof relied on by the Stores was in their possession by July 9 or earlier").)

[ECF 269-18) (RFP 7), 15-16 (citing Ex. Q) (ROG 3 & 7).[9])  This single document listed only 107 stores and total payments of $276,675.  (*Id.* at 10 and 15 (citing Ex. I to Poe Decl. [ECF 269-10]).)  However, on July 7, 2020, Outlaw produced to the Stores invoices it received from Tauler Smith.  (*Id.* at 10-11 (citing Exs. J, K, L, and M [ECF 268-3-6] to Poe Decl.) (RFP 7), 15-16 (citing Exs. J, K, L, and M) (ROG 3 & 7).)  The invoices were prepared and issued by Tauler Smith.  (*Id.*)  They show Tauler Smith received settlements from hundreds of additional stores not identified in the only responsive document produced by Tauler Smith and show total deposits of $ 1,183,886.13 rather than the $276,675 disclosed in Tauler Smith's response to these requests.  (*Id.* at 11.)  The Stores also dispute Mr. Tauler's claim at his deposition that Tauler Smith was only required produce responses as to California stores.  (ECF 269 at 11.)

As to RFP 7 and ROGs 3 and 7, Tauler Smith argues that sanctions are not warranted because the Stores have not established that Mr. Tauler's June 10, 2020 declaration stating that all responsive documents had been produced was false when signed.  (ECF 273 at 13 (RFP 7), 15-16 (ROGs 3 and 7).)  In support, Tauler Smith argues that because the invoices the Stores rely on, (Exs. J-M), were produced to the Stores by Outlaw on July 7, 2020, after Mr. Tauler's declaration was provided with the June 10, 2020 responses, they do not establish Mr. Tauler's declaration was false when provided on June 10, 2020.  (*Id.*)  As to RFP 7, Tauler Smith also points to Mr. Tauler's testimony that Mr. Valerio, its CFO,[10] eliminated Tauler Smith's access to its QuickBooks account.  (*Id.* (citing Tauler Dep. 122:19-123:13).)  Tauler Smith also argues that it was only required to provide responsive documents as to California stores based on

---

[9] Tauler Smith relied on Rule 33(d) to produce a document rather than an answer to the interrogatory.

[10] The Stores refer to Mr. Valerio as a bookkeeper.  Tauler Smith's Opposition refers to him as CFO.  Although the Court recognizes the parties' persuasive intentions in their differing descriptors, in referring to him as CFO the Court is not reaching any conclusions about his actual job title, responsibilities, or level of access to records.

9

a January 28, 2020 Order denying the Stores Motion to Amend to add additional defendants to its counterclaims.  (*Id.* at 16.)

### (2)   Analysis

The Court first briefly addresses the timeliness of the Stores' challenge to Tauler Smith's responses to these discovery responses and then addresses whether further responses are required.  The issue of sanctions is address separately below. (III.B.)

### (a)   Timeliness

The Court finds this challenge timely.  As discussed below, the Stores received Exhibit Q in response to these discovery requests, and although the Stores certainly might have suspected it was incomplete, they did not have a solid basis to challenge the response on that basis until they received the Tauler Smith invoices (Exs. J-M) showing additional settlements, settling stores, and additional money received.  The Stores do rely in part on Exhibit T as to ROGs 3 and 7, a document Tauler Smith asserts the Stores have had since May 4, 2020, however, as discussed below, the Stores' challenge as to these discovery requests is based primarily on the invoices that were not provided to the Stores until July 7, 2020.  Because the Stores raised these issues within 30 days of obtaining the information that forms the basis for their challenge, these challenges have been timely raised.

### (b)   Further Responses to RFP 7 and ROGs 3 and 7 are Required

The Court finds Tauler Smith's responses to RFP 7 and ROGs 3 and 7 are deficient and Tauler Smith must provide supplemental responses.  As noted above, these discovery requests seek documents showing how much money Tauler Smith took in through settlements from stores (RFP 7), identities of settling stores (ROG 3), and the total amount of money Tauler Smith received from settling stores (ROG 7).  The Stores have very explicitly asserted that Tauler Smith's response to these requests, Exhibit Q, does not include stores and amounts that are identified on the invoices from Tauler Smith to Outlaw.  (ECF 269 at 10-11, 15-16 (relying on Exs. J-M).)  Tauler Smith has not disputed

10

this and the Court is not going to create an argument for it.  Other than its argument regarding exclusion of stores outside California, addressed below, Tauler Smith has essentially conceded the response provided in Exhibit Q is deficient at least in that it does not include stores and payments Tauler Smith's own invoices to Outlaw reflect.  (Exs. J-M to Poe Decl.)

