UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORIES, LP LITIGATION, | Case No.:  18CV840 GPC (BGS) |
| | **ORDER REGARDING CONFIDENTIAL DESIGNATION OF SETTLEMENT AGREEMENT AND FILING UNDER SEAL** |
| | [ECF 311, 313] |

## I.    INTRODUCTION

Tauler Smith, LLP ("Tauler Smith"), Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc. ("the Stores"), and Outlaw Laboratory, LP, Michael Wear, and Sean Lynch ("Outlaw") have filed a Joint Statement raising a dispute as to the Stores' and Outlaw's designation of the Stores' and Outlaw's Settlement Agreement as confidential under the parties' Stipulated Protective Order and whether it should be filed under seal with the Court.  (ECF 313.)

This Order addresses that dispute and finds Outlaw and the Stores have not met their burden in showing good cause for a protective order designating the Settlement Agreement as confidential or to file it under seal.

///

## II.   BACKGROUND

### A.   Claims in Consolidated Action

The Court has summarized the claims, counterclaims, and third-party claims of this consolidated action in numerous prior orders on discovery disputes.  The Court incorporates those summaries here and only very briefly summarizes the case here.  (ECF 177 at I.; ECF 215 at II.; ECF 230 at II.; ECF 246 at II; ECF 265 at II; ECF 314 at II; ECF 346 at II.)

This consolidated action encompasses two cases brought by Outlaw against retail stores.  (Case Nos. 18cv840 ("*DG in PB*") and 18cv1882 ("*SD Outlet*").)  Outlaw's claims in both were premised on the defendant stores selling products similar to its own, but allegedly containing undisclosed drugs, resulting Outlaw missing out on sales of its product. (ECF 147 at 1, 3-6;[1] ECF 209 (*SD Outlet* action).)  Summary Judgment was granted to defendants in the *DG in PB* action, and a motion for judgment on the pleadings and subsequent motion for reconsideration in the *SD Outlet* action were granted dismissing with prejudice all of Outlaw's claims.  (ECF 147, 209, 251.)

Three stores, the Stores, filed counterclaims as a class action on behalf of themselves and other targeted stores against Outlaw and its former counsel, Tauler Smith, under the Racketeer Influenced and Corrupt Organizations Act ("RICO") along with a rescission claim. ("Second Amended Counter Claims ("SACC") [ECF 114].)  Concisely, the SACC alleges Outlaw and Tauler Smith engaged in a scheme that included use of investigators to target stores, sending demand letters to small businesses threatening liability for over $100,000 under RICO and the Lanham Act based on false and misleading statements about potential liability for the sale of certain products by the stores in competition with Outlaw's TriSteel product, and follow-up communications

---

[1] All citations are to the CM/ECF electronic pagination unless otherwise indicated.

offering to settle for lower amounts.  (SACC ¶¶ 2, 15, 23-24, 26-52, 66-68, 73, 84-88, 91-92.)

### B.     Relevant Procedural History[2]

On June 15, 2020, the parties filed a Joint Motion for Entry of Stipulated Protective Order.  (ECF 226.)  The Joint Motion was granted on June 19, 2020 and the parties' Stipulated Protective Order was entered by the Court.  (ECF 235.)

On July 7, 2020, Outlaw and the Stores filed a Joint Notice of Settlement of the Stores' Claims Against Outlaw Laboratory, Michael Wear, and Shawn Lynch with a Request for Entry of Stipulated Injunction.  (ECF 249.)  The filing notified the court that the Stores and Outlaw had reached a settlement and requested entry of a "Consent Judgment and Stipulated Permanent Injunction."  (ECF 249.)  A flurry of filings followed.  Tauler Smith filed an Objection and the Stores and Outlaw separately responded to the Objection.  (ECF 250 (Tauler Smith Objection), 252 (Stores' Response to Objection), 253 (Outlaw Response to Objection).)  Tauler Smith then filed a response to the Stores' response to its Objection.  (ECF 254.)  The Stores and Outlaw then filed a Joint Supplemental Brief of the Stores and the Outlaw Defendants Re: Request for Entry of Stipulated Injunction. (ECF 261.)

