1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Sergenian Ashby LLP**
David A. Sergenian (SBN 230174)
david@sergenianashby.com
1055 West Seventh Street, 33rd Floor
Los Angeles, California 90017
Tel. (323) 318-7771

*Attorneys for Counter-Defendant Tauler Smith LLP*

THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **In re Outlaw Laboratory, LP Litigation** | Case No. 3:18–cv–840–GPC–BGS consolidated with 3:18–cv–1882–GPC–BGS<br><br>**Tauler Smith LLP's Brief Regarding the Collusive Effect of the Outlaw–Stores Settlement Agreement**<br><br>**UNDER SEAL** |

# TABLE OF CONTENTS

I. Introduction ........................................................................................... 1

II. Argument ............................................................................................... 1

    A. The Settlement Agreement Requires Approval of the Court as a Class Action Settlement Because It Compromises Class Claims Against Outlaw ........................................................................... 1

    B. The Court Should Reject the Settlement Agreement, or Require Notice to Absent Class Members, Because It Is the Product of Collusion and It Compromises Class Claims ............................... 5

III. Conclusion ............................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*American Pipe & Constr. Co. v. Utah*,
   414 U.S. 538 (1974) .......................................................................... 4 n.5

*China Agritech, Inc. v. Resh*,
   -- U.S. --, 138 S. Ct. 1800, 201 L. Ed. 2d 123 (2018) ............................. 4 n.5

*Citizens Dev. Corp. v. County of San Diego*,
   No. 12CV0334GPC(KSC), 2019 WL 172469 (S.D. Cal. Jan. 11, 2019) . 6 n.7

*Dunn v. Teachers Ins. & Annuity Ass'n of Am.*,
   No. 13-CV-05456-HSG, 2016 WL 153266 (N.D. Cal. Jan. 13, 2016) ..... 6 n.6

*Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*,
   No. 99 C 0762, 1999 WL 528545 (N.D. Ill. July 19, 1999) .......................... 7

*In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*,
   860 F.2d 844 (8th Cir. 1988) ................................................................ 6 n.7

**Statutes & Rules**

ABA Model Rule of Professional Conduct 5.6(b) ............................................ 7

Cal. Rules of Professional Conduct, rule 1-500 ............................................... 7

**Secondary Sources**

2 McLaughlin on Class Actions § 6.4 (12th ed. revised 2015) .................... 6 n.6

## I. INTRODUCTION

Counter-Defendant Tauler Smith LLP ("TSLLP" or "Tauler Smith") respectfully submits this brief pursuant to the Court's Order (ECF No. 290 (Sep. 15, 2020)) to assist the Court in determining if the settlement agreement between Counter-Defendants Outlaw Laboratory, LP, Sean Wear, and Michael Lynch (collectively, "Outlaw"), and Counterclaimants Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc. ("Counterclaimants") and 25 store Defendants represented by Gaw Poe is tainted by collusion or will prejudice absent class members.

## II. ARGUMENT

### A. The Settlement Agreement Requires Approval of the Court as a Class Action Settlement Because It Compromises Class Claims Against Outlaw

Disclosure of the Settlement Agreement between Outlaw and Counterclaimants dated June 23 and 24, 2020 ("Settlement Agreement") (Ex. A to Declaration of David A. Sergenian ("Sergenian Decl.")) makes clear that Gaw Poe has attempted to circumvent the Court's procedures for approving settlement of class claims. A review of the terms of the Settlement Agreement shows that Gaw Poe agreed to dismiss the Payment Class's claims against Outlaw.[1]

In the Settlement Agreement, Counterclaimants "for themselves, and all who may now or in the future claim, by, through or under them, hereby fully

---

[1] As the Court is aware, Counterclaimants abandoned all class claims on behalf of the Sued Stores and Threatened Stores putative classes, and the only remedy they seek on behalf of these two putative classes (injunctive relief) is not available as a matter of law. (*See* ECF No. 261 at p. 9 (Stores conditionally withdrawing request to certify Sued and Threatened Stores classes); ECF No. 179-1 at pp. 15, 16, 23, 24 (Stores, in moving for certification, abandoning claims for damages and seeking only injunctive relief on behalf of Sued and Threatened Stores); ECF No. 293 at pp. 31, 32 (granting summary adjudication on grounds that injunctive relief is not available on RICO claims).) Accordingly, the only class claims that remain are those of the Payment Class.

