UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORIES, LP LITIGATION | Case No.:  18-cv-840-GPC-BGS |
| | **ORDER:** |
| | **(1) APPROVING THE PROPOSED DISMISSAL OF ACTION BETWEEN THE STORES AND OUTLAW DEFENDANTS, AND PERMITTING THE SETTLING PARTIES TO FILE A NEW JOINT MOTION; AND** |
| | **(2) DIRECTING THE STORES TO FILE AN AMENDED MOTION FOR CLASS CERTIFICATION** |
| | **[ECF Nos. 179, 201, 249]** |

Pending before the Court, related to the putative class action presented by the Counterclaimants and Third-Party Plaintiffs in the case, is a Joint Notice of Settlement. (ECF No. 249.)  The Joint Notice was filed by the "Stores" (consisting of Counterclaimant Roma Mikha, Inc., and Third-Party Plaintiffs NMRM, Inc. and Skyline

1

1  Market, Inc.) and the "Outlaw Defendants" (consisting of Outlaw Laboratory, LP,

2  Michael Wear, and Shawn Lynch)—the parties to be collectively referred to as the

3  "Settling Parties."  Having considered the record and the procedural history in this case,

4  the Court concludes that the Settling Parties may provide a new joint motion to dismiss,

5  without needing to provide "class notice" pursuant to *Diaz v. Tr. Territory of Pac.*

6  *Islands*, 876 F.2d 1401 (9th Cir. 1989) ("*Diaz*").

7         The Stores have indicated that they still seek to certify the "Payment Class."  (*See*

8  ECF Nos. 179, 274.)  However, the original Motion for Class Certification, the record

9  basis for the request to certify the Payment Class, is largely unworkable given the

10  developments that occurred in this lawsuit such as the Settlement between the Stores and

11  Outlaw Defendants.  Therefore, the Court **DIRECTS** the Stores to file an amended

12  motion for class certification that accounts for the altered circumstances.[1]

13  **I.     RELEVANT BACKGROUND**

14         **A.     Procedural History**

15         As part of this lawsuit, the Stores filed a class action counterclaim against Tauler

16  Smith LLP ("Tauler Smith") and the Outlaw Defendants.  (*See, e.g.*, ECF No. 114.)  The

17  Stores moved for class certification on April 2, 2020 under Federal Rules of Civil

18  Procedure ("Rules") 23(b) and (c), and requested certification of three different classes:

19  the "Threatened Stores," the "Sued Stores," and the "Payment Class."  (*See* ECF No.

20  179-1 at 13–14.[2])  At the same time, the Stores conditionally withdrew their motion to

21  certify the first two classes on August 17, 2020.  (ECF No. 274.)  According to the

---

[1] Relatedly, the Court denies as moot the Joint Motion for Leave to File Opposition,
(ECF No. 201,) which originally requested leave for the Outlaw Defendants to respond to
the Stores' Motion for Class Certification.

[2] References to specific page numbers in a document filed in this case correspond to the
page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

Stores, the Settlement between them and the Outlaw Defendants—combined with an injunction prohibiting the Outlaw Defendants from re-initiating any activity that formed the basis of the Stores' initial claims against them—would moot the need for class certification of these two classes.  (*Id.* at 2.)

The Stores and Outlaw Defendants signed the Settlement on June 24, 2020.  (*See* ECF No. 359-1 at 14.)  And on July 7, 2020, the Settling Parties filed a Joint Notice of Settlement and Request for Entry of Stipulated Injunction.  (ECF No. 249.)

Tauler Smith objected.  (ECF No. 250.)  Upon multiple briefings, (*see* ECF Nos. 252–54, 261,) the Court issued an Order on September 15, 2020.  (ECF No. 290.)  The Court denied the Settling Parties' request for injunction, and directed the Stores to produce a copy of the Settlement.  While the Court found that Tauler Smith lacked standing to object and that Rule 23(e) is "inapplicable" to the Settlement, the Court concluded it still had a *sua sponte* duty to review the need for class notice pursuant to *Diaz*, 876 F.2d at 1408–11.  The Court directed the parties to provide supplemental briefs after the copy of the Settlement was produced—to which they did, (ECF Nos. 308, 359.)

