# Exhibit A

## AMENDED SETTLEMENT AGREEMENT AND RELEASE

This Amended Settlement Agreement and Release ("Agreement") is executed by and among Outlaw Laboratory, L.P., Shawn Lynch, and Michael Wear ("Outlaw Laboratory"), and Roma Mikha, Inc., Big City Liquor, Servall Market Inc., Cardiff Gas, Inc., Hillcrest Smoke Shop, Ban & Rami Inc. dba Magic Market, Point Loma Liquor, Inc., Kalyana, Inc. dba Farmers Liquor Store, Little Brown Jug Liquor, HH Eagles Market, Bel Air Market, F&F Food Bargain, Inc. dba Food Bargain Market, Sunset Mini Mart, Inc., Midway Cigars & Smoke Shop, Midway M3, Inc. dba Shell Gas Station, Greene Cat Liquors, Criscola's Liquor Store, Blaze Smoke Shop, EBM Jr. Market, Ideal Market; Eashou, Inc., Kachi Enterprises, Inc., Main California, Inc., R & M Palm, Inc., Zaya Enterprises, Inc., Fountain Trading Corp., and Third-Party Plaintiffs NMRM, Inc. and Skyline Market, Inc. ("The Stores"), all of whom may be collectively referred to as "Parties."

### WITNESSETH

WHEREAS Outlaw Laboratory filed suit against The Stores, amongst others, in the lawsuit styled, *In re Outlaw Laboratory, LP Litigation*, Case No. 3:18–CV–840–GPC–BGS ("Lawsuit") to collect money claimed to be owed.

WHEREAS, three Stores have filed counterclaims and third-party claims against Outlaw Laboratory, set forth in the operative pleading titled "Second Amended Counterclaims of Roma Mikha, Inc. and Third-Party Claims of NMRM, Inc. and Skyline Market, Inc.," (hereafter the "Counterclaims").

WHEREAS, the Parties wish to settle the Stores have or may have against Outlaw, but not affect in any manner whatsoever any other claims as between The Stores and Tauler Smith, LLP, Robert Tauler, Matthew Smith, or Leticia Kimble.

WHEREAS, this Agreement is intended to satisfy and extinguish all past, present and future claims and causes of action that the Stores may have against Outlaw Laboratory, whether asserted or otherwise. The Parties therefore agree as follows:

### I.   CONSIDERATION

1)   The Stores and their counsel must execute and deliver this signed Agreement to The Reagan Law Firm via email at sean@reaganfirm.com, not later than 8:00 p.m. CST on April 23, 2021.

1

2) Outlaw Laboratory must pay the amount of One Hundred Twenty Five Thousand and 00/100 Dollars ($125,000), which has already been paid, and the receipt of which is acknowledged by the Stores.

3) Outlaw Laboratory—specifically, Michael Wear and Shawn Lynch—made themselves available for an interview with The Stores' counsel on June 25, 2020 or June 26, 2020. Mr. Wear and Mr. Lynch agreed to provide truthful answers to the questions put to them by the Stores' counsel, to the best of their knowledge and ability. The interview(s) are subject to the mediation privilege, and nothing said during the interview constitutes any waiver of the attorney–client privilege or any other applicable privilege. Outlaw Laboratory—specifically, Michael Wear and Shawn Lynch—agreed to execute truthful declarations, to be prepared by the Stores' counsel, based on information obtained during the interview(s) and documentation or information provided by Outlaw during the Lawsuit. The interview(s) were recorded.

4) Outlaw Laboratory—specifically, Michael Wear and Shawn Lynch—agree to testify live at trial without the Stores having to issue a subpoena. The Stores must provide each Outlaw witness at least 30 days written notice of the trial setting, notice to be provided to Mr. Wear and Mr. Lynch at an email address and physical address to be provided by Wear and Lynch. If any Outlaw witness fails to appear for trial after receiving written notice for any reason other than death or a legally cognizable Act of God, then each Outlaw witness that fails to appear must pay The Stores, as a collective group, liquidated damages in the amount of Fifty Thousand and 00/100 Dollars ($50,000).

