UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORIES, LP LITIGATION | Case No.: 18-cv-840-GPC-BGS<br><br>**ORDER DENYING SKYLINE MARKET'S MOTION FOR CLASS CERTIFICATION**<br><br>**[ECF No. 365]** |

Before the Court is Third-Party Plaintiff Skyline Market, Inc.'s ("Skyline Market") Motion for Class Certification ("Motion"), specifically moving to certify the "Payment Class" against Counter-Defendant Tauler Smith LLP ("Tauler Smith"). ECF No. 365. Upon considering the moving documents and the case record, the Court **DENIES** Skyline Market's Motion.

I. **RELEVANT BACKGROUND**

As this Court and the remaining Parties are aware, the instant Motion arises from the allegations that Tauler Smith, with the now-dismissed "Outlaw Defendants" (consisting of Outlaw Laboratory, LP, Michael Wear, and Shawn Lynch), engaged in a "scheme to defraud thousands of mom and pop convenience stores across the country,"

1

ECF No. 365-1 at 6.[1] Allegedly an "Outlaw Enterprise" (in violation of the Racketeer Influenced Corrupt Organizations Act ("RICO")) existed, which mailed fraudulent demand letters to stores across the country, threatening liability for selling "sexual enhancement products" unless the stores settled. *See generally* ECF No. 293 (Summary Judgment Order).

### A. Proposed Class

The operative complaint is the Second Amended Counterclaim and Third-Party Complaint ("SACC"), ECF No. 114. Skyline Market moves for class certification on the First, Second, and Third Causes of Action, which allege two violations of RICO, 18 U.S.C. § 1962(c) and (d), and seek "rescission" of the settlements that various stores entered to succumb to the Outlaw Enterprise's demand letters.

The proposed "Payment Class" presented by Skyline Market is the following:

> All retail entities in the United States that received a demand letter sent on behalf of Outlaw Laboratory, LP, in which Outlaw Laboratory threatened litigation over the entity's sale of 'sexual enhancement products,' and where the recipient thereafter paid money to Outlaw Laboratory, Tauler Smith LLP, or an agent of either to 'settle' the claim.

ECF No. 365 at 2; ECF No. 365-1 at 8. Skyline Market wishes to represent the proposed Payment Class, with the class counsel being Gaw Poe, the counsel currently representing Skyline Market, among other counter-claimants in this lawsuit.

### B. Procedural History

Originally, Skyline Market, along with Counterclaimant Roma Mikha, Inc. and Third-Party Plaintiff NMRM, Inc. (collectively "the Stores") moved to certify two other classes in addition to the Payment Class, the "Threatened Stores" and "Sued Stores." *See*

---

[1] References to specific page numbers in a document filed in this case correspond to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

ECF No. 179. Generally speaking, the Threatened Stores consisted of stores that received a demand letter but were thereafter not named as defendants in litigation brought by Outlaw Laboratory, LP, and the Sued Stores consisted of stores that were indeed sued. *See id.* at 1. The Threatened Stores were to be represented by NMRM, Inc., and the Sued Stores were to be represented by Roma Mikha, Inc.

At the same time, the Stores later conditionally withdrew their motion to certify the Threatened Stores and Sued Stores. ECF No. 274. The Stores did so because they signed a settlement with the Outlaw Defendants on June 24, 2020 ("2020 Settlement"), ultimately seeking to dismiss the Outlaw Defendants in this lawsuit. After multiple procedural iterations, *see, e.g.*, ECF Nos. 290, 353, the Court issued an Order on March 30, 2021, concluding that the Stores' actions against Outlaw Defendants may be dismissed upon the parties filing a new joint motion. *See* ECF No. 361.

Relevant to this Order, the Court has expressed some concerns about the 2020 Settlement's implications on the putative class. This is because under the terms of the 2020 Settlement, Gaw Poe and the Stores cannot expose the Outlaw Defendants to any liability—even though Gaw Poe and the Stores simultaneously seek to be the zealous advocate on behalf of the proposed class. *See* ECF No. 353 (hearing on March 12, 2021); ECF No. 361 at 9–10 (March 30, 2021 Order). The Court ultimately determined that these concerns go to whether class certification is appropriate, and not whether to approve dismissing the Outlaw Defendants, and thus concluded dismissal to be permissible upon the parties filing a new joint motion.

