MARK POE (Bar No. 223714)
  mpoe@gawpoe.com
RANDOLPH GAW (Bar No. 223718)
  rgaw@gawpoe.com
SAMUEL SONG (Bar No. 245007)
  ssong@gawpoe.com
VICTOR MENG (Bar No. 254102)
  vmeng@gawpoe.com
GAW | POE LLP
4 Embarcadero, Suite 1400
San Francisco, CA 94111
Telephone: (415) 766-7451
Facsimile: (415) 737-0642

Attorneys for Defendants,
Counterclaimant, and Third-Party
Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: OUTLAW LABORATORY, LP LITIGATION | Case No.    3:18-cv-840-GPC-BGS<br><br>**THE STORES' OPPOSITION TO TAULER SMITH'S MOTION TO DISMISS**<br><br>Date:      February 18, 2022<br>Time:     1:30 p.m.<br>Court:    2D<br>Judge:    Hon. Gonzalo Curiel |

Tauler Smith's motion founders on the distinction that it (correctly) draws between the standing and mootness doctrines: "Standing is measured as of the commencement of the suit, while mootness can arise during the suit." Mem. at 7 (citing *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (noting that the doctrines "differ in critical respects")). In contrast to *all* of the cases Tauler Smith cites on pages 9-10 of its brief, the Stores had RICO standing when they filed this case, through lost sales (in the case of NMRM, Inc. and Roma Mikha, Inc.), and through paying a fraudulently procured "settlement" to Tauler Smith (in the case of Skyline Market).

So the question presented in this motion is whether the $125,000 settlement paid by Tauler Smith's co-conspirators mooted the Stores' RICO claims. It did not. As Tauler Smith's own cases explain: "'[A] claim becomes moot once the plaintiff actually receives *all* of the relief to which he or she is entitled on the claim.'" Mem. at 7 (quoting *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) (emphasis added)). Under 18 U.S.C. § 1964(c), the "relief" the Stores are entitled to is "threefold the damages [they] sustain[ed] and the cost of the suit, including a reasonable attorney's fee[.]" Under federal fee-shifting statutes, the Supreme Court has "rejected the argument that the entitlement to a [fee] award belongs to the attorney rather than the plaintiff." *Venegas v. Mitchell*, 495 U.S. 82, 89 (1990). The same thing is true in the specific context of RICO. *See McLendon v. Cont'l Grp., Inc.*, 872 F. Supp. 142, 156 (D.N.J. 1994) (citing *Venegas* in a RICO case for the proposition that "[i]n fee-shifting cases, the right to fees belongs to the successful *plaintiff*, whereas in common fund cases, it is the *attorney* who has the right to claim a portion of the fund."); *see also Teutscher v. Woodson*, 659 F. App'x 930, 932 (9th Cir. 2016) ("It is well-settled that a federal fee-shifting statute that bestows a discretionary fee award on a 'party' vests the right to attorney's fees solely in that party, not in the party's attorney.").

The indisputable principle that "[a] case becomes moot only when it is

STORES' OPP. TO MOT. TO DISMISS
CASE NO. 3:18-CV-840-GPC-BGS

impossible for a court to grant 'any effectual relief whatever to the prevailing party'" further demonstrates the error in Tauler Smith's argument. *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (citations omitted). Even if there were some basis for allocating the Outlaw settlement such that it completely satisfied the Stores' claim for treble damages, it is still "possible" for the Court to grant the Stores' the relief specified in section 1964(c)—the costs of suit and a reasonable attorneys' fee. Indeed—and in contrast to discretionary fee-shifting under 42 U.S.C. § 1988— fees under RICO are mandatory, such that the Court will be *required* to award the Stores their attorneys' fees if the jury agrees that Tauler Smith's conduct constituted a scheme to defraud. Those costs and fees greatly exceed the $125,000 settlement from Outlaw and its owners. *See* Decl. of Mark Poe ¶¶ 5-6.

