**SERGENIAN LAW, A PROFESSIONAL CORPOATION**
David A. Sergenian (SBN 230174)
2355 Westwood Blvd. #529
Los Angeles, CA 90064
Telephone: (213) 435-2035
 e-Mail: david@sergenianlaw.com

**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
 *kevin@kjclawgroup.com*
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone (310) 861-7797

*Attorneys for Tauler Smith LLP*

THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| **In re Outlaw Laboratory, LP Litigation** | Case No. 3:18–cv–840–GPC–BGS |
|---|---|
| | **TAULER SMITH'S TRIAL BRIEF** |
| | Date:          March 14, 2023 |
| | Time:          9:00a.m. |
| | Hon. Gonzalo P. Curiel |
| | Courtroom 2D |

Tauler Smith LLP ("TSLLP") respectfully submits its trial brief per the Court's July 18, 2022 Amended Jury Trial Preparation and Scheduling Order [Dkt. 409].

## I. FACTUAL BACKGROUND

TSLLP is a litigation firm started in 2015 by law school classmates Robert Tauler and Matthew Smith. TSLLP's managing partners began their careers in 2005, and practiced at Greenberg Traurig LLP and McDermott Will & Emery LLP, respectively, before starting their own firm in 2015. TSLLP's Managing Partner, Robert Tauler, worked principally in nutritional supplement litigation from 2013 until 2019, and has represented various national supplement companies, including those manufacturing sports supplements, anti-aging supplements, and health supplements. TSLLP has become very familiar with the nutritional supplement marketplace, including the federal regulatory regime that allows for unfair competition and illicit practices claims and has been cited in numerous articles regarding the illicit sale of unlawful supplements.

In the ordinary course of its practice, TSLLP was engaged in 2017 to represent the Texas entity, Outlaw Laboratory, LP ("Outlaw Labs"), and its predecessor, JST Distribution, both manufacturers and retailers of nutritional supplements, in legal disputes concerning male sexual enhancement dietary supplements. Outlaw Labs created, manufactured, and sold certain products called TriSteel 8 Hour and TriSteel ("TriSteel Products"), which it sold "nationwide" according to Outlaw, in addition to numerous other sports supplements, including various pre-workout products and muscle building supplements.

When Outlaw Labs engaged TSLLP as legal counsel, it sought to take legal action against entities in the marketplace that offered for sale competing sexual enhancement "supplement" products. There is a black market for such misbranded drug products, generated by illegal importation, relabeling and distribution of products containing the active ingredients in Viagra and Cialis. These competing products were sold often as a single dose in the form of a capsule pill. These products had packaging that advertised the

pill as a dietary supplement; however, the pills were subject to over 200 FDA notices, consumer warnings, and successful criminal prosecutions.

TSLLP's client, Outlaw, (not the firm) took on the task of identifying stores that sold products identified by the FDA as tainted. Outlaw hired individuals to investigate sales of illicit products at the point of sale; from Outlaw's perspective, those companies selling illicit products were competing with an unfair advantage with Outlaw, which is why Outlaw sought to seek action. In order to finance these investigations and the subsequent lawsuits, TSLLP and Outlaw sought and obtained litigation funding from the Pulaski Law Firm in Houston, Texas. After data was collected with respect to sales of products explicitly detailed by the FDA as containing illicit ingredients, attorneys at TSLLP verified the information provided by Outlaw, including confirming that the infringing products identified in each photo corresponded to FDA notices, identifying the specific infringing products in each separate letter, and attaching the corresponding FDA notices as an exhibit to the letter. TSLLP also confirmed that the photos taken corresponded to the GPS coordinates of each respective store. Once confirmed, a third-party called Capture Group mailed demand letters to entities that sold pills that were tainted.

For less than a six month span - November 2017 through April 2018 – TSLLP sent demand letters that included the allegation that sellers of the products could be liable for civil RICO for their sale of the subject products. TSLLP adopted the strategy of settling with the lesser culprit to gather evidence against the greater culprit. Recipients of the demand letters were asked to provide invoices from their distributors so that Outlaw could eventually pursue them, as well as a nominal settlement, in exchange for a release. TSLLP did in fact pursue various distributors, on behalf of its client Outlaw Labs, based on information provided by the stores, including for RICO. Numerous other law firms were hired across the country by Outlaw to pursue similar claims.

