**SERGENIAN LAW, A.P.C.**
David A. Sergenian (SBN 230174)
2355 Westwood Blvd., #529
Los Angeles, CA 90064
Telephone: (213) 435-2035
e-Mail: david@sergenianlaw.com

**KJC LAW GROUP, A.P.C.**
Kevin J. Cole (SBN 321555)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, CA 90212
Telephone: (310) 861-7797
e-Mail: kevin@kjclawgroup.com

*Attorneys for Counter-Defendant
Tauler Smith LLP*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORIES, LP LITIGATION | Case No.: 18-cv-840-GPC-BGS <br><br> **TAULER SMITH LLP'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW** <br><br> <u>Filed Concurrently</u>: <br><br> 1. Notice of Motion; and <br> 2. Declaration of Kevin J. Cole <br><br> Judge:     Hon. Gonzalo P. Curiel <br> Courtroom: Courtroom 2D <br><br> Hearing Date:   June 16, 2023 <br> Hearing Time:   1:30 p.m. <br><br> Trial Date:    March 14, 2023 |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ii

I. INTRODUCTION ...........................................................................................................1

II. THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON THE STORES' RICO CLAIM ........................................................................................1

   A. Rule 50(b) Judgment As A Matter of Law Standard.................................................1

   B. No Reasonable Jury Could Have Found Tauler Smith Liable for Mail Fraud..........3

      1. The Issue of the Stores' Failure to Prove Mail Fraud is Properly Before this Court Under Rule 50(b) ........................................................................................3

      2. The Stores Failed to Prove Mail Fraud at Trial.......................................................4

         a. Joseph Valerio ...................................................................................................6

         b. Shawn Lynch.....................................................................................................7

         c. Michael Wear...................................................................................................10

         d. The Stores Failed to Prove that TriSteel Was *Not* Sold at Retail Locations Across the U.S. ..............................................................................11

III. CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

<u>Cases</u>

*Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143 (9th Cir. 1996) ............................. 2

*Ahmadi Abhari v. Victory Park Capital Advisors*, Case No. CV 20-05734 PA
    (MAAx), 2020 WL 7346676 (C.D. Cal. Nov. 16, 2020) ................................................. 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................................................... 2

*Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295 (2d Cir. 1990) ....................... 3

*E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951 (9th Cir. 2009) ........................... 1, 2, 4

*Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990
    (9th Cir. 2014) ................................................................................................................ 7

*Freund v. Nycomed Amersham*, 347 F.3d 752 (9th Cir. 2003) ............................................ 2

*Genthe v. Lincoln*, 383 F.3d 713 (8th Cir. 2004) ................................................................. 3

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) ................................ 5

*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ............................. 2

*In re Letterman Bros. Energy Sec. Lit.*, 799 F.2d 967 (5th Cir. 1986) ................................. 2

*Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797 (9th Cir. 2009) .................................. 2, 3

*Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353
    (9th Cir. 2005) ................................................................................................................ 5

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000) ...................................... 2

*Securities Investor Protection Corp. v. Vigman*, 908 F.2d 1461 (9th Cir. 1990) ................ 5

*United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't,
    AFL-CIO*, 770 F.3d 834 (9th Cir. 2014) ........................................................................ 5

*United States v. Bohonus*, 628 F.2d 1167 (9th Cir. 1980) ................................................... 5

*United States v. Green*, 745 F.2d 1205 (9th Cir. 1984) ....................................................... 5

*United States v. Partridge-Staudinger*, 287 F.R.D. 651 (E.D. Wash. 2013) ...................... 4

*United States v. Peters*, 962 F.2d 1410 (9th Cir. 1992) ....................................................... 5

*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009) .......................................................... 4

*Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021) .................................................... 2

Statutes

21 U.S.C. § 331(a) ..................................................................................................4

21 U.S.C. § 333(a) ..................................................................................................4

21 U.S.C. § 353(b)(1)..............................................................................................4

Rules

Fed. R. Civ. P. 50 Advisory Committee's Notes to the 1991 Amendments ........................2

