UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORIES, LP LITIGATION | Case No.: 18-cv-840-GPC-BGS<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS OF SUIT**<br>**[ECF No. 448]** |

Before the Court is a Motion for Attorney's Fees and Costs brought by Roma Minkha, Inc., doing business as Bobar #2 Liquor; NMRM, Inc., doing business as Sunset Liquor; and Skyline Market Inc., doing business as Skyline Farms Market (collectively "The Stores") against third-party defendant and counterdefendant Tauler Smith LLP. ECF No. 448. The Stores prevailed at trial and now request fees and costs pursuant to 18 U.S.C. § 1964(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO") fee-shifting provision. *Id.* Tauler Smith filed an opposition, ECF No. 450, and The Stores replied, ECF No. 451. The Court finds the matter suitable for decision based upon the papers and vacates the hearing scheduled for October 6, 2023. Upon consideration of the

Motion and related papers, the Court GRANTS IN PART the Motion, finding that The Stores are entitled to $862,314.32 in attorneys' fees and $33,410.48 in costs of suit.

## Background

Beginning in 2017, Tauler Smith and Outlaw Laboratory, LP ("Outlaw"), then represented by Tauler Smith, sent thousands of letters to small retail stores asserting that the stores were selling male sexual enhancement pills subject to FDA warnings in violation of RICO and the Lanham Act. ECF No. 114 ¶¶ 2, 26; ECF No. 434 at 278:17-23; ECF No. 1 ¶¶ 1-2. Outlaw sells a competing natural male enhancement product. ECF No. 1 ¶ 4. Typically, the letters threatened to sue for more than $100,000 if the store did not pay a settlement of around $10,000-15,000. *See e.g.*, ECF No. 438-4. Attached were usually a draft complaint and photos of the store. *See id.* The Stores received such demand letters, and Skyline Market paid a settlement fee and incurred attorneys' fees. ECF No. 114 ¶¶ 33-35.

In May 2018, Tauler Smith, on behalf of its client Outlaw, filed suit against roughly 50 stores for unlawfully selling sexual enhancement pills that allegedly competed with Outlaw's product. ECF No. 1 (complaint); ECF No. 28 (consolidation order). On August 24, 2018, The Stores filed a Third-Party Complaint and Counterclaims ("counterclaims") against Outlaw that alleged a class action against Outlaw for (1) civil RICO violation, 18 U.S.C. § 1962(c), (2) RICO conspiracy, 18 U.S.C. § 1962(d), and (3) rescission of any settlement agreements like the one entered into by Skyline Market. Case No. 18-cv-1882 ECF No. 4.[1] The counterclaims asserted that Outlaw was operating a scheme to defraud small businesses by mailing baseless demand letters to obtain a quick settlement. The Stores amended their counterclaims for the second time in August 2019, alleging the same causes of action and adding Tauler Smith, as well as the owners

---

[1] Case No. 18-cv-1882 was later consolidated with above-captioned case. ECF No. 28.

1  of Outlaw, as counterdefendants.  ECF No. 114 at 1.  The counterclaims are framed as a
2  class action and The Stores accordingly moved to certify a class in April 2020.  ECF No.
3  179.  In June 2020, the Stores, Outlaw, and Outlaw's owners—but not Tauler
4  Smith—signed a settlement agreement.  ECF No. 359-1 at 14.  Shortly thereafter, but
5  unrelatedly, the Court dismissed Outlaw's last remaining claim against The Stores in July
6  2020.  ECF No. 251 at 1-2.
7        In April 2021, as a result of the settlement with Outlaw and the parties' joint
8  motion, the Court dismissed The Stores' counterclaims against Outlaw.  ECF Nos. 362-
9  63.  As part of the settlement, Outlaw paid The Stores $125,000 and agreed to abandon
10  the "scheme" and its efforts to collect payments from all stores nationwide that it had
11  already targeted.  ECF No. 361 at 3; ECF No. 249 at 1.  Within a week of signing the
12  settlement, Outlaw dismissed at least some of the lawsuits it had already brought.
13  *Compare* ECF No. 448-4 (nine cases brought by Outlaw in the Eastern District of
14  Michigan were closed on June 29, 2020), *with* ECF No. 359-1 at 14 (settlement
15  agreement signed on June 24, 2020).
16        Following the settlement, The Stores filed an amended motion for class
17  certification on the same claims.  ECF No. 365.  The Court denied the motion, finding
18  that Skyline Market, the proposed class representative, and Gaw | Poe, the proposed class
19  counsel, were inadequate to represent the class.  ECF No. 375 at 18.  The Court explained
20  that the provision of the settlement agreement preventing Gaw | Poe and The Stores from
21  cooperating with or assisting "in any manner" any non-party with any claims against
22  Outlaw would "create a material conflict of interest" with the absent class members
23  because it would hinder Gaw | Poe's ability to present evidence against Tauler Smith that
24  implicated Outlaw.  *Id.* at 16, 18.  As the Court noted, the "[s]ettlement should have been
25  drafted differently if Skyline Market and Gaw | Poe wished to prosecute Tauler Smith
26  themselves."  *Id.* at 18.
27
28

