UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE OUTLAW LABORATORY, LP LITIGATION, | Case No.: 18-cv-0840-GPC-BGS<br>Consolidated Case No.: 18-cv-1882<br><br>**ORDER GRANTING MOTION TO IMPOSE LIABILITY**<br><br>**ORDER DENYING MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>**[ECF No. 459]** |

Pending before the Court is Collect Co's Motion to Impose Liability on JPMorgan Chase Bank and for Attorneys' Fees and Costs. ECF No. 459. For the reasons that follow, the motion is **GRANTED IN PART AND DENIED IN PART**. The hearing scheduled for August 9, 2024, is vacated.

## BACKGROUND

On March 24, 2023, this Court entered judgment in favor of Skyline Market Inc., Roma Mikha, Inc., and NMRM, Inc. (collectively, "the Stores") and against Tauler Smith LLP. ECF No. 430. On October 5, 2023, this Court issued a fee award in the amount of $862,314.32 in attorneys' fees and $33,410.48 in costs. ECF No. 453. The Stores

1

assigned all of their right, title, and interest in the March 24, 2023, judgment and October 5, 2023, fee award to Collect Co through an Acknowledgement of Assignment of Judgment which was filed on March 28, 2024. ECF No. 454.

On April 8, 2024, the Court issued a writ of execution in favor of Collect Co as the assignee of record. ECF No. 456. The writ of execution, along with a notice of levy and memorandum of garnishee, were served on JPMorgan Chase Bank, N.A. ("the Bank") on April 9, 2024. ECF No. 457. At the time of service, the balance in Tauler Smith's bank account was $381,928.01.

On April 11, 2024, Collect Co's manager, Gabriela Moore, called Chase and spoke with Nadine in the garnishment department. ECF No. 459-2 at 2. Nadine claimed that Chase had not received any levy documents related to this case or Tauler Smith LLP and recommended that Collect Co fax a copy to the bank. *Id.* Moore did so twice, receiving confirmation for one fax at 9:30 a.m. and the other at 10:03 a.m. *Id.*

On April 12, 2024, Moore called Chase again and spoke with Omega in the garnishment department. *Id.* Omega confirmed that Chase had received one of the faxes with the levy documents, but said the levy had not been processed yet. *Id.*

On April 15, 2024, Moore called the Bank again and spoke with Mae. *Id.* She confirmed that the Bank had received the relevant documents but claimed that the Bank would need ten business days from April 15, 2024, to respond to the levy. *Id.*

On April 16, 2024, Moore called the Bank once more and spoke with Edna. *Id.* Edna confirmed that a response to the levy had been generated and that the balance of Tauler Smith's account had been captured. *Id.* By then, only $49,033.08 remained. *Id.*

## LEGAL STANDARD

Collect Co argues that under Cal. Code Civ. Proc. § 701.020, the Bank is liable for the difference: $332,894.93.

> When the debtor's property is in the possession of a third person (such as a financial institution), the judgment creditor may serve the writ of execution

> and the notice of levy upon the third person; once it does, the third person "shall" "at the time of levy or promptly thereafter" "deliver to the levying officer any of the [judgment debtor's] property levied upon that is in the [third person's] possession" or "control" (1) "unless the third person claims the right to possession of the [judgment debtor's] property," or (2) "[u]nless the third person [otherwise] has good cause for failure or refusal" to comply with the levy.  For purposes of the second exception, "'good cause' includes, but is not limited to, a showing that the third person did not know or have reason to know of the levy from all the facts and circumstances known to the third person."
>
> . . .
>
> Once the financial institution is properly served as detailed above, an execution lien "arises" as to the "amounts in [the] deposit account at the time of service on the financial institution."  While this lien is in effect, the financial institution is not to "honor a withdrawal request or a check or other order for the payment of money from the deposit account" unless there still will be "sufficient funds … available to cover the levy" and the institution cannot be held liable to the depositor for doing so.

*Bergstrom v. Zions Bancorporation, N.A.*, 78 Cal. App. 5th 387, 398 (2022) (citations omitted).  "If the financial institution (as a third person) 'fails or refuses' to 'deliver property to the levying officer' 'without good cause to do so,' the financial institution 'is liable to the judgment creditor for' the amount of the levy." *Id.* at 399 (quoting Cal. Code Civ. Proc. § 701.020(a)).