Tauler Smith's claim that it was only required to respond to these requests as to California stores is wrong.  Tauler Smith relies on a single sentence in a January 28, 2020 Order that it miscites[11] without acknowledging the context of the statement.  (ECF 273 at 16 ("The instant RICO and recission counterclaims brought by the Stores arise from the Counterclaim Defendants' conspiracy to extort them in California, not Michigan, during a period beginning in December 2017.  Because Boss's involvement began after the Enterprise's conduct in California, the Court may award complete relief to the currently-joined Stores, if they prevail, without joining Boss.") (quoting ECF 170 at 7-8).)  The assertion that this statement limited the scope of *discovery* in this case to California stores is meritless.  First, the section cited in no respect addresses, references, or even alludes to discovery or the scope of it.  Second, the decision was issued on January 28, 2020.  (ECF 170 at 7-8.)  To the extent that Tauler Smith believed that the discovery requests at issue were overbroad in seeking discovery regarding stores throughout the United States, not just California, based on this language, Tauler Smith had to raise that issue with the Court.  It could not unilaterally limit its discovery responses only to California when they clearly sought more, particularly without ever telling the other party it limited it in that respect.  Third, Tauler Smith fails to acknowledge the context of this statement.  The Order was addressing a very specific legal issue, whether a Michigan-based law firm was a "required party" to this litigation under Federal Rule of Civil Procedure 19.  (*Id.*)  It is

---

[11] Tauler Smith incorrectly cites ECF 117.

not even limiting the scope of the claims in this case;[12] this section is explaining one of a number of reasons why a new party is not being added. (*Id.*)  A footnote to the section cited even reiterated that the decision was only finding the defendants sufficiently differentiated that the new party did not need to be joined to this case. (*Id.* n.3.)  The discovery requests were not and are not limited to California stores.

Tauler Smith's only other argument regarding these discovery requests is specifically addressed to whether sanctions should be imposed.  The Court addresses sanction collectively below, but notes here that this argument would not alter the Court's conclusion that further responses are required.  Tauler Smith argues sanctions should not be imposed because Mr. Tauler's declaration was not false when made.  Tauler Smith asserts that the June 10, 2020 response was not false at the time because Outlaw did not produce the invoices demonstrating the June 10, 2020 response was deficient until July 7, 2020.  The Court would generally agree with the Stores that the idea that a declaration only becomes false when the evidence of the falsity is *produced* does not make sense.  These are Tauler Smith invoices that predate the June 10, 2020 response by more than a year. (Ex. J (dated 4/2/2018), Ex. K (dated 8/1/2018), Ex. L (dated 10/1/2018), Ex. M (dated 12/2/2018).)  It is reasonable to conclude Tauler Smith had the knowledge and information contained in its own invoices that it created and that information should have been disclosed in the June 10, 2020 responses.

However, here, Tauler Smith's has also alleged that Mr. Valerio's conduct upon departure impeded its access to its out accounting and financial records.  It appears Tauler Smith is arguing that it did not have access to these records to disclose them at the time of the June 10, 2020 response because it lost access to its QuickBooks account when

---

[12] It would not be unreasonable for a party to seek to limit discovery regarding a claim if an initial pleading were limited in some significant respect.  However, here, not only did Tauler Smith fail to take the requisite step to challenge the scope of the discovery requested on such a basis, the underlying claims were not limited.

1   Mr. Valerio left in February 2019.  Even if this is true, it is still apparent that Tauler

2   Smith's June 10, 2020 response is deficient and a supplemental response is required.

3   This is mandated not only by its obligation to comply with this Court's June 1, 2020

4   Order to provide responses to these discovery requests, but also by Rule 26(e)(1).  When

5   "a party learns that a response is incomplete or incorrect," it "must supplement or correct

6   its . . . response."  Rule 26(e)(1).[13]  And Rule 26(e)(1)'s allowance that no supplement or

7   correction is required only "if the additional or corrective information has not otherwise

8   been made known to the other parties during the discovery process for in writing" would

9   not apply here.  Although the Stores now have the information provided by Outlaw in

10  these invoices, they only cover a portion of the time frame at issue in this case.  Even if

11  they did cover the entire time, as discussed further below, the record before the Court

12  suggests Tauler Smith's efforts to locate and produce responsive documents were

13  deficient and as to ROGs 3 and 7, the Stores are entitled to a response from Tauler Smith.

14      Accordingly, the Court finds Tauler Smith must provide further responses to RFP 7

15  and ROGs 3 and 7.  The Court addresses the specifics of what is required to provide those

16  responses below.  (III.A.4.)

17              **b)   RFP 9**

18              **(1)   Parties' Positions**

19      The Stores argue Tauler Smith produced no documents in response to RFP 9

20  (communications between Tauler Smith and the targeted stores), but the Stores are now

21  in possession of documents showing Tauler Smith actually had responsive documents

22  that it did not produce.  (ECF 269 at 11.)  To establish the production was deficient, the

23  Stores rely on a May 1, 2019 email from Mr. Tauler (received by the Stores from Outlaw

---

[13] As noted above, Tauler Smith does not dispute the June 10, 2020 response is deficient or argue it should not be required to provide a supplemental response to RFP 7 or ROGs 3 and 7 other than its timeliness argument and its claim Mr. Tauler's declaration was not false at the time if was provided.

on June 30, 2020) that identifies a database with more information, including "attorney notes regarding the prior responses, settlement offers, etc." (*Id.* (quoting Ex. S [ECF 269-20][14]).)  The Stores point to Mr. Tauler's deposition testimony indicating that accounting records were taken or rendered inaccessible by Mr. Valerio in February 2019 to establish Mr. Tauler had access to this database after Mr. Valerio left, on May 1, 2019. (*Id.*)  Additionally, the Stores rely on emails between Mr. Tauler and counsel for targeted stores (provided by the targets on June 17, 2020) that have not been produced by Tauler Smith.  (*Id.* (citing Exs. N, O [269-15-16] to Poe Decl.); ECF 269-1 ¶ 13.)