On September 15, 2020, the assigned district judge, Judge Curiel, denied the Motion for Permanent Injunction, (ECF 290 at 5-6), found Tauler Smith lack standing to challenge the settlement, (*id.* at 6-9), conducted an analysis of the need for class notice prior to class certification under *Diaz v. Trust Territory of Pac. Islands*, 876 F.2d 1401, 1408-11 (9th Cir. 1989), and found a review of the terms of the Settlement Agreement was necessary to complete that analysis.  (ECF 290 at 5-6 (denial of permanent injunction), 6-9 (lack of standing), and 9-11 (analysis under *Diaz*).  Judge Curiel then

---

[2] The Court only briefly summarizes the procedural history related to the Settlement Agreement at issue in this dispute.

ordered the Stores to provide the court and Tauler Smith with a copy of the Settlement Agreement and for the parties to submit supplemental briefing.  (ECF 290 at 12.)[3]

On September 29, 2020, Tauler Smith filed an opposed Motion to Modify the Case Schedule.  (ECF 298.)  In support of the Motion, Tauler Smith filed a motion to file the Settlement Agreement between the Stores and Outlaw under seal.  (ECF 295).  However, in the Motion requesting to file it under seal, Tauler Smith argued the Settlement Agreement should not be filed under seal because it should not have been designated as "CONFIDENTIAL" under the parties' Stipulated Protective Order.  (*Id.* at 2-3.)  In short, Tauler Smith requested to file it under seal only because it was required to based on it having been designated "CONFIDENTIAL," but Tauler Smith disagreed with the designation.  (*Id.*)  As the Motion to File Under Seal also indicates, at the same time, the parties also submitted a joint discovery dispute letter in which the parties very briefly summarized their positions on the confidential designation dispute and Tauler Smith requested the designation be removed or that it be allowed to further brief the issue.  (*Id.* at 3.)

In ruling on the underlying Motion to Modify the Case Schedule, the Court conditionally granted the request to file the Settlement Agreement under seal, but also granted Tauler Smith's request to fully brief the dispute.  (ECF 311 at 16.)  The Court set a schedule for the parties to brief the challenge through this Joint Statement.  (*Id.*)

## III.   DISCUSSION

There are two closely related issues presented by the parties' briefing: (1) whether the Stores and Outlaw have shown good cause for the Settlement Agreement to be designated as confidential and (2) whether the Settlement Agreement should be filed under seal.

///

---

[3] The Court only provides this information as context to explain how Tauler Smith came to have the Stores' and Outlaw's confidential Settlement Agreement.

**A.     Legal Standards**

      **1.     Protective Orders**

            **a)     Types of Protective Orders**

Court's regularly issue two types of protective orders: (1) particular protective orders and (2) blanket protective orders. *See Gillard v. Boulder Valley School Dist. Re.-2*, 196 F.R.D. 382, 385-86 (D. Colo. 2000) (identifying three types of protective orders).[4] Particularized protective orders address a specific document or identified piece of information and require the court to determine whether good cause exists to protect the specific document or piece of information from disclosure. *Id.* For example, as the Stores and Outlaw point out in their briefing, the Court issued a protective order under Federal Rule of Civil Procedure Rule 26(c) as to a specific group of documents (confidential settlement agreements between Outlaw/Tauler Smith and targeted stores) to address confidentiality concerns as to third parties in granting a motion to compel their production. (ECF 177 at 32.) The Court required they be designated confidential, limited their use to this litigation, and limited who they could be disclosed to, but noted the parties could seek modification or enter into a more comprehensive protective order. (*Id.*)

The parties' Stipulated Protective Order here, entered into well after the particular protective order noted above, falls into the second category. Blanket protective orders "require[] that counsel for a producing party review the information to be disclosed and designate the information it believes, in good faith, is confidential or otherwise entitled to protection." *Gillard*, 196 F.R.D. at 386. The protections of the designations, including limitations on disclosure to others then apply "unless the designation is objected to by an opposing party," and "[j]udicial review of a party's designation as confidential occurs only when there is such an objection." *Id.*

///

---

[4] The *Gillard* decision also identifies a third and disfavored type, umbrella protective orders, that designate all discovery protected. 196 F.R.D. at 386.