– 1 –

and finally release, acquit, and forever discharge Outlaw Laboratory [including Wear and Lynch, among others]" from all liability. (Ex. A § 2.2.) It was "the intention of the Parties to this Agreement that this Agreement be in the broadest scope possible," that the Agreement "encompass all conceivable causes of action and claims held, up to the date of execution of this Agreement, by any of the Parties," and "that this Agreement resolves all dealings of the Parties from the beginning of time up to the date of execution of this Agreement." (*Id.* § 3.1.) Furthermore, the Settlement Agreement "is intended to constitute complete accord and satisfaction for all causes of action as are, were or could have been asserted in the Lawsuit between the Parties…" (*Id.* § 3.2.) In addition, Gaw Poe agreed "that none of its attorneys, employees, agents, or contractors will advertise, solicit, or represent any new clients for the purpose of bringing claims against Outlaw Laboratory related to any claim allegedly resulting from or occurring in connection with the conduct of Outlaw set forth in the Lawsuit." (*Id.* § I.9.) Counterclaimants and Gaw Poe further agreed "that they will not cooperate or assist in any manner any non–party with regard to any claims that non–party may or is asserting against Outlaw Laboratory." (*Id.* § I.10.)

These terms constitute a settlement of the Payment Class's claims against Outlaw because Counterclaimants' release of Outlaw extends to "all who may now or in the future claim, by, through or under them" (Ex. A § 2.2); i.e., the Payment Class. Furthermore, Gaw Poe has agreed not to represent any "new clients" in asserting claims against Outlaw (*id.* § I.9), or even to assist any non-parties to the Settlement Agreement with regard to any claims they may or are asserting against Outlaw (*id.* § I.10), meaning that Gaw Poe will not sue Outlaw on behalf of anyone, including on behalf of absent Payment Class Members.[2]

---

[2] The non-signatory absent Class Members cannot credibly be classified as "current clients" of Gaw Poe. If Gaw Poe contends otherwise, it should be required to provide admissible evidence showing that the non-signatory absent Class Members are clients of the firm.

– 2 –

If this were not clear enough, Counterclaimants' counsel has confirmed that the effect of the Settlement Agreement is that Outlaw is no longer subject to liability from any class members. In its July 24, 2020 filing, Gaw Poe wrote that "Tauler Smith offers no evidence to suggest that many absent class members even know about this litigation, let alone that they are relying on it to vindicate their claims against Outlaw, as opposed to vindicating their claims against the lawyers who created the scheme, and who remain in the dock." (ECF No. 261 at pp. 6–7.) Only Tauler Smith remains "in the dock" because Counterclaimants have covenanted not to sue Outlaw on behalf of themselves or on behalf of anyone else (Ex. A §§ 2.2, 3.1, 3.2), and Gaw Poe has covenanted to not represent any parties against Outlaw (or even assist them in prosecuting claims against Outlaw) (*id.* §§ I.9, I.10). Mr. Poe confirmed to undersigned counsel, in an email on July 9, 2020, that his firm will not prosecute any claims on behalf of the Payment Class against Outlaw—even though this is a class action purportedly filed on behalf of the Payment Class and others—stating in the email: "[Y]ou are correct that Outlaw would remain liable to the other victims of the Enterprise, if those stores decided to sue." (Ex. B to Sergenian Decl.)[3] Mr. Poe also confirmed in the same email his opinion that due to the Settlement Agreement, Outlaw, Wear, and Lynch are no longer parties to this action: "None of