The Court conducted a hearing on March 12, 2021.  (ECF No. 353.)  Recognizing that part of the obstacles in providing a *Diaz* notice would be securing contact information of the relevant individuals, the Court directed parties to jointly inform the Court whether class notice would be possible, at least for certain stores that Tauler Smith identified after further discovery pursuant to the Magistrate Judge's January 12, 2021 Order, (ECF No. 346.)  On March 19, 2021, the parties filed a Joint Statement, explaining their respective positions.  (ECF No. 354.)

## B.    Select Details of the Settlement

Under the Settlement, the Outlaw Defendants would pay $125,000 to the IOLTA of Gaw Poe, the counsel representing various stores that are part of the Settlement (including the Stores).  Once these stores receive payment, "the parties will file a

1   stipulated dismissal with prejudice." (ECF No. 359-1, §§ I.2, 7.)  Relatedly, these stores,

2   "for themselves, and all who may now or in the future claim, by, through or under them,

3   hereby fully and finally release, acquit, and forever discharge" the Outlaw Defendants.

4   (*Id.* § 2.2.)

5        Michael Wear and Shawn Lynch would also agree to testify live at trial without

6   needing a subpoena.  Absent death or "a legally cognizable Act of God," a violation

7   would amount to liquidated damages of $50,000 (per violation).  (*Id.* § I.5.)

8        The signing parties (referred to in the Settlement as "Parties," which consist of the

9   aforementioned stores and the Outlaw Defendants) intend the Settlement to "be in the

10  broadest scope possible." (*Id.* § 3.1.)  They intend that the Settlement "encompass all

11  conceivable causes of action and claims held, up to the date of execution of this

12  [Settlement], by any of the Parties . . . ." (*Id.*)  These Parties further intend that the

13  Settlement "resolves all dealings of the Parties from the beginning of time up to the date

14  of execution," (*id.,*) and completely satisfies "all causes of action as are, were or could

15  have been asserted in the Lawsuit between the Parties, . . . and all other persons . . . who

16  might in any way be claimed to be legally responsible or liable, for the claimed

17  occurrences," (*id.* § 3.2.)  The scope of release does not apply to any claims against

18  Tauler Smith.  (*Id.*)

19       In addition, the Settlement contains restriction clauses against Gaw Poe.  "Gaw

20  Poe agrees that none of its attorneys . . . will advertise, solicit, or represent any new

21  clients for the purpose of bringing claims against [the Outlaw Defendants] related to any

22  claim allegedly resulting from or occurring in connection with the conduct of Outlaw set

23  forth in the Lawsuit." (*Id.* § I.9.)  Gaw Poe and the stores participating in the Settlement

24  "agree that they will not cooperate or assist in any manner any non-party with regard to

25  any claims that non-party may or is asserting against [Outlaw Defendants]." (*Id.* § I.10.)

26  / / /

27

28

4

## II.   DISCUSSION

### A.   Nature of the Settlement

"Ordinarily, settlement does not require judicial review and approval."  *Ann. Manual Complex Lit.* § 13.14 (4th ed. 2020); *accord Epstein v. MCA, Inc.*, 50 F.3d 644, 666 (9th Cir. 1995) (discussing how "court approval of ordinary settlements is not required"), *rev'd on other grounds sub nom. Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996); *see also In re Sept. 11 Prop. Damage Litig.*, 650 F.3d 145, 151 (2d Cir. 2011).  While courts must approve settlements in class actions, *see* Fed. R. Civ. P. 23(e), the Court reiterates from its September 15, 2020 Order that "settlements made *before* a class is certified are not governed by Rule 23," and therefore "Rule 23(e) is inapplicable." (ECF No. 290 at 9–10 (emphasis in original).)

The cases presented by Tauler Smith arguing the need for court approval presume the existence of a certified class.  A review of the Settlement's terms demonstrates that the Settlement is limited to individual claims by individual stores.[3]  Tauler Smith cites various provisions in the Settlement to argue that the Settlement dismisses "Payment Class's claims against Outlaw," (ECF No. 359 at 4), but a careful reading of these provisions leads the Court to conclude otherwise.

First, Section 2.2 of the Settlement states as follows: "The Stores [which under the Settlement is defined as a coalition of stores beyond Roma Mikha, Inc., NMRM, Inc., and Skyline Market, Inc.] for themselves, and all who may now or in the future claim, by, through or under them, hereby fully and finally release . . . [the Outlaw Defendants]." Tauler Smith takes issue with the phrase "all who may now or in the future claim, by, through or under them" and argues that this phrase refers to the Payment Class.  This is

---

[3] As a result, the Court disagrees with Tauler Smith's characterization that Gaw Poe misrepresented to the Court about the Settlement, (*see* ECF No. 359 at 7 n.4).