5) The parties will file a stipulated dismissal with prejudice with regard to all claims that have been asserted or could have been asserted in the Counterclaims.

6) The Parties agree to the mutual releases set forth below.

7) Gaw Poe agrees that none of its attorneys, employees, agents, or contractors will advertise or solicit any new clients for the purpose of bringing claims against Outlaw Laboratory related to any claim allegedly resulting from or occurring in connection with the conduct of Outlaw set forth in the Lawsuit. The Parties agree that nothing in the terms of this settlement is intended to operate as a restriction on the right of Gaw Poe to practice law within the meaning of Rule 5.6(b)

2

of the ABA Model Rules of Professional Conduct in any jurisdiction in which the firm may practice or whose rules may otherwise apply.

8) The Stores and Gaw Poe agree that they will not cooperate or assist in any manner any non–party with regard to any claims that non–party may or is asserting against Outlaw Laboratory.

## II. RELEASE OF LIABILITY

2.1 For and in consideration of the matters as referenced above, Outlaw Laboratory expressly warrants and represents the following to The Stores for itself, its legal representatives, successors, and assigns:

  a. The individual signing on behalf of Outlaw Laboratory is legally competent and authorized to execute this Agreement; and

  b. Outlaw Laboratory has not assigned, pledged or otherwise in any manner whatsoever sold or transferred, either in writing or otherwise, any right, title, interest or claim which Outlaw Laboratory has or may have by reason of the incidences described in the Lawsuit identified above, or any matters arising out of or related thereto.

2.2 The Stores, for themselves, and all who may now or in the future claim, by, through or under them, hereby fully and finally release, acquit, and forever discharge Outlaw Laboratory, its partners, owners, employees, employers, representatives, attorneys, insureds, insurers, predecessors, successors, assigns, affiliates, subsidiaries, parent companies, and all other persons, firms, companies or corporations who might in any way be claimed to be legally responsible or liable, directly or indirectly, to The Stores, their agents, employees, employers, representatives, attorneys, insureds, insurers, heirs, executors, administrators, predecessors, successors, assigns, and affiliates, resulting from or in any manner, and any and all damages resulting therefrom, from the beginning of time up to the date of execution of this Agreement.

***Notwithstanding anything contained herein to the contrary, The Stores' release set forth herein in no way applies in any way whatsoever to any claims they have or may have against Tauler Smith, LLP, Robert Tauler, Matthew Smith, or Leticia Kimble.***

2.3     Furthermore, for and in consideration of the matters as referenced above, each Store expressly warrants and represents the following to Outlaw Laboratory, for themselves, their legal representatives, successors, and assigns:

    a.  Each Store is legally competent to execute this Agreement; and

    b.  No Store has assigned, pledged or otherwise in any manner whatsoever sold or transferred, either in writing or otherwise, any right, title, interest or claim which a Store has or may have by reason of the incidences described in the Lawsuit identified above, or any matters arising out of or related thereto.

2.4     Each party to this Agreement represents and warrants that it has carefully read this Agreement, that it has consulted with its respective counsel before the execution of this instrument, that it fully understands the same, that all terms are deemed to be contractual and not mere recitals, and that it is knowingly and voluntarily executing this Agreement for the purpose of concluding this lawsuit, arbitration, or any related claims.

2.5     No other promises, assurances, or representations are contemplated by this Agreement, except what is expressly set out in writing in this Agreement.

2.6     No Party to this Agreement has relied upon any representation or expression of fact by any party or any agent of any party with respect to all matters in dispute or any matter occurring prior to the execution of this agreement except as set forth herein.

2.7     The parties acknowledge that, except as expressly set forth herein, no representations of any kind or character have been made by or on behalf of one party to induce the other into the execution of this document and that this Agreement constitutes the complete understanding and agreement between the parties and supersedes any and all prior agreements, promises or inducements concerning this subject matter, if any. By signing this Agreement, the parties expressly disclaim any reliance on any representations, promises, or other statements by the other, his/her/its representatives, agents or attorneys, except to the extent such representations, promises or other statements are expressly set forth herein.