The Stores and Outlaw Defendants subsequently filed the Joint Motion to dismiss the Outlaw Defendants. ECF No. 362. In the Joint Motion, the parties also provided an updated version of the settlement that the parties signed in late April 2021 ("2021 Settlement"), ECF No. 362-1. The Court granted the Joint Motion and dismissed with prejudice the Stores' claims against Outlaw Defendants. ECF No. 363.

3
18-cv-840-GPC-BGS

In the same March 30, 2021 Order, the Court directed the Stores to file an amended class certification motion so that the class certification motion can account for the developments that have occurred in this lawsuit. Accordingly, Skyline Market filed the instant Motion which now only moves to certify the Payment Class against Tauler Smith. ECF No. 365. Tauler Smith filed an Opposition, ECF No. 368, and Skyline Market filed a Reply, ECF No. 369.

### C. Select Details of the 2021 Settlement

The 2021 Settlement provided by the Stores and Outlaw Defendants are similar in content to the 2020 Settlement. In exchange of certain stores dismissing the counterclaim, the Outlaw Defendants would pay $125,000, and Michael Wear and Shawn Lynch agreed to testify live at trial without needing a subpoena. *Compare* ECF No. 362-1 at 3, *with* ECF No. 359-1 at 6–7.

The most significant difference for the purpose of this class certification Order is that the 2021 Settlement removed the restriction on Gaw Poe's ability to represent new clients should the new clients wish to bring claims against the Outlaw Defendants in relation to this instant lawsuit. *Compare* ECF No. 362-1 at 3 (Section I.7), *with* ECF No. 359-1 at 8 (Section I.9).

At the same time, many restrictions against Gaw Poe remain. The amended provision, in part, states: "Gaw Poe agrees that none of its attorneys . . . will advertise or solicit any new clients for the purpose of bringing claims against [the Outlaw Defendants] related to any claim allegedly resulting from or occurring in connection with the conduct of Outlaw set forth in the Lawsuit." ECF No. 362-1 at 3. In addition, the following provision stays the same: "The [stores participating in the settlement] and Gaw Poe agree that they will not cooperate or assist in any manner any non-party with regard to any claims that non-party may or is asserting against [Outlaw Defendants]." *Id.* at 4 (Section I.8). The settling parties intend the 2021 Settlement to "be in the broadest scope

4

18-cv-840-GPC-BGS

possible." *Id.* at 6 (Section 3.1). "Nothing in this Agreement shall be construed to release the [settling parties'] obligations under the terms of this Agreement, including but not limited to the obligations detailed in section I above." *Id.* (Section 3.3).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 23 governs the certification of a class. A plaintiff seeking class certification must affirmatively show that the class meets the requirements of Rule 23. *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)). To obtain certification, a plaintiff bears the burden of proving that the class meets all four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy). *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). If these prerequisites are met, the court must then decide whether the class action is maintainable under Rule 23(b). *See United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).

The Court is required to perform a "rigorous analysis," which may require it "to probe behind the pleadings before coming to rest on the certification question." *Wal-Mart*, 564 U.S. at 350–51 (citations omitted). The merits of the class members' claims are "often highly relevant," as "a district court must consider the merits if they overlap with the Rule 23(a) requirements." *Ellis*, 657 F.3d at 981 (citations omitted). However, the Court should not conduct a mini-trial to determine if the class "could actually prevail on the merits of their claims." *Id.* at 983 n.8; *see also United Steel*, 593 F.3d at 808 (discussing how a court may inquire into the substance of the case to analyze Rule 23(a) factors, but also how "[t]he court may not go so far . . . as to judge the validity of these claims." (alterations in original)).

"The decision to grant or deny class certification is within the trial court's discretion." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010)

5

(citation omitted).  In deciding, the Court "must take the substantive allegations of the complaint as true but is also 'required to consider the nature and range of proof necessary to establish [the] allegations' of the complaint." *Al Otro Lado, Inc. v. Wolf*, 336 F.R.D. 494, 500 (S.D. Cal. 2020) (alteration in original) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir. 1982)).