The foregoing paragraphs are a complete answer to the outcome of this motion. The Stores nevertheless respond in greater detail to the only two specific arguments put forward in Tauler Smith's brief, and further respond to arguments that they anticipate Tauler Smith will make in reply.

**A. The RICO Standing Cases Tauler Smith Cites are Inapplicable.**

None of the cases cited in Tauler Smith's brief stands for the proposition that it needs: that a mid-litigation settlement by one conspirator that is sufficient to compensate a RICO plaintiff for treble damages renders the case "moot." Rather, all of the cases cited at pages 9-10 of Tauler Smith's brief stand only for the mundane proposition that a RICO plaintiff whose complaint can allege no damages other than the fees and costs incurred in *initiating* the litigation has not suffered a "financial loss" sufficient to state a RICO injury. *See, e.g.*, *Martinez v. Quality Loan Serv. Corp.*, 2009 WL 586725, at *9 (C.D. Cal. Feb. 10, 2009). Naturally, *all* of those cases were decided at the initial motion to dismiss stage, due to the plaintiff's failure to plead a necessary element. None of them holds that the only "effectual relief" a RICO plaintiff can receive is treble damages, such that a case can become moot midstream if one of several co-conspirators settles for an amount sufficient to offset

1  the "damages" component of the remedy set forth in section 1964(c).

2  More analogous to the posture of this case is *Luman v. NAC Mktg. Co., LLC*,

3  2017 WL 3394117 (E.D. Cal. Aug. 8, 2017).  There, two plaintiffs brought claims

4  against a supplement maker under California's Consumer Legal Remedies Act

5  ("CLRA"), which, like RICO, provides for mandatory attorneys' fees to a successful

6  plaintiff.  *See* Cal. Civ. Code § 1780(e).[1]  Because one of the plaintiffs had received

7  a full refund of the purchase price prior to filing, he lacked standing to proceed.  2017

8  WL 3394117, at *2.  But because the other plaintiff had not been refunded until two

9  months after filing, he passed the standing hurdle, and the refund did not moot his

10  claim because the defendant had "not agreed to the injunctive relief Amkraut

11  requests, paid his attorneys' fees, or reimbursed his litigation related costs."  *Id.* at

12  *3.

13  So too with *T. K. v. Adobe Sys. Inc.*, 2018 WL 1812200 (N.D. Cal. Apr. 17,

14  2018), which also involved a CLRA claim.  There, Adobe had refunded half of the

15  plaintiff's payment prior to filing, and the other half after filing, thereupon

16  proclaiming the dispute "moot."  *Id.* at *10.  Following *Luman*, the court held that

17  "Adobe's refund of T.K.'s payments made under the renewal agreement does not

18  offer T.K. complete relief, at least because Adobe has not paid the requested interest,

19  attorney's fees, or costs."  *Id.* at *12.

20  Beyond those cases, the important distinction between initial standing and

21  midstream mootness has been further explained by both the Supreme Court and the

22  Ninth Circuit in a way that is particularly instructive here:

23  Standing doctrine functions to ensure, among other things, that the
24  scarce resources of the federal courts are devoted to those disputes in
25  which the parties have a concrete stake. In contrast, by the time

26  _____

27  [1] The cause of action is specified in an earlier order in the case.  *See Luman v. Theismann*, 2014 WL 443960, at *2 (E.D. Cal. Feb. 4, 2014), *aff'd in part, rev'd in part and remanded*, 647 F. App'x 804 (9th Cir. 2016).

28

mootness is an issue, the case has been brought and litigated, often . . .
for years.  To abandon the case at an advanced stage may prove more
wasteful than frugal.

*Clark*, 259 F.3d at 1006 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
528 U.S. 167, 191-92 (2000)).