In addition to sending demand letters and filing lawsuits, TSLLP and other law firms litigated several actions, even obtaining default judgments in federal court. TSLLP

did not manage any of the affairs of Outlaw's other attorneys. TSLLP understands that Outlaw entered into their own engagement agreement with those law firms, to which TSLLP was not a party.

Skyline Market is one of the Stores that received a letter from TSLLP on behalf of Outlaw Labs and decided to settle before litigation for $2,800. Skyline Market and its counsel, Mr. Garmo, had an opportunity to review the allegations of the demand letter and the truth or falsity of its allegations and legal assertions and did in fact do so. Article III of its settlement agreement (signed on May 3 and 4, 2018) contains mutual general releases of all parties and "all of their respective present and former attorneys." Garmo agreed to the following release language:

The Parties … represent and declare that in executing this Agreement they have relied solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel … and that they have not been influenced … by any representations or statements covering … made by any other party hereto or by any person representing him or it.

Skyline now says that the release does not apply, and that it should receive the $2,800 back.

It is unclear the basis of the damages asserted by the other two stores in this case.

## II.   POINTS OF LAW

### A.   The Elements of RICO Are Not Met.

### A.   The Stores Cannot Establish RICO Violations

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)) (internal quotation marks and citation omitted). Tauler Smith is entitled to judgment as a matter law

on the Stores' RICO claims because the Stores cannot establish: (1) that Tauler Smith did anything other than conduct or participate in its own affairs; or (2) that Tauler Smith had anything but a typical contractual attorney-client relationship with Outlaw Labs.

### 1. Because TSLLP Only Rendered Services in Its Professional Capacity, the Stores Cannot Establish that TSLLP Conducted or Participated in Anything Other Than Its Own Affairs

TSLLP, like numerous other law firms across the country that pursued identical claims for Outlaw, rendered legal services and nothing more. TSLLP had no involvement in the establishment of the company, the development of Outlaw's products, or even in coordinating in any manner the investigation of the eventual defendants.

RICO liability "depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Reves*, 507 U.S. at 185; *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–63 (2001); *Ogden v. Wells Fargo Bank, NA*, 674 F. App'x 650, 651 (9th Cir. 2017), cert. denied sub nom. *Ogden v. Kwok*, 138 S. Ct. 252, 199 L. Ed. 2d 124 (2017). In this regard "there has been a remarkable uniformity in [the] conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client." *Gomez v. Guthy-Renker, LLC*, 2015 WL 4270042, at *11 (C.D. Cal. Jul. 13, 2015).

TSLLP was first contacted by Outlaw based on TSLLP's prior work in nutritional supplement litigation. TSLLP had no role in the creation of TriSteel and did not direct Outlaw Labs to create its TriSteel Products. TSLLP did not create or participate in creating the entity Outlaw Laboratory, LP. Outlaw Laboratory, LP is a partnership that was registered in Texas on or around September 19, 2016, long before TSLLP represented Outlaw Labs. Outlaw Lab gathered evidence to support its claims and provided them to TSLLP and other law firms.  TSLLP was presented with evidence from its client and asserted those claims on behalf of the client. *See Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (finding that attorney who drafted letters and agreements as part of an alleged

conspiracy not liable under RICO because he did not direct or control the RICO enterprise).

TSLLP pursued RICO litigation on behalf of Outlaw Labs as evidenced by multiple lawsuits filed on its behalf in January and February of 2018. These RICO lawsuits were predicated on theories advanced in criminal prosecutions related to the same products.

As is typical with attorney representation, Outlaw permitted TSLLP to negotiate settlements with businesses that received demand letters or were sued. TSLLP adopted the strategy of settling with the lesser culprit to gather evidence against the greater culprit, which it eventually pursued. At no time did TSLLP act without the guidance or direction of Outlaw Labs in prosecuting claims on behalf of its clients. Nothing in the record supports any allegation of conduct on the part of TSLLP other than advancing legal claims on behalf of its client. Under these facts, no RICO liability could attach even if the scheme were fraudulent. *See Domanus v. Locke Lord LLP*, 847 F.3d 469, 482 (7th Cir. 2017) ("Claims that lawyers have conspired with their clients are insufficient in the absence of allegations that the arrangement involves more than standard legal representation.") (citing *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051–52 (D.C. Cir. 2012)).