Fed. R. Civ. P. 50(a)................................................................................................2

I. **INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 50(b), Tauler Smith LLP ("Tauler Smith") asks this Court to overturn and vacate the legally unsupportable jury verdict in this Racketeer Influenced and Corrupt Organizations Act ("RICO") case. No reasonable factfinder could have returned a liability verdict in the Stores' favor based upon the undisputed facts and paucity of the Stores' evidence at trial. Applying the proper standards to the trial record in this case, the Stores failed to prove the predicate act of Mail Fraud under 18 U.S.C. § 1341 (or any predicate act, for that matter), which they needed to do in order to establish liability under RICO. Simply, the Stores adduced no evidence that Tauler Smith (i) knowingly participated in a scheme or plan to defraud, (ii) knowingly participated in a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts, or (iii) acted with the intent to defraud—and they carried the burden to do so. Without any evidence supporting the predicate act of Mail Fraud (or, again, any other predicate act), there is no sufficient evidentiary basis to support the Stores' RICO claim. For this critical reason, Tauler Smith respectfully requests that the Court enter judgment as a matter of law in its favor.

II. **THE COURT SHOULD ENTER JUDGMENT AS A MATTER OF LAW ON THE STORES' RICO CLAIM**

A. **Rule 50(b) Judgment As A Matter of Law Standard**

If a Court does not grant a motion for judgment as a matter of law made at the close of evidence and instead submits the issues to the jury, the moving party may renew the motion after entry of judgment under Fed. R. Civ. P. 50(b); *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (only if the court denies or defers ruling on a Rule 50(a) motion, and if the jury then returns a verdict against the moving party, the party may renew its motion under Rule 50(b)).

The standard for subsections (a) and (b) is the same: judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for

the party on that issue." Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (same); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion. *E.E.O.C.*, 581 F.3d at 961. A party cannot properly "raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) (citing Fed. R. Civ. P. 50 Advisory Committee's Notes to the 1991 Amendments) ("A post[-]trial motion for judgment can be granted only on grounds advanced in the pre-verdict motion.")).

On a Rule 50(b) motion, the court does not consider what the jury actually found, but whether a sufficient evidentiary basis supported finding for the nonmoving party. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 724 (11th Cir. 2012) ("Only the sufficiency of the evidence matters; what the jury actually found is irrelevant.") (affirming grant of JMOL).

"Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." *Acosta v. City & Cnty. of San Francisco*, 83 F.3d 1143, 1145 (9th Cir. 1996), *abrogated on other grounds by Villanueva v. California*, 986 F.3d 1158 (9th Cir. 2021). However, judgment as a matter of law is not limited to situations where "there is a complete absence of probative facts to support a jury verdict." *In re Letterman Bros. Energy Sec. Lit.*, 799 F.2d 967, 972 (5th Cir. 1986). And although courts "draw all reasonable inferences in [the non-movant's] favor," a reasonable inference "cannot be supported by only threadbare conclusory statements instead of *significant* probative evidence." *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 802 (9th Cir. 2009) (emphasis added) (reversing denial of JMOL motion); *see also Genthe v.*

*Lincoln*, 383 F.3d 713, 716 (8th Cir. 2004) (an inference is reasonable when it "may be drawn from the evidence without resort to speculation") (affirming grant of JMOL). As such, judgment as a matter of law is also appropriate where the jury disregarded the evidence and jury instructions at trial, or where "the jury could have relied only on speculation to reach its verdict." *Lakeside-Scott*, 556 F.3d at 803.

Moreover, "unimpeached and uncontradicted evidence favorable to the movant [] can be considered by [the court] in evaluating the merits" of a motion for judgment as a matter of law. *Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1314–15 (2d Cir. 1990) (affirming grant of JMOL). Under these standards, as explained further below, Tauler Smith is entitled to judgment as a matter of law.