The Stores' individual claims against Tauler Smith proceeded to trial in March 2023.  At trial, Joseph Valerio, an independent contractor who provided chief financial officer services to Tauler Smith, testified that Robert Tauler, a partner at Tauler Smith, "came up with the idea of . . . create[ing] a new product [to] . . . sue everybody else who's putting in illegal stuff and . . . recoup [the] money back."  ECF No. 434 at 264:8-11.  Valerio further testified that when Tauler Smith tested an enhancement pill from Sunset Liquor, the pill did not contain the active ingredients subject to the FDA notice, but that Robert Tauler "did not care."  *Id.* at 296:11-297:17.  Valerio estimated that Tauler Smith sent around 15,000 demand letters.  *Id.* at 278:18-23.  On March 16, 2023, after three days of proceedings, the jury returned a verdict in favor of The Stores, finding that Tauler Smith violated RICO, and awarded $2,700 to Roma Mikha, $5,940 to NMRM, Inc., and $3,300 to Skyline Market, totaling $11,940 in damages.  ECF No. 427.

The parties have vigorously litigated the case since it began in 2018 and they continue to do so.  Tauler Smith, first as counsel for Outlaw and then as a counterdefendant, has engaged in extensive motion practice, filing over a dozen substantive motions.[2]  It also appealed the judgment, now pending at the Ninth Circuit.  ECF No. 446.  In addition to attempting to certify a class, The Stores for their part

---

[2] *See* Motion to Dismiss Counterclaims, Case No. 18-cv-1882 ECF No. 15; Anti-SLAPP Motion, Case No. 18-cv-1882 ECF No. 16; Motion to Dismiss Amended Counterclaims, ECF No. 38; Motion for Judgment on the Pleadings, ECF No. 80; Motion for Sanctions, ECF No. 102; Motion to Dismiss Second Amended Counterclaims, ECF No. 143; a second Anti-SLAPP Motion, ECF No. 156; Motion to Disqualify Gaw | Poe, ECF No. 191; Motion for Reconsideration of Denial of Motion to Dismiss, ECF No. 204: Motion for Summary Judgment, ECF No. 260; Motion for Reconsideration of Summary Judgment Order, ECF No. 306; a second Motion to Dismiss Second Amended Counterclaims, ECF No. 385; Motion for Certification of Interlocutory Appeal, ECF No. 399.

amended their counterclaims twice and requested leave to do so a third time.[3]  ECF No. 114; ECF No. 126.  The parties also engaged in somewhat contentious discovery.[4]

Most recently, on August 18, 2023, The Stores filed the instant motion for attorneys' fees and costs.  ECF No. 448.  Tauler Smith opposed, ECF No. 450, and The Stores replied, ECF No. 451.  The Stores seek $1,067,881.5 in fees for 1,106.5 hours of work and $33,410.48 in costs.  ECF No. 448; ECF No. 451 at 8.

## Attorneys' Fees

Under 18 U.S.C. § 1964(c), "any person injured in his business or property by reason of a [RICO] violation . . . may sue . . . and shall recover threefold the damages he sustains and the costs of suit, including a reasonable attorney's fee[.]"  This language mandates that a party injured by a RICO violation receive attorneys' fees and costs.  *See Valadez v. Aguallo*, No. C-08-03100, 2009 WL 10680866, at *4 (N.D. Cal. Dec. 10, 2009), *aff'd*, 433 F. App'x 536 (9th Cir. 2011) (collecting cases).  Because The Stores won on each of their RICO claims at trial, the parties do not dispute that The Stores are entitled to attorneys' fees and costs under this provision.  ECF No. 450 at 4 (Opposition) ("[T]here is no dispute that the RICO statute provides for attorney's fees.").  Rather, the parties dispute what amount of fees is reasonable.

---

[3] Other than filings discussed above and those regarding the settlement and discovery, The Stores filed three motions.  *See* Motion for Summary Judgment, ECF No. 90; Motion for Judgment on the Pleadings, ECF No. 168; Motion for Sanctions, ECF No. 300.