## DISCUSSION

**A. Cal. Code Civ. Proc. § 701.020(a) Permits Collect Co to Proceed by Motion**

The Bank argues that, as an initial matter, the court may not "determine a third party's liability under section 701.020 through a *motion*" and that the proper course is "a separate action." ECF No. 468 (The Bank's Opposition) at 8.  The Bank contrasts section 701.020 with section 708.180—which "expressly authorizes a court, at the judgement creditor's request, to 'determine the interests in the property or the existence of the debt' held or owed by a third party," *id.* (quoting Cal. Civ. Proc. Code § 708.180(a))—and argues that "[t]he fact that the Legislature did not include a similar provision in section

3

1  701.020 demonstrates that the Legislature did not intend section 701.020 to be enforced
2  through motion practice in the first place," *id.* at 10.
3  　　　But state appellate courts have rejected this interpretation of section 701.020, *see*
4  *Nat'l Fin. Lending, LLC v. Superior Court*, 222 Cal. App. 4th 262, 272 (2013);
5  *Bergstrom*, 78 Cal. App. 5th at 396 ("[P]laintiff filed a motion for a court order imposing
6  third party liability on Zions for its noncompliance with the April 2 notice of levy."), and
7  this Court is bound to follow, *see Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th
8  885, 889 (9th Cir. 2021).  In *Nat'l Fin. Lending*, a third-party debtor served with a section
9  701.020 motion moved to quash service and filed a peremptory challenge under section
10 170.6, which required the California appellate court to determine whether the motion
11 under section 701.020 was an "action" or "special proceeding."  222 Cal. App. 4th at 272.
12 The court concluded that "a section 701.020 motion brought in the same action in which
13 the underlying judgment was entered . . . [is] only [an] incident[] of the underlying action
14 and do[es] not give rise to a separate right to a peremptory challenge under section
15 170.6."  *Id.*  It reasoned that "special proceedings are remedies that are *independent* of a
16 pending action and not, as here, procedures that are 'a mere part of . . . any underlying
17 litigation.'"  *Id.* at 274 (quoting *Avelar v. Superior Court*, 7 Cal. App. 4th 1270, 1275
18 (1992)).
19 　　　*Nat'l Fin. Lending* thus stands for the "closely connected" relationship between
20 judgment and collection, and its endorsement of "a section 701.020 motion brought in the
21 same action in which the underlying judgment was entered" is fatal to the Bank's
22 proposed construction of the statute.  *See id.* at 272.  The Bank argues in a sentence that
23 *Nat'l Fin. Lending* is distinguishable because it involved a third-party entity controlled by
24 the sole shareholder of the defendant, but the Bank fails to explain what difference this
25 distinction makes.  Perhaps it means to refer to the portion of its briefing where it
26 suggests that requiring section 701.020 to be pursued in a separate action serves to

protect an unrelated "third party['s] due-process rights." ECF No. 468 at 10. But due process merely requires notice and the opportunity to be heard, and the Bank has been provided both those protections, as is evidenced by the instant proceedings. Accordingly, the Court concludes that liability under section 701.020 may be pursued via motion and proceeds to the substantive merits.[1]

### B. JPMorgan Bank Is Liable for Failing to Promptly Respond to Notice of Levy

Collect Co complains that the Bank failed to honor its obligation, upon receipt of the notice of levy, to immediately or promptly thereafter deliver the contents of Tauler Smith's account. Collect Co submits that if the Bank had properly honored its obligation, Collect Co would be $332,894.93 richer.

The Bank responds first that the underlying judgment, pursuant to which the levy was made, has already been satisfied. It directs the Court to a settlement agreement between Collect Co and Tauler Smith, filed in a separate proceeding, which states that "Tauler Smith agrees to pay Collect Co the total sum of $190,000.00" and "[i]f Tauler Smith timely makes all of the Payments required by Section 2 above, and is not in breach of any other term of this Agreement, Collect Co shall take no further action to collect on or enforce the Judgment or Fee Award against Tauler Smith." ECF No. 468-4 at 2–3. The agreement goes on to discuss Collect Co's action against the Bank, noting that "Collect Co intends to seek damages from . . . JP Morgan Chase Bank pursuant to

---

[1] The Bank cites several cases where a creditor brought a separate suit to impose liability under section 701.020, but that does not demonstrate that 701.020 may only be pursued via separate suit and is instead consistent with commentary from the Law Revision Commission which recognizes that liability under section 701.020 may be pursued in a variety of ways. *See Nat'l Fin. Lending*, 222 Cal. App. 4th at 272 (discussing Law Revision Commission comment).