Tauler Smith does not dispute that Mr. Tauler stated in the May 1, 2019 email that he could provide access to the database.  (ECF 273 at 13.)  However, Tauler Smith explains that "Mr. Tauler believed he had access to the database in May 1, 2019, not that he had access to the database at the time of the [June 10, 2020] declaration."  (ECF 273 at 13.)  Tauler Smith seems to be arguing, without explicitly stating it, that he did not actually have access in May or June and here again, Tauler Smith seems to carefully suggest that the conduct of Mr. Valerio impeded Tauler Smith's access to this database. (*Id.*)  Tauler Smith also argues that it ceased using the database in the fall of 2018 when new counsel took over for Outlaw, although this appears to be intended to convey Mr. Tauler would not necessarily have figured out he lacked access to it, not that he lost access because he was no longer Outlaw's counsel.  (*Id.* at 13-14.)  And finally, Tauler Smith argues that the email did not explicitly state that it contained "communications," but rather attorney notes about communications.  (*Id.* at 14.)

///

///

---

[14] Mr. Poe's declaration in support of this Motion indicates that it is a June 1, 2019 email, (ECF 269-1 ¶ 20 (describing Ex. S), however, the Stores' Motion and the document itself reflect the email from Mr. Tauler was sent on May 1, 2019.  (ECF 269 at 11; ECF 269-20.)

1

**(2)    Analysis**

2

**(a)    Timeliness**

3    The timeliness of the Stores' challenge as to RFP 9 is a closer call than the

4    discovery requests discussed above because one of the primary bases for challenging the

5    response are emails the Stores had on June 17, 2020, more than 30 days before this

6    challenge was raised with the Court.  The Stores obtained Exhibits N and O, emails with

7    Tauler Smith from targeted stores, on June 17, 2020, but elected to delay any challenge

8    based on them until after questioning Mr. Tauler about the emails at his deposition and in

9    conjunction with the other issues raised in this Motion.  That deposition, initially

10    scheduled for June 18, 2020 was postponed, over the Stores objection, to June 29, 2020.

11    The Stores only became aware of these emails a day before Mr. Tauler was set to

12    be deposed, and that deposition was delayed by Court order.  Additionally, as discussed

13    throughout this Order, numerous other information came to light at a later date, including

14    the other document the Stores rely on to challenge Tauler Smith's response to RFP 9, the

15    May 1, 2019 email that was only disclosed to the Stores on June 30, 2020.  Although the

16    Stores should have contacted the Court by July 17, 2020 to obtain tolling of the dispute to

17    timely raise this issue along with the later-arising issues, the Court finds good cause for

18    the delay under these unique circumstances.

19

**(b)    Further Response to RFP 9 is Required**

20    The Court finds a further response to RFP 9 is required.  The Court is persuaded

21    that the lack of emails produced by Tauler Smith in combination with the two emails

22    obtained from targeted stores from Mr. Tauler that were not produced by Tauler Smith

23    reflect that Tauler Smith has not conducted a sufficient search for documents responsive

24    to RFP 9.  First, Tauler Smith has not explained what if any efforts it made to locate

25    responsive documents.  There is no explanation of searches through emails systems or

26    other electronic systems that house communications with stores.  Even the allegations as

27    to Mr. Valerio in this instance are so vague it is not clear Tauler Smith is indicating he is

28    the reason these emails from Mr. Tauler were not located.  If not, then there is no

15

explanation for them not being located.  This makes the lack of explanation of what searches were actually performed all the more significant.

The Court is less persuaded that the May 1, 2019 email referencing the availability of notes within a database means the database actually contains communications between Tauler Smith and targeted stores that would be responsive to this RFP.  However, given the lack of any explanation of what Tauler Smith did and did not search to comply with this Court's order to produce responsive documents and the absence of any other explanation of what *is* contained in the database, the Court finds Tauler Smith must also search it for responsive documents.

Tauler Smith must conduct a further search and production as specified below. (III.A.4.)

### c)     RFPs 1 and 2 and ROG 1
#### (1)     Parties' Positions

The Stores argue the deficiencies in Tauler Smith responses as to RFP 1 (demand letters), RFP 2 (settlement agreements), and ROG 1 (all stores sent a demand letter) are demonstrated by Mr. Tauler's testimony at his deposition.  The primary issue is that the hard drive provided by Tauler Smith contained no demand letters or settlement agreements; it only contained 332,441 tiff photographs of stores from around the country, with a summary page identifying the stores.  (ECF 269 at 12.)  However, the Stores argue the testimony provided by Mr. Tauler indicates that Tauler Smith did have settlement agreements and demand letters.  Mr. Tauler testified that all settlement agreements and demand letters Tauler Smith had were on the drive, although he also testified he never reviewed the contents of the drive before providing it. (*Id.* (citing Ex. A to Poe Decl. [ECF 269-2 (redacted); ECF 268-1 (unredacted)] ("Tauler Dep.") 48:4-10 (demand letters), 49:11-14 (settlement agreements).)  The Stores also note that it appears Tauler Smith's counsel also did not review the contents of the drive either.  For additional support of the deficiencies in the production, the Stores explain that Mr. Tauler testified that an employee regularly printed the settlement agreements for a paper file that was

16

eventually provide to its client, Outlaw. (*Id.* at 13 (citing Tauler Dep. 133:23-134:5).)