Blanket protective orders, like the parties' Stipulated Protective Order here, "are regularly relied on in civil litigation because they serve the interests of a just, speedy, and less expensive determination of complex disputes by alleviating the need for and delay occasioned by extensive and repeated judicial intervention." *Gillard*, 196 F.R.D. at 386. Parties can review and appropriately designate the large volume of documents regularly exchanged during discovery without having to seek a court order to designate them under Rule 26(c) as to each document being produced.  Parties routinely stipulate to these types of protective orders, particularly when there is an expectation that discovery will include confidential documents, to allow discovery to be efficiently exchanged.  In addition to the provisions noted below that provide criteria for confidentiality designations, who may have access to them when designated confidential, steps to challenge designations, and how to handle seeking to file them under seal, they also often include provisions on how those documents must be treated during depositions or how they may be disclosed to experts.

### b)   Parties' Stipulated Protective Order

There are a few portions of the parties' Stipulated Protective Order that are of significance here.  Paragraph 4 indicates that the parties may designate materials produced as CONFIDENTIAL:

> Each party to this litigation that produces or discloses any materials, answers to interrogatories, responses to requests for admission, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, or information that the producing party believes should be subject to this Protective Order may designate the same as "CONFIDENTIAL" or "CONFIDENTIAL - FOR COUNSEL ONLY.

Paragraph 4 also indicates the allowable basis for a CONFIDENTIAL designation:

> Designation as "CONFIDENTIAL": Any party may designate information as "CONFIDENTIAL" only if, in the good faith belief of such party and its counsel, the unrestricted disclosure of such information could be potentially prejudicial to the business or operations of such party.

Paragraph 12 provides that "[b]efore any . . . documents which are designated as confidential information are filed with the Court for any purpose, the party seeking to file such materials must seek permission of the Court to file the material under seal."

Paragraph 14 then provides that:

> At any stage of these proceedings, any party may object to a designation of the materials as confidential information. The party objecting to confidentiality must notify, in writing, counsel for the designating party of the objected-to materials and the grounds for the objection. If the dispute is not resolved consensually between the parties within seven (7) days of receipt of such a notice of objections, the objecting party may move the Court for a ruling on the objection. The materials at issue must be treated as confidential information, as designated by the designating party, until the Court has ruled on the objection or the matter has been otherwise resolved.[5]

### a)   Good Cause for the Protective Order

"The law . . . gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information. *Phillips v. Gen. Motors. Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002) (citing Fed. R. Civ. P. 26(c)(7). Federal Rule of Civil Procedure 26(c)(1) provides that "the court may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The Supreme Court has interpreted this language as conferring 'broad discretion on the trial court to decide

---

[5] A footnote in this section of the Stipulated Protective Order requires the parties to follow applicable rules to raise these issues as a discovery dispute. (ECF 235 at 8 n.2.) Judge Skomal's Chambers Rules require a timely joint call to Chambers to identify discovery disputes to receive guidance as to next steps. (Chambers Rules V.B.) However, due to the volume of discovery disputes being raised in this case, earlier in the case, the Court required the parties to identify the nature of their disputes by submission of very short joint letter briefs.  The parties did so here by submission of the joint letter brief referenced above.

when a protective order is appropriate and what degree of protection is required.'" *Phillips*, 307 F.3d at 1211 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