---

[3] Mr. Poe's assertion that the absent class members have not already sued Outlaw is mistaken. Because Gaw Poe filed claims on behalf of the Payment Class, this action must be treated as if the absent Payment Class members have already sued Outlaw, notwithstanding that no class has yet been certified. *See Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) ("[D]uring the interim between filing and certification, a court must assume for purposes of dismissal or compromise that an action containing class allegations is really a class action."). It is impossible to reconcile how Gaw Poe can purport to represent the Payment Class, yet unilaterally dismiss three of the four counterclaim-defendants/third-party defendants without seeking Court approval. TSLLP looks forward to reading Gaw Poe's explanation as to how it can simultaneously: (a) prosecute claims on behalf of the Payment Class, (b) take the position that Outlaw remains liable to absent Payment Class Members, and (c) treat Outlaw, Sean, and Wear as if they have been dismissed from the case and are no longer counterclaim-defendants.

– 3 –

Tauler Smith's Brief re Case No. 3:18–cv–840–GPC–BGS
Collusive Effect of Settlement Agreement Consolidated with 3:18–cv–1882–GPC–BGS

Outlaw, Mr. Wear, or Mr. Lynch remain counterclaim-defendants / third-party defendants in the action." (*Id.*) Accordingly, Mr. Poe has confirmed that the Settlement Agreement dismisses the Payment Class's claims against Outlaw.[4]

Moreover, if the Court approves the settlement of the Payment Class' claims, it will bar absent class members from asserting claims against Outlaw arising from the same facts and circumstances in later proceedings. *See Rangel v. PLS Check Cashers of California, Inc.*, 899 F.3d 1106, 1110 (9th Cir. 2018) ("It is well-settled that a class settlement resulting in final judgment is sufficient to meet the 'final and on the merits' element of res judicata, and 'is as conclusive a bar as a judgment rendered after trial.'").[5] Gaw Poe likely sought to avoid

---

[4] Notwithstanding the plain terms of the Settlement Agreement, Gaw Poe represented to the Court that "the Settlement does not purport to bind putative class members…" (ECF No. 252 at p. 1; *see also id.* at p. 4 ("the Settlement does not bind … the claims of putative class members at all."); ECF No. 261 (Jul. 24, 2020) ("[S]ince the Stores have no authority to compromise the claims of absent class members, it is hard to see how they could have 'conce[ded] class interests,' and Tauler Smith has not even how such concessions might be present…"). The Court relied on these representations in its order. (ECF No. 290 at p. 11 ("The settlement, moreover, appears to apply only to the Stores' individuals claims, per the representations of the Stores and the Outlaw Defendants, and thus would not extinguish the existing claims of any class members outside this action."). Gaw Poe's statements to the Court raise serious issues of counsel's violation of the duty of candor to the Court, which TSLLP intends to raise in a renewed motion to disqualify counsel which will address, among other issues, Gaw Poe's inadequacy as class counsel based on this and other issues.

[5] Counterclaimants and Outlaw have argued that "the limitations period has been tolled during the pendency of this class action under the *American Pipe* doctrine, meaning that even upon the dismissal of the Stores' claims against Outlaw, absent class members will have multiple years in which to bring any individual claims against it, should they so desire." (ECF No. 261 (Jul. 27, 2020) at p. 7.) As a preliminary matter, the holding in *American Pipe* cannot be used to toll the statute of limitations for subsequent class actions following dismissal. *See China Agritech, Inc. v. Resh*, -- U.S. --, 138 S. Ct. 1800, 1804, 201 L. Ed. 2d 123 (2018) (after denial of class certification, "*American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations.") In addition, *American Pipe* does not apply to claims that have been settled or tried to a verdict; it is limited to instances in which class certification is denied, and only on certain grounds. *See Torres v. Wells Fargo Bank*, No. CV179305DMGRAOX, 2018 WL 6137126, at *2 (C.D. Cal. Aug. 28, 2018) ("The *American Pipe* Court was careful to craft this rule somewhat narrowly, to failed class certifications for reasons of numerosity, as opposed to a lack of commonality, lack of standing of the class representative, or bad faith.") (citing *American Pipe*, 414 U.S. at 553).