1    incorrect.  The "all" who may claim a lawsuit is restricted by the immediately subsequent

2    condition "by, through or under them," in which the pronoun "them" refers to the

3    coalition of specific stores.  In other words, the entity releasing, acquitting, and forever

4    discharging the claim is not a class entity, but the group of stores expressly listed in the

5    first page of the Settlement.  (*See* ECF No. 359-1 at 6.)

6        Next, Sections 3.1 and 3.2 discuss the scope of the release, and while the

7    Settlement attempts to cover many contingencies, its scope is still limited to and between

8    the "Parties," a term again expressly defined in the first page of the Settlement.  (*Id.*)  In

9    fact, the passages in Sections 3.1 and 3.2 quoted by Tauler Smith, (*see* ECF No. 359 at

10   5,) prove the Court's point.  The Settlement "encompass[es] all conceivable causes of

11   action . . . *by any of the Parties*," "resolves all dealings *of the Parties*," and satisfies "all

12   causes of action as are, were or could have been asserted in the Lawsuit *between the*

13   *Parties*."  (ECF No. 359-1, §§ 3.1, 3.2 (emphases added).)

14       Section 3.1 does include a provision stating the following: "It is the intention of the

15   Parties to this Agreement that this Agreement be in the broadest scope possible."

16   However, "the broadest scope" is clearly confined to the universe of claims between and

17   among "the Parties."  An alternative reading as presented by Tauler Smith would render

18   most (if not all) of the other language in Sections 3.1 and 3.2 superfluous.  More

19   importantly, it would create an odd scenario where parties are signing a contract that

20   binds non-signatories.  The Court avoids such construction.  *Cf.* 11 *Williston on*

21   *Contracts* § 32:5 (4th ed. 2015) ("An interpretation which gives effect to all provisions of

22   the contract is preferred to one which renders part of the writing superfluous, useless or

23   inexplicable.").  In sum, the Court understands the Settlement to mean that it does not

24   bind a store that did not join the Settlement.  This is in line with the Stores'

25   characterization of the Settlement's scope.  (*See* ECF No. 308 at 2 n.1 ("And as the

26   Stores have noted numerous times, they have no *power* to release claims of absent class

27

28

members even if they wanted to." (emphasis in original)); *see also* ECF No. 359-1 at 16 ("Outlaw would remain liable to the other victims of the Enterprise, if those stores decided to sue.").)

Finally, Tauler Smith references the restriction clauses, which would prohibit Gaw Poe from advertising, soliciting, or representing "any new clients" for suing the Outlaw Defendants "related to any claim . . . in connection with the conduct of Outlaw set forth in the Lawsuit," or even cooperating with any non-party, (ECF No. 359-1, §§ I.9, 10). This language is relevant with respect to, *infra*, the need for *Diaz* notice and potential implications on class certification that the Stores still seek.  But these provisions do not lead the Court to believe that the Settlement covers more than the claims among individual parties.  At worst, stores that were not part of the Settlement may still sue the Outlaw Defendants.  Only then will the issue arise whether Gaw Poe is allowed to represent and/or assist these other stores when the restriction clauses are potentially illegitimate, *see* Cal. R. Pro. Conduct 5.6 (formerly Rule 1-500).

In conclusion, even after a review of the Settlement, there is no reason to believe that the Settlement implicates the putative class.  Therefore, it is unnecessary to review and approve the Settlement under Rule 23(e).

**B.    Class Notice Pursuant to *Diaz***

**1.    Analysis of the Factors**

The Court's September 15, 2020 Order noted the possible need for "class notice" pursuant to *Diaz*, 876 F.2d at 1408–11, even if the Settlement did not require review and approval under Rule 23(e).  (ECF No. 290 at 10–12.)  Upon review of the Settlement, the Court concludes that notice is not required.  Under *Diaz*, The Court is directed to look to three factors when deciding on the need for class notice:

(1) class members' possible reliance on the filing of the action if they are likely to know of it either because of publicity or other circumstances, (2) lack of adequate time for class members to file other actions, because of a

7

18-cv-840-GPC-BGS

1

2

3

      rapidly approaching statute of limitations, (3) any settlement or concession of class interests made by the class representative or counsel in order to further their own interests.