### III. SCOPE OF THIS RELEASE

3.1 It is the intention of the Parties to this Agreement that this Agreement be in the broadest scope possible. It is also the intention of the Parties that this Agreement encompass all conceivable causes of action and claims held, up to the date of execution of this Agreement, by any of the Parties, their heirs, executors, administrators, legal representatives, successors, and assigns, whether sounding in tort, contract, equity or any other legal theory. It is the further intention of the Parties to this Agreement that this Agreement resolves all dealings of the Parties from the beginning of time up to the date of execution of this Agreement.

3.2 This Agreement is intended to constitute complete accord and satisfaction for all causes of action as are, were or could have been asserted in the Lawsuit between the Parties, their respective agents, employees, employers, representatives, attorneys, insureds, insurers, heirs, executors, administrators, predecessors, successors, assigns, affiliates, subsidiaries, parents companies and all other persons, firms, companies or corporations who might in any way be claimed to be legally responsible or liable, for the claimed occurrences, directly or indirectly, from the beginning of time up to the date of execution of this Agreement. Notwithstanding anything contained herein to the contrary, *The Stores' release set forth herein in no way applies in any way whatsoever to any claims they have or may have against Tauler Smith, LLP, Robert Tauler, Matthew Smith, or Leticia Kimble.*

3.3 Nothing in this Agreement shall be construed to release the Parties' obligations under the terms of this Agreement, including but not limited to the obligations detailed in section I above.

### IV. SUCCESSORS

4.1 This Agreement shall inure to the benefit of the Parties to the Agreement, as well as their respective agents, employees, employers, representatives, attorneys, insureds, insurers, heirs, executors, administrators, predecessors, successors, assigns, affiliates, subsidiaries, parents companies and all other persons, firms, companies or corporations who might in any way be claimed to be legally responsible or liable, directly or indirectly, for the claimed occurrences described in the Lawsuit identified above. *Notwithstanding anything contained herein to the contrary, The Stores' release set forth herein in no way applies in any way whatsoever to any claims they have or may have against Tauler Smith, LLP, Robert Tauler, Matthew Smith, or Leticia Kimble.*

## V. MISCELLANEOUS

5.1   The captions, headings and arrangements used in this Agreement are for convenience only and do not in any way affect, limit, amplify or modify the terms and provisions hereof.

5.2   This Agreement may be executed in two or more counterparts, and it shall not be necessary that any one of the counterparts be executed by all of the Parties hereto.  Each fully or partially executed counterpart shall be deemed an original, but all such counterparts taken together shall constitute but one and the same instrument. The effective date of this agreement shall be June 24, 2020.

5.3   This Agreement shall be construed and interpreted in accordance with the laws of the State of California. All parties agree that this Agreement shall be construed and interpreted under the laws of the State of California and applicable federal law, unless otherwise required by law. It is further understood and agreed that any dispute arising out of or related to this Agreement—with the express exception of the terms set forth in Section I(4)—must be resolved by a final and binding arbitration to be held before a single arbitrator appointed by the American Arbitration Association, such arbitration to be held in San Diego, California.

5.4.   In the event of any proceeding arising out of any disagreement between the Parties resulting from any provision of this Agreement, the prevailing party in any such proceeding shall recover all of such party's reasonable attorneys' fees and costs incurred in each and every such proceeding, including any and all appeals or petitions therefrom.

5.5   The parties hereto agree and acknowledge that good and valuable consideration supports this Agreement, including, but not limited to, payment, compromise of claims or forbearance.

5.6   Any provision of this Agreement held by a forum of competent jurisdiction to be invalid or unenforceable shall not impair or invalidate the remainder of this Agreement and the effect thereof shall be confined to the provision held to be invalid or illegal.

5.7   The signatories to this Agreement recognize and agree that they and their attorneys have had a full and fair opportunity to review and comment on this Agreement and to suggest changes thereto. Accordingly, should any court ever conclude that there is any ambiguity in this Agreement, no party to this Agreement will assert that the ambiguity should be construed against the other party because the other party or its attorneys drafted the provision in question.