### III. DISCUSSION

While the proposed Payment Class meets many of the conditions necessary for class certification, the Court concludes that Skyline Market and its counsel Gaw Poe cannot "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4) (adequacy), due to the restrictions set against them under the terms of the 2021 Settlement.  Skyline Market failed to meet its persuasive burden that Skyline Market and Gaw Poe can successfully prosecute Tauler Smith when their prosecution must in no way "assist in any manner" any non-party regarding "any claims" that the non-party may assert against the Outlaw Defendants, *see* ECF No. 359-1 at 8, whose actions are majorly entangled with that of Tauler Smith.  And because Skyline Market does not satisfy a prerequisite condition established under Rule 23(a), the Court declines to certify class.

#### A. Preliminary Matters

Before proceeding with the Rule 23(a) analysis, the Court rejects Tauler Smith's contentions that are not expressly grounded in Rule 23.  First, Tauler Smith asserts that the proposed class in the Motion is "entirely different" and broader than the proposed class in the operative complaint.  The Court disagrees.  To illustrate, the Court re-states the proposed classes in the two pleadings.  The proposed class provided in the SACC is:

> All business entities in the United States that received a demand letter substantially similar to the letter received by Skyline Market, and that subsequently paid or agreed to pay money to Tauler Smith LLP, Outlaw Laboratory, or an agent of either.

ECF No. 114 at 25.  The proposed class provided in the Motion is:

> All retail entities in the United States that received a demand letter sent on behalf of Outlaw Laboratory, LP, in which Outlaw Laboratory threatened litigation over the entity's sale of 'sexual enhancement products,' and where the recipient thereafter paid money to Outlaw Laboratory, Tauler Smith LLP, or an agent of either to 'settle' the claim.

ECF No. 365 at 2. Tauler Smith presents no binding authority indicating that a party moving for class certification is bound by the precise text of the operative complaint. *Cf.* 1 *McLaughlin on Class Actions* § 4.2 (17th ed. 2020) (hereinafter "*McLaughlin*") ("Courts are not bound by the class definition proposed in the complaint and have considerable flexibility to modify a proposed class definition that defines the class too narrowly, broadly, or imprecisely."). Indeed, it appears that recently district courts have gravitated towards considering certification other than that defined in the complaint, as long as "the proposed modifications [to the class definition] are minor, require no additional discovery, and cause no prejudice to defendants." *Davis v. AT&T Corp.*, No. 15CV2342-DMS (DHB), 2017 WL 1155350, at *2 (S.D. Cal. Mar. 28, 2017) (alteration in original) (quoting *In re: TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 590–91 (N.D. Cal. 2010)) (collecting cases).

Here the modifications are minor, require no additional discovery, and do not prejudice Tauler Smith. The proposed Payment Class is the set of aggrieved stores that the Stores have complained about all along, in which the stores were threatened with Tauler Smith's demand letter that accused them of selling illegal male enhancement products, and thereafter the stores settled with Tauler Smith at a much smaller sum than the liability stated in the demand letter. *See, e.g.*, ECF No. 293 at 5–8. And contrary to what Tauler Smith avers, the differences between the proposed class in the Motion versus the SACC *reduces* Tauler Smith's burden. For example, "retail entities" is narrower in scope than "business entities." And "a demand letter sent on behalf of Outlaw Laboratory, LP, in which Outlaw Laboratory threatened litigation" is more precise than

"a demand letter substantially similar to the letter received by Skyline Market." This is because in the initial proposed class, there is no additional clarification on what "substantially similar" means, and the demand letter can mean any demand letter, which inherently is more expansive than demand letters that were specifically sent by Outlaw Laboratory, LP.