As the Court knows, the Stores' counsel separately represent dozens of the
Outlaw Enterprise's other victims in this District, and the limitations period on those
other stores' claims was tolled during the pendency of the Stores' demand for class
certification.  *See American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).
"Mootness is a flexible justiciability doctrine."  *Students for a Conservative Am. v.
Greenwood*, 391 F.3d 978 (9th Cir. 2004).  It would make little jurisprudential sense
to dismiss this late-stage case only to start over at square one with a new set of store-
plaintiffs.  Exactly as contemplated in *Friends of the Earth*, "[t]o abandon [this] case
at an advanced stage [would] prove more wasteful than frugal."[2]

### B.    For the Same Reasons, the Stores' Claims Are Not Mooted By the "One Satisfaction Rule."

Because the Stores—if successful—will be entitled to attorney's fees and costs
far in excess of the $86,000 difference between the amount of their "damages" and
the amount of the Outlaw settlement, Tauler Smith's argument that the Stores'
pending claims are barred by the "one satisfaction rule" is equally unavailing.  Mem.
at 10-11.  As explained in the primary case on which Tauler Smith relies, "the
animating purpose of the one satisfaction rule is to prevent double recovery and

---

[2] *Friends of the Earth* further explained that the oft-quoted shorthand that
mootness is "the doctrine of standing set in a time frame" is imprecise, and that there
is an "important difference between the two doctrines."  528 U.S. at 190-92.  That
difference is keenly presented here.  Had Outlaw compensated the Stores *before* they
incurred hundreds of thousands of dollars in attorneys' fees, they would not have had
"standing" to initiate the case.  But because it did not compensate them until after
those fees had been incurred and owing (depending on the jury's verdict), the case is
not "moot."

unjust enrichment." *Uthe Technology Corp. v. Aetrium, Inc.*, 808 F.3d 755, 761 (9th Cir. 2015). Tauler Smith is certainly right that if it is found liable, it will be entitled to an "offset" in the amount of the Outlaw Settlement, but that offset will not come close to satisfying the combined damages, costs, and mandatory fees for which it will be liable. Accordingly, there is no risk that the Stores will obtain "double recovery" on any of the components of the relief they are seeking.

### C. The Nature of the Stores' Engagement Agreement is Irrelevant.

It is further easy to see the error in Tauler Smith's argument by hypothesizing a RICO plaintiff who had engaged counsel on an hourly basis, such that by the time of a partial settlement sufficient to satisfy the plaintiff's *actual* damages, the plaintiff had incurred hundreds of thousands (or millions) of dollars in attorneys' fees to get to that point. Surely no court would hold that such a plaintiff's claim has been rendered "moot" or "satisfied," since it would plainly be entitled to recoup those out-of-pocket expenses following a favorable verdict against the remaining defendants.

The Stores anticipate that Tauler Smith will argue in reply that the Stores are not so-situated, because they engaged their counsel on a contingency basis. Setting aside the obvious policy problems that such a rule would present (by favoring well-heeled RICO plaintiffs over their impecunious fellows), this argument was rejected by the rationale in *Venegas*, which holds that the entitlement to fees "belongs" to the plaintiff regardless of the form of the engagement. 495 U.S. at 87-88 (noting that there should be no difference between plaintiffs "represented free of charge" and those who "were fortunate enough to be able to retain counsel on a fee-paying basis").

The same point is made obvious by considering the form of the fees order and ensuing judgment that will result if the Stores are successful at trial—the order and judgment will undoubtedly specify that Tauler Smith must pay the *Stores* the fees and costs that are awarded, not that it must pay those amounts to Gaw | Poe LLP.

### D.    *Lewis v. Continental Bank* Is Inapposite, Because the Plaintiff There Could Not Have Become the "Prevailing Party."

The case of *Lewis v. Continental Bank Corp.*, 492 U.S. 472 (1990) has occasionally been cited by district courts, without analysis, for the proposition that a "[p]laintiff's claim for attorneys' fees [cannot] save an otherwise moot case."[3] *See, e.g.*, *Everett v. MCI, Inc.*, 2006 WL 8441179, at *3 n.5 (D. Ariz. Sept. 29, 2006). But *Lewis* is not relevant to the outcome here. In *Lewis*, an Illinois bank holding company sued the Comptroller of the State of Florida over its refusal to accept the holding company's establishment of an "industrial savings bank" in the state, arguing that such a prohibition violated the Commerce Clause. *Id.* at 474-75. While that dispute was working its way through the lower courts, Congress amended the Bank Holding Company Act, such that the Comptroller's rejection "would be authorized by federal law and hence immune from challenge under the Commerce Clause." *Id.* at 476.