### 2. The Stores Cannot Show that TSLLP Engaged in a RICO "Enterprise" With Its Former Clients

To prove a RICO association-in-fact enterprise, the plaintiff must (1) show "a group of persons associated together for a common purpose of engaging in a course of conduct," (2) provide evidence of an ongoing organization, formal or informal, and (3) provide evidence that the various associates function as a continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 555 (9th Cir. 2007) (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)); *see also Boyle v. United States*, 556 U.S. 938, 946 (2009) ("an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose"). To establish the existence of such an

enterprise, a plaintiff must provide both "evidence of an ongoing organization, formal or informal," and "evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583; *Odom*, 486 F.3d at 552.

Here, TSLLP was but one of several law firms Outlaw Labs engaged to pursue claims against the Stores. Indeed, Outlaw Labs continued to pursue claims with different attorneys in different states long after the relationship between Outlaw Labs and TSLLP was terminated. Outlaw Labs engaged over a dozen law firms in seven states to pursue similar claims TSLLP was not involved in any engagement agreements between Outlaw Labs and any other law firm. Moreover, as stated above, TSLLP engaged in an arms-length contractual relationship for legal services that TSLLP provided before being terminated.

RICO "cannot be circumvented by attempting to characterize a routine contractual relationship for services as an independent enterprise." *Jubelirer v. MasterCard Intern., Inc.*, 68 F. Supp. 2d 1049, 1053 (W.D. Wis. 1999). Allowing circumvention of the RICO statutory requirements "would not only expand RICO beyond Congress's intent, it would also undermine the integrity of the judicial system by making liability depend on counsel's artful pleading practices, rather than the actual circumstances giving rise to litigation." *Gomez*, 2015 WL 4270042, at *11; *see also In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5 (S.D. Cal. May 22, 2009) (finding RICO claims not adequately pleaded because after Plaintiff's legal conclusions were set aside, all that remained was "conduct consistent with ordinary business conduct and an ordinary business purpose.")

Similarly, because TSLLP only provided legal services to Outlaw Labs, no RICO enterprise can be shown because TSLLP was merely in its primary business activities. *Shaw v. Nissan N. Am., Inc.*, 220 F. Supp. 3d 1046, 1055–57 (C.D. Cal. 2016); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liability Litig.*, 826 F. Supp. 2d 1080, 1202–03 (C.D. Cal. 2011). "[E]ntities engaged in 'ordinary business conduct and an ordinary business purpose' do not necessarily constitute an 'enterprise' bound by common purpose under RICO." *Shaw*, 220 F. Supp. 3d at 1054 (quoting *In re Jamster Mktg. Litig.*, 2009 WL 1456632, at *5; *see also In re Countrywide Fin. Corp.*

*Mortgage-Backed Sec. Litig.*, 2012 WL 10731957, at *10 (C.D. Cal. Jun. 29, 2012) (finding that the cooperation of a firm that provided routine underwriting services that it would have performed for any other client was insufficient to prove an enterprise);; *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399 (7th Cir. 2009) (finding a routine business relationship insufficient to establish a RICO enterprise because "an association-in-fact enterprise must be meaningfully distinct from the entities that comprise it such that the entity sought to be held liable can be said to have controlled and conducted the enterprise rather than merely its own affairs."); *Chagby v. Target Corp.*, 2008 WL 5686105, at *2 n.1 (C.D. Cal. Oct. 27, 2008), aff'd, 358 F. App'x 805 (9th Cir. 2009) (because an association in fact must be distinct from its individual members, "Plaintiff cannot plead an enterprise as Defendant and its advertising agency, and then treat the enterprise as wholly under the control of Defendant, and not separate and apart from Defendant.").