### B. No Reasonable Jury Could Have Found Tauler Smith Liable for Mail Fraud

1. The Issue of the Stores' Failure to Prove Mail Fraud is Properly Before this Court Under Rule 50(b)

On March 15, 2023, at the close of the Stores' case-in-chief and before the case was submitted to the jury, Tauler Smith made an oral Rule 50(a) judgment as a matter of law motion. *See* Declaration of Kevin J. Cole ("Cole Decl."), Ex. A (Certified Transcript of Jury Trial Proceedings from March 15, 2023, Volume 2, Afternoon Session) at 475:8–11, 476:7–8 ("It would be under Rule 50(a)(1), motion for judgment as a matter of law."). The grounds for the Rule 50(a) motion were the insufficiency of evidence that Tauler Smith committed federal Mail Fraud, the predicate act for which the Stores sought to establish RICO liability. As Tauler Smith explained in its motion:

> A necessary, a critical piece of The Stores' case is that The Stores must prove mail fraud. Mail fraud, as Your Honor knows, are the predicate acts upon which The Stores are relying to establish a RICO violation. Stated otherwise, there is no RICO violation unless The Stores have proved mail fraud. And Your Honor, they have critically failed to prove mail fraud at all.

*Id.* at 481:17–23.

The Court's inquiry at this time was whether the demand letters in question properly stated that the enhancement pills at issue were "illegal to sell" based on the FDA Notices

contained in the demand letters, combined with the images of the particular store's sale of the products corresponding to the specific FDA Notices.  *Id.* at 485:12–487:5; *see also* Cole Decl., Ex. B (Trial Exhibit 107, admitted on March 14, 2023).  The FDA Notices state, as to every product, that "FDA laboratory analysis confirmed that [name of product] contains sildenafil, the active ingredient in the FDA approved prescription drug Viagra, used to treat erectile dysfunction (ED)."  Cole Decl., Ex. B.[1]

"Because it [a Rule 50(b) motion] is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *E.E.O.C.*, 581 F.3d at 961.  That requirement is met here.  As explained below, the grounds for this motion are the same as those set forth in Tauler Smith's Rule 50(a) motion at trial: there is not a sufficient evidentiary basis to support a finding that Tauler Smith committed federal Mail Fraud.  And because there is no predicate act, there is no legal basis to establish liability under RICO.

   2. <u>The Stores Failed to Prove Mail Fraud at Trial</u>

The Stores failed at trial to prove Mail Fraud, which was required to prove a claim for RICO.  "The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5)

---

[1] To the extent the Stores' intended to establish that language in the demand letters stating that the pills are "illegal to sell" is itself a fraudulent statement, the Stores did not meet their burden.  The Stores introduced no evidence at trial that the pills were in fact legal, such that a jury could find the "illegal to sell" language fraudulent.  Besides, it is indisputable that selling a prescription without labelling it as such is illegal.  *See* 21 U.S.C. §§ 333(a) (violation of 21 U.S.C. § 331(a) may constitute a misdemeanor or a felony), 331(a) (prohibiting "[t]he adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce"), 353(b)(1) (prohibiting dispensation of prescription drugs without a prescription); *see, e.g.*, *United States v. Partridge-Staudinger*, 287 F.R.D. 651, 652 (E.D. Wash. 2013) ("'The act of dispensing a drug contrary to the provisions of this paragraph shall be deemed to be an act which results in the drug being misbranded while held for sale.'") (quoting 21 U.S.C. § 353(b)(1)(C)); *see also United States v. Smith*, 573 F.3d 639, 653 (8th Cir. 2009) ("A drug is misbranded unless dispensed upon a prescription of a practitioner licensed by law to administer such drug.") (internal quotations and citations omitted).

causing injury to plaintiff's business or property." *United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014) (citing *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). Without a predicate act, a RICO claim necessarily fails. *Securities Investor Protection Corp. v. Vigman*, 908 F.2d 1461, 1467–68 (9th Cir. 1990), *rev'd in part on other grounds by Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).