[4] *See* Motion to Compel Discovery Responses filed by The Stores, ECF No. 116; Motion to Compel Discovery Reponses filed by Tauler Smith, ECF No. 192; Motion to Compel Compliance with Subpoenas filed by Tauler Smith, ECF No. 255; Motion for Sanctions and to Compel Document Production and Interrogatory Response filed by The Stores, ECF No. 269.

## I. Calculating the Lodestar

To determine what constitutes a reasonable fee award, the Court uses the lodestar method. *See Monex Deposit Co. v. Gilliam*, No. SA-cv-09287, 2010 WL 2380873, at *3 (C.D. Cal. May 24, 2010) (using the lodestar method to determine reasonableness of a fee award under 18 U.S.C. § 1964(c)); *Ally Bank v. Karakasevic*, No. 11-cv-00896, 2016 WL 7971245, at *3 (N.D. Cal. Dec. 19, 2016) (same); *see also Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) ("the lodestar figure has . . . become the guiding light of our fee-shifting jurisprudence"). The lodestar is the hours reasonably expended by counsel multiplied by counsel's reasonable hourly fee. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022). After calculating the lodestar, the court may adjust it to account for other reasonableness factors. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016).

### a. Reasonable Hourly Rates

Reasonable hourly rates are rates "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013). The relevant community is the Court's forum—San Diego in the Southern District of California. *See id.* at 1205. And although the litigation began in 2018, the Court uses currently prevailing rates in its analysis. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) ("Full compensation requires charging current rates for all work done during the litigation, or by using historical rates enhanced by an interest factor.").

Here, Gaw | Poe requests $996 per hour for its senior partners, Randolph Gaw and Mark Poe, and $855 per hour for the other attorneys, Flora Vigo and Samuel Song. ECF No. 448 at 11. Tauler Smith does not dispute these requests. ECF No. 450 (absence). Still, the Court briefly reviews the requested rates, and finds that they are reasonable. *See*

*Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1160 n.5 (9th Cir. 2018) ("district courts have a duty to ensure that claims for attorneys' fees are reasonable" (internal quotation marks and citation omitted)).

The requested rates are roughly within the range of hourly rates previously approved in this district. *See, e.g.*, *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479, 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22, 2023) (approving hourly rates over $1,000 for partners in complex patent litigation); *Lopez v. Mgmt. & Training Corp.*, No. 17-cv-1624, 2020 WL 1911571, at *8-9 (S.D. Cal. April 20, 2020) (finding hourly rates ranging from $500 to $900 reasonable). And, in 2020, the Northern District of California approved an hourly rate of $1,000 for Gaw | Poe senior partners and $855 for junior partners and Counsel. *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082, 2020 WL 1921774, at *8 (N.D. Cal. Mar. 24, 2020).

The requested hourly rate for Mr. Poe and Mr. Gaw is $996, the rate charged by the third quartile of partners in San Diego according to the 2022 Real Rate Report.[5] Both Mr. Poe and Mr. Gaw have been practicing for over two decades, were Counsel at large firms prior to founding their own firm, and have been recognized as "Super Lawyers" for multiple years. ECF No. 448 at 8; ECF No. 448-2 ¶¶ 4-5. Their backgrounds justify placing them in the third quartile for partner pay and compensating them at $996 per hour. *See Trendsettah USA, Inc. v. Swisher Int'l Inc.*, No. SA-cv-14-01664, 2017 WL 11477621, at *9 (C.D. Cal. Feb. 27, 2017) (placing the attorneys at Gaw | Poe in the third quartile for hourly rates).

---

[5] The Real Rate Report is an "analysis of law firm rates based on invoice data . . . [and] has been cited with approval by courts inside and outside this district." *Kries v. City of San Diego*, No. 17-cv-1464, 2021 WL 120830, at *7 (S.D. Cal. Jan. 13, 2021) (collecting cases).

1    "Given their fewer years of experience and lower level of responsibility for
2    managing the case," The Stores request $855 per hour for Mr. Song and Ms. Vigo.  ECF
3    No. 448 at 10.  The rate is justified.  Mr. Song, a partner, has over a decade of experience
4    and Ms. Vigo, Counsel, has close to two decades of experience and was previously
5    Counsel at a large firm.  *Id.* at 8; ECF No. 448-2 ¶¶ 6-7.
6    Thus, the Court holds that $996 is a reasonable rate for Mr. Poe and Mr. Gaw and
7    $855 is a reasonable rate for Mr. Song and Ms. Vigo.