California Code of Civil Procedure § 702.020.  Tauler Smith agrees not to contest, oppose, or object to any motion, application, complaint, or other legal process brought by Collect Co against [the] bank." *Id.*  And the agreement concludes that only "[a]fter all Payments have been timely made and any further legal action by Collect Co against the bank[] described in Section 4 above has reached its full and final conclusion (including the termination of any appeals), Collect Co agrees to file an Acknowledgment of Satisfaction of Judgment." *Id.*

The Bank argues that "assuming Tauler Smith timely completes its payment of $190,000, the full amount of the fee award will be satisfied regardless of the outcome of the Motion," and so "'the amount required to satisfy the judgment pursuant to which the levy is made,' Cal. Civ. Proc. Code § 701.020(a)(2), **will be $0**." ECF No. 468 at 13.  This argument gets ahead of itself.  The settlement agreement is structured such that any satisfaction under the agreement occurs only after the conclusion of present litigation.  Full satisfaction depends on Tauler Smith's continued "reasonabl[e] cooperat[ion]" and that duty is not satisfied until the conclusion of the legal process.  ECF No. 468-4 at 3.

The Bank's proposed application of section 701.020(a)(2) requires the Court to assume the occurrence of certain conditions and the conclusion of the litigation.  It requires the Court to find essentially that the judgment has already been satisfied when, by the plain terms of the settlement agreement, it has not.  The Court finds that adopting the Bank's temporal manipulation of the statute and the settlement agreement would greatly undermine the function of section 701.020 and significantly hinder a prospective creditor's ability to recover.  *Cf. Bergstrom*, 78 Cal. App. 5th at 402 ("Such a result is inimical to the purpose of the Law, which is to facilitate—not obstruct—the judgment creditor's collection of the funds in those accounts.").  Accordingly, it finds the argument

unpersuasive and the settlement agreement to be largely irrelevant, as the agreement's influence on the matter begins only where the Court's jurisdiction ends.[2]

The Bank argues in the alternative that Tauler Smith's $190,000 settlement payment should be deducted from any of the Bank's liability, but the Bank provides no support for this argument, and in any event the argument conflicts with the plain language of the statute. *See* ECF No. 468 at 13–14. The Bank's liability under section 701.020 is the lesser of "(1) [t]he value of the judgment debtor's interest in the property" and "(2) the amount required to satisfy the judgment pursuant to which the levy is made." The settlement payment reduces only the latter—the full judgment which consists of $895,724.80 plus interest—but still the former remains the lesser amount. If the settlement were larger and the judgment smaller, the Bank's argument would have merit: the remaining judgment could become less than the account value, and the Bank's liability would be adjusted accordingly. But here, as Collect Co correctly observes, "even if Collect Co recovers the full amount sought by its motion to impose liability . . . Collect Co will receive hundreds of thousands of dollars less than the face amount of the judgment." That fact precludes the use of the settlement payment to reduce the Bank's liability, because the "lesser" amount remains the full value of Tauler Smith's account.

The Bank next argues that Collect Co has not established that it failed to act "promptly" and "without good cause." ECF No. 468 at 11. "California law provides that, upon receipt of a writ of execution and notice of levy, a bank must comply with section 701.010 at the time of levy or 'promptly thereafter,'" and the Bank correctly notes that "promptly" does not mean "instantaneously." *Id.* (quoting Cal. Civ. Proc. Code §

---

[2] The Bank moves in the alternative for discovery relating to the assignment of debt and arrangement between Tauler Smith and Collect Co. ECF No. 468 at 15. Because the Court finds these matters to be irrelevant to the instant issue, the motion is **DENIED**.

701.010). In *Bergstrom*, the judgment creditor argued that the bank ought to have frozen the funds "immediately," and the court rejected the argument, finding that the creditor's argument required the court to write the words "or promptly thereafter" out of the statute. 78 Cal. App. 5th at 405. The court found instead that the Bank's one-business-delay had not been shown to be unreasonable, given the fact that "[f]inancial institutions can have hundreds, thousands, if not tens of thousands, of depositors—and may receive multiple notices of levy at once in locations all around a state or the country." *Id.*