The Stores argue this provides further evidence that Tauler Smith has settlement agreements it has not produced because the settlement agreements must have existed in an electronic format to be printed from. (*Id.*) The Stores also point to Mr. Tauler's testimony attempting to again blame Mr. Valerio for failing to collect everything relevant to this case on to the drive in late January 2019. (*Id.* (citing Tauler Dep. 48:1-4).) The Stores argue this attempt to blame him is "doubly perjurious" because the drive shows the files were loaded in July 2019, five months after Mr. Valerio left Tauler Smith based on Tauler's own testimony. (*Id.*) The Stores also point to a June 2019 email from Mr. Tauler claiming to have "all the information you need like who we have already settled with," months after Mr. Valerio left, suggesting there are documents that were not produced. (*Id.* (quoting Ex. R [ECF 269-19] to Poe Decl.).)

In response, Tauler Smith argues that the Stores have failed to establish with competent evidence or to offer any chain of custody information that would establish the contents of the drive were created in July 2019 (after Mr. Valerio left) rather than in January 2019 when Mr. Tauler testified he instructed Mr. Valerio to load all the documents onto the drive. (ECF 273 at 14-15.) Additionally, Tauler Smith argues it is unable to dispute these unsupported assertions with its own evidence because the Stores have refused to provide a forensic image of the drive or return the drive. (*Id.*) Tauler Smith also notes that Mr. Valerio's declaration, provided in support of the Stores' Motion, does not deny Mr. Tauler's testimony that Mr. Valerio created the drive before he left Tauler Smith. (*Id.* at 14.) Tauler Smith also notes that while Mr. Valerio identifies numerous types of software Tauler Smith used to maintain documents related to Outlaw in his declaration, he does not specifically state that those sources contain the specific documents at issue here.

///

///

///

17

### (2)   Analysis

#### (a)   Timeliness

The timelines of this challenge depends on when the Stores should have known the production on the drive was deficient.  Here, there was no dispute that the documents at issue, settlement agreements and demand letters, existed, although the number of them is unknown.  Receiving the drive without *any* might have alerted the Stores that the production was deficient.  However, Tauler Smith had previously claimed that it had produced all settlement agreements and demand letters to *Outlaw* and it was not clear that Tauler Smith kept any of the documents produced to Outlaw.  (ECF 215 at 9 (Finding Tauler Smith's production of documents responsive to the *Stores'* requests to *Outlaw* deficient for this reason and requiring Tauler Smith to respond to the *Stores*).)  Without questioning Mr. Tauler at his deposition, it was not unreasonable to think that Tauler Smith had no additional documents than those produced to Outlaw.  However, once Mr. Tauler testified that he instructed Mr. Valerio to put those documents on the drive that was produced, it became clear that the production was deficient since none of those documents were on the drive.  Given the deposition occurred on June 29, 2020, the Stores timely raised this issue within thirty days of obtaining that information.

#### (b)   Further Responses are Required

The Court finds further responses to RFP 1 and 2 and ROG 1 are required.  As noted above, the absence of any settlement agreements or demand letters alone suggests these responses are incomplete.  This point seems obvious from the production itself, no settlement agreements or demand letters, given there is no dispute that Tauler Smith was sending demand letters and settling with stores on behalf of Outlaw.  As discussed above, this was less obvious to the Stores because of Tauler Smith's claims of having passed off everything it had to Outlaw, potentially leaving Tauler Smith without hard copies of the documents to produce to the Stores.

However, the deficiency of it is further reinforced by Mr. Tauler's testimony that an employee regularly printed out these documents for the hard copy file.  Tauler Smith

18

does not dispute this or otherwise explain how these documents were kept or not kept electronically.  It is not a stretch, particularly when Tauler Smith does not address it, that those documents exist in an electronic format, possibly in one of the numerous programs referenced in Mr. Valerio's declaration.  Again, Tauler Smith does not address when or if it ever searched for this information or even where responsive documents would or would not be stored.  While acknowledging Mr. Valerio's declaration identifies numerous programs Tauler Smith used to maintain documents related to Outlaw, Tauler Smith does not dispute that they do use those programs or indicate that they were or were not searched for responsive documents.  Additionally, Mr. Tauler's vague testimony that he told Mr. Valerio to collect everything relevant to this case on to a drive in January 2019 that he did not review before producing it in June 2020 is also questionable and insufficient.  This becomes even more questionable in the face of Mr. Valerio's declaration submitted in support of the Stores' Reply brief stating that he has no recollection of being asked to prepare documents responsive to these requests in January 2019.  (Reply Decl. of Joseph Valerio [ECF 275-5] ¶ 2.)