"Although courts may be more likely to grant protective orders for the information listed in Rule 26(c)(7), courts have consistently granted protective orders that prevent disclosure of many types of information," including inadvertently disclosed "letters protected under attorney-client privilege, . . . medical and psychiatric records, . . . federal and grand jury secrecy provisions, [and] . . . confidential settlement agreements." *Id.* at 1212 (citing *KL Group v. Case, Kay, and Lynch*, 829 F.2d 909, 917–19 (9th Cir. 1987), *Pearson v. Miller*, 211 F.3d 57, 62–64 (3d Cir. 2000), *Krause v. Rhodes*, 671 F.2d 212, 216 (6th Cir. 1982), *Hasbrouck v. BankAmerica Housing Serv.*, 187 F.R.D. 453, 455 (N.D. N.Y. 1999) (confidential settlement agreement), *Kalinauskas v. Wong*, 151 F.R.D. 363, 365–67 (D. Nev. 1993) (confidential settlement agreement)).

As discussed in more detail below, in determining whether good cause has been shown, the Court must proceed in two steps, first determining whether Outlaw and the Stores, as the parties seeking to maintain the confidential designation, have identified a "particularized harm that will result from disclosure" and second to balance "the public and private interests to decide whether maintaining a protective order [as to the Settlement Agreement] is necessary." *In re Roman Archbishop of Portland Oregon*, 661 F.3d 417, 424 (9th Cir. 2011) (citing *Phillips*, 307 F.3d at 1211).

### b)  Standard for Filing Under Seal

Here, Tauler Smith sought to file the Settlement Agreement under seal in support of an opposed Motion to Modify the Case Schedule.  (ECF 295, 298.)  This was a non-dispositive motion.  This is significant because documents filed in support of non-dispositive motions are treated differently for purposes of filing them under seal. *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2002) (citations omitted) "Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy," but "a 'good cause' showing under Rule 26(c) will suffice to keep sealed records

attached to non-dispositive motions." *Id.* at 1180 (citing *Foltz v. State Farm Mut. Ins. Co.*, 331 F.3d 1122, 1135-36 (9th Cir. 2003)).

### B.   Parties Positions

#### 1.   Tauler Smith

Tauler Smith argues the Settlement Agreement should not be filed under seal or designated confidential because the Stores and Outlaw have not shown good cause for the designation or to file it under seal.  Tauler Smith argues Outlaw's interest in avoiding copycat litigation is not sufficient to show good cause for the confidentiality designation or to file the Settlement Agreement under seal.  (ECF 313 at 3-4.)  Tauler Smith asserts that the Settlement Agreement should be open to the public because it impacts the viability of the claims of absent class members and that Outlaw and the Stores "should not be permitted to cloak their agreement in secrecy in order to preclude a broader set of prospective claims."  (*Id.* at 4.)  And finally, Tauler Smith argues that even if the Settlement Agreement were prejudicial to Outlaw's business or operations, that prejudice is outweighed by the rights of absent class members. (*Id.* at 5.)  Tauler Smith's briefing does not address the Stores' and Outlaw's arguments regarding it misusing the Settlement Agreement against Outlaw and the Stores' counsel.[6]

#### 2.   The Stores

The Stores dispute Tauler Smith's reliance on the good cause standard and cases applying it, arguing it does not apply here because it is neither a litigation document nor information produced in discovery.  (ECF 313 at 5.)  The Stores also point to the Court

---

[6] Although the briefing is provided in a joint filing, the parties are required to exchange their briefing in advance of filing the Joint Statement to allow the parties to address each other's arguments.  The Court specifically noted this in the Order setting the briefing on this dispute.  (ECF 311 at 17 n. 11.)  Tauler Smith's portion of the briefing does not indicate it was denied this opportunity and there has been no indication since the Joint Statement was filed that Tauler Smith was not able to fully respond to all of the Stores and Outlaw's good cause arguments.

having previously imposed a protective order under Federal Rule of Civil Procedure 26(c) as to the settlement agreements between Outlaw/Tauler Smith and targeted stores, arguing the Court has already recognized the propriety of the confidential designation. (*Id.* at 5.)