– 4 –

approval of what is in part a class settlement because the Payment Class is getting nothing of value from the Settlement Agreement but nonetheless is unknowingly giving up rights that have been compromised by putative class counsel and representatives. *See Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071, 1079 (9th Cir. 2017) ("The settlement should not have been approved for one primary reason: There is no evidence that the relief afforded by the settlement has any value to the class members, yet to obtain it they had to relinquish their right to seek damages in any other class action.").

Accordingly, because the Settlement Agreement dismisses the Payment Class's claims against Outlaw, the Court should reject the Settlement Agreement, or in the alternative, require the settling parties to comply with procedures for class action settlements.

### B. The Court Should Reject the Settlement Agreement, or Require Notice to Absent Class Members, Because It Is the Product of Collusion and It Compromises Class Claims

Counsel for Counterclaimants has not disclosed how much, if any, of the $125,000 to $225,000 in settlement funds (Ex. A §§ 1.2, 1.5) will go to Counterclaimants, and nothing in the Settlement Agreement requires the settlement money to go to any Counterclaimants or any class members. Mr. Poe has suggested that the money will go to reimburse Gaw Poe for the costs it is contractually obligated to pay out of its own pocket. (Sergenian Decl., Ex. C, Ex. D at SKYLINE001 (Gaw Poe responsible for all litigation costs), Ex. E at ROMA002 (same), Ex. F at NMRM002 (same).) In other words, Gaw Poe and Outlaw have colluded in selling out the Payment Class in exchange for (a) releasing Outlaw from all class claims, and (b) enriching Gaw Poe with what is essentially a self-administered award of fees.

This level of collusion is ample reason to reject the settlement or require notice to the class because it creates an incurable conflict between class counsel

or representative and absent class members. *See Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (court must inquire into "prejudice from … settlement or concession of class interests made by the class representative or counsel in order to further their own interests."). Here, Gaw Poe and/or class representatives enriched themselves with no accounting to absent class members.[6] In exchange, absent class members lose access to class counsel, lose access to a class representative that will assert their claims against Outlaw, and lose access to key evidence that is being shielded by spurious claims of privilege claims.[7]

---

[6] The amount that Gaw Poe received exceeds Counterclaimant's individual stakes in this litigation. The settlement amount is $125,000–$225,000 (Ex. A §§ I.2, I.5), yet the individual Counterclaimants' total claimed damages in this action (including trebling of actual damages pursuant to RICO) are only $38,940. (Sergenian Decl. ¶¶ 8–11, Ex. G–I.) The additional $87,000 to $187,000 can best be understood as a payment to Gaw Poe in exchange for Gaw Poe's agreement not to pursue class claims against Outlaw or assist anyone else in doing so. Moreover, if Gaw Poe keeps $87,000 to $187,000, it is improperly circumventing the procedure for seeking fees and costs from the Court. *See Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *8 (N.D. Cal. Jan. 13, 2016) (class counsel negotiating amount of fees they would receive as part of settlement "raises the specter of collusion because it suggests that Plaintiffs' counsel may have been motivated to undercut their clients' (and the putative class's) recovery in order to quickly generate higher attorneys' fees for themselves."); 2 McLaughlin on Class Actions § 6.4 (12th ed. revised 2015) ("Courts also have identified a special danger of collusiveness when the attorney fees, ostensibly stemming from a separate agreement, were negotiated simultaneously with the settlement.") (internal citation and quotation omitted).