4

5

6

7

876 F.2d at 1408.  The Court previously ruled that the first factor is neutral.  As to the second factor, the Court previously found that it does not weigh in favor of providing notice to the putative class.  (*See* ECF No. 290 at 10–11.)  Having reviewed the Settlement Agreement, the Court maintains its earlier analysis.

8

      As to third factor, the Court considers:

9

10

11

12

13

      the terms of the settlement, particularly the amount paid the plaintiff in purported compromise of his individual claim and the compensation to be received by plaintiff's counsel, in order to insure that, under the guise of compromising the plaintiff's individual claim, the parties have not compromised the class claim to the pecuniary advantage of the plaintiff and/or his attorney.

14

15

16

*Del Rio v. CreditAnswers, LLC*, No. 10CV346-WQH-BLM, 2011 WL 1869881, at *2 (S.D. Cal. May 16, 2011) (quoting *Shelton v. Pargo, Inc.*, 582 F.2d 1298, 1315 (4th Cir. 1978)).

17

18

19

20

21

22

      Upon reviewing the Settlement's terms, the Court concludes that the third factor is neutral.  As to the payment of $125,000,[4] the terms make it clear it is the stores participating in the Settlement that are receiving payment.  Outlaw Defendants must pay "to Gaw Poe's IOLTA," (ECF No. 359-1, § I.2,) and the parties agreed to stipulate dismissal "[a]fter the Stores [which include all participating stores] receive the payment called for Section I(2)," (*id.* § I.7.)  Even under Tauler Smith's calculation that $86,060

23

24

25

26

27

[4] Tauler Smith argues that the amount is $125,000 to $225,000.  (*See* ECF No. 359 at 9 n.6.)  However, the extra $100,000 is contingent on both Michael Wear and Shawn Lynch failing to testify at trial ($50,000 for each breach), which is unlikely.

28

1   will go to Gaw Poe, the Court does not consider such amount to constitute an unjust

2   enrichment, as Tauler Smith implies.[5]   Considering the age of the case, the complexity of

3   the litigation, and likely litigation expenses, the Court agrees with the Settling Parties that

4   not much will be left after accounting for litigation costs—especially when Defendants

5   Mr. Wear and Mr. Lynch reported that Tauler Smith spent at least $162,722 in mailing

6   demand letters as part of the alleged scheme, (ECF No. 308 at 4 n.2.)

7         In the hearing on March 12, 2021, the Court expressed concerns relating to the

8   terms of the Settlement.  According to Section I.10, Gaw Poe and the stores participating

9   in the Settlement "will not cooperate or assist *in any manner* any non-party with regard to

10  any claims that non-party may or is asserting against Outlaw Laboratory."  (ECF No.

11  359-1 at 8 (emphases added).)  And under Section I.9, Gaw Poe, the counsel that is

12  potentially the most knowledgeable and experienced on the matter, might not be allowed

13  to represent them, (*id.*,) or alternatively become entangled in a lawsuit and/or

14  professional responsibility proceeding over the apparent tension between the Settlement

15  and the California Rules of Professional Conduct.  *See* Cal. R. Pro. Conduct 5.6.

16        Gaw Poe seeks to be class counsel for the putative class members after settling

17  with Outlaw Defendants and agreeing to a number of professional restrictions.  Under

18  such circumstances, it is unclear how counsel will use evidence that implicates both

19  Tauler Smith and Outlaw Defendants.  Further, Gaw Poe must craft arguments against

20  Tauler Smith, yet must stay vigilant so that its prosecution of the case does not expose

21  Outlaw Defendants to any liability.  The Court is not saying that navigating such a course

22  / / /

23

24

25  [5] Relatedly, the Court disagrees with Tauler Smith's argument that Gaw Poe "improperly
    circumvent[ed] the procedure for seeking fees and costs from the Court," (ECF No. 359

26  at 9 n.6.)  The case law supporting such claim assumes the existence of a certified class.
    There is none here.

27                                                    9

28                                                                              18-cv-840-GPC-BGS

1   is impossible.  But it will at least be tricky, potentially hindering Gaw Poe from being the

2   fully zealous advocate that class members would need in the case.