5.8   Each party agrees to execute and deliver such other and further instruments and will do such other and further acts as may be necessary or desirable to fully carry out the intent and purpose of this Agreement.

5.9   The Parties must keep the contents of this Settlement Agreement confidential and may not divulge its terms to any person or entity. Disclosure of the mere existence of this Settlement Agreement shall not constitute a breach of this provision. The Parties agree to maintain the confidentiality of any documents or information designated as confidential pursuant to any Protective Order entered in the Lawsuit.

THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE STORES AND OUTLAW LABORATORY WITH REGARD TO THE MATTERS SET FORTH IN IT AND SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE EXECUTORS, ADMINISTRATORS, PERSONAL REPRESENTATIVES, HEIRS, SUCCESSORS, AND ASSIGNS OF EACH. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THIS AGREEMENT IN NO WAY APPLIES TO ANY CLAIMS THE STORES HAVE OR MAY HAVE AGAINST TAULER SMITH, LLP, ROBERT TAULER, MATTHEW SMITH, OR LETICIA KIMBLE.

THERE SHALL BE NO ORAL MODIFICATIONS OF THIS AGREEMENT.

Dated: April 20, 2021

_____
Raid "Roy" Mikha,
for NMRM, Inc.

Dated: April 20, 2021

_____
Raid "Roy" Mikha,
for Roma Mikha, Inc.

Dated: April ___, 2021

_____
Fred Mokou,
for Skyline Market, Inc.

Dated: April 2C, 2021

_____
Name: Shawn Lynch,
for Outlaw Laboratory, LP

5.8 Each party agrees to execute and deliver such other and further instruments and will do such other and further acts as may be necessary or desirable to fully carry out the intent and purpose of this Agreement.

5.9 The Parties must keep the contents of this Settlement Agreement confidential and may not divulge its terms to any person or entity. Disclosure of the mere existence of this Settlement Agreement shall not constitute a breach of this provision. The Parties agree to maintain the confidentiality of any documents or information designated as confidential pursuant to any Protective Order entered in the Lawsuit.

THIS AGREEMENT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE STORES AND OUTLAW LABORATORY WITH REGARD TO THE MATTERS SET FORTH IN IT AND SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF THE EXECUTORS, ADMINISTRATORS, PERSONAL REPRESENTATIVES, HEIRS, SUCCESSORS, AND ASSIGNS OF EACH. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THIS AGREEMENT IN NO WAY APPLIES TO ANY CLAIMS THE STORES HAVE OR MAY HAVE AGAINST TAULER SMITH, LLP, ROBERT TAULER, MATTHEW SMITH, OR LETICIA KIMBLE.

THERE SHALL BE NO ORAL MODIFICATIONS OF THIS AGREEMENT.

Dated: April ___, 2021

_____
Raid "Roy" Mikha,
for NMRM, Inc.

Dated: April ___, 2021

_____
Raid "Roy" Mikha,
for Roma Mikha, Inc.

Dated: April 20th, 2021

_____
Fred Mokou,
for Skyline Market, Inc.

Dated: April 2C, 2021

_____
Name: Shawn Lyu,
for Outlaw Laboratory, LP

7

Dated: April 20, 2021

_____
Shawn Lynch

Dated: April 20, 2021

_____
Michael Wear

**Attestation of Counsel**

I, Mark Poe, state under penalty of perjury that the Stores listed herein are the only stores I and my firm Gaw | Poe LLP represent with respect to Outlaw Laboratory. I further declare that I have notified, in writing, all of the Stores listed herein of the terms of this Agreement and the scope of the release of their claims set forth in Section 2.2 above. I further declare that as counsel for all of the Stores listed herein, I have full authority to bind them to the terms of this Agreement, including to make the release on their behalf as set forth in Section 2.2 above.

Dated: April 23, 2021

_____
Mark Poe
Counsel for the Stores