Next, Tauler Smith argues that the proposed Payment Class is overbroad and not ascertainable. In the Ninth Circuit, there is no "ascertainability" requirement, as the Ninth Circuit concluded that Rule 23's enumerated requirements are exhaustive. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125–26 (9th Cir. 2017); *see also McLaughlin* § 4.2 (discussing that the Ninth Circuit rejected the ascertainability requirement by citing to *Briseno*). While Tauler Smith cites to several district court cases to frame that courts still "consider" the issue, Tauler Smith's characterization of these cases is greatly misleading. For example, *Del Valle v. Glob. Exch. Vacation Club*, 320 F.R.D. 50, 56 (C.D. Cal. 2017) discusses ascertainability for the sole purpose of rejecting the defendant's position that ascertainability is something courts in the Ninth Circuit still consider. This is also true for *Owino v. CoreCivic, Inc.*, No. 17-CV-1112 JLS (NLS), 2020 WL 1550218, at *13 (S.D. Cal. Apr. 1, 2020), *reconsideration denied*, No. 17-CV-1112 JLS (NLS), 2021 WL 120874 (S.D. Cal. Jan. 13, 2021). The other cases provided by Tauler Smith predate *Briseno*.

As to Tauler Smith's claim that the proposed class is overbroad, the determinative standard is whether "the class definition is reasonably co-extensive with Plaintiffs' chosen theory of liability." *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136–37 (9th Cir. 2016); *cf. Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 596 (9th Cir. 2012) ("[T]he relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading."). Here, the proposed Payment Class meets those parameters. Tauler Smith's overbreadth claim is

8

functionally grounded on the premise that these demand letters were not misrepresentative.  *See* ECF No. 368 at 16 ("The class . . . includes stores that were not misled . . . or that believed the demand letters to be accurate . . . ."). But such premise is ultimately challenging the merits of Skyline Market's theory of liability, which "is not appropriate for resolution at the class certification stage of this proceeding." *See Ruiz Torres*, 835 F.3d at 1136–37.

### B. Rule 23(a) Analysis

Numerosity, commonality, and typicality are met.  The proposed Payment Class, consisting of at least 141 sores, is numerous.  Next, class certification can resolve at least one common question of law and fact, such as whether Tauler Smith conducted the affairs of a RICO association-in-fact enterprise.  The experience of Skyline Market is also typical of what was experienced by the proposed Payment Class, since every member received a demand letter prepared by Tauler Smith.

However, the Court concludes Skyline Market and its counsel Gaw Poe are inadequate to serve as class representative and class counsel.  Skyline Market and Gaw Poe's obligations to be a vigorous advocate for the Payment Class materially conflict with the broad reach of the 2021 Settlement, in which Skyline Market and Gaw Poe pledged "they will not cooperate or assist in any manner any non-party with regard to any claims that non-party may or is asserting against [Outlaw Defendants]," ECF No. 359-1 at 8, when most (if not all) of the allegations against Tauler Smith also implicate the Outlaw Defendants.

#### 1. Numerosity

The Court finds the proposed Payment Class to be numerous.  The movant satisfies the numerosity requirement if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean impossibility, [however,] . . . only . . . difficulty or inconvenience in joining all members of the class." *Makaeff v. Trump Univ.,*

*LLC*, No. 3:10-CV-0940-GPC-WVG, 2014 WL 688164, at *7 (S.D. Cal. Feb. 21, 2014) (alterations in original) (quoting *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)). Although the requirement is not tied to a fixed numerical threshold, courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members. *See, e.g., Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 6300479, at *4 (S.D. Cal. Nov. 29, 2018) (citing *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988)). *See generally* 1 *Newberg on Class Actions* § 3:12 (5th ed. 2021) ("As a general guideline, however, a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone.").

The Court has already acknowledged the Magistrate Judge's observation that "Tauler Smith received settlements from hundreds of additional stores." ECF No. 361 at 10 (quoting ECF No. 346 at 9). At minimum, Tauler Smith admitted to receiving settlement payments from 141 stores. *Id.* This figure is certain, and it is sufficient. *See, e.g., Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015) ("[P]articularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met."); *see also Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (KSC), 2021 WL 1579251, at *3 (S.D. Cal. Apr. 22, 2021) ("[I]t is not necessary to state the exact number of class members when the plaintiff's allegations 'plainly suffice' to meet the numerosity requirement . . . ." (first alteration in original)).