On appeal to the Supreme Court (under a now-repealed statute that authorized direct appeals of certain banking claims), the high court held that the statutory change rendered the dispute moot. *Id.* at 478. It further held that the discretionary attorneys' fees that the bank *could have* recovered for vindicating its constitutional rights under section 1988 did not forestall mootness, since after the statutory change took effect, it became impossible for the bank to ever become a "prevailing party" such that it might be entitled to such fees. *Id.* at 480.

The situation here is obviously different. *Lewis* would only be apt if Congress rescinded RICO, such that the Stores could not become prevailing parties entitled to recover their incurred fees and costs. Here though, if the Stores prove that Tauler Smith engaged in a scheme to defraud them as defined by RICO, and persuade the

---

[3] While this aspect of *Lewis* is not specifically invoked by Tauler Smith, the Stores nevertheless address it here, out of recognition that the Court must satisfy itself of its jurisdiction, and in recognition that this Court has consistently been diligent in undertaking its own independent research to ensure the correctness of its rulings in this case.

jury that they were injured by that conduct, they *will* be the prevailing party, and will therefore be entitled to the "effectual relief" of recovering their mandatory fees and costs. *Knox*, 567 U.S. at 307.

### E. Rule 68 Jurisprudence Further Supports the Stores' Position.

The Stores' argument is further supported by the series of recent cases in which class action defendants have attempted to "pick off" the putative class representative by making a Rule 68 offer of judgment that would fully satisfy the representative's claim. For example, in *Genesis Healthcare Corp. v. Symczyk*, a plaintiff brought a class action under the Fair Labor Standards Act, which includes a mandatory fees provision. 569 U.S. 66 (2013); 29 U.S.C. § 216(b). In an attempt to moot the case, the defendants simultaneously answered the complaint and made a Rule 68 offer of judgment for all of the plaintiff's unpaid wages, plus "'such reasonable attorneys' fees, costs, and expenses . . . as the Court may determine.'" *Id.* at 69 (quoting the offer). Class counsel did not dispute that that offer mooted the individual plaintiff's claim, a point that the Court therefore "assume[d], without deciding." *Id.* at 73. If Tauler Smith hopes to moot this case, it must make a similar offer to pay the Stores' fees.

The issue arose again in the Supreme Court three years later, where the Court held that an unaccepted Rule 68 offer does not moot a plaintiff's claim. *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016). While that specific holding is neither here nor there, it is instructive that in reaching that conclusion, the Court explicitly noted that the defendant's Rule 68 offer had *not* included attorneys' fees, explaining that this was "because the TCPA does not provide for an attorney's fee award." *Id.* at 668. The Court is not known for surplusage, so if the availability of statutory attorneys' fees were irrelevant to whether midstream compensation renders a claim moot, it is unlikely that the Court would have taken space to specifically make that observation.

STORES' OPP. TO MOT. TO DISMISS
CASE NO. 3:18-CV-840-GPC-BGS

## CONCLUSION

Because the Outlaw Settlement did not provide the Stores with all the relief to which they are entitled in this action, this case is not moot, and the motion should be denied.

Dated:  January 24, 2022                           GAW | POE LLP

                                                                  By:    s/ *Mark Poe*
                                                                              Mark Poe

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

Case No. 3:18-cv-840-GPC-BGS

I HEREBY CERTIFY that on the date stamped in the header above, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the following document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

GAW | POE LLP

By:   s/ *Mark Poe*

Mark Poe
Attorneys for Defendants,
Counterclaimant, and Third-Party
Plaintiffs

1