### 3. There Was No Racketeering Activity.

Litigation activities alone generally cannot serve as predicate acts for civil RICO claims." *Acres Bonusing, Inc. v. Ramsey*, No. 19-CV- 05418-WHO, 2022 WL 17170856, at *10 (N.D. Cal. Nov. 22, 2022). Providing legal services is not racketeering. *Gomez*, 2015 WL 4270042, at *10–11 ("Despite the wide variety of approaches adopted by courts in interpreting the requirements of RICO, there has been a remarkable uniformity in their conclusion that RICO liability must be predicated on a relationship more substantial than a routine contract between a service provider and its client.").

The statements in the demand letters at issue here were neither materially false nor misleading. It is not false and misleading to inform recipients of the letter that they were "selling illegal sexual enhancement products." The sale of sildenafil without a prescription is inarguably illegal. 21 U.S.C. §§ 331(a), 353(b)(1)(A)&(B); *U.S. v. Hbaiu*, 2013 WL 4698286, *1 (M.D. Pa. Aug. 30, 2013); U.S. v. Bansal, 663 F.3d 634, 648 n.2 (3rd Cir. 2011). The products in the letter correspond to FDA notices drawing the same conclusion. Furthermore, the FDA's statement was attached to the demand letters, thereby

– 7 –

foreclosing any argument that Tauler Smith LLP intended to mislead any recipients about the content of the FDA's statements. Moreover, the FDA has explicitly stated that "[a]nyone who sells or distributes these illegal products [including supplements containing unbranded prescription drugs] may be subject to: [¶] Criminal liability – misdemeanors and felonies [¶] Seizure of your products [¶] Injunction of the responsible party or company [¶] Disgorgement of profits and restitution." In addition, it is not misleading to state that the FDA statement concerns the illegality of the Blue Diamond Pill because the FDA statement does concern the illegality of the pill, a supplement that contains an unlabeled prescription drug. The fact that the FDA does not marshal the resources necessary to prosecute every purveyor of illegal pills does not exonerate the sellers from violating the law.

All of the other statements in the demand letters were all legal opinions. Specifically, whether a product is "legal to sell," whether any of The Stores could be held liable under the RICO Act, and what damages are available under the RICO Act or the Lanham Act are all legal opinions or representations of law. "It is … well settled, as a general rule, that fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004) (citation omitted)(affirming dismissal of RICO claims based on mail and wire fraud); see also *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) ("It is well established … that misrepresentations of the law are not actionable as fraud, including under the mail and wire fraud statutes, because statements of the law are considered merely opinions.") (citation omitted); *California Pharmacy Management, LLC v. Redwood and Casualty Ins. Co.*, 2009 WL 10669956, *7 (C.D. Cal. Jul. 29, 2009) (same). 37 AM. JUR. 2D OF FRAUD & DECEIT § 101 (2014) (it is "well settled" that "fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." This rule "extends to representations as to what the law requires to be done and representations to what the law will not permit to be done.").

Misrepresentations of law are not actionable "because "(1) it is unreasonable to rely blindly on another's opinion, and (2) no one can be deceived by a misrepresentation of law because everyone has access to the law and may be presumed to know it." *Utah Power & Light*, 983 F.2d at 1556; *Boehm v. Spreckels*, 183 Cal. 239, 248 191 P. 5, 9 (Cal. 1920) ("Everyone is presumed to know the law … ."). Here, the Stores had access to legal counsel at all relevant times.

**4.  Damages**

The Stores have sustained no damages and no actual injury to its "business or property." 18 U.S.C. § 1964(c).

It cannot be said that "the cost of removing legal pills from their shelves," and resultant "lost profits" borne from the Stores own decision-making can generate a self-inflicted wound to support damages.

Neither can Skyline claim damages for a settlement entered into with advice of counsel. Here, Skyline relied on its own lawyer, Garmo, in sustaining what it now claims as "damages."

DATED: March 1, 2023           **SERGENIAN ASHBY LLP**

By:   /s/ *David A. Sergenian*
      David A. Sergenian, Esq.

      *Attorneys for Third-Party Defendant Tauler Smith LLP*

DATED: March 1, 2023           **KJC LAW GROUP, A.P.C.**

By:   /s/ *Kevin J. Cole*
      Kevin J. Cole, Esq.

      *Attorneys for Third-Party Defendant Tauler Smith LLP*