As the Court instructed the jury, the Stores were required to prove that Tauler Smith engaged in a "pattern of racketeering activity," which here meant "violations of 18 USC Section 1341 which is commonly known as the mail fraud statute." *See* Cole Decl., Ex. C (Certified Transcript of Jury Trial Proceedings from March 16, 2023, AM Session) at 528:1–7. Among other things, to prove Mail Fraud under 18 U.S.C. § 1341, the Stores were required to prove that Tauler Smith (i) knowingly participated in a scheme or plan to defraud, (ii) knowingly participated in a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts, or (iii) acted with the intent to defraud. *Id.* at 531:4–15 (instructions to the jury on the elements in Mail Fraud).

"In order to prove a violation of 18 U.S.C. § 1341, there must be a showing of a specific intent to defraud. The intent to defraud may be inferred from a defendant's statements and conduct." *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992) (internal citation omitted). In the absence of direct evidence of intent, the party asserting fraud must first prove "the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension," and then, "by examining the scheme itself" the trier of fact may infer a defendant's specific intent to defraud. *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984) (internal quotation marks omitted) (quoting *United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir. 1980)).

This is a failure of proof case. Not a single witness at trial provided testimony that would support a finding that Tauler Smith had the "specific intent to defraud," nor could that intent be inferred from the demand letters themselves. **The Stores had the burden to**

*establish this intent*, yet they did not call to testify a single Tauler Smith attorney, any one of whom the Stores could have cross-examined about Tauler Smith's intent behind sending the demand letters.  The only witness who testified about Tauler Smith at all was a former bookkeeper, who necessarily could not have any personal knowledge regarding the veracity of the legal opinions asserted in the demand letters themselves because he is "not a lawyer."  Cole Decl., Ex. D (Certified Transcript of Jury Trial Proceedings from March 15, 2023, AM Session, at 419:15–19).  Because there is no sufficient evidentiary basis for a reasonable jury to find that Tauler Smith had the specific intent to commit Mail Fraud, the Stores' RICO claim necessarily fails.

      a.  <u>Joseph Valerio</u>

Mr. Valerio, Tauler Smith's former bookkeeper, provided no testimony that would establish the element of "specific intent to defraud."  Notably, Mr. Valerio did not opine at all regarding the accuracy of the legal opinions expressed in the demand letters sent to the Stores.  Rather, based on services provided as a bookkeeper, Mr. Valerio testified that: (i) Tauler Smith identified "targets" for litigation (Cole Decl., Ex. D at 330:17–22); (ii) the Outlaw project was a "scheme" (*id.*, 333:9–11); (iii) Tauler Smith sent approximately 15,000 demand letters to targets of the Outlaw litigation (*id.*, 336:19–25); (iv) Tauler Smith pursued retail stores that carried male enhancement pills, as opposed to the distributors or manufacturers themselves, because Robert Tauler (one of Tauler Smith's attorneys) was "scared of the distributors and the manufacturers" after having "received phone calls that implied that his [Mr. Tauler's] safety was at risk if he pushed any further" (*id.*, 337:16–21, 338:13–21); (v) Mr. Tauler was "obsessed with the project" (*id.*, 339:4–11); (vi) another Tauler Smith attorney, Matthew Smith, was added to the Outlaw pleadings because judges recognized Mr. Tauler's name and were dismissing too many of his cases (*id.*, 352:24–353:14); and (vii) Mr. Tauler "did not care" about unspecified opinions from "other attorneys in the law firm" regarding the pharmaceutical contents of the pills (*id.*, 357:4 – 11.)

None of this establishes that Tauler Smith had the specific intent to defraud, nor could that intent be inferred from any of Mr. Valerio's testimony. Identifying "targets" for litigation, sending pre-litigation demand letters, deciding to pursue claims against store owners after receiving threats from the manufacturers and suppliers, obsessing over the project, and having other attorneys handle some cases is not—and could never be—the type of evidence that would establish a specific intent to defraud. Nor could a specific intent to defraud be inferred from the totality of Mr. Valerio's testimony, even when viewed in connection with the other witnesses' testimony.