### b. Reasonable Number of Hours Expended

9    "In determining the appropriate number of hours to be included in a lodestar
10   calculation, the district court should exclude hours that are excessive, redundant, or
11   otherwise unnecessary."  *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir.
12   2009) (internal quotation marks and citation omitted).  The Stores "bear[] the burden of
13   documenting the appropriate hours expended in the litigation and must submit evidence
14   in support of those hours worked."  *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.
15   1992).  The burden then shifts to Tauler Smith to challenge "the accuracy and
16   reasonableness of the hours charged."  *Id.* at 1397-98.
17   The Stores request a lodestar calculation based on 1,106.5 hours, including time
18   spent working on the Attorneys' Fees Motion and Reply, and submit a log of their hours.
19   ECF No. 448 at 6; ECF No. 451 at 8 (adding in the time spent drafting the Reply); ECF
20   448-7 (time-keeping entries).  The Stores' counsel testify that they expended a total of
21   1,186.2 hours on the litigation, but do not request reimbursement for 90.6 hours spent
22   working on the failed class certification.[6]  ECF No. 448-2 at ¶ 2.  Tauler Smith does not
23   object to any specific time entry in the log, but contends that The Stores cannot be

---

[6] They also do not request compensation for 2.8 hours recorded by partner Victor Meng. *Id.*

1 reimbursed for (i) time spent before moving to join Tauler Smith as a counterdefendant on July 1, 2019, and (ii) time spent during an alleged conflict of interest between Gaw | Poe and absent members of the proposed class—from June 11, 2020 to July 12, 2021. ECF No. 450 at 4-7.

As a whole, 1,106.5 hours, beginning on August 11, 2018, is a modest amount to spend litigating a complex civil RICO with over fifteen substantive motions and fairly contentious discovery. *See* notes 2-4 *supra* (listing motions). There is a description for each time entry, and the amount of time spent is within reason for the tasks described. ECF No. 448-7. However, a few individual entries do not contain enough information for the Court to assess whether they are related to the RICO claims on which The Stores succeeded. For example, The Stores' counsel logged 30 minutes of work on August 31, 2018 for "[p]hone call with M. Walton re service of state subpoena on Namou Group store," *id.* at 2, and one hour of work for "call with D. Jaffer and M. Meyer re potential collaboration" on August 19, 2019, *id.* at 10. Because there are only a few such entries and because they record brief periods of time, the Court finds that a small "haircut" of 5% ensures that the hours requested are not "excessive, redundant, or otherwise unnecessary." *McCown*, 565 F.3d at 1102 (citation omitted).

*Hours Expended Before Joining Tauler Smith as a Counterdefendant*

Tauler Smith's argument that it should not pay attorneys' fees for the time period before The Stores moved to join it as a counterdefendant on July 1, 2019—omitting roughly the first year of the case—is unpersuasive. ECF No. 450 at 6. The only law Tauler Smith cites to support this argument is for the proposition that the prevailing party cannot receive attorneys' fees "for time spent on unsuccessful claims that are unrelated to the plaintiff's successful . . . claim." *Id.* (quoting *McCown*, 565 F.3d at 1103). But the claims The Stores brought against Outlaw, before joining Tauler Smith, are the same as those they alleged against Tauler Smith, and on which they succeeded. *Compare* Case

No. 18-cv-1882 ECF No. 4 ¶¶ 41-58 (original counterclaims), *with* ECF No. 114 ¶¶ 83-99 (second amended counterclaims).  There were no unsuccessful claims.

Additionally, The Stores point out that RICO co-conspirators are jointly and severally liable, *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 775 (9th Cir. 2002), and both the First Circuit and the Northern District of California have held that that joint and several liability applies to attorneys' fees where the claims against the defendants are "factually related" and "[p]laintiffs devoted their resources generally to the litigation as a whole."  *Ally Bank*, 2016 WL 7971245, at *6-7 (citation omitted) (collecting cases); *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1570 (1st Cir. 1994), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 63 (1997).  *But see Abou-Khadra v. Bseirani*, 971 F. Supp. 710, 717 (N.D.N.Y. 1997).  Because the claims against Outlaw and Tauler Smith are effectively identical and plaintiffs devoted their resources "to the litigation as a whole," when Tauler Smith was named as a counterdefendant is irrelevant because Tauler Smith would be jointly and severally liable for damages anyway.

The Court has no equitable concerns about charging Tauler Smith attorneys' fees for work The Stores' counsel performed before July 2019 because Tauler Smith was central to the underlying conduct found in violation of RICO.  In fact, the original RICO claim against Outlaw identified Tauler Smith as a member of Outlaw's RICO conspiracy, Case No. 18-cv-1882 ECF No. 4 ¶ 30, and there is evidence suggesting that Robert Tauler initiated the "scheme," ECF No. 434 at 264:8-11, and benefited substantially more than the other defendants, *compare id.* at 305:24-306:5 (testimony estimating that Tauler Smith took in $2.3 million), *with* ECF No. 272-17 at 159 (testifying that Outlaw and its owners obtained about $120,000).  Moreover, even though Tauler Smith was not a defendant prior to July 2019, Tauler Smith acted as counsel for Outlaw, and in fact brought the complaint, ECF No. 1.