Here, the Bank argues that the delay from April 9, 2024, to April 15, 2024, was reasonable. It points to the fact that the levy was served "at a bank branch—as opposed to [the Bank's] registered agent for service of process." ECF No. 468 at 12. The Bank does not explain the significance of this fact or why service at a bank branch would be improper. Indeed, financial institutions like the Bank that fail to designate a central location for service of legal process may be served at any of their branches under Cal. Code Civ. Proc. § 684.115(b), and the Bank has not designated a central location, *see* Central Locations for Service of Legal Process, https://dfpi.ca.gov/central-locations-for-service-of-legal-process (last visited August 2, 2024).[3] Thus, the Court concludes that service to Claudia Salgado—the lead associate at the Bank's Fifth Avenue branch—was sufficient and that the Bank had notice of the levy as of April 9, 2024. *See Bergstrom*, 78 Cal. App. 5th at 399 (finding that principal "is deemed to know what its agent knows").

The next question is whether the Bank's delay of four business days satisfied its duty to deliver the bank proceeds "promptly." The Bank argues that the delay was proper but provides no justification or explanation as to its internal processes. Collect Co argues that the delay was not proper and insists that the bank was required to act "immediately,"

---

[3] The Court may sua sponte notice information that is publicly available on a government webpage. Fed. R. Evid. 201(b)(2).

a position that the *Bergstrom* court has already rejected.[4]  In deciding promptness, this Court is guided by two principles identified in *Bergstrom*.  First, the purpose of the law is "to facilitate—not obstruct—the judgment creditor's collection of the funds in th[e levied] accounts."  78 Cal. App. 5th at 402.  Second, a financial institution is entitled to a delay that is not "unreasonable."  *Id.* at 405.  The Court determines that, as a matter of common sense, if a financial institution is permitted to delay action upon a levy for days, the judgment creditor's collection of funds will almost always be frustrated.  The debtor receives notice of the application for writ, its execution, and its service.  *See* ECF No. 455–57; *see also* Cal. Code Civ. Proc. §700.010(a).  It would be a simple matter to drain the account of funds (as happened here) if a financial institution were not required to act for several business days.  Accordingly, absent justification, the Bank's delay of four business days cannot stand.  On the other hand, the Court is not inclined to adopt Collect Co's argument that "in the third decade of the 21st century" a financial institution is entitled only to a delay of several hours.  *See* ECF No. 469 at 6.  As the *Bergstrom* court recognized, a financial institution may service hundreds of thousands of depositors, and it is not unreasonable for such an institution to take at least one business day to process the notice and consider its validity.  That is especially the case, here, where the Bank was served just three hours before the close of business.  ECF No. 457.  Thus, the Court concludes that the Bank is only liable for the amounts withdrawn after April 10, 2022, in the amount of $319,178.18, that is, the difference between the $49,033.08 seized and the

---

[4] Collect Co argues that the statutory provision requiring the Bank to freeze the account is distinct from the one that requires delivery of its contents.  The argument is somewhat persuasive, but the *Bergstrom* court chose to conflate the two and rejected the judgment creditor's identical argument.  78 Cal. App. 5th at 405 ("[I]n her view, the Law requires third parties to freeze funds 'immediately' . . . . We reject plaintiff's argument.").

account balance one business day after the notice of levy was served. *See* ECF No. 459-1 at 1.

### C. Attorneys' Fees

Finally, Collect Co moves for discretionary attorneys' fees. Cal. Code Civ. Proc. § 701.020(c) ("If the third person's liability is established, the court that determines the liability may, in its discretion, require the third person to pay the costs and reasonable attorney's fees incurred by the judgment creditor in establishing the liability."). But the burden for establishing entitlement to a fee award rests with the fee applicant, *see Mytee Prod., Inc. v. Harris Rsch., Inc.*, No. 06-CV-1854-CAB, 2010 WL 11509000, at *7 (S.D. Cal. Feb. 4, 2010), and here Collect Co merely submits that "there is no reason for Collect Co to bear fees and costs directly caused by the Bank's violation of California law," ECF No. 459-1 at 7. The Court does not find that conclusory statement sufficient. Collect Co cites in its reply brief to fee factors considered in patent disputes, but the Bank had no opportunity to address these arguments, and the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Accordingly, the Court finds that Collect Co has failed to carry its burden to demonstrate entitlement to a fee award and **DENIES** the motion for attorneys' fees and costs.

### CONCLUSION

The Court **GRANTS** the motion to impose liability on the Bank in the amount of $319,178.18. The Court **DENIES** the motion for fees and costs.

**IT IS SO ORDERED**.

Dated: August 7, 2024

Hon. Gonzalo P. Curiel
United States District Judge