Additionally, again, Tauler Smith has failed to indicate what if anything it did to search for responsive documents or provide an answer to this interrogatory.  In their Motion, the Stores have accused Mr. Tauler of lying in his declaration provided in response to these requests by saying Tauler Smith has produced all responsive documents.  In response, Tauler Smith does not point to anything it did to search for and provide these documents other than the vague and contradicted assertion that Mr. Tauler told Mr. Valerio to collect the documents on the drive and then produced the drive.

Tauler Smith must conduct a further search and production as explained below. (III.A.4.)

### d)   RFP 10

#### (1)   Parties' Positions

The Stores argue Tauler Smith has not complied with RFP 10 (communications with Outlaw's other counsel concerning the scheme) because it has not produced Mr.

Tauler's emails with other attorneys concerning the alleged scheme.  As a basis for this assertion, the Stores point to an email between Mr. Tauler and an Arizona attorney that helped pursue cases that have not been produced by Tauler Smith.  (ECF 269 at 13 (citing Ex. P).)  The Stores also note that it is simply unbelievable that Mr. Tauler had no email exchanges with the counsel that assisted with the alleged scheme.  (*Id.* at 13-14.)  And, again, the Stores point to Mr. Tauler's testimony that Mr. Valerio took all these records, characterizing it as "preposterous" that a contracted "bookkeeper" could "pull off such a heist" and noting the oddity that this only came up at Mr. Tauler's deposition, a year and half after the theft supposedly happened.  (*Id.* at 14.)

Tauler Smith's only response as to RFP 10 is to state that the email relied on by the Stores, Exhibit P, is not responsive to RFP 10 because it does not relate to any issues in this case.  (ECF 275 at 15.)  There is no further explanation and Tauler Smith again does not explain what if any searches it did to comply with this discovery request. (*Id.*)

### (2)   Analysis

### (a)   Timeliness

The Court agrees it is highly unlikely that Tauler Smith acted on behalf of Outlaw by sending demand letters and entering into settlement agreements using other attorneys and never had a single email communication with any of them.  However, the Court is mindful that the Stores were hesitant to come to the Court with that challenge before deposing Mr. Tauler and confirming Tauler Smith did in fact have no records of any communications with other attorneys regarding the scheme.  Again, at the time the non-production was received, it was accompanied by a declaration that the Court ordered Tauler Smith to provide.  The declaration from Mr. Tauler, an attorney, attested that everything responsive to these requests that Tauler Smith had was produced. In the face of that declaration, the Stores would have had little to go on in raising a challenge until they questioned Mr. Tauler at his deposition about emails.  The Court finds the Stores timely raised this dispute.

///

**(b)     Further Response to RFP 10 is Required**

As discussed above as to other requests, the critical failure here is Tauler Smith's lack of any explanation if, how, and what it searched for responsive documents.  Again, faced with the accusation that Mr. Tauler lied in his declaration indicating there are no documents responsive to this request Tauler Smith does not indicate otherwise in its Opposition.  In fact, Tauler Smith does not address it at all other than to dispute the exhibit the Stores rely on falls within the scope of the request.  And even this assertion is lacking because Tauler Smith provides no explanation why it is not within the scope of the RFP.[15]

Here, not only does Tauler Smith fail to explain how and what it searched to conclude it had no responsive documents, it does not attempt to blame its lack of response to this RFP on Mr. Valerio as it does with all the other requests or provide any other explanation how it had no record of communications with other attorneys that it worked with to carry out the activities alleged in the SACC.  There is simply no explanation at all, not even an unsupported assertion that it has complied.  Given Tauler Smith does not seem to dispute that it failed to search for and produce responsive documents, a further response is required.

**4.     Order for Further Responses**

The Stores' request for another order compelling Tauler Smith to produce documents responsive to the above RFPs and ROGs is **GRANTED**.  To be clear, the Court is not changing its prior decision compelling Tauler Smith to respond to these discovery requests.[16]   The Court is largely ordering Tauler Smith to do what it should

---

[15] Both parties' arguments on this point are deficient.  Neither party explains how or why this exhibit is or is not with the scope of RFP.

[16] If Tauler Smith had arguments to make regarding the scope of any of these discovery requests, it should have raised those issues many months ago when the Stores moved to compel further responses to them and the Court ordered further responses.  The Court is not revisiting those issues and any challenges in that vein would certainly be untimely.

21

have already done to provide documents responsive to these RFPs and answers to the ROGs.  If it has already conducted a diligent search as it should have, its only task will be to detail those efforts, as explained below, by declaration.  However, based on Tauler Smith's briefing here, the Court doubts a diligent search for responses to any of these requests was actually conducted.  Based on the limited information provided, at best the only thing Tauler Smith did to respond to these requests was tell an employee to put every document related to Outlaw on a drive, not even in response to these specific requests, and produce that drive without reviewing it.  Even the truth of that assertion is in doubt based on Mr. Valerio's declaration indicating he was never asked to do so.