As to Tauler Smith's argument that the Settlement Agreement should be disclosed to protect absent class members, the Stores argue the Court should take a practical approach. As the Stores explain, "if Judge Curiel holds that notice is required under *Diaz*, then the terms of the settlement will be disclosed. But those terms should not be disclosed simply to facilitate Mr. Tauler's demonstrated desire to continue to abuse his former clients." (*Id.* at 5-6.) Beyond this, the Stores acknowledge that their interest in the Settlement Agreement being designated confidential and being filed under seal is to honor their confidentiality agreement with Outlaw. (*Id.* at 5.) The Settlement Agreement has a confidentiality provision that prohibits disclosure.

### 3.   Outlaw

Outlaw argues that the Settlement Agreement is properly designated as confidential under the parties' Stipulated Protective Order because Outlaw has a good faith belief that the unrestricted disclosure of the Settlement Agreement by Tauler Smith "'could be potentially prejudicial to the business or operations' of Outlaw and its principals." (ECF 313 at 6 (quoting Stipulated Protective Order [ECF 235] ☐ 4).) There are two ways Outlaw argues public disclosure of its Settlement Agreement would be prejudicial to it.

First, Outlaw argues Tauler Smith will "publish, disseminate, or use Outlaw's settlement agreement to 'gratify private spite.'" (*Id.* at 8 (quoting *Kamakana v. City and Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).) In support of this assertion, Outlaw includes numerous excerpts of Tauler Smith's unprofessional communications, including one specific to this settlement. Along the same lines, Outlaw also argues that it was forced to settle this case because of Tauler Smith's "off-the-rails" behavior and misconduct, including refusing to provide Outlaw its client file, providing an accounting

of money taken in through litigation, or the list of stores that were sent demand letters. (*Id.* at 6.)  And now that it has settled, in part because of Tauler Smith's conduct, it argues it is still being forced to endure the expense of briefing more issues because Tauler Smith is intentionally seeking to make the resolution of this case as expensive and burdensome as possible for Outlaw out of spite.  (*Id.* at 6-8.)

Second, Outlaw argues there a real risk of copycat litigation against Outlaw based on Tauler Smith's targeting of stores.  As Outlaw explains, other stores victimized by Tauler Smith could review Outlaw's Settlement Agreement with the Stores, copy the pleadings in this case, and subject Outlaw to those claims in other forums in hopes of obtaining a similar settlement.  (*Id.* at 9.)

Outlaw, like the Stores, also argues that this Settlement Agreement is a private document unrelated to the merits of this case.  (*Id.*)  Outlaw notes that no class has been certified in this case, but also asserts that the Settlement Agreement does not affect any claims that may be asserted against Outlaw by absent class members and that it does not prejudice the claims of absent class members.  In summary, Outlaw argues that "Tauler Smith's feigned interest in protecting the interests of absent class members (where no class has been certified) is outweighed by the likelihood that Tauler Smith—as he has threatened to do—will find some way to use the settlement agreement in a spiteful and vengeful way, which could be "potentially prejudicial to the business or operations" of Outlaw.

### B.   Analysis

#### 1.   Not Produced in Discovery

Before considering whether the Stores and Outlaw have shown good cause to designate the Settlement Agreement confidential, the Court addresses the Stores' and Outlaw's argument that the Settlement Agreement is not subject to this requirement because it was not produced in discovery.  First, neither the Stores nor Outlaw cite any cases suggesting that the same analysis would not apply under these circumstances.  As noted above, Judge Curiel ordered it be provided to Tauler Smith and the court to allow a

full analysis of whether notice to absent class members was required for Outlaw and the Stores to settle *the claims between them in this case* and he allowed the parties to file supplemental briefing on the issue after the Settlement Agreement was provided. Additionally, the Stores and Outlaw have designated it confidential under the parties' Stipulated Protective Order *in this case*. The Stores and Outlaw cannot use the Stipulated Protective Order for this litigation to protect the Settlement Agreement from disclosure, but argue the good cause standard identified in it and that they agreed to (and applicable under Rule 26(c)) does not apply because it was not produced in response to a specific discovery request but was instead ordered by district judge for purposes of supplemental briefing in this case.[7]