[7] Pursuant to the Settlement Agreement, Outlaw principals Michael Wear and Sean Lynch were required to submit to recorded interviews. (*Id.* § I.5.) The interviews are being shielded from absent class members (and TSLLP) by the mediation privilege (*id.*), even though there has been no mediation in this action. (Sergenian Decl. ¶¶ 3, 4, Ex. C, J.) *See Citizens Dev. Corp. v. County of San Diego*, No. 12CV0334GPC(KSC), 2019 WL 172469 (S.D. Cal. Jan. 11, 2019) (federal mediation privilege only applies to communications during a mediation, and only if there is a signed agreement for a mediation with a neutral third party). When confronted with this fact, Mr. Poe switched gears and claimed that the interview recordings are protected by a "common interest" privilege, even though Outlaw is being sued by Counterclaimants. (Sergenian Decl. ¶ 4; Ex. C.) This, too, is a specious claim, as the common interest privilege does not apply to adverse parties. *See id.* at *12 ("While the common interest doctrine does not require a complete unity of interests among the participants, there is no legal precedent for it applying to communications between plaintiffs and select defendants in the

– 6 –

Tauler Smith's Brief re                                          Case No. 3:18–cv–840–GPC–BGS
Collusive Effect of Settlement Agreement              Consolidated with 3:18–cv–1882–GPC–BGS

In addition, allowing the settlement to proceed would sanction Gaw Poe's unethical and unlawful conduct. California's Rules of Professional Conduct, rule 1-500(a) provides in relevant part: "A member shall not be a party to or participate in offering or making an agreement, whether in connection with the settlement of a lawsuit or otherwise, if the agreement restricts the right of a member to practice law…" Section I.9 of the Settlement Agreement plainly violates this provision because it prohibits Gaw Poe from representing any "new clients" in asserting claims against Outlaw. Moreover, Section I.10, which prohibits Gaw Poe from providing any assistance to absent class members (including the provision of secretly recorded interviews with Outlaw principals) also violates Rule 1-500(a). *Accord Hu-Friedy Mfg. Co. v. Gen. Elec. Co.*, No. 99 C 0762, 1999 WL 528545, at *3 (N.D. Ill. July 19, 1999) (finding that defendant's interpretation of protective order as prohibiting plaintiff's counsel from using confidential information that is "independently relevant and discoverable" in another lawsuit as "contrary to the policy" of ABA Model Rule of Professional Conduct 5.6(b) ("A lawyer shall not participate in offering or making … an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy")).

### III. CONCLUSION

For the foregoing reasons, Counter-Defendant Tauler Smith LLP respectfully requests that the Court reject the Settlement Agreement between Outlaw and Counterclaimants, or in the alternative, require Gaw Poe to submit to the Court's class action settlement procedures, or require notice to absent class members.

---

same matter."; "the responding parties do 'not have a true common goal, as it could not have been [defendants'] goal to impose liability on [themselves],' which is [plaintiff's] objective in naming the [defendants] in this suit.") (citation omitted); *see also In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846–847 (8th Cir. 1988) (providing information to adversary in settlement waives work product protection).

– 7 –

Tauler Smith's Brief reCase No. 3:18–cv–840–GPC–BGS
Collusive Effect of Settlement AgreementConsolidated with 3:18–cv–1882–GPC–BGS

Dated: October 2, 2020

Respectfully submitted,

**Sergenian Ashby LLP**

By: */s/David A. Sergenian*
David A. Sergenian
*Attorneys for Counter-Defendant
Tauler Smith LLP*

– 8 –

Tauler Smith's Brief re
Collusive Effect of Settlement Agreement

Case No. 3:18–cv–840–GPC–BGS
Consolidated with 3:18–cv–1882–GPC–BGS

# CERTIFICATE OF SERVICE

In Re: Outlaw Laboratory, LP Litigation, Case No.: 3:18-cv-00840-GPC-BGS

I hereby certify that on October 2, 2020, copies of **Tauler Smith LLP's Brief Regarding the Collusive Effect of the Outlaw–Stores Settlement Agreement** were filed electronically through the Court's CM/ECG system, and served by U.S. mail on all counsel of record unable to accept electronic filing.

**Sergenian Ashby LLP**

By: */s/David A. Sergenian*
David A. Sergenian
*Attorneys for Counter-Defendant*
*Tauler Smith LLP*