3          While these potential conflicts initially led the Court to consider providing notice

4   to putative class members, the Court now concludes that these considerations are not the

5   basis for *Diaz* notice and are best addressed in considering the motion for class

6   certification that will be amended, *infra* Section II.D.  With two of the factors being

7   neutral and one factor not weighing in favor of a notice, the Court will not require *Diaz*

8   notice to be given to putative class members and will entertain the Settling Parties'

9   request to dismiss under the terms of the Settlement.

10                  **2.     Logistical Challenges to the Notice**

11         Even if the Court found that *Diaz* notice was required, a complicating set of facts

12   relates to identifying such putative class members.  The parties have filed a Joint

13   Statement on the issue.  (ECF No. 354.)  According to it, Tauler Smith originally

14   produced a list of 107 stores and their addresses, (*see id.* at 3–4,) and pursuant to the

15   Magistrate Judge's January 12, 2021 Order, (ECF No. 346,) produced a list of 34

16   additional stores and their contact information, (*see* ECF No. 354 at 4.)  The Stores

17   inform the Court that this cumulative list is grossly inadequate, and that Tauler Smith's

18   representation of receiving settlements from only 141 stores amounting to $377,875 "is

19   just abjectly false."  (*See id.* at 4–5.)

20         The Court sympathizes with the Stores' frustration.  There is reason to believe that

21   the list available at the time of this Order is far from the complete picture, as indicated by

22   the Magistrate Judge's January 12, 2021 Order: "[The invoices produced by Outlaw

23   Laboratory, LP] show Tauler Smith received settlements from *hundreds* of additional

24   stores not identified in the only responsive document produced by Tauler Smith and show

25   total deposits of $1,183,886.13 . . . ."  (ECF No. 346 at 9 (emphasis added).)  Thus, even

26   after accounting for the newly provided 34 stores and their corresponding settlement

27

28

18-cv-840-GPC-BGS

amounts (supposedly Tauler Smith's attempt to comply with the Magistrate Judge's Order), significant discrepancy exists.

Perjury and misrepresentation in front of this Court will not be tolerated, and the Court will take up such issues as presented and proper under the law.  In the meantime, the Court concurs with the Stores that it is questionable whether notice could even be provided to a significant percentage of the putative class members.

## C.    New Joint Motion to Dismiss

While the Settling Parties do not need court approval or class notice, the Court finds a new joint motion to dismiss to be necessary for a proper resolution of the matter. The original Joint Notice of Settlement and Request for Entry of Stipulated Injunction, (ECF No. 249,) requested in part an injunction that the Court denied, (*see* ECF No. 290,) and the document itself is unclear whether the issue of dismissal was a severable matter that the Court could rule on independently.  To maximize clarity, the Court finds it appropriate for the Settling Parties to submit a new joint motion.

## D.    The Stores' Class Certification Motion

With the dispute between the Stores and Outlaw Defendants largely resolved, the Court still needs to decide on pending class certification issues, particularly ones related to the Payment Class pursuant to Rule 23(b)(3).  The Stores originally moved to certify three classes, the Threatened Stores, the Sued Stores, and the Payment Class.  However, the Stores conditionally withdrew their motion to certify the Threatened Stores and Sued Stores, arguing that the Settlement, "combined with an injunction prohibiting resumption of [Outlaw Defendants'] challenged conduct, would moot the need." (ECF No. 274.)  As of now, the Stores request only to certify the Payment Class.

Developments in this case have made various parts of the Stores' certification request (including "conditionally" retracting parts of it) unworkable if the basis for the request is from the moving documents on the record.  As a brief example, the underlying

18-cv-840-GPC-BGS

documents do not account for the Settlement, *supra* pages 9 to 10 of this Order, or the Court's September 15, 2020 Order which denied the Settling Parties' request for a permanent injunction.  At this point, it is not possible for the Court to parse out what is salvageable from the original Motion.  Accordingly, the Court **DIRECTS** the Stores to file an amended motion for class certification, in which parties will have a renewed opportunity to respond and reply.

## III.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the Settling Parties may file a new joint motion to dismiss the Stores' actions against the Outlaw Defendants. In addition, the Court **DIRECTS** the Stores to file an amended motion for class certification.  The Court will present a briefing schedule on this new motion in a subsequent order.  The Court **DENIES** as moot the Settling Parties' Joint Motion for Leave to File Opposition to Motion for Class Certification, (ECF No. 201.)

**IT IS SO ORDERED.**

Dated:  March 30, 2021

Hon. Gonzalo P. Curiel
United States District Judge

12

18-cv-840-GPC-BGS