### 2. Commonality

Skyline Market also satisfies the commonality requirement. Commonality "'depend[s] upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza*, 666 F.3d at 588 (second alteration in original) (citation omitted). The movant "must

demonstrate 'the capacity of classwide proceedings to generate common answers' to common questions of law or fact that are 'apt to drive the resolution of the litigation.'" *Id.* (citation omitted).

Here, common questions of law and fact abound, such as "whether Tauler Smith conducted the affairs of a RICO association-in-fact enterprise through a pattern of racketeering activity, e.g., through its use of the wires and mails in furtherance of a scheme to defraud the class members," "whether the Outlaw Enterprise constitutes an 'association-in-fact' enterprise, whether and to what extent Tauler Smith participated in conducting the affairs of the enterprise, and whether Tauler Smith acted with a sufficiently culpable mental state to warrant liability under RICO." ECF No. 365-1 at 15–16. After all, Skyline Market alleges that: (1) the Outlaw Enterprise sent a virtually identical demand letter to each of the stores; (2) the demand letters alleged the same liability for the stores selling sexual enhancement products; and (3) afterwards a settlement was entered at an amount much lower than the liability alleged in the demand letter. *Cf. Cohen v. Trump*, 303 F.R.D. 376, 382 (S.D. Cal. 2014) (finding commonality in an alleged RICO scheme for fraudulent marketing when there were common questions of whether the defendant made certain representations to the putative class members, and whether such representations were false and materially misleading). Any one of these issues of law or fact would satisfy the commonality requirement. *See Mazza*, 666 F.3d at 589 ("[C]ommonality only requires a single significant question of law or fact.").

Tauler Smith's Opposition focuses on how individual questions predominate as to causation, damages, the rescission remedy, and whether the proposed class members relied on the alleged fraud. *See* ECF No. 368 at 25–30. In doing so, Tauler Smith is conflating commonality under Rule 23(a)(2) with predominance under Rule 23(b)(2). "The commonality preconditions of Rule 23(a)(2) are less rigorous than the companion [predominance] requirements of Rule 23(b)(3)." *Kamakahi v. Am. Soc'y for Reprod.*

*Med.*, 305 F.R.D. 164, 183 (N.D. Cal. 2015) (alteration in original) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338)). Whether the individual inquiry overpowers these common questions of law and fact is a Rule 23(b)(2) issue. For purposes of commonality, however, Skyline Market met its burden of proof. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) ("Respondents are undoubtedly correct that members of the proposed class do not share every fact in common or completely identical legal issues. This is not required by Rule 23(a)(1). Instead, the commonality requirements asks [sic] us to look only for some shared legal issue or a common core of facts.").

### 3. Typicality

The claims of Skyline Market are also typical of the claims of the proposed Payment Class. Typicality is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis*, 657 F.3d at 984 (quoting *Hanon*, 976 F.2d at 508).

Here, Skyline Market received a demand letter that was prepared by "the attorney members of the Outlaw Enterprise," and settled thereafter at a sum much smaller than the original liability presented. ECF No. 114 at 11; *see also* ECF No. 365-10 at 6–8 (discussing Skyline Market's receipt of Tauler Smith's demand letter and the eventual settlement). So did the other members of the proposed Payment Class. *See, e.g.*, ECF No. 293 at 5–7, 10–12 (discussing the scheme and the meeting of retailers that Skyline

Market participated); ECF No. 365-5 (example settlement); ECF No. 365-9 at 21 (discussing other stores that received demand letters). As the Magistrate Judge observed, "the demand letters are essentially the foundation, or first step, of the scheme alleged," and "are the common act across . . . the foundation of the alleged scheme." ECF No. 177 at 17. Skyline Market's alleged experience—receiving a threatening demand letter and then settling with Outlaw Laboratory, LP for a fraction of the threatened liability—was "similar, if not identical, to the fact-pattern for other [Payment] Class members." *Pederson v. Airport Terminal Servs.*, No. EDCV1502400VAPSPX, 2018 WL 2138457, at *5 (C.D. Cal. Apr. 5, 2018).