Mr. Valerio's having characterized the Outlaw litigation as a "scheme" (*id.*, 333:9–11)—without more—is not enough to establish that Tauler Smith or any of its attorneys acted with the intent to defraud. And Mr. Valerio's testimony that Mr. Tauler "did not care" about the unspecified opinions of "other attorneys in the law firm" lacks the specificity required to support a finding of mail fraud, let alone a "fraudulent scheme," particularly when the law firm has been in continuous existence for almost a decade. *See, e.g.*, *Ahmadi Abhari v. Victory Park Capital Advisors*, Case No. CV 20-05734 PA (MAAx), 2020 WL 7346676, at *5 (C.D. Cal. Nov. 16, 2020) (when RICO defendants operate organizations that are "facially legitimate" and "otherwise act as routine participants in American commerce, a significant level of factual specificity is required to allow a court to infer reasonably that such conduct is plausibly part of a fraudulent scheme.") (citing *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997–98 (9th Cir. 2014)). Mr. Valerio cannot support the Stores' theory that the letters contained any false statement of fact or law.

In short, there is hardly a sufficient evidentiary basis from Mr. Valerio's testimony to establish a specific intent by Tauler Smith to defraud.

    b. <u>Shawn Lynch</u>

Mr. Lynch, Outlaw Laboratory's founder and owner, likewise provided no testimony that would establish the element of "specific intent to defraud." Cole Decl., Ex. A (Certified Transcript of Jury Trial Proceedings from March 15, 2023, Volume 2,

Afternoon Session) at 395:16–18. If anything, the opposite is true: Mr. Lynch's testimony established the legitimate, non-fraudulent purpose behind the Outlaw project:

> BY MR. POE:
>
> Q And do you know what those demands were about, what was the basis of the claim in those demands?
>
> A I think it was for unfair competition.

*Id.*, 400:10–12.

Mr. Lynch—who explicitly and repeatedly referred to the pills as "illegal" products throughout his testimony—was adamant that Tauler Smith pursued stores who sold "illegal" pills to remedy unfair competition, not to cheat store owners out of money, or to deceive them into believing there was liability when none existed. *See*, *e.g.*, *id.* at 400:25–401:1 ("Pulaski was the one that funded the investigation to get leads and see who was selling the other illegal products."); *id.* at 401:13–15 ("I think that they were just funding the leads for the investigation, to see who was selling the illegal male supplements around California."); *id.* at 402:12–14 ("I was just helping some of the investigation. We had hired some people that would go out to the stores and look for products that were illegal."); *id.* at 404:9–10 ("We were really trying to clean everything up, too, because it wasn't fair that everybody was selling illegal supplements.").

Rather than intending to defraud, Mr. Lynch was clear that the "only purpose of these lawsuits was to pursue brick-and-mortar retail outlets under unfair competition claims," and specifically "to stop harm that was being done to Outlaw's business." *Id.*, 427:11–15, 429:8–11.

Mr. Lynch testified that Tauler Smith only pursued these claims (whether by sending demand letters or filing lawsuits) because doing so helped remedy what Outlaw saw as unlawful competition and resulting harm to its business. As Mr. Lynch explained, Outlaw wanted to sell its own product (a natural enhancement pill) in retail stores; the retail stores would not take Outlaw's product because the "illegal" products sold better (because they

contained a pharmaceutical); and so litigation was viewed as a means to level the playing field. This is the only conclusion from Mr. Lynch's testimony:

> Q Would you agree with me that the reason that you would never have envisioned that ["the Outlaw-Tauler Smith litigation would be accused of operating a federal mail fraud scheme"] is because the purpose was to stop harm that was being done to Outlaw's business?
>
> A Correct.
>
> Q The harm that was being done to Outlaw's business, would you agree with me, is that what you viewed as a nonnatural sex enhancement pill were being sold in locations that Outlaw wanted to sell in, correct?
>
> A Correct.
>
> Q Would you agree with me that Outlaw had wanted to sell its version of the natural sex enhancement pill in the gas stations?
>
> A Correct.
>
> Q And when I say gas stations, I am also referring to convenience stores, brick-and-mortar stores. Is that fair?
>
> A Yes.
>
> Q Do you agree with me that the gas stations, retail stores, they wouldn't take the natural version of the sex enhancement pill?
>
> A No, they wouldn't.
>
> Q Do you agree with me that the reason that they wouldn't take the natural sex enhancement pill is because what they were selling, the nonnatural sex enhancement pills, those sold better?
>
> A Correct.
>
> Q Do you agree with me that you, yourself, had expressed concern to Mr. Tauler that what was being sold in the gas stations and the convenience stores was ***a pharmaceutical***?