The Court therefore declines to omit the hours expended by Gaw | Poe prior to joining Tauler Smith as a counterdefendant.

*Hours Expended During the Alleged Conflict of Interest*

Tauler Smith also argues that The Stores should not recover fees for work performed during the time Gaw | Poe was allegedly in violation of its ethical responsibilities by having a conflict of interest with the proposed absent class members. ECF No. 450 at 4-5, 7.  The Stores have already omitted from their request the 90.6 hours their counsel spent on class certification matters.  ECF No. 448-2 ¶ 2.  Nonetheless, Tauler Smith argues that the Stores should not be compensated for any hours worked between June 11, 2020, when the time-keeping log first reflects work on the settlement that created the potential conflict, ECF No. 448-7 at 14, and July 12, 2021, when the Court found Skyline Market and Gaw | Poe inadequate to represent the class, ECF No. 375 at 18.

The Stores argue that the class action case law cited by Tauler Smith is inapplicable because the RICO fee-shifting statute makes granting of reasonable attorneys' fees mandatory.  ECF No. 451 at 2-4.  However, the Ninth Circuit has held that a court has equitable power to deny attorneys' fees because of a conflict of interest under a mandatory fee-shifting provision.  *Image Tech. Serv., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1357-58 (9th Cir. 1998) (holding that the district court abused its discretion by awarding attorneys' fees to disqualified counsel for the time period prior to its disqualification under the mandatory fee-shifting provision in the Clayton Act).

As Tauler Smith argues, The Stores' counsel "implicated ethical concerns" by entering into a settlement agreement that prevented it from assisting non-parties "in any manner" in any litigation against Outlaw and in attempting to serve as class counsel in the suit against Tauler Smith.  ECF No. 451 at 5; ECF No. 375 at 16.  Nevertheless, The Stores' counsel never simultaneously represented clients with conflicting interests, and

the Court will not reduce its hours on that basis. *Cf. In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at *21 (N.D. Cal. Dec. 10, 2020), *aff'd*, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (refusing to reduce attorneys' fees for counsel's advocacy for a distribution proposal—that allegedly created a representational conflict of interest—that the court never entertained or approved).

When courts reduce a fee award for unethical conduct, they generally do so by not compensating counsel for the period of time during which counsel was in breach of their professional responsibility. *See Image Tech*, 136 F.3d at 1358 ("An attorney may claim fees only for services provided before the conflict arose and the ethical breach occurred."). However, at least where the breach is not egregious, courts award fees for the period prior to the breach or after the breach is cured. *See id.*; *Rodriguez v. Disner*, 688 F.3d 645, 660 n.12 (9th Cir. 2012) ("The district court properly determined that its rejection of the incentive awards cured any conflict of interest and that [counsel's] services thereafter were properly performed and conferred a benefit on the class" and could be compensated.). Moreover, a court is not *required* to deny attorneys' fees for work conducted by counsel while engaged in conflicting representation. *Rodriguez*, 688 F.3d at 658 ("The district court . . . could have reasonably concluded that [counsel that engaged in conflicting representation] was entitled to some attorneys' fees for its efforts and notable success[.]").

The Court found Gaw | Poe inadequate to serve as class counsel because it was concerned that the settlement agreement between The Stores and Outlaw created a conflict of interest, or at least the appearance of one, with the proposed absent class members. ECF No. 375 at 18. Specifically, the Court explained that the provision preventing Gaw | Poe and The Stores from cooperating with or assisting "in any manner" any non-party with any claims against Outlaw would "create a material conflict of interest" with the absent class members because it would limit the evidence The Stores

could present against Tauler Smith. *Id.* at 16, 18. Because the Court denied the motion for class certification, *id.* at 20, Gaw | Poe never represented the proposed absent class members, meaning that it never simultaneously represented clients with conflicting interests. That the Court's order, as opposed to counsel's actions, prevented the potential breach does not alter the analysis. *See Rodriguez*, 688 F.3d at 660 n.12 (holding that the district court's rejection of the incentive awards that created the conflict of interest cured the conflict). Thus, there is no block of time for which the Stores' counsel should not receive attorneys' fees.