Given the lack of explanation in this briefing and apparent lack of diligence in searching for, collecting, and providing responses up to this point, the Court orders Tauler Smith to search again.  However, in this order the Court is requiring Tauler Smith to detail by declaration how and what it has searched, including **all** electronic sources that **may** contain Outlaw related documents.  These searches must include the numerous programs Mr. Valerio's declaration indicates were used to store Outlaw documents in addition to all email accounts that may have been used to communicate with targeted stores or other attorneys about the alleged scheme.  Specifically, as to RFP 7 and ROGs 3 and 7, Tauler Smith must take steps to access its financial and accounting records or any other electronic record, database, or system that may contain any information concerning Outlaw settlements, the stores that settled, and any amounts received as settlements.  Similarly, as to RFP 9, if Tauler Smith has access to the database discussed above, (III.A.3.b), it must perform a search of that database for any communications responsive to RFP 9.

---

As noted above, the proper scope of the RFPs and ROGs was addressed in the Court June 1, 2020 Order and the Court does not alter that here.  Tauler Smith's searches must be based on locating responsive documents and providing answers to interrogatories in compliance with that Order. The Court will not be revisiting those issues or any others that could have been raised at the time that Order was issued or this briefing was filed.

To the extent Tauler Smith claims that it cannot access any of these programs or accounts, it must provide the Stores a declaration explaining what efforts were made to access the program or account and what documents or information might be located within the inaccessible source. This additional specificity is required because, as discussed above, Tauler Smith has not explained what if anything it has done to search for responses to these discovery requests and only made vague accusations that Mr. Valerio has impeded its access to its own records without any explanation what if anything it did to obtain access or respond.

Additionally, as to the interrogatories, **answers** must be given. Tauler Smith may not rely on Rule 33(d) in lieu of a written answer to these interrogatories. Rule 33(d) is only appropriate when "the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information" and only "if the burden of deriving or ascertaining the answer will be substantially the same for either party." Rule 33(d). Based on the record before the Court and Tauler Smith's prior approach to production, providing a drive that no one may have ever reviewed prior to production, the Court finds it unlikely that the Stores could rely on any document production to determine an answer to an interrogatory. Additionally, given Tauler Smith's greater familiarity with its recording keeping combined with the possibility that some records may have been rendered inaccessible, the burden on it to derive an answer would be less than for the Stores.

Responsive documents and answers to the interrogatories as well as the declaration mandated above attesting to the searches done and any inaccessible sources must be provided on or before January 29, 2021.

### B.    Payment of Expenses and Sanctions

The Stores seeks sanctions against Mr. Tauler both in his personal capacity and as the Rule 30(b)(6) designee for Tauler Smith for his conduct during his deposition. The Stores also seek sanctions against Tauler Smith and its counsel jointly under Federal Rule

of Civil Procedure 37(a) and (b) and 26(g) for Tauler Smith's alleged perjury in response to the discovery requests discussed above.

### 1.    Legal Standards

#### a)    Rule 30

"The court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent."  Rule 30(d)(2).  Rule 30(d)(2) sanctions do not require a finding of bad faith. *Robinson v. Chefs' Warehouse*, Case No. 3:15-cv-5421 RS(KAW), 2017 WL 1064981, at *2 (N.D. Cal. Mar. 21, 2017); *see also BNSF Ry. Co. v. San Joaquin Valley Rr. Co.*, 2009 WL 3872043, at *3 (E.D. Cal. Nov. 17, 2009). Sanctions under Rule 30(d)(2) are discretionary. *See Batts v. Cnty. of Santa Clara*, 2010 WL 545847, at *2 (N.D. Cal. Feb. 11, 2010).  Rule 30(d)(3) provides for an award of expenses under Rule 37(a)(5) related to the termination of a deposition.  Rule 37(a)(5)(C).

#### b)    Rule 37

Rule 37(a)(5) addresses payment of expenses.  In addition to addressing expenses for a motion under Rule 30(d)(3) related to termination of a deposition, noted above, it also addresses payment of expenses when, as here, a motion to compel further responses to discovery requests is required.  Rule 37(a)(5)(A) (motion of party moving to compel further responses granted); (a)(5)(B) (motion denied with expenses to the party opposing further responses); (a)(5)(C) (granting in part and denying in part).  If a motion is granted,

> the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

1
2

(ii) the opposing party's nondisclosure, response, or objection
was substantially justified; or
(iii) other circumstances make an award of expenses unjust.

3

4   Rule 37(a)(5)(A).

5        A party's conduct is substantially justified "if reasonable people could differ as to

6   whether the party requested must comply." *Reygo Pac. Corp. v. Johnston Pump Co.*, 680

7   F.2d 647, 649 (9th Cir. 1982), *overruled on other grounds as stated by Molski v.*

8   *Evergreen Dynasty Corp.*, 500 F.3d 1047, 1055 n.2 (9th Cir. 2007); *see also Pierce v*

9   *Underwood*, 487 U.S. 552, 565 (1988) (Interpreting substantially justified to mean "there

10  is a 'genuine dispute' or 'if reasonable people could differ as to the appropriateness of the

11  contested action.'"); *see also Liew v. Breen*, 640 F.2d 1046, 1050 (9th Cir. 1981)

12  (Addressing whether conduct was substantially justified under Rule 37(b) and finding "a

13  good faith dispute concerning a discovery question might, in the proper case, constitute

14  'substantial justification.'")