Nor will the Court speculate as to whether it would have found the Settlement Agreement relevant to the claims or defenses in this case under Rule 26(b)(1) because Judge Curiel has found review of its terms relevant enough to his analysis that it has been provided by his order. However, before proceeding to analyze whether good cause has been shown to continue the confidential designation under Rule 26(c)(1), the Court notes that as to the Settlement Agreement, the parties have started where parties often end up when one party seeks production of a confidential settlement agreement in discovery. "Federal courts have typically found that a settlement agreement 'is *discoverable* despite a confidential designation, especially when there is a protective order in place to prevent unauthorized disclosure." *Moser v. Health Ins. Innovations, Inc.*, Case No. 17cv1127-WQH (KSC), 2019 WL 2996950, at * 4 (S.D. Cal. July 8, 2019) (emphasis added). Confidential settlement agreements are often disclosed in discovery when relevant because "the simple fact that the parties to a settlement agreement agreed to its confidentiality does

---

[7] While it is factually accurate to say the Settlement Agreement was not produced in discovery, it could have been had Judge Curiel not ordered it provided. As noted in his Order, Tauler Smith could have sought to compel its production, (ECF 290 at 8), although there would have been more procedural steps given discovery was closed by the time the Settlement Agreement was entered into.

not shield it from discovery." *Board of Trustees of Leland Stanford Junior Univ. v. Tyco Int'l Inc.*, 253 F.R.D. 521, 522-23 (C.D. Cal. 2008). However, "[t]his is especially true . . . where there is a Confidentiality order in place . . . that is more than adequate to protect . . . information from misuse." *Id.* at 523.

## 2.    Good Cause under Rule 26(c)

Here, the Court has not previously made any specific finding as to good cause as to any documents subject to the parties' Stipulated Protective Order, including the Settlement Agreement. "While courts generally make a finding of good cause before issuing a protective order, a court need not do so where (as here) the parties stipulate to such an order." *In re Roman Archbishop of Portland Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). "When the protective order 'was a stipulated order and no party ha[s] made a 'good cause' showing,' then 'the burden of proof ... remain[s] with the party seeking protection.'" *Id.* (citing *Phillips v. Gen. Motors. Corp.*, 307 F.3d 1206, 1211 n. 1 (9th Cir. 2002)). As the parties seeking to maintain or continue the confidential designation as to the Settlement Agreement, the Stores and Outlaw have the burden of showing good cause. "The party opposing disclosure has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Id.* (citing *Foltz.*, 331 F.3d at 1130).

Where, as here, a "court [is] considering a motion for a continuation of the protective order, [the court] must proceed in two steps," first determining whether "particularized harm will result from disclosure" and second to balance "the public and private interests to decide whether [maintaining] a protective order is necessary." *Id.* (citing *Phillips*, 307 F.3d at 1211).

### a)    First Step

The Stores or Outlaw must "allege specific prejudice or harm." *Id.* "[B]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992). As discussed above, here, the Stores and Outlaw have asserted

13

two ways they could be harmed or prejudiced from public disclosure of the Settlement Agreement.

First, they allege that public disclosure of the Settlement Agreement may result in copycat litigation. The Court is not particularly persuaded by this reasoning because it could arguably be said about any settlement of a claim for conduct that could have befallen others. That the case has settled between Outlaw and the Stores is disclosed in a public filing by Outlaw and the Stores so the significant non-public pieces of information are the terms, including the amount of the settlement. However, Outlaw does not identify anything specific about this Settlement Agreement that increases the likelihood it would result in copycat litigation. Simply saying others will pursue the same course to get the same settlement is not a specific prejudice or harm justifying a protective order. Similarly, Outlaw and the Stores' reliance on the Court's prior order imposing a confidentiality designation for settlement agreements between Outlaw/Tauler Smith and other stores is misplaced. The Court imposed the designation and limitations out of concern for third parties not involved in this litigation and unaware their settlement agreements were being produced. There is no similar concern here. Additionally, Outlaw or the Stores must "allege specific prejudice or harm" that will result from the disclosure of this Settlement Agreement. *Id.* Because it is a particularized inquiry, settlement agreements involving third parties on different issues has no bearing on this Court's decision as to this particular Settlement Agreement.