In challenging typicality, Tauler Smith once again shifts focus to "individual issues that predominate over any other common issues," such as the circumstances behind each store's settlement. *See* ECF No. 368 at 19–20 (quoting *In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pracs.* Litig., No. 08MD1988 DMS WMC, 2011 WL 6325877, at *10 (S.D. Cal. Dec. 16, 2011)). Similar to the discussion *supra* pages 11–12, Tauler Smith "conflate[s] the . . . typicality inquir[y] with the more exacting predominance inquiry under Rule 23(b)(3)." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, No. MDL 06-1770 MHP, 2007 WL 3045995, at *4 (N.D. Cal. Oct. 18, 2007), *rev'd and remanded on other grounds*, 571 F.3d 953 (9th Cir. 2009). As Tauler Smith points out, it may be the case that some stores: sought advice of counsel versus not, investigated the claims made in the demand letter versus not, further negotiated in the process versus not, etc. But even if such variations existed, the Court does not view these variations as defeating typicality, since the representative claims only need to be "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 729 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d at 1020); *cf. Colman v. Theranos, Inc.*, 325 F.R.D. 629, 640 (N.D. Cal. 2018) (finding typicality despite "two potential storm clouds"—that some members of the class

invested in entities purchasing different types of Theranos stock, and that some funds signed releases that may have affected the members' claims whereas others did not).

Ultimately, the potential differences flagged by Tauler Smith mainly go to the availability of rescission, a secondary remedy for the Payment Class—and not to Tauler Smith's own liability for RICO. *Compare Rosenberg v. Renal Advantage, Inc.*, No. 11-CV-2152-GPC-KSC, 2013 WL 3205426, at *9 (S.D. Cal. June 24, 2013) (finding representatives were atypical because "[t]he variation among the [class members'] tasks and job performance in addition to hours worked . . . tends to show each *claim* is atypical" (emphasis added)), *aff'd*, 649 F. App'x 580 (9th Cir. 2016), *with Abbit v. ING USA Annuity*, No. 13CV2310-GPC-WVG, 2015 WL 7272220, at *5 (S.D. Cal. Nov. 16, 2015) (finding typicality because the contract entered by the plaintiff and the class contained the same allegedly fraudulent and misleading provision and was "relatively uniform"). With no explanation as to how the different circumstances behind the settlement affect the class members' claims that Tauler Smith's conduct itself violated RICO, Tauler Smith's claims do not upset typicality. *Cf. Colman*, 325 F.R.D. at 640 ("[W]ithout knowing whether or how differences . . . affect class members' claims, the rough similarities suffice.").

### 4. Adequacy

Adequacy under Rule 23(a)(4) addresses two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis*, 657 F.3d 970, 985 (9th Cir. 2011) (quoting *Hanlon*, 150 F.3d at 1020). "An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) (citation omitted); *cf. Cohen*, 303 F.R.D. at 383 (quoting *Crawford v. Honig*,

37 F.3d 485, 487 (9th Cir. 1994)) ("Adequate representation 'depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive.'"). Of note, the law "does not permit even the appearance of divided loyalties of [class] counsel." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1167 (9th Cir. 2013) (quoting *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1465 (9th Cir. 1995)).

As discussed in a previous Order, *see* ECF No. 361 at 9–10, the settlement entered with the Outlaw Defendants raises significant doubts as to whether Skyline Market and Gaw Poe can satisfy the standards discussed above and thus "will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4). The act of settling by itself is not the problem. Although the Outlaw Defendants played a role in the alleged scheme of the Outlaw Enterprise, it may have been in the class's interest to dismiss certain claims and parties to chase the bigger fish. *Cf. Andrews v. Plains All Am. Pipeline, L.P.*, No. CV154113PSGJEMX, 2017 WL 10543402, at *19 (C.D. Cal. Feb. 28, 2017), *amended sub nom. Andrews v. Plains All Am. Pipeline, L.P*, No. CV154113PSGJEMX, 2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) (discussing how the court will not "second-guess the lead Plaintiffs' strategic decisions"[2]).