>A That's correct.

*Id.* at 429:3 –430:10 (emphasis added).

Rather than just "concern," Mr. Lynch actually "expressed outrage, literal outrage, to Mr. Tauler when [he] found out that the gas stations and the convenience stores were continuing to sell the nonnatural version of the sex enhancement pills." *Id.* at 430:8–16. Far from establishing an intent to deceive, Mr. Lynch's testimony is entirely consistent with the statements in the demand letters themselves: Tauler Smith pursued stores that sold—in Mr. Lynch's words—"illegal" pills; those sales were "illegal" in the sense they were a form of "unlawful" competition; and the litigation was pursued to remedy actual harm to Outlaw's business. Moreover, Tauler Smith was one of several law firms that pursued identical claims for Outlaw, and Tauler Smith was eventually terminated for successor counsel. *Id.* at 452:8–10.

In short, there is zero evidentiary basis from Mr. Lynch's testimony to establish a specific intent by Tauler Smith to defraud.

c. <u>Michael Wear</u>

Similar to Mr. Lynch, Mr. Wear established nothing other than the legitimate, non-fraudulent purpose behind the Outlaw project—namely, that on behalf of Outlaw, Tauler Smith pursued stores that sold illicit pills as a means to remedy unfair competition and resulting harm to Outlaw's business. As Mr. Wear explained:

>Q It is your understanding that there were nonnatural versions of TriSteel that were being sold throughout the country, correct?
>
>A Not of TriSteel, no.
>
>Q Similar products, correct?
>
>A Yes, sir.
>
>Q Did that bother -- did that pose a threat to Outlaw's business?
>
>A It made it difficult to grow that particular product in our product line. We had probably close to 35 or 40 different products in a product line, everything

from protein to preworkout. And that was a big high-margin item, and it's difficult to compete when other competitors are using something that is going to make it work better because it is a pharmaceutical.

Q And the products that you are referring to as a pharmaceutical, can you elaborate, just to help the jury, explain what products we are talking about?

A Like Viagra or Cialis would be hidden in the competition's product without putting it on the label, ***which you have to have a prescription for***, especially at that time. Not so much now. But it makes it very difficult to compete if you are not on the same playing field.

*Id.* at 462:13–463:10 (emphasis added).

Mr. Wear did not testify at all about a plan or intent to deceive. Instead, the only conclusion from his testimony—as he explicitly stated—is that the "purpose of having Tauler Smith go and pursue claims" was to "even the playing field." *Id.*, 464:5–7. In fact, when asked whether he ever envisioned that Tauler Smith's litigation could be characterized as fraudulent, Mr. Wear responded with an adamant "No, sir," explaining: "There's nothing fraudulent about it. I mean, I would be upset, if I bought something at a store that contained something that wasn't on the ingredients panel. That would upset me." *Id.* at 464:8–16.

What Mr. Wear described is the essence of unfair competition or illegal commercial behavior: selling products with a hidden pharmaceutical, the result of which hurts competitors like Outlaw who play by the rules. This is the opposite of fraud; and no reasonable juror could have listened to Mr. Wear's testimony and come away with any other conclusion.

> d. The Stores Failed to Prove that TriSteel Was ***Not*** Sold at Retail Locations Across the U.S.