### c. The Resulting Lodestar

Finding that the hourly rate of $996 is reasonable for Mr. Gaw and Mr. Poe and the hourly rate of $855 is reasonable for Mr. Song and Ms. Vigo, the chart below details the hours worked and amount requested for each attorney's time. ECF No. 448-7; ECF No. 451 at 8. Including all the hours Gaw | Poe requested, the lodestar would be $1,067,881.50. Accounting for the 5% haircut, the Court holds that the lodestar is **$1,014,487.43**.

| Individual | Hours | Rate | Total |
|---|---|---|---|
| Mark Poe | 771.6 | $996 | $768,513.60 |
| Randolph Gaw | 92.4 | $996 | $92,030.40 |
| Samuel Song | 2.8 | $855 | $2,394.00 |
| Flora Vigo | 239.7 | $855 | $204,943.50 |
| **Totals** | **1106.5** | | $1,067,881.50 - (1,067,881.50*.05) = **1,014,487.43** |

## II.  Adjustments to the Lodestar Based on Limited Success

Though the lodestar is presumptively reasonable, in rare cases courts may apply an upward or downward multiplier to account for reasonableness factors not subsumed into

the reasonable hourly rates or hours expended, including the party's success in the litigation, the risk of nonpayment, the quality of representation, and the complexity of the issues. *Yamada*, 825 F.3d at 546; *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553-54 (2010) (noting that, for example, the complexity of a case is usually accounted for in the number of hours billed). The most critical factor is a party's success in the litigation because the fee award should be "reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "[W]here the plaintiff has achieved 'only limited success,' counting *all* hours expended on the litigation—even those reasonably spent—may produce an 'excessive amount.'" *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (quoting *Hensley*, 461 U.S. at 436). The Court finds that a multiplier of .85 is necessary to account for the Stores' limited success in the litigation—failing to obtain class certification and to reflect the modest amount of recovery actually received directly by The Stores.

Without suggesting a particular multiplier, Tauler Smith contends that the lodestar should be adjusted downward because The Stores' approximately $12,000 verdict at trial makes the request for over $1 million in attorneys' fees unreasonable. ECF No. 450 at 1-2, 4-5, 7. Tauler Smith relies heavily on *Lowery v. Rhapsody Int'l, Inc.*, a recent Ninth Circuit case that reversed the district court's attorneys' fees award of $1.7 million where the class members collectively recovered only about $50,000. 75 F.4th 985, 988 (9th Cir. 2023); ECF No. 450 at 1-2. The Ninth Circuit decried the high fee award in relation to the awarded compensation, noting that "[e]xcept in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class." *Lowery*, 75 F.4th at 994. However, it noted that this is true only "absent meaningful nonmonetary relief or other sufficient justification." *Id.* This aligns with prior case law holding that a lodestar higher than the damages award is not "per se unreasonable," *Gonzalez*, 729 F.3d at 1209.

Courts regularly grant fee awards that exceed the damages award, sometimes many times over, across a variety of fee-shifting statutes.[7]

*Lowery* specifically distinguished civil rights cases in which nonmonetary relief "can provide considerable benefits to society" and in which fee-shifting provisions are intended to "ensure that lawyers would be willing to represent persons with legitimate civil rights grievances." *Id.* at 995-96. Like the civil rights fee-shifting provisions, "Congress did not intend that attorneys' fees [under RICO] should be awarded only in some proportion to the plaintiff's damages." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, No. 16-cv-00236, 2020 WL 7626410, at *4 (N.D. Cal. Dec. 22, 2020) (internal quotation marks omitted). Especially where monetary damages amounts are small, as here, fee-shifting under 18 U.S.C. § 1964(c) ensures that persons with legitimate racketeering concerns can obtain representation. *See Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996) *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) ("even small individual claims under RICO can be feasible given the possibility of the award of treble damages and attorneys' fees to successful plaintiffs"). Plus, not all cases accounting for nonmonetary success and benefit to society involve civil rights claims. *See Fleet Inv. Co. v. Rogers*, 620 F.2d

---

[7] *See City of Riverside v. Rivera*, 477 U.S. 561, 564-65, 567 (1986) (plurality) (approving attorneys' fees of about $245,000 for a police excessive force case in which about $33,000 was awarded in damages); *Bravo*, 810 F.3d at 662, 665, 667 (approving attorneys' fees of about $1 million where the parties settled a warrantless search claim for $360,000 with some defendants and won a $5,000 compensatory award against other defendants); *Johnson v. MGM Holdings, Inc*, 943 F.3d 1239, 1241-42 (9th Cir. 2019) (approving attorneys' fees of about $184,000 where the class in a consumer protection action settled for $138,000); *Wallis v. BNSF Ry. Co.*, No. C13-40, 2014 WL 1648472, at *1, 6-7 (W.D. Wash. Apr. 23, 2014), *aff'd sub nom. Wallis v. Burlington N. Santa Fe Ry. Co.*, 680 F. App'x 515 (9th Cir. 2017) (granting attorneys' fees of about $231,000 in a Federal Railroad Safety Act case in which the jury awarded $20,000 in damages).