15       Under Rule 37(b)(2), [i]f a party fails to obey an order to provide or permit

16  discovery . . . the court where the action is pending may issue further just orders." The

17  Rule goes on to provide a non-exhaustive list of options. Rule 37(b)(2)(i)-(vii).[17]  The

18

19

20  [17] They may include the following:

21           (i) directing that the matters embraced in the order or other designated facts
             be taken as established for purposes of the action, as the prevailing party
             claims;

22           (ii) prohibiting the disobedient party from supporting or opposing designated

23           claims or defenses, or from introducing designated matters in evidence;
             (iii) striking pleadings in whole or in part;

24           (iv) staying further proceedings until the order is obeyed;

25           (v) dismissing the action or proceeding in whole or in part;

26           (vi) rendering a default judgment against the disobedient party; or

27           (vii) treating as contempt of court the failure to obey any order except an
             order to submit to a physical or mental examination.

28  Rule 37(b)(2)(i)-(vii).

25

Rule then provides that "[i]nstead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(a)(5)(C).

### c)      Rule 26(g)

The Stores seek sanctions against Tauler Smith and its counsel jointly relying on Rule 26(g) as to counse.  Under Rule 26(g), counsel's signature on a discovery response

certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: . . .
(B) with respect to a discovery request, response, or objection, it is:
        (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
        (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
        (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Rule 26(g)(1).

"If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  Rule 26(g)(3).  "The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  *Id.*

### 2.      Parties' Positions

As to Mr. Tauler's deposition, the Stores seek an order requiring Tauler Smith to resume his deposition at Tauler Smith's expense (costs of the reporting services and original transcript) and to pay for the cost of Mr. Tauler's deposition that was taken, but

not completed, $3,362.25.[18]  (ECF 269 at 3-6.)  The Stores rely on both Mr. Tauler's unprofessional conduct, excerpts of which are quoted in the Motion, and Mr. Tauler's termination of the deposition when asked about a particular invoice the Stores obtained from Outlaw's counsel and that had not been provided to Tauler Smith.  (*Id.* at 4-5.) Additionally, the Stores seek payment of the Stores' attorneys' fees in bringing this Motion, $18,300.  (*Id.* at 17.)

Tauler Smith does not dispute that Mr. Tauler left the deposition, but indicates that approximately ten minutes later Tauler Smith's counsel contacted the Stores' counsel and offered to resume the deposition either immediately or later that week.  (ECF 273 at 5.) The Stores' counsel declined the offer and indicated that he believed he had everything he needed regarding the exhibit Mr. Tauler was being questioned about when he left.  (*Id.* at 5-6.)  Tauler Smith also argues the Stores have failed to explain how Mr. Tauler impeded, delayed, or frustrated his examination given he testified for six hours exclusive of breaks, the Stores Motion fails to identify any questions that were unanswered, and he offered to resume the deposition within ten minutes or later that same week.  (*Id.* at 6.) As to Mr. Tauler's conduct during the deposition, Mr. Tauler acknowledges "two outbursts that concededly were inappropriate."  (*Id.* (citing Ex. A to Sergenian Decl. [ECF 273-1] at 191:21-23).)  Tauler Smith then goes on to point to conduct by the Stores' counsel's during the deposition that Mr. Tauler and his counsel found mocking and taunting as well as an exchange about perceived conduct of the Stores' counsel that occurred after Mr. Tauler's outbursts.

### 3.   Analysis

#### a)   Termination of the Deposition

The Court finds sanctions under Rule 30(d)(2) and (3) are not justified based on Mr. Tauler's termination of the deposition.  First, the Stores' characterization in their

---

[18] The Stores do not seek fees for their counsel's time.

Motion is not accurate.  The Stores quote from the deposition transcript where Mr. Tauler indicates he is terminating the deposition and saying they'll take it up with the Judge and then the Motion indicates that Mr. Tauler terminated his remote connection to the deposition.  (ECF 269 at 5.)  The Motion then states "*Later that afternoon*—at 4:56 p.m.—Tauler Smith's counsel professed that Mr. Tauler was willing to resume his deposition, but by that time the connection to the remote court reporter and the separate remote videographer had been terminated."  (*Id.* (emphasis added).)  The brief then indicates Mr. Tauler did not follow through in contacting the Court.

There is nothing about this that is actually untrue, but it creates a different picture than what happened.  The Motion itself fails to acknowledge that the time from Mr. Tauler's termination of the deposition to the time he agreed to complete it was ten minutes.  Technically ten minutes may be later in the afternoon, but that language suggests a different timeline.  Additionally, the Stores fail to acknowledge Mr. Tauler's offer to resume his deposition then or later in the week.  They also do not explain why the Stores declined the offer to resume and complete the deposition or why they indicated they had everything they needed regarding the exhibit he was being questioned about.  The Stores indicate the remote connection to the videographer and reporter had been terminated in this ten-minute gap, but there is no suggestion any effort was made to reconnect or any explanation why the Stores declined Mr. Tauler's offer to complete his deposition later in the week if it could not immediately be resumed and completed.  They essentially turned down an offer to do what they are asking the Court to order in this Motion.