The second reason advanced is that Tauler Smith will misuse the Settlement Agreement to harm Outlaw out of spite or animosity. Outlaw alleges it "has a good-faith basis for believing that its jilted former attorney would publish, disseminate, or use Outlaw's settlement agreement with the Stores in a way that 'could be potentially prejudicial to the business or operations' of Outlaw or is principals. As noted above, Outlaw argues Tauler has already threatened and will certainly find a way to use the settlement agreement to 'gratify private spite." (ECF 313 at 8 (quoting *Kamakana*, 447 F.3d at 1179).) Outlaw also argues "[t]he confidential designation of the settlement

1   agreement at issue must be maintained in light of the animosity expressed by Tauler

2   toward his former clients and Tauler's generally unpredictive nature."  (ECF 313 at 9.)

3        The challenge with Outlaw and the Stores' argument that Tauler Smith will

4   improperly use the Settlement Agreement is no explanation how it will do it.  Based on

5   Tauler Smith's past conduct and the excerpts included in the Joint Statement, the Court is

6   also concerned about Tauler Smith's motives in seeking disclosure.  Additionally, the

7   Court is not persuaded that Tauler Smith is acting out of any genuine concern for absent

8   class members or the public.  However, the Court must follow the standard and it requires

9   Outlaw or the Stores to "show[] specific prejudice or harm *will result* if no protective

10  order is granted."  *Phillips*, 307 F.3d at 1210-11 (emphasis added).  The Court is not

11  requiring Outlaw or the Stores to identify the prejudice or harm to a certainty, but they

12  are at least required to identify what it is that they think Tauler Smith will do with the

13  Settlement Agreement if disclosed.

14       The Court can only move on to the second balancing step of the inquiry if "the

15  court finds particularized harm will result from disclosure of information to the public."

16  *Id.* at 1211.  Here, the Court cannot find the particularized harm that will result when

17  Outlaw and the Stores have not identified what they think Tauler Smith will do.

18  Outlaw's own briefing reflects the vagueness of their assertions.  For example, Outlaw

19  argues Tauler Smith "will certainly find a way to use the settlement agreement to gratify

20  public spite" and "use the settlement agreement to drive up Outlaw's expenses," (ECF

21  313 at 8), but there is no explanation how.  Similarly, Outlaw points to Tauler Smith's

22  animosity for Outlaw and "generally unpredictive nature," but there is again, no

23  explanation what it is they fears will happen. (*Id.* at 9.)

24       Outlaw and the Stores have not identified a particularized harm they believe will

25  result if the Settlement Agreement is disclosed.  Rather they have speculated because

26  Tauler Smith has conducted itself poorly in the past that it will again with this Settlement

27  Agreement.  But even if the Court agreed with this assertion, it still falls short of showing

28  what specific harm or prejudice will result. "[B]road allegations of harm, unsubstantiated

by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *In re Roman Archbishop of Portland Oregon*, 661 F.3d at 424.   Outlaw and the Stores have not shown good cause under Rule 26(c) to continue the confidential designation under the Stipulated Protective Order.

## IV.   CONCLUSION

The confidential designation is lifted as to the Settlement Agreement and it may be filed without sealing.  As noted above, a specific showing of good cause is required to file documents filed in support of non-dispositive motions under seal.  Because Outlaw and the Stores have not made this showing, the Settlement Agreement may not be filed under seal. *Kamakana*, 447 F.3d at 1180 ("[A] 'good cause' showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions"). Tauler Smith's motion to file under seal that was conditionally granted pending further briefing (ECF 295) is now **DENIED without prejudice**.  Tauler Smith may file the Settlement Agreement without sealing.

**IT IS SO ORDERED.**

Dated:  March 22, 2021

Hon. Bernard G. Skomal
United States Magistrate Judge

16