Instead, the Court's concern is over the terms of the settlement, which is binding and therefore has material consequences should Skyline Market's efforts in chasing the bigger fish conflict with what is prohibited under the settlement. Contrary to Skyline Market's contention otherwise, *see* ECF No. 369 at 5–6, the Court's concern is

---

[2] For similar reasons, the Court rejects Tauler Smith's argument that Gaw Poe is not an adequate counsel due to its lack of diligence in discovery. If anything, Gaw Poe's discovery efforts are stymied by the fact that Tauler Smith still has yet to produce a complete list of stores that would qualify as the proposed Payment Class, which in turn will determine what additional fact-finding Gaw Poe would prefer to engage in.

*exclusively* over the express language of the 2021 Settlement. *Cf. Hot Rods, LLC v. Northrop Grumman Sys. Corp.*, 242 Cal. App. 4th 1166, 1178 (2015) ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity. . . . Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further."); *see also* Cal. Civ. Code § 1638.

Specifically, Section I.8 of the 2021 Settlement states that Skyline Market and Gaw Poe "will not cooperate or assist *in any manner* any non-party with regard to any claims that non-party may or is asserting against [the Outlaw Defendants]." ECF No. 362-1 at 4 (emphases added). The same language exists in Section I.10 of the 2020 Settlement. ECF No. 359-1 at 8. And as the Court has already discussed in its March 30, 2021 Order, this provision hinders Gaw Poe's ability to introduce evidence that implicates both Tauler Smith and Outlaw Defendants, or to prosecute the case that can somehow also wall off Outlaw Defendants altogether. *See* ECF No. 361 at 9. This hindrance is substantial—Tauler Smith's conduct is many times entangled with that of the Outlaw Defendants since Tauler Smith was their counsel during a significant part of the events. *See generally* ECF No. 293 at 3–9 (discussing the Outlaw Defendants' involvement in the alleged scheme until they terminated Tauler Smith).

Skyline Market represents that the settlement does not bar adducing any evidence and argument that shows Outlaw Defendants' liability. *See* ECF No. 369 at 5. Yet Skyline Market cannot point to a single passage in the 2021 Settlement that could support such representation. Rather, the 2021 Settlement forces the restriction against "assist[ing] in any manner" to be constructed as expansively as it could be. "It is the intention . . . that this Agreement be in the broadest scope possible." *Id.* at 6 (Section 3.1). "Nothing in this Agreement shall be construed to release the Parties' obligations under the terms of this Agreement, including but not limited to the obligations detailed in

section I above." *Id.* (Section 3.3). Under an expansive interpretation of "assist in any manner," adducing any evidence and/or argument showing Outlaw Defendants' liability is prohibited because, at minimum, that would be less fact-finding a non-party will need to do in developing a new case against Outlaw Defendants.[3] *Cf. assist*, Merriam-Webster Online, https://www.merriam-webster.com/dictionary/assist (last visited June 27, 2021) ("to give usually supplementary support or aid to").

Skyline Market cites to *New England Carpenters v. First Databank*, No. 1:05-cv-11148-PBS (D. Mass.) to justify its decision in settling with the Outlaw Defendants. As discussed above, settling with the lesser culprit to gather evidence against the greater culprit is perfectly sound litigation strategy. The difference between *New England Carpenters* and the instant case, however, is that plaintiffs in *New England Carpenters* were not restricted from using evidence gathered from the settlement to prosecute the greater culprit. As an initial observation, *New England Carpenters* was a class settlement, which meant that the lesser culprit was fully released from the liability at issue and thus the restriction clauses were drafted in a way to reinforce such release. In other words, the litigation against the greater culprit could not fuel any third-party lawsuit against the lesser culprit. Such is not the case for the dispute in front of this Court. The 2021 Settlement was not a class settlement, and therefore a store not part of the 2021 Settlement could still sue the Outlaw Defendants. Skyline Market and Gaw Poe must make sure that such third-party lawsuit is not "assisted" by their efforts in prosecuting Tauler Smith. *Compare* Settlement Agreement and Release, *New England Carpenters*,

---

[3] Skyline Market's representation is further undermined given that the March 30, 2021 Order explicitly flagged the "assist in any manner" passage to be problematic for its potential bar against adducing certain arguments/evidence, yet the settling parties decided not to amend any part of it. This sharply differs from the parties' decision to amend the provision that restricted Gaw Poe's ability to represent new clients.

Dkt. No. 120 (hereinafter "*New England Carpenters* Settlement"), *with* ECF No. 362-1 at 2 (listing the settling parties), *and* ECF No. 361 at 5–7 (discussing how the settlement entered was not a class settlement and thus not subject to Rule 23(e) scrutiny).

Further, the restriction clauses provided in the *New England Carpenters* Settlement are much narrower in scope. Paragraph 13 in the *New England Carpenters* Settlement states that the releasors "shall not hereafter seek to establish liability against any Released Entity based . . . on any of the Released Claims," and that the releasors are "enjoined from commencing, filing, initiating, instituting, prosecuting, maintaining, or consenting to any action against any Released Entity with respect to the Released Claims." The activities listed are all cabined to preventing class counsel from re-litigating the liability raised in the class settlement. To the extent that prosecuting the other defendant *could* be construed as a re-litigation effort, Paragraph 26 prevents such interpretation: "This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the Released Claims with respect to the Released Entities." Such provisions are in stark contrast to the 2021 Settlement, which adopts a much broader restriction in what Skyline Market and Gaw Poe cannot do ("assist in any manner"), *see* ECF No. 362-1 at 4 (Section I.8), and actively instructs any interpretation of the 2021 Settlement to "be in the broadest scope possible." ECF No. 362-1 at 6 (Section 3.1).

In conclusion, the settlement in *New England Carpenters* reaffirms the Court's conclusion that the 2021 Settlement should have been drafted differently if Skyline Market and Gaw Poe wished to prosecute Tauler Smith themselves. The express restrictions that Skyline Market and Gaw Poe must abide by under the 2021 Settlement create a material conflict of interest, or at least an appearance of divided loyalty thereof. This prevents them from being adequate class representatives in seeking any class claims against Tauler Smith.

18

18-cv-840-GPC-BGS

Of note, the Court rejects the other reasons Tauler Smith raised for claims of inadequacy. The deposition record of Mr. Fred Mokou (representative of Skyline Market) does not demonstrate Skyline Market's "alarming unfamiliarity" with the case. *Cf. Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2009 WL 281941, at *10 (N.D. Cal. Feb. 5, 2009) (requiring "blind reliance on class counsel"). The Court will not entertain Tauler Smith's speculation that Gaw Poe is "actually motivated more by spite against Tauler Smith," ECF No. 368 at 23. Finally, Tauler Smith's references to the less successful class actions prosecuted by Gaw Poe are not convincing. The qualifications and credentials of Gaw Poe are not the Court's concern in deciding Gaw Poe's adequacy under the instant Motion. *Compare AdTrader, Inc. v. Google LLC*, No. 17-CV-07082-BLF, 2020 WL 1922579, at *12 (N.D. Cal. Mar. 24, 2020) (granting Gaw Poe to serve as class counsel), *with McLaughlin* § 4.38 ("Where 'attorneys have been found to be adequate in the past, it is persuasive evidence that they will be adequate again.'").

### C. Rule 23(b) Analysis

Because Skyline Market fails to establish the "threshold" requirement of Rule 23(a), the Court will not proceed with analyzing whether the proposed class satisfies the requirements in Rule 23(b). *See, e.g.*, *Waine-Golston v. Time Warner Ent.-Advance/New House P'ship*, No. 11CV1057-GPB RBB, 2012 WL 6591610, at *8 (S.D. Cal. Dec. 18, 2012) (citing *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, *amended*, 273 F.3d 1266 (9th Cir. 2001); *Hanlon*, 150 F.3d at 1019); *Labou v. Cellco P'ship*, No. 2:13-CV-00844-MCE, 2014 WL 824225, at *6 (E.D. Cal. Mar. 3, 2014).

///

## IV. CONCLUSION

For the reasons discussed above, the Court **DENIES** Skyline Market's Motion for Class Certification, ECF No. 365.

**IT IS SO ORDERED.**

Dated: July 12, 2021

Hon. Gonzalo P. Curiel
United States District Judge