Throughout this litigation and at trial, the Stores have argued that (i) TriSteel (Outlaw Laboratory's natural enhancement pill) was not sold in storefront retail locations across the country, and (ii) as a result, any statements by Tauler Smith—whether in the demand letters or in court filings—that TriSteel *was* sold in retail locations across the

country was necessarily false. Critically, however, there is not a sufficient evidentiary basis to conclude that this statement was false, let alone to infer a fraudulent intent based on language by Tauler Smith that TriSteel was "[s]old in storefront retail locations around the United States." *Id.* at 420:1–18 (quoting Trial Exhibit 117). Stated otherwise, the Stores failed to prove (and they carried the burden) that TriSteel was <u>not</u> sold in storefront retail locations across the United States, such that any statements suggesting otherwise by Tauler Smith were false, or that there was an intent to defraud as to this fact.

Rather than meet their burden to show TriSteel was <u>not</u> sold in storefront retail locations across the United States, the Stores adduced testimony at trial suggesting or explicitly stating that Outlaw and its principals (i) "assumed" TriSteel was sold at storefront retail locations (through distributors), and (ii) told Mr. Tauler that TriSteel was in fact sold at storefront retail locations. As Mr. Wear testified:

> This is the Exhibit C attached to that particular demand letter. And I want to bring your attention to page 21, paragraph 29; in particular, the last sentence that says, "Plaintiff sells TriSteel and TriSteel 8-hour through its website, OutlawLaboratory.com, as well as through many other online and storefront retail locations across the United States." Do you see that?
>
> A Yes, sir.
>
> Q Had you told Mr. Tauler that TriSteel was sold at storefront retail locations across the United States?
>
> A Through distributors. That's the only way it would get to those stores. Yes, sir.
>
> Q And you had told him that it was, in fact, sold at storefront retail locations?
>
> A We could only assume that it was.
>
> Q You assume it was. **Do you have a recollection of whether you told Mr. Tauler that**?
>
> A **Yes, sir, we did**.

> Q You told him it was offered through distributors?
>
> A Correct, to stores, yes, sir.
>
> Q Do you know any retail locations in any states other than Texas that, in fact, sold TriSteel?
>
> A No, sir.
>
> Q Not one. So, for example, in California, do you know if any retail location, brick-and-mortar store, storefront, sold TriSteel at any point?
>
> A I never went in one. I wouldn't know.
>
> Q Also, in San Diego County, of course, you don't know?
>
> A No. No, sir.

*Id.* at 455:19 –456:22.

This hardly establishes the falsity of any statement by Tauler Smith that TriSteel was sold at storefront retail locations, let alone a fraudulent intent. To the contrary, the only testimony on this fact is that Outlaw, a purported participant in the alleged scheme ***believed and continues to believe that TriSteel was in fact sold in retail stores across the United States.*** Even if Mr. Wear "wouldn't know" whether TriSteel was sold in states other than Texas, he explicitly "told Mr. Tauler that TriSteel was sold at storefront retail locations across the United States." *id.*, which negates any assertion that Outlaw or Tauler Smith believed that the assertion that TriSteel was sold in retail stores across the United States was untrue.[2] Tauler Smith could not possibly have the intent to deceive or defraud

---

[2] To establish that TriSteel was not sold in retail stores across the United States, which was the Stores' burden, the Stores would have to show by a preponderance of the evidence that TriSteel was not sold in multiple retail stores in the United States. The Stores made no attempt to make this showing. Instead, they merely solicited testimony that Outlaw's principals could not prove that TriSteel was sold outside of Texas in retail stores. The Stores are attempting to turn on its head their burden to establish the falsity of Tauler Smith's statement, yet they failed to establish the falsity of Tauler Smith's statement, let alone any intent to defraud using this statement.

when its client (Outlaw) explicitly conveyed that TriSteel was being sold at retail locations across the U.S.

### III.     CONCLUSION

Without any evidence supporting the predicate act of Mail Fraud (or any other predicate act), there is no sufficient evidentiary basis to support the Stores' RICO claim. As a result, Tauler Smith respectfully requests that the Court enter judgment as a matter of law in its favor.

DATED:  April 21, 2023                Respectfully submitted,

**KJC LAW GROUP, A.P.C.**

By:   */s/ Kevin J. Cole*
Attorneys for Counter-Defendant
*Tauler Smith LLP*