792, 794 (10th Cir. 1980) ("The value of an attorney's services is not only measured by the amount of the recovery to plaintiff, but also the non-monetary benefit accruing to others, in this case the public at large from his successful vindication of a national policy to protect consumers from fraud in the used car business."); *Brazil v. Dell Inc.*, No. C-07-01700, 2012 WL 1144303, at *1 (N.D. Cal. Apr. 4, 2012) ("The structural changes to Dell's marketing practices resulting from this litigation, particularly Dell's elimination of allegedly false representations regarding the pricing of its computers, conferred a benefit on both the class members and the public at large."). The plaintiffs in *Lowery* achieved no meaningful nonmonetary relief. 75 F.4th at 988. Here, The Stores did.[8]

The success of a case encompasses the damages award, potentially a related settlement amount, and "the significant nonmonetary results . . . achieved for [plaintiffs] and other members of society." *Morales v. City of San Rafael*, 96 F.3d 359, 365 (9th Cir. 1996); *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) (permitting consideration of a settlement paid by a co-defendant in some circumstances). "[T]he district court must consider the excellence of the overall result, not merely the amount of damages won." *McCown*, 565 F.3d at 1104. The Stores argue that they obtained an excellent result because they succeeded with a positive jury verdict on each of their claims and ended Outlaw's scheme to defraud mom and pop businesses around the country through settlement, preventing potentially thousands of small businesses from having to pay Outlaw and Tauler Smith. ECF No. 451 at 5-6.

The Court begins by assessing The Stores' success and the benefit of the case to the Plaintiffs and to the public. In addition to collectively winning a damages award of

---

[8] Moreover, the litigation in *Lowery* consisted of only one substantive motion and a few discovery disputes. 75 F.4th at 990. This is in contrast to the over fifteen substantive motions and multiple discovery motions in this case. *See* notes 2-4 *supra* (listing motions).

$11,940, ECF No. 427, The Stores settled with Outlaw and its owners for $125,000 regarding the same claims for which Tauler Smith was named, ECF No. 361 at 3. *See Bravo*, 810 F.3d at 666 (permitting consideration of a settlement payment by a co-defendant if the time counsel spent on the settling defendant "cannot be fairly separated from the time spent on non-settling defendants."). Thus, the monetary success of the case is around $100,000.[9] But "it would be wrong to evaluate the extent of the results Plaintiffs' counsel obtained based solely on the number of dollars they recovered for their clients." *Gonzalez*, 729 F.3d at 1210.

The nonmonetary success of the case is harder to value. As part of the settlement, Outlaw agreed to abandon its efforts to collect money from small businesses, including from those to which it had already sent demand letters. ECF No. 249 at 1, 3. Ending the "scheme" that had victimized The Stores is certainly a successful result. And it undoubtably saved some number of small businesses from being targeted and from paying settlement fees to Tauler Smith and Outlaw or being forced to litigate. The Outlaw conspiracy sent an estimated 15,000 demand letters, ECF No. 434 at 278:18-23, and sued roughly 50 small businesses in this case alone, ECF No. 1, so the impact of the settlement was widespread. And it was especially valuable because it is unlikely that many of the targeted small businesses would have been able to hire counsel to fight the claims in the demand letters and lawsuits given the small amount at stake and that many are immigrants and non-native English speakers. ECF No. 104-1 ¶ 2.

The Stores assert that the monetary value of these savings is roughly $7.7 million because the project was estimated to yield $10 million and had already made an estimated $2.3 million according to trial testimony. ECF No. 451 at 5-6. Assigning a specific number to this aspect of The Stores' success is speculative, but the Court finds that

---

[9] Presumably, some of the settlement award went to counsel instead of to The Stores.

ending Outlaw's efforts to collect resulted in *at least* $1 million of savings to non-party small businesses and potentially much more.  In just one corner of the conspiracy, the settlement resulted in the dismissal of at least nine cases in the Eastern District of Michigan brought by Boss Law PLLC, an alleged member of the Outlaw conspiracy, on behalf of Outlaw.  ECF No. 448-1 at 10; *Compare* ECF No. 359-1 at 14 (settlement agreement signed on June 24, 2020)*, with* ECF No. 448-4 (nine cases brought by Outlaw in the Eastern District of Michigan were closed on June 29, 2020).  Emails sent by Mr. Tauler estimated that Boss Law obtained over $2 million in uncollected default judgments prior to the settlement.  ECF No. 448-6 at 2-3 (emails sent in early July 2020).  By preventing further collection, the settlement—which covers all of Outlaw's activities, not just those with Boss Law—likely saved at least that much.  Given how broadly Tauler Smith and Outlaw targeted small businesses, the level of monetary value to similarly situated stores is almost certainly greater than $1 million.[10]

      Even though the precise value of these savings is uncertain, the Court may still consider them as part of The Stores' success.  *See Gonzalez*, 729 F.3d at 1210 (considering as part of the litigation's success that the "filing and prosecution of these lawsuits . . . *may* have contributed to the City's loss of insurance coverage, and subsequent decision to shut down its beleaguered police department" (emphasis added)).

---

[10] Averaging the jury's damages awards to the three plaintiffs—$5,940, $2,700, and $3,300, ECF No. 427, the targets of the "scheme" likely suffered about $3,980 in damages each.  Outlaw and Tauler Smith sent an estimated 15,000 demand letters and sued roughly 50 small businesses in this case alone.  ECF No. 434 at 278:18-23; ECF No. 1.  So very conservatively assuming that the settlement provision requiring Outlaw to abandon its efforts to collect saved at least 100 businesses from paying Outlaw and Tauler Smith, litigating, or removing products from their shelves, the value of the litigation to the public is at least $398,000.  If, on the higher end, the settlement saved 1,000 businesses from paying, litigating, or removing products from their shelves, the value to the public is closer to $3.98 million.

Taking into account the nonmonetary results of the litigation, the differential between the Stores' success and the requested attorneys' fees shrinks to nothing.

Next, The Stores argue that they were fully successful because they succeeded on each of their causes of action for the amount sought. ECF No. 451 at 5. However, that the Court denied their motion to certify a class, one of the primary goals of the lawsuit, warrants a reduction. *See Vargas v. Howell*, 949 F.3d 1188, 1196 (9th Cir. 2020) ("A reduction in fees could . . . be appropriate if a settlement were prompted by adverse court rulings that doomed the plaintiff's chances of achieving anything more than 'partial or limited success.'"). The Ninth Circuit has approvingly discussed reductions to the lodestar of 10-20% for success on only one of multiple claims. *See Yamada*, 825 F.3d at 546 (approving a reduction of 20% because plaintiff succeeded on only one of five claims); *Hamed v. Macy's West Stores, Inc.*, No. 10-2790, 2011 WL 5183856, at *7 (N.D. Cal. Oct. 31, 2011) (reducing attorneys' fees by 10% because plaintiff succeeded on only one of five original claims). Here, the Stores succeeded on each claim, so a reduction of 15% sufficiently accounts for their failure to certify a class and the modest amount of recovery actually received directly by The Stores.

Accordingly, the Court applies a multiplier of .85. Thus, with a lodestar of $1,014,487.43 and a multiplier of .85, the Court finds that the Stores are entitled to $862,314.32 in attorneys' fees.

## Costs

18 U.S.C. § 1964(c) states that, under RICO, the injured party shall recover "the cost of the suit." This permits recovery of standard out-of-pocket litigation expenses, such as printing and legal research, as well as costs that are normally non-taxable, such as travel expenses. *Jung Ja Kim v. Quichocho*, No. 1:09-cv-0046, 2015 WL 13357617, at *4-6 (D. N. Mar. I. Mar. 23, 2015) (awarding non-taxable travel costs under § 1964(c)); *Oracle Am., Inc. v. Mai*, 2014 WL 12588632, at *3 (C.D. Cal. Mar. 3, 2014); *see also*

*Grove v. Wells Fargo Fin. California, Inc.*, 606 F.3d 577, 580 (9th Cir. 2010) ("[W]e repeatedly have allowed prevailing plaintiffs to recover non-taxable costs where statutes authorize attorney's fees awards to prevailing parties.")

The Stores request $33,410.48 in out-of-pocket litigation expenses. ECF No. 448-11. They provide a description of each individual expense, including filing fees, airfare, lodging, and other travel expenses, deposition videotaping, and copying. *Id.* The Stores note that they claim $5,762.82 less than their counsel's out-of-pocket litigation expenses. Tauler Smith does not object to the request for costs. ECF No. 450 (absence). The Court finds that the Stores' requested costs are reasonable litigation expenses and holds that the Stores are entitled to the full amount of their request.

## Conclusion

The Court GRANTS IN PART The Stores' Motion for Attorneys' Fees and Costs of Suit, holding that the Stores are entitled to $862,314.32 in attorneys' fees and $33,410.48 in costs.

**IT IS SO ORDERED.**

Dated: October 5, 2023

Hon. Gonzalo P. Curiel
United States District Judge