Rule 37(a)(5) indicates that reasonable expenses should not be ordered if the moving party "filed a motion before attempting in good faith to obtain the disclosure or discovery without court action."  Although these circumstances do not squarely fall into the category, this directive that a party should make a good faith attempt to resolve the issue without involving the court suggests that if the Stores needed more testimony from Mr. Tauler a good faith attempt to obtain it without court action would have been taking

28

him up on his offer to complete his deposition that day or that week rather than filing another discovery motion.[19]

Additionally, although Mr. Tauler should not have terminated the deposition under these circumstances, the Court is not persuaded that payment of expenses is justified. Payment of expenses is required unless a party's conduct is substantially justified. Mr. Tauler was not substantially justified in terminating the deposition. But, that's not where this ended. This ultimately ended up being something more comparable to a recess. Ten minutes after disconnecting, Mr. Tauler offered to proceed with the deposition immediately or later in the week and significantly, the Stores refused that offer. Instead of completing his deposition as offered, the Court is issuing another order on a discovery dispute between the same parties and this one is asking the Court to order something (resumption of Mr. Tauler's deposition) that Mr. Tauler already offered to do before this issue was ever raised with the Court. Under these unique and perplexing circumstances, the Court finds an award of expenses unjust. *See* Rule 37(a)(5) ("But the court must not order this payment if: . . .(iii) other circumstances make an award of expenses unjust."). The Court also finds that Mr. Tauler's ultimate position, offering to complete the deposition he improperly terminated, immediately or later in the week even as to the exhibit that prompted the termination, was substantially justified. However, given Mr. Tauler should not have terminated the deposition the Court orders him to complete his deposition on or before February 8, 2021. It will be limited to one hour, the remainder of the presumption seven-hour limit.

///

///

_____

[19] This is the tenth order the undersigned has had to issue to address discovery disputes in this case. This does not include the numerous additional lengthy orders required to address the parties' opposed motions to modify the Scheduling Order. In addition to leading to the conduct described below, the parties' joint and troublesome animosity has likely multiplied the judicial resources consumed by this case.

**b)** **Mr. Tauler's Conduct During the Deposition**

As to Mr. Tauler's conduct during the deposition, it was unprofessional and not appropriate conduct for any deponent, but especially one that is an attorney. Mr. Tauler's acknowledgment that his conduct was inappropriate is a wise choice because it is not defensible. The attempt to shift focus to Mr. Poe's conduct during the deposition, particularly conduct alleged to have occurred later in time than Mr. Tauler's (thus not motivating Mr. Tauler's outburst) is not persuasive. Even if this alleged conduct by Mr. Poe occurred (he and other counsel present have denied it), and it occurred before these statements, they would not have justified Mr. Tauler's comments. It appears that Mr. Tauler and Mr. Poe have a very contentious and challenging relationship that has deteriorated as this case has worn on. As the assigned district judge recently observed in denying a motion for sanctions, the documented interactions between counsel are troubling. (ECF 344 at 7.) While not appropriate, professional, or what the Court would expect from counsel going forward, it appears the deposition was only minimally impacted by this conduct. Accordingly, the Court declines to award sanctions under Rule 30(d)(2).

**c)** **Payment of Expenses for Motion to Compel Further Responses to Discovery Requests**

As to the discovery requests discussed above, the Court declines to award payment of the expenses of this Motion to the Stores under Rule 37(a)(5). As discussed above, Tauler Smith has either failed to conduct a reasonable search for responsive documents or at least failed to explain what searches it conducted, leaving the Court with the impression it has failed to sufficiently search for and produce responsive documents. However, at this point, the Court cannot find Mr. Tauler lied in his declaration as the Stores have argued throughout this Motion. The Stores rely heavily on the underlying premise that Mr. Tauler is lying about instructing Mr. Valerio to collect the Outlaw documents on to the drive, Mr. Valerio's assertion that he was never instructed to create the drive, and the time frame in which he was allegedly asked to collect these documents

onto the drive.  It is essentially Mr. Tauler's word (he instructed him to do it) against Mr. Valerio's (never instructed him to do so) and the Court is not inclined at this time conclude one way or the other who is lying.[20]  The Court would agree it is suspicious, however, it is also possible Mr. Valerio was asked to collect all documents related to Outlaw on a single drive in anticipation it would be needed in this litigation.  Similarly, the Court cannot take the Stores' counsel's word for it that the documents on the drive were put there after Mr. Valerio left.  The Stores have not allowed Tauler Smith to make its own inquiry into the accuracy of the date stamps and again, the Court is not inclined to find Mr. Tauler lied based on the Stores' assertions.  The remaining issue then is whether a sufficient search for documents was completed and the absence of an attorney reviewing the contents of the drive before producing it.  The Court agrees that Mr. Tauler's failure to review the contents of the drive is concerning, particularly if no other attorney did so, but the Court has attempted to remedy this deficiency in mandating a very specific course for Tauler Smith in searching for responsive documents and explaining all those efforts.

## IV.   CONCLUSION

The Stores' Motion is **GRANTED in part and DENIED in part**.  The parties shall proceed as set forth above.

**IT IS SO ORDERED.**

Dated:  January 12, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge

---

[20] The Court notes that because Mr. Valerio's denial of creating the drive only came in support of the Stores' Reply brief, Tauler Smith did not have the opportunity to respond to that specific claim.  The Court need not address whether the Stores could have provided that information without disclosing Mr. Tauler testimony